1

The Honorable Robert S. Lasnik

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
9                                   AT SEATTLE

10  BRUCE CORKER d/b/a RANCHO ALOHA;        )
11  COLEHOUR BONDERA and MELANIE            )
    BONDERA, husband and wife d/b/a         )   CASE NO. 2:19-cv-00290-RSL
12  KANALANI OHANA FARM; and ROBERT         )
    SMITH and CECELIA SMITH, husband and    )   **FIRST AMENDED COMPLAINT -**
13  wife d/b/a SMITHFARMS, on behalf of     )   **CLASS ACTION**
    themselves and others similarly situated, )  **FALSE DESIGNATION OF ORIGIN**
14                                          )   **LANHAM ACT (15 U.S.C. § 1125)**
                                            )
15              Plaintiffs,                 )
                                            )
16         v.                               )
                                            )
17                                          )
    COSTCO WHOLESALE CORPORATION, a         )   **JURY DEMANDED**
18  Washington corporation; AMAZON.COM,     )
19  INC., a Delaware corporation; HAWAIIAN  )
    ISLES KONA COFFEE, LTD., LLC, a         )
20  Hawaiian limited liability company; COST )
    PLUS/WORLD MARKET, a subsidiary of      )
21  BED BATH & BEYOND, a New York           )
    corporation; BCC ASSETS, LLC d/b/a      )
22  BOYER'S COFFEE COMPANY, INC., a         )
    Colorado corporation; L&K COFFEE CO.    )
23  LLC, a Michigan limited liability company; )
24  MULVADI CORPORATION, a Hawaii           )
    corporation; COPPER MOON COFFEE, LLC,   )
25  an Indiana limited liability company; GOLD )
26  COFFEE ROASTERS, INC., a Delaware       )
    corporation; CAMERON'S COFFEE AND       )
27

**FIRST AMENDED COMPLAINT**
#1241718 v3 / 72448-001

1  DISTRIBUTION COMPANY, a Minnesota    )
2  corporation; PACIFIC COFFEE, INC., a    )
   Hawaii corporation; THE KROGER CO., an    )
3  Ohio corporation; WALMART INC., a    )
   Delaware corporation; BED BATH &    )
4  BEYOND INC., a New York corporation;    )
5  ALBERTSONS COMPANIES INC., a    )
   Delaware Corporation; SAFEWAY INC., a    )
6  Delaware Corporation;  MNS LTD., a Hawaii    )
   Corporation; THE TJX COMPANIES d/b/a T.J.    )
7  MAXX, a Delaware Corporation;    )
8  MARSHALLS OF MA, INC. d/b/a    )
   MARSHALLS, a Massachusetts corporation;    )
9  SPROUTS FARMERS MARKET, INC. a    )
   Delaware corporation;    )
10    )
11                    Defendants.    )
      _____  )
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**FIRST AMENDED COMPLAINT**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION ........................................................................................ 1

II.     PARTIES ................................................................................................... 2

        HAWAIIAN ISLES KONA COFFEE LTD., LLC ................................... 3

        COST PLUS/WORLD MARKET .............................................................. 3

        BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC. ......... 4

        L&K COFFEE CO. LLC ........................................................................... 4

        MULVADI CORPORATION ..................................................................... 4

        COPPER MOON COFFEE, LLC ............................................................... 5

        GOLD COFFEE ROASTERS, INC. .......................................................... 5

        CAMERON'S COFFEE AND DISTRIBUTION COMPANY .................. 5

        PACIFIC COFFEE, INC. ........................................................................... 6

        THE KROGER CO. .................................................................................... 6

        AMAZON.COM, INC. ............................................................................... 6

        WALMART INC. ....................................................................................... 7

        COSTCO WHOLESALE CORPORATION ............................................... 7

        BED BATH & BEYOND INC. .................................................................. 7

        ALBERTSONS COMPANIES INC. .......................................................... 8

        SAFEWAY INC. ........................................................................................ 8

        MNS LTD. ................................................................................................. 8

        THE TJX COMPANIES ............................................................................. 9

        MARSHALLS OF MA, INC. ..................................................................... 9

        SPROUTS FARMERS MARKET, INC. .................................................... 9

III.    JURISDICTION AND VENUE ................................................................ 10

IV.     CLASS ACTION ALLEGATIONS .......................................................... 11

        Numerosity ................................................................................................ 11

        Commonality ............................................................................................. 11

        Typicality .................................................................................................. 12

        Adequacy ................................................................................................... 13

V.      STATUTES OF LIMITATIONS TOLLING ............................................ 14

        Discovery Rule .......................................................................................... 14

        Fraudulent Concealment ........................................................................... 14

**FIRST AMENDED COMPLAINT - i**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Estoppel ..................................................................................... 14

VI.    FACTUAL BACKGROUND ............................................................... 15

VII.   ELEMENTAL TESTING OF COFFEE ................................................ 18

VIII.  THE DEFENDANTS' PRODUCTS AND WRONGFUL ACTS ................................ 20

       PACIFIC COFFEE ("MAUI COFFEE COMPANY" OR "MCC") ..................... 22

       MULVADI CORPORATION .......................................................... 26

       HAWAIIAN ISLES KONA COFFEE LTD., LLC ................................... 29

       GOLD COFFEE ROASTERS, INC. ................................................. 33

       COST PLUS/WORLD MARKET ...................................................... 36

       BOYER'S ............................................................................. 41

       L&K COFFEE CO. LLC (MAGNUM EXOTICS) .................................... 45

       COPPER MOON COFFEE ............................................................ 48

       CAMERON'S ........................................................................ 52

       THE KROGER CO. .................................................................. 55

       AMAZON.COM. ...................................................................... 58

       WALMART ........................................................................... 59

       COSTCO ............................................................................. 59

       BED BATH & BEYOND ............................................................. 59

       ALBERTSONS & SAFEWAY ....................................................... 59

       MNS LTD. ("ABC") ............................................................... 59

       TJX .................................................................................. 59

       MARSHALLS OF MA ............................................................... 60

       SPROUTS ............................................................................ 60

IX.    PRAYER FOR RELIEF .............................................................. 62

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Plaintiffs, growers of Kona coffee, through their counsel of record, on their own behalf and on behalf of all others similarly situated, aver, allege and state as follows their complaint against the Defendants, based on information and belief and the investigation of their counsel.

## I.      INTRODUCTION

1.      This class action is filed on behalf of the Kona coffee farmers who grow the entire worldwide supply of authentic Kona coffee.  Kona coffee, renowned for its distinctive flavor and aroma, is one of the most famous and revered specialty coffees in the world.  But only coffee grown on farms located within the Kona District of the Big Island of Hawaii ("Kona District" defined in paragraph 38 below) can be truthfully marketed, labeled, and sold as Kona coffee.  The volcanic soil, the elevation, and the humidity of this region combine to give Kona coffee its distinctive characteristics.  The term "Kona" tells consumers their coffee comes from this distinctive geographic region.

2.      Plaintiffs bring this action against coffee distributors, wholesalers, and retailers who for years have wrongfully profited from the goodwill and reputation associated with the geographic region of Kona by passing off ordinary commodity coffee as "Kona" coffee.  Defendants' deceptive practices have flooded the market with counterfeit "Kona" coffee products, injuring honest Kona farmers in two distinct ways.  First, the marketplace is overwhelmed with counterfeit "Kona" products, and that excessive supply drives the price down sharply.  Second, because the counterfeit products are basically comprised of generic commodity coffee, consumers are misled into concluding that Kona coffee is nothing special.  These deceived consumers become less likely to pay a premium for authentic Kona coffee in the future.

**FIRST AMENDED COMPLAINT - 1**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

3.      By their actions, Defendants have artificially depressed the market price of authentic Kona coffee, harmed the reputation of authentic Kona coffee as a premium product, and caused consumer confusion as to the legitimate sources of Kona coffee.  As a direct result, Plaintiffs have lost considerable profits, and Defendants have made considerable unjust profits, all in violation of the Lanham Act, 15 U.S.C. § 1125.

4.      Plaintiffs bring this action to obtain redress for all Kona coffee growers who have been similarly injured by the conduct of the Defendants.  Plaintiffs seek to recover for the members of the Class all damages available under the Lanham Act, including compensation for lost profits, disgorgement of profits of the Defendants, corrective advertising damages, and statutory attorneys' fees and costs.  Plaintiffs also seek equitable relief in the form of an injunction permanently prohibiting the Defendants responsible for producing the accused coffee products from marketing, selling, or distributing any coffee products labeled Kona.  Plaintiffs further seek an injunction prohibiting the retail Defendants from selling any coffee products that falsely designate Kona as the source of origin of the coffee.

## II.      PARTIES

5.      Plaintiff Bruce Corker is an individual who throughout the class period described in this Complaint has done business under the name of "Rancho Aloha," growing, harvesting, and roasting Kona coffee within the Kona District.  Mr. Corker sells his Kona coffee under the "Rancho Aloha" label to consumers around the world through his website, www.ranchoaloha.com.

6.      Plaintiffs Colehour and Melanie Bondera are a married couple who throughout the class period described in this Complaint have done business under the name of "Kanalani Ohana Farm,"

growing, harvesting, and roasting Kona coffee within the Kona District.  The Bonderas sell their Kona coffee under the "Kanalani Ohana Farm" label to consumers around the world through their website, www.kanalaniohana.farm.

7.      Plaintiffs Robert and Cecelia Smith are a married couple who throughout the class period described in this Complaint have done business under the name of "Smithfarms," growing, harvesting, and roasting Kona coffee within the Kona District.  The Smiths sell their Kona coffee under the "Smithfarms" label to consumers around the world through their website, www.smithfarms.com.

8.      On information and belief, defendant HAWAIIAN ISLES KONA COFFEE LTD., LLC ("Hawaiian Isles"), is a Hawaii limited liability company with its principal place of business in Honolulu, Hawaii.  Hawaiian Isles sells a variety of coffee products throughout the United States, including this Judicial District, through various retail outlets, including but not limited to Cost Plus World Market, Kroger, Safeway, Albertsons, ABC Stores, Amazon, and Walmart.  Hawaiian Isles falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Hawaiian Isles advertises its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook.

9.      On information and belief, defendant COST PLUS/WORLD MARKET ("World Market") is a retail chain with 276 stores across the United States including 11 stores located in this Judicial District.  World Market, with its headquarters in Alameda, California, is a wholly owned subsidiary of BED, BATH & BEYOND INC., a New York corporation.  Through its retail locations and its own online store, www.worldmarket.com, World Market sells in this Judicial District and throughout the United States both its own private-label Kona coffee products as well as Kona coffee

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

products offered by third parties.  World Market falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Certain third-party coffee products that World Market sells, such as those from Hawaiian Isles, similarly feature on the label the false designation of KONA as the geographic origin of the coffee.

10.    On information and belief, BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC. ("Boyer's") is a Colorado corporation with its principal place of business in Denver, Colorado.  Boyer's is a wholly owned subsidiary of Luna Gourmet Coffee and Tea Company, LLC, which is a Colorado limited liability company also based in Denver, Colorado.  Boyer's sells its coffee products in this Judicial District and throughout the United States through its online store at www.boyerscoffee.com as well as through national retailers including but not limited to Amazon, Walmart, and Safeway.  Boyer's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the packaging.

11.    On information and belief, defendant L&K COFFEE CO. LLC ("L&K") is a Michigan limited liability company with its principal place of business at Nunica, Michigan.  L&K primarily does business under the name Magnum Coffee Roastery, under which it sells a variety of coffee products under its Magnum Exotics label.  L&K sells its coffee products throughout the United States, including this Judicial District, through both its own online store, www.javaboulevard.com, and various retail outlets, including but not limited to Costco, Amazon, Walmart, T.J. Maxx and Marshalls.  L&K falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.

12.    On information and belief, defendant MULVADI CORPORATION is a Hawaii corporation with its principal place of business in Honolulu, Hawaii.  Mulvadi sells a variety of coffee

**FIRST AMENDED COMPLAINT - 4**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

products throughout the United States, including this Judicial District, through various retail outlets, including but not limited to ABC Stores, Amazon, and Walmart.  Mulvadi falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.

13.     On information and belief, defendant COPPER MOON COFFEE, LLC ("Copper Moon") is an Indiana limited liability company with its principal place of business in East Lafayette, Indiana.  Copper Moon sells a variety of coffee products in this Judicial District and throughout the United States, including this Judicial District, both through its webpage, www.coppermooncoffee.com, and through various retail outlets, including but not limited to Copper Moon Coffee Cafes, Amazon, Walmart, Sam's Club, Bed Bath & Beyond (the parent company of World Market), Office Depot, and Staples.  Copper Moon falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.

14.     On information and belief, defendant GOLD COFFEE ROASTERS, INC., dba Hawaiian Gold and also Parry Estates ("Hawaiian Gold"), is a Delaware corporation with its principal place of business in Jupiter, Florida.  Hawaiian Gold sells a variety of coffee products throughout the United States, including this Judicial District, through its own website and various retail outlets, including but not limited to Kroger, Amazon, Walmart, T.J. Maxx and Marshalls.  Hawaiian Gold falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.

15.     On information and belief, CAMERON'S COFFEE AND DISTRIBUTION COMPANY ("Cameron's") is a Minnesota corporation with its principal place of business in Shakopee, Minnesota.  Cameron's sells its coffee products in this Judicial District and throughout the

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

United States through its online store at www.cameronscoffee.com as well as through national retailers including but not limited to Amazon, Walmart, Target, Sprouts, and Safeway. Cameron's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the packaging.

16.     On information and belief, defendant PACIFIC COFFEE, INC., which does business as Maui Coffee Company ("MCC"), is a Hawaii corporation with its principal place of business in Lahaina, Hawaii. MCC sells a variety of coffee products throughout the United States, including this Judicial District, both through its webpage, www.mauicoffeeco.com, and through various retail outlets, including but not limited to ABC Stores, Amazon, Walmart, and Target. MCC falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of 100% KONA on the front of the packaging.

17.     On information and belief, defendant THE KROGER CO. ("Kroger") is an Ohio Corporation, with its principal place of business in Cincinnati, Ohio. Kroger is a retail chain with over 2,700 stores across the United States, including approximately 119 stores located in this Judicial District. Kroger also does business as Fred Meyer and QFC. With its private label "Kivu," Kroger falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the label of both its pre-packaged products and its self-serve coffee dispensers. In addition, Kroger sells coffee products from Hawaiian Gold, and others, which also falsely designates Kona as the geographic origin of its coffee.

18.     On information and belief, defendant AMAZON.COM, INC. ("Amazon") is a Delaware corporation with its principal place of business located in Seattle, Washington. Amazon is the largest online retailer in the world. Through its online store at www.amazon.com, Amazon sells

FIRST AMENDED COMPLAINT - 6
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

in this Judicial District and throughout the United States a variety of deceptive coffee products, including, but not limited to, the following: Hawaiian Isles, Hawaii Gold, Mulvadi, Cameron's, Copper Moon, Boyer's, Hazz and Magnum Exotics. Each of these brands sells products that falsely designate KONA as the origin of the coffee beans.

19.     On information and belief, defendant WALMART INC. ("Walmart") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Bentonville, Arkansas. Walmart has a total of 5,358 stores nationwide, and approximately 67 stores in Washington. Walmart sells in this Judicial District and throughout the United States a variety of deceptive coffee products, including but not limited to the following: MCC, Mulvadi, Copper Moon, Cameron's, Hawaiian Gold, Boyer's, and Hawaiian Isles. Each of these brands sells products that falsely designate KONA as the origin of the coffee beans.

20.     On information and belief, defendant COSTCO WHOLESALE CORPORATION ("Costco") is a corporation organized and existing under the laws of the State of Washington with its principal place of business in Issaquah, Washington. Costco is the second largest retailer in the world, and it owns and operates numerous retail locations within this Judicial District. Through its retail and online stores, Costco sells in this Judicial District and throughout the United States deceptive coffee products such as Magnum Exotics, which falsely designates KONA as the origin of the coffee beans.

21.     On information and belief, defendant BED BATH & BEYOND INC. ("Bed Bath"), is a New York corporation with its headquarters in Union, NJ. Bed Bath operates over 1000 retail locations across the country, including numerous retail locations within this Judicial District. Bed Bath is the parent company of defendant World Market. Through its retail locations and its own online store, Bed Bath sells in this Judicial District and throughout the United States various coffee

FIRST AMENDED COMPLAINT - 7
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

products labeled "Kona" from brands including, but not limited to, Copper Moon.  The Copper Moon coffee products sold by Bed Bath feature on the label the false designation of KONA as the geographic origin of the coffee.

22.     On information and belief, defendant ALBERTSONS COMPANIES INC. ("Albertsons") is a Delaware corporation with its principal place of business in Boise, Idaho. Albertsons is a national grocery store chain with over 2,300 locations across the United States, including approximately 20 stores in this Judicial District.  Albertsons is the parent company of Safeway, Inc.  Through its grocery stores in this Judicial District and throughout the United States, Albertsons sells a variety of deceptive coffee products, including but not limited to Hawaiian Isles, which falsely designates KONA as the origin of the coffee beans.

23.     On information and belief, defendant SAFEWAY INC. ("Safeway") is a Delaware corporation with its principal place of business in Pleasanton, CA.  Safeway is a national grocery store chain with over 900 locations across the United States, including dozens of stores in this Judicial District.  Safeway is a subsidiary of Albertsons.  Through its grocery stores in this Judicial District and throughout the United States, Safeway sells a variety of deceptive coffee products, including but not limited to Hawaiian Isles, which falsely designates KONA as the origin of the coffee beans.

24.     On information and belief, defendant MNS LTD. is a Hawaii corporation with its principal place of business located at Honolulu, Hawaii.  Under the tradename ABC Stores, MNS Ltd. (hereinafter "ABC") owns and operates a chain of retail stores through which it sells a variety of coffee products labeled as "Kona."   ABC also sells in this Judicial District and throughout the United States coffee products labeled as "Kona" through its online store at www.abcstores.com.  Some of the coffee

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

products sold by ABC falsely designate KONA as the origin of the coffee beans.  Those offending

brands include but are not limited to Mulvadi, MCC, and Hawaiian Isles.

25.    On information and belief, defendant THE TJX COMPANIES ("TJX") is a Delaware

corporation with its principal place of business in Framingham, Massachusetts.  TJX Companies, Inc.

does business in Washington and elsewhere as T.J. Maxx.  TJX operates a chain of T.J. Maxx retail

stores in the United States, with numerous locations in this Judicial District, through which it sells a

variety of coffee products labeled as "Kona."  TJX touts itself as one of the largest off-price retailers

in the country.  Some of the coffee products sold by TJX falsely designate KONA as the origin of the

coffee beans.  Those offending brands include, but are not limited to, Hawaiian Gold, Magnum

Exotics, and Kona Roasting Co.

26.    On information and belief, defendant MARSHALLS OF MA, INC. ("Marshalls of

MA") is a Massachusetts corporation with its principal place of business in Framingham,

Massachusetts.  Marshalls of MA does business in Washington and elsewhere as Marshalls.  Marshalls

of MA operates a chain of Marshalls retail stores in the United States, with numerous locations in this

Judicial District, through which it sells a variety of coffee products labeled as "Kona."  Marshalls of

MA touts itself as one of the largest off-price retailers in the country.  Some of the coffee products

sold by Marshalls falsely designate KONA as the origin of the coffee beans.  Those offending brands

include, but are not limited to, Hawaiian Gold, Magnum Exotics, and Kona Roasting Co.

27.    On information and belief, defendant SPROUTS FARMERS MARKET, INC.

("Sprouts") is a Delaware corporation with its principal place of business in Phoenix, Arizona.  Sprouts

operates over 200 grocery stores across the United States, including multiple locations within this

FIRST AMENDED COMPLAINT - 9
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Judicial District.  Some of the coffee products sold by Sprouts falsely designate KONA as the origin of the coffee beans.  Those offending brands include, but are not limited to, Cameron's.

### III.    JURISDICTION AND VENUE

28.    This action arises under 15 U.S.C. §1125(a).  This Court has original subject matter jurisdiction over Plaintiffs' claims for Lanham Act violations under 15 U.S.C. §1121(a) and federal question jurisdiction under 28 U.S.C. §§1331.

29.    The Defendants conduct business in this Judicial District, have sold products in this Judicial District falsely designating "Kona" as the origin of the coffee, and have injured the reputation of Kona and the farmers of authentic Kona coffee in this Judicial District.  Defendant Amazon, which sells many of the other defendants' deceptive "Kona" products, has its principal place of business in this Judicial District.  Defendant Costco also has its principal place of business, and numerous retail locations, in this Judicial District.  Amazon and Costco are two of the highest-volume retailers in the world.  All of the defendants who produce the deceptive "Kona" products identified in this complaint sell such products in this Judicial District, either through numerous physical retail locations (including but not limited to retailers who are also defendants in this litigation) or through online stores (again including but not limited to retailers who are also defendants in this litigation).  Many of the defendants who manufacture the deceptive "Kona" products named in this complaint also sell, through their own online stores, such product directly to consumers in this Judicial District.  All of the retail defendants who sell the deceptive "Kona" products identified in this complaint either operate multiple retail locations in this Judicial District, or they sell the accused products through an online store and then ship the accused products to consumers in this Judicial District.  The prevalence of the sale and distribution of the deceptive "Kona" products in this Judicial District has harmed the reputation and

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

goodwill associated with the Kona origin for coffee and has impaired the Plaintiffs' ability to obtain a fair price for their authentic Kona coffee, or otherwise compete, in this Judicial District. Each of the defendants has committed acts of unfair competition and false advertising in this Judicial District in violation of the Lanham Act.

30.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

## IV.     CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated under Federal Rule of Civil Procedure 23. In particular, they seek to represent a Class of:

> All persons and entities who commercially farmed Kona coffee in the Kona District and then sold their Kona coffee, provided that they farmed and sold their Kona coffee during the time that any Defendant sold coffee product with the false designation of Kona as the origin of the coffee product.

Plaintiffs also seek to represent 19 Defendant-Specific Subclasses:

> All persons and entities who commercially farmed Kona coffee in the Kona District and then sold their Kona coffee, provided that they farmed and sold their Kona coffee during the time [Defendant] sold coffee product with the false designation of Kona as the origin of the coffee product.

Excluded from both the Class and the Subclasses are any entities named as Defendants in this action.

32.     Plaintiffs meet the prerequisites of Rule 23(a):

a.     **Numerosity**. On information and belief, between 600 and 1,000 sole entities grow Kona coffee. The members of the Class and each Subclass are thus so numerous that joinder of all Class members in this action is not practical.

b.     **Commonality**. The answers to questions common to the Class and Subclasses will drive the resolution of this litigation. The common questions of law and fact include:

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1     i.  whether Defendants manufactured or sold coffee labeled as "Kona" that

2 was not grown in the Kona District of Hawaii;

3     ii.  whether Defendants' distribution and sale of products falsely labeled as

4

5 "Kona" has created or is likely to create confusion among consumers;

6     iii.  whether labeling coffee not grown in the Kona District of Hawaii as

7 "Kona" constitutes a violation of the Lanham Act;

8     iv.  whether the Defendants' Lanham Act violations have negatively

9

10 affected the market price of authentic Kona coffee;

11     v.  whether the Defendants' Lanham Act violations have injured the

12 goodwill and reputation of the Kona name;

13     vi.  the extent of damages to authentic Kona growers;

14     vii.  the extent of Defendants' profits earned as a result of falsely or

15

16 misleadingly designating "Kona" as the origin of their coffee products;

17     viii.  the corrective advertising required to remedy the damage Defendants

18 have caused to the goodwill and reputation of the Kona name; and

19     ix.  the form of injunction necessary to prevent Defendants from causing

20

21 further harm in violation of the Lanham Act.

22    c.  **Typicality**.  Plaintiffs have the same interests as all members of the Class and

23 Subclasses they seek to represent, and Plaintiffs' claims arise out of the same set of facts and conduct

24 as all other members of the Class and Subclasses.  Plaintiffs and all proposed Class members grew

25 and sold authentic Kona coffee and competed against the growers and sellers of coffee falsely labeled

26

27

as "Kona."  All of the claims of Plaintiffs and proposed Class members arise out of Defendants' conduct in manufacturing, marketing, and selling coffee falsely labeled as "Kona."

        d.    **Adequacy**.  Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class members.  Plaintiffs' interests align with those of the class members, and Plaintiffs have no fundamental conflicts with the Class.  Plaintiffs have retained counsel competent and experienced in Lanham Act, complex commercial, and class action litigation who will fairly and adequately represent the Class.

      33.    Plaintiffs meet the prerequisites of Rule 23(b)(2) because Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  Defendants' sale of coffee mislabeled as "Kona" coffee affected each Plaintiff and Class member in the same way.  And the Lanham Act provides for injunctive relief to prevent the Defendants from continuing to sell coffee mislabeled as "Kona" coffee to prevent further harm to each Plaintiff and Class member.

      34.    Plaintiffs meet the prerequisites of Rule 23(b)(3):

        a.    The common questions of law and fact enumerated above predominate over any questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.

        b.    Defendants are sophisticated parties with substantial resources, while proposed Class members generally are not, and prosecution of this litigation is likely to be expensive, as proved by the extensive scientific analysis that preceded the filing of this complaint.  Because the economic damages suffered by any individual Class member from any individual defendant may be relatively

**FIRST AMENDED COMPLAINT - 13**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

modest compared to the expense and burden of individual litigation, it would be impracticable for proposed Class members to seek redress individually for Defendants' wrongful conduct.

## V.      STATUTES OF LIMITATIONS TOLLING

35.      **Discovery Rule**.  Plaintiffs and Class members did not know and could not have known about their Lanham Act causes of action because, even assuming general awareness of the sales of fake Kona coffee, it is impossible to know that a particular defendant has sold such coffee without either (1) extensive and expensive chemical analysis of the coffee itself that very few laboratories can perform and which Plaintiffs and the Class members likely cannot afford to pay for on their own, or (2) documents and information in the exclusive possession of the defendant.  Reasonable and diligent investigation did not and could not reveal a factual basis for the Lanham Act claims alleged in this complaint prior to the investigation and extensive scientific testing that led to the Complaint itself.

36.      **Fraudulent Concealment**.  Any applicable statutes of limitations have been tolled by Defendants' knowing, active, and ongoing concealment of the facts as alleged in this Complaint. Defendants falsely labeled their coffee as "Kona" with the intent that other participants in the market, including Plaintiffs, Class members, and consumers, would be unable to determine whether or not the coffee was authentic Kona coffee.  The truth about the origin of the coffee contained in Defendants' products was information within Defendants' exclusive control. The Defendants' had actual knowledge of their acts of concealment.  Under the Lanham Act, Defendants owed and owe to Plaintiffs and Class members the duty to refrain from making false designations of the origin of their products.

37.      **Estoppel**.  Under the Lanham Act, Defendants owed and owe to Plaintiffs and Class members the duty to refrain from making false designations of the origin of the coffee in their their

coffee products.  Defendants knowingly, affirmatively, and actively concealed the true character of their coffee, and that concealment continues.  Defendants know and take unfair advantage of the market for authentic Kona coffee.  Defendants are estopped from relying on any statute of limitations or advancing any laches argument in defense of this action.

## VI.   FACTUAL BACKGROUND

38.     Kona coffee is one of the rarest and most prized coffees in the world.  Kona coffee is grown in the Kona District on the Big Island of Hawaii (the "Kona District").  *See* map below.  *See also* Hawaii Administrative Rules ("HAR") §4-143-3 (defining the geographic region of Kona as the "North Kona and South Kona districts on the island of Hawaii, as designated by the State of Hawaii Tax Map").  The Kona District contains only 3,800 acres of land cultivated for Kona coffee production, which sharply limits the amount of Kona coffee that can be grown.



FIRST AMENDED COMPLAINT - 15
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

39.     Only coffee grown in the Kona District can be sold as Kona coffee.  Coffee grown outside of the Kona District, even if grown within the state of Hawaii, cannot be sold as Kona coffee.

40.     Kona coffee has been grown in the Kona District since 1828.  The Kona District's volcanic soil, elevation, rainfall, proximity to the Pacific Ocean, moderate temperatures, and sunshine all interact to create Kona coffee's distinctive characteristics.  Kona coffee's unique flavor, aroma, and mouth feel are a direct result of this growing environment.

41.     The Kona name tells consumers that they are buying coffee grown in the Kona District.  The name also tells consumers that the coffee has a distinctive flavor profile, and that the beans are of the highest quality.  Consequently, consumers have been willing to pay a premium for Kona coffee.

42.     Within the Kona District, between 600 and 1,000 farmers grow Kona coffee beans.  The typical Kona farmer cultivates no more than five acres, which is a very small farming operation.  These farms typically operate as family businesses.

43.     Kona farmers produce approximately 2.7 <u>million</u> pounds of green Kona coffee each year.  That compares to 20 <u>billion</u> pounds of green coffee produced worldwide.  In other words, authentic Kona represents approximately 0.01% of worldwide coffee production.  It is truly a premium product.

44.     But even though only **2.7** million pounds of authentic green Kona coffee is grown annually, over **20** million pounds of coffee labeled as "Kona" is sold at retail.  That is physically impossible; someone is lying about the contents of their "Kona" products.

45.     Defendants sell packaged coffee products that are presented to consumers as Kona coffee, but that actually contain cheap commodity coffee beans.  Some packages contain trace amount of Kona coffee, while other packages contain no Kona coffee at all.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

46.     The malicious actions taken by these Defendants, both individually and collectively, cause significant harm to legitimate Kona farmers.  First, the Defendants flood the market with what appears to be Kona coffee.  This tremendous supply of counterfeit Kona coffee pushes prices down sharply.  And that low pricing artificially restrains the profitability of legitimate Kona coffee farms.  Second, the Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee.  A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price.  That consumer will be unwilling to pay a premium price for Kona in the future.

47.     This pricing damage is not just theoretical; it is visible in the marketplace.  Kona coffee performs differently in the marketplace than similarly-situated specialty coffees.  For example, the specialty coffee called Jamaica Blue Mountain Coffee ("Blue Mountain") is another premium coffee with a specific geographic designation of origin.  Blue Mountain is grown in an annual volume that is comparable to Kona.  And Blue Mountain is pushed into the same distribution channels.  Yet Blue Mountain sells for between two and five times the price per pound of Kona.

48.     The impact of lower Kona pricing on the Plaintiffs and the Class is significant.  Growing Kona coffee is a very expensive proposition, largely because the topography of the Kona District makes it nearly impossible to use modern farming machinery.  Kona farms are therefore manual farming operations, with significant labor required to plant and harvest the coffee.

49.     Despite the fact that they sell a premium product, the typical Kona coffee farmer, who is forced to sell their Kona coffee at a depressed price due to the actions of the Defendants, struggle to turn a significant profit from their Kona coffee farming operation.  Sellers of premium products

**FIRST AMENDED COMPLAINT - 17**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

with worldwide reputations typically enjoy <u>above-market</u> profit margins, reflecting the desirability of the product. The fact that so many Kona farmers struggle is shocking.

50.    Kona farmers have suspected bad actors in the Kona marketplace for years. The problem has always been determining what was actually in a particular bag as that information has been concealed from the Kona farmers. Modern chemistry can now provide answers to that question.

### VII.    <u>ELEMENTAL TESTING OF COFFEE</u>

51.    Kona coffee is grown in a very specific geographic area on the Big Island of Hawaii. That geographic area has a distinctive soil composition, due largely to its proximity to volcanoes. And that geographic area has distinctive humidity and rainfall, due largely to its proximity to the Pacific Ocean.

52.    As a result of the local soil and rainfall, certain elements are present in high concentrations in Kona coffee beans. If a particular package of coffee truly contains Kona coffee beans, these elements tend to be present in high concentrations. If these elements are not present in high concentrations, then the package is unlikely to contain Kona coffee.

53.    Moreover, as a direct result of the local soil and rainfall, certain elements are **<u>not</u>** present in high concentrations in Kona coffee beans. If a particular package of coffee truly contains only Kona coffee beans, then these elements tend **<u>not</u>** to be present in high concentrations. If they <u>are</u> present in high concentrations, then the package is unlikely to contain Kona coffee.

54.    Scientists can examine the concentration of each of the elements that are found in Kona coffee beans, as well as the concentration of each of the elements that are **<u>not</u>** found in Kona coffee beans. By combining this information, scientists can determine with high confidence whether a particular package is authentic Kona coffee.

**FIRST AMENDED COMPLAINT - 18**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

55.     In practice, instead of looking at the concentration of an isolated element like barium (Ba) or nickel (Ni), scientists examine the *ratio* of the concentrations of *pairs* of elements.  The reason for this approach is simple.  If you were to roast coffee beans for ten minutes longer, you would not impact the amount of barium or nickel in the sample, but you would burn away more of the overall coffee bean.  The <u>concentration</u> of barium would therefore increase, since it is defined as the mass of barium divided by the mass of the total bean.  And the <u>concentration</u> of nickel would therefore increase, since it is defined as the mass of nickel divided by the mass of the total bean.  But the <u>ratio</u> of the concentration of barium to the concentration of nickel would be unchanged.  And since the lab does not know how long particular coffee samples were roasted by the Defendants, the scientists focus on measures that do not change with roasting.

56.     Having tested barium and nickel, scientists have determined that authentic Kona coffee has a *ratio* of the concentration of barium to the concentration of nickel, also called the ***relative concentration***, that falls within a certain range.  If an unknown sample has a relative concentration within that range, it may or may not be Kona.  But if an unknown sample has a relative concentration clearly <u>outside</u> that range, it is highly unlikely to be Kona.  (This analysis makes intuitive sense.  A veterinarian knows that dogs weigh between 1 and 325 pounds.  If that veterinarian sees an animal that weighs 100 pounds, which is clearly in the range of observed dog weights, the veterinarian would say that the animal may or may not be a dog.  But if that veterinarian sees an animal that weighs 500 pounds, which is well outside the range of previously-observed dog weights, the veterinarian would immediately note that the animal is highly unlikely to be a dog.)

57.     Determining the concentrations of particular elements and *isotopes* (which are simply variations of a particular element) is a process that requires significant scientific expertise and

expensive instrumentation.  The scientific techniques of *elemental analysis* and *isotopic analysis*[1] are widely accepted in the scientific community, and have been used in studies of various food products (including coffee). Unfortunately, these tests are very expensive.  For that reason, the growers have never before had access to this kind of evidence.

58.     It is important to recognize that Defendants (who are likely to protest any and all aspects of scientific testing) could prove their innocence without retaining a single scientist, and without conducting a single lab test.  They could simply provide evidence of where they bought legitimate Kona coffee that they have been selling at retail.  Any legitimate Kona coffee products must ultimately have been grown on a farm owned by a Plaintiff or prospective Class member.

59.     It is also important to recognize that Defendants are sophisticated participants in the premium coffee marketplace.  On information and belief, certain named defendants employ professional coffee buyers whose job function is to source coffees for their products.  In other words, much like a professional jeweler could never plausibly claim to be confused about the difference between a Rolex and a Timex, these sophisticated defendants cannot plausibly claim to be confused about the coffee they are procuring.  The Defendants and their buyers know exactly what they are buying, and what they are selling.

## VIII.   THE DEFENDANTS' PRODUCTS AND WRONGFUL ACTS

60.     Defendants use marketing and packaging that tell consumers that they are buying packages of Kona coffee, but those packages do not contain Kona coffee.

---

[1] Two different types of isotopic testing have been performed to confirm whether a defendant has falsely designated Kona as the origin of its coffee products.  The first test examined strontium isotopes, and the second test examined hydrogen and oxygen isotopes.

FIRST AMENDED COMPLAINT - 20
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

61.     For each Defendant, this complaint includes one or more examples of particular products in their product line.   The examples provided in this complaint are intended to be representative, and not necessarily exhaustive, of the deceptive products manufactured and/or sold by each defendant.   Sampling has shown that <u>nearly every product</u> labeled "Kona" in their product lines misrepresents the origin of the coffee beans contained in the package.   Given the scarcity of authentic Kona coffee (remember that Kona coffee represents only 0.01% of the worldwide supply of coffee) and the high profitability of marketing commodity coffee as if it were Kona coffee, it is no surprise that any defendant that is willing to engage in such deceptive practices would consistently practice their deception across all product lines.   An unscrupulous merchant selling counterfeit Rolex watches on a street corner tends not to mix a real Rolex into inventory every once in a while.

62.     For each example product, this complaint includes two graphs that shed light on the true contents of the package.   The graphs are based on the ratios of elemental concentrations discussed above.   The graphs included in this complaint are only a subset of the data collected on each deceptive product. For each product, additional data reinforces the results shown below.

63.     For any particular coffee sample, a scientist can calculate the <u>ratio</u> between the concentration of strontium (Sr), and the concentration of zinc (Zn).   For authentic Kona coffee, that ratio falls within a narrow range.   A scientist can similarly calculate the <u>ratio</u> between the concentration of barium (Ba), and the concentration of nickel (Ni).   For authentic Kona coffee, that ratio also falls within a narrow range.   Those two ratios can be plotted on a scatter plot, creating a visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee.   The blue dots in each scatter plot below show the observed ratios from <u>over one hundred</u> samples of authentic Kona coffee.   The red diamonds show the observed ratios from the coffee products sold by Defendants.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendants' designation of the origin of its coffee products as Kona is false.

64.     For any coffee sample, a scientist can also calculate the ratio between the concentration of cobalt (Co), and the concentration of zinc (Zn).  For authentic Kona, that ratio falls within a narrow range.  And a scientist can calculate the ratio between the concentration of manganese (Mn), and the concentration of nickel (Ni).  For authentic Kona, that ratio also falls within a narrow range.  As with the earlier ratios, those two ratios can be plotted on a scatter plot, creating another visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee.  The blue dots in each scatter plot below show the observed ratios from over one hundred samples of authentic Kona coffee.  The red diamonds show the observed ratios from the coffee products sold by Defendants.  Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendants' designation of Kona as the origin of its coffee products is false.

65. *PACIFIC COFFEE ("MAUI COFFEE COMPANY" OR "MCC")*.  The Maui Coffee Company packages are unequivocal.  The packages prominently say either "100% Kona Coffee" or "100% Kona Macadamia Nut" in large block print on the front panel.  Seeing that packaging on a shelf or online, a consumer would conclude that the package contains no coffee beans other than Kona coffee beans.

66. MCC falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of 100% KONA on the front of the packaging.  MCC furthers this deception through its product descriptions published on its online store.  MCC deceptively describes its "100% Kona Coffee" product as follows:

> Without a doubt, one of the world's most sought-after beans by coffee connoisseurs!
> Taste the full rich flavor of 100% Kona Coffee and experience the magic of the Kona

FIRST AMENDED COMPLAINT - 22
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Coast for yourself. Our 100% Pure Kona Coffee has a medium to full body with mild acidity and will be delivered fresh to your doorstep. Take a trip to the Kona Coast when you experience the full rich flavor of our 100% Pure Kona Coffee.

MCC describes its "100% Kona Macadamia Nut" product as "Kona goodness with a touch of island-grown macadamia nuts. It doesn't get any more Hawaiian than that." MCC also deceptively advertises its coffee products as "100% Kona" on its Internet advertising. The deceptive product descriptions are designed to mislead consumers into believing that MCC's products contain coffee from Hawaii, and more specifically the Kona region of Hawaii. The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that MCC coffee products contain nothing but premium Kona coffee beans in order to justify the high price MCC charges for what are actually ordinary commodity coffee beans. Below are representative images of MCC's deceptive "Kona" coffee products.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100





**Figure MCC-1**             **Figure  MCC-2**

67. But while consumers would reasonably believe that the packages in Figures MCC-1 and MCC-2 are pure Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, MCC's designation of Kona as the origin of the coffee in these products is false.

**FIRST AMENDED COMPLAINT - 24**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure MCC-A.**

68. The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion for the MCC products that were tested. These accused MCC products (marked by red diamonds) are well outside the range of authentic Kona. In other words, MCC's designation of Kona as the origin of the coffee in these products is false.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure MCC-B**

69. *MULVADI CORPORATION*. The front of the Mulvadi package says "100% Kona Coffee" in two distinct places.  The main product banner is "Pure 100% Kona Coffee."  And there is a misleading "Official Seal" that says "100% Kona Coffee."  The purpose of the language that Mulvadi features on the face of its packaging is to mislead consumers into believing that Mulvadi coffee products come from the Kona District.

70. Mulvadi deceptively places a gold sticker on its packaging, which it presents as the "Official Seal" of the "Independent Kona Coffee Growers Association," proclaiming that the product is "100% Kona Coffee" from the "Big Island of Hawaii."  On information and belief, there is no such association that is recognized for certifying Kona coffee products as 100% authentic.  Instead, the "seal" is a marketing ploy intended to deceive consumers as to the source of origin of the coffee sold by Mulvadi.  The deceptive marketing, product names, and package designs are all intended to trade

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into

believing that Mulvadi coffee products contain premium Kona coffee beans, justifying the high price

Mulvadi charges for what is actually ordinary commodity coffee.  Below are representative images of

Mulvadi's deceptive "Kona" coffee products, including an image of the "seal."

 

**Figure MUL-1**                              **Figure MUL-2**

71. The Mulvadi package is <u>unequivocal</u> as to its contents; it says "100% Kona Coffee"

twice on its front face.  Seeing that packaging on a shelf or online, any consumer would conclude that

the package contains only Kona coffee beans.  But the lab tests tell a different story. On the below

scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products

(marked by red diamonds) are well outside the range of authentic Kona.  These packages are clearly

not Kona.  In other words, Mulvadi's designation of Kona as the origin of the coffee is false.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1



**Figure MUL-A**

The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Mulvadi's designation of Kona as the origin of the coffee in these products is false.

**FIRST AMENDED COMPLAINT - 28**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure MUL-B**

72.     *HAWAIIAN ISLES KONA COFFEE LTD., LLC.* Hawaiian Isles falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Hawaiian Isles advertises its coffee products nationally on the Internet and with digital marketing campaigns through social media sites such as Facebook.  With its marketing campaigns, Hawaiian Isles uses deceptive taglines and slogans such as "Taste the Kona Difference," "Bring Hawaii Home," "Give the Gift of Aloha," "Drink Kona Coffee and Relax," and "I Want My Toes in the Sand and Kona Coffee in My Hand," among others.  The deceptive slogans are designed to mislead consumers into believing that Hawaiian Isles coffee products primarily contain coffee from Hawaii, and more specifically the Kona District of Hawaii.  In addition, Hawaiian Isles uses deceptive names for its products intended to mislead consumers into believing that the coffee products contain a significant amount of Kona coffee.  The deceptive product names include "Kona Classic," "Kona Sunrise," "Kona Hazelnut," and "Kona Vanilla Macadamia Nut."  Hawaiian Isles also designs

its product packaging with imagery, text, and advertising slogans intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona District.  The deceptive marketing slogans, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Hawaiian Isles coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Hawaiian Isles charges for ordinary commodity coffee.

73.     Below are several examples of the deceptive "Kona" products sold by Hawaiian Isles.

     

**Figure HI-1**                          **Figure HI-2**

The packages themselves state "Made in Hawaii" on a banner on the front, above a map of Hawaii and a photograph of palm trees at sunset.  The marketing copy on the side of the package states that the contents were "freshly roasted and packaged in Hawaii."  The package also states that "Kona Coffee is grown on the Big Island's Kona Coast."  Given Hawaiian Isles' unequivocal designation of

"Kona" as the origin of the coffee in its products, consumers buying these products would reasonably believe that Kona, and only Kona, was the origin of the coffee contained therein.

74. But while consumers would reasonably believe that the packages in Figures HI-1 and HI-2 contain coffee that originates exclusively from Kona, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, the science indicates that the coffee contained in the Hawaiian Isles packages is highly unlikely to originate from Kona.



**Figure HI-A**

The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. Again, the science indicates that the coffee contained in the Hawaiian Isles packages

**FIRST AMENDED COMPLAINT - 31**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

is highly unlikely to originate from Kona.  In other words, Hawaiian Isles' designation of Kona as the origin of the coffee in these products is false.



**Figure HI-B**

75.    In fact, these bags appear to contain very little Kona coffee, if any.  As a simple indicator, note that authentic Kona has an average of less than forty times (40x) as much manganese as nickel.  In contrast, some Hawaiian Isles samples have one hundred twenty times (120x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there must be very little Kona in this package.  In other words, Hawaiian Isles' designation of Kona as the origin of the coffee in these products is false.

76.    Even a consumer understanding this package to be a blend of Kona and other coffees (which is a conclusion that very few consumers would draw based on this particular packaging) would

expect the package to contain a meaningful percentage of Kona beans.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

77.     *GOLD COFFEE ROASTERS, INC.* Hawaiian Gold falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  Hawaiian Gold boasts on its packaging and on its website, www.goldcoffee.com, that the "Kona" coffee contained in its coffee products is cultivated on a 900-acre plantation in the Kona District, which Hawaiian Gold commonly refers to as the Parry Estates.  With its marketing, Hawaiian Gold uses deceptive taglines and slogans such as "Grown in paradise. Enjoyed worldwide," "The Hawaiian Difference," "From our land to your hand" (superimposed over a photograph of a tropical island), and "Striking flavor. Exotic character" (superimposed over an image of lava flow).  The deceptive slogans and imagery are designed to mislead consumers into believing that Hawaiian Gold coffee products contain coffee from Hawaii, and more specifically the Kona District of Hawaii.  The deceptive product packaging prominently features the word "Kona" in large font and includes pictures of volcanic mountains, Bird of Paradise flowers, and other imagery indicative of Hawaii.  The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Hawaiian Gold coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Hawaiian Gold charges for what is actually ordinary commodity coffee.

78.     Below are representative images of Hawaiian Gold's deceptive "Kona" coffee products.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12

   

13

**Figure HG-1**                                    **Figure HG-2**

14      79.    But while consumers would reasonably believe that the coffee in package HG-1

15    predominantly consisted of Kona beans, and the coffee in HG-2 contained nothing but 100% Kona,

16    the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the

17    barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range

18    of authentic Kona.  In other words, Hawaiian Gold's designation of Kona as the origin of the coffee

19    in these products is false.

20

21

22

23

24

25

26

27

**FIRST AMENDED COMPLAINT - 34**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



**Figure HG-A**

80.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Hawaiian Gold's designation of Kona as the origin of the coffee in these products is false.

FIRST AMENDED COMPLAINT - 35
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure HG-B**

81.     In fact, the tested Hawaiian Gold products contain very little Kona coffee, if any.  As an indicator, note that authentic Kona has an average of less than forty times (40x) as much manganese as nickel.  In contrast, tests show that one of the Hawaiian Gold samples has roughly one hundred forty times (140x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

82.     Even a consumer understanding the coffee in the package shown in HG-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans. Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

83.     *COST PLUS/WORLD MARKET*.  World Market sells both its own private-label coffee products and coffee products offered by third parties, including coffee products falsely identified as

**FIRST AMENDED COMPLAINT - 36**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Kona coffee. World Market falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging. For example, World Market sells its own private-label coffee product labeled "Hawaiian Kona Blend" in packaging intended to mislead the consumer into believing the that the product contains a significant amount of Kona coffee beans, when the product actually contains little to no Kona coffee. The deceptive packaging features hibiscus flowers and the prominent placement of geographic terms "Hawaiian" and "Kona" in the center of the package label. The deceptive product names and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that World Market coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price World Market charges for what is actually ordinary commodity coffee.

84.   Below is a sample image of the deceptive packaging used by World Market for its private-label "Kona" coffee product.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure WM-1**

14
15
16
17
18

85.    In addition, World Market sells a variety of deceptive coffee products from Hawaiian Isles, such as those shown above in paragraph 73, all of which mislead the consumer into believing that the products contain a significant amount of Kona coffee beans when they actually contain little or no Kona.

19
20
21
22
23
24

86.    While consumers would reasonably believe that the coffee in package WM-1 predominantly consisted of Kona beans, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, World Market's designation of Kona as the origin of the coffee in these products is false.

25
26
27

**FIRST AMENDED COMPLAINT - 38**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure WM-A**

87.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, World Market's designation of Kona as the origin of the coffee in these products is false.

**FIRST AMENDED COMPLAINT - 39**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1



**Figure WM-B**

91.     In fact, these bags contain very little Kona coffee, if any.  As an indicator of how little Kona coffee is actually in the package, note that authentic Kona has an average of no more than forty times (40x) as much manganese as nickel.  In contrast, World Market samples range as high as one hundred forty times (140x) as much manganese as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

92.     Even a consumer understanding the coffee in the package shown in WM-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

93.     *BOYER'S.*  Boyer's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  For example, Boyer's sells at least two different "Kona" coffee products.  One is labeled "Café Kona" and the other is labeled "Kona Blend."  The Boyer's packaging is intended to mislead the consumer into believing the that the product contains a significant amount of Kona coffee beans, when the product actually contains little to no Kona coffee.  The deceptive product names are intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Boyer's coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Boyer's charges for what is actually ordinary commodity coffee.  By using the term "Kona" to describe its products, Boyer's is falsely designating the geographic origin of the product, creating confusion around the geographic origin, and damaging the geographic designation itself.  Boyer's use of the term "Kona" in the context of extolling the virtues of Colorado roasting undermines the meaning of the term, damaging its value to the farmers of authentic Kona in the Kona District.

94.     Below are representative images of Boyer's deceptive "Kona" coffee products.

**FIRST AMENDED COMPLAINT - 41**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13
14

 

15 **Figure BC-1**                        **Figure BC-2[2]**

16

17

18 95.     While the packages say Kona, the lab tests tell a different story.  On the below scatter

19 plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products

20 (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Boyer's

21 designation of Kona as the origin of the coffee in these products is false.

22
23
24
25
26
27

_____

[2] Boyer's uses several variations of its packaging, but the differences are immaterial.  Plaintiffs have archive photographs of each package actually tested.





**Figure BC-A**

96.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Boyer's designation of Kona as the origin of the coffee in these products is false.

**FIRST AMENDED COMPLAINT - 43**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure BC-B**

14

15    97.    In fact, these bags contain very little Kona coffee, if any.  As an indicator of how little

16    Kona coffee is actually in the package, note that authentic Kona has an average of no more than forty

17    times (40x) as much manganese as nickel.  In contrast, Boyer's samples range as high as one hundred

18    ten times (110x) as much manganese as nickel.  This evidence, and similar evidence from many other

19    ratios, leads to the conclusion that there is very little Kona in this bag.

20

21    98.    Even a consumer understanding the coffee in the packages shown in BC-1 and BC-2

22    to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on

23    this particular packaging) would expect the package to contain a meaningful percentage of Kona

24    beans.  Given the deviation in the concentration ratios, though, it is implausible that this package meets

25    those consumer expectations.

26
27

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

99.     *L&K COFFEE CO. LLC (MAGNUM EXOTICS).*   L&K falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  With its marketing and packaging, L&K uses deceptive taglines and slogans such as "Certified," "Kona High Mountain Coffee" and "100% High MT. Arabica Coffee."  On its online store, L&K describes its "Kona" coffee product as "Grown high in the mountains of Hawaii, this blended coffee has the perfect balance of light taste, full body and moderate acidity."  The deceptive marketing is designed to mislead consumers into believing that L&K's Magnum Exotics "Kona" products contain coffee from the Kona District, when the coffee products actually do not contain a significant amount of Kona coffee, if any.  L&K also designs its Magnum Exotics product packaging with imagery and text intended to mislead the consumer into believing that the coffee product contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the Kona region.  The deceptive imagery utilized by L&K includes illustrations of beaches, humming birds, hibiscus flowers, toucan birds, and tropical islands.  The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that L&K's Magnum Exotics coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price L&K charges for what is actually ordinary commodity coffee.

100.     Below is a representative image of L&K's deceptive "Kona" coffee products.

**FIRST AMENDED COMPLAINT - 45**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12



13

**Figure ME-1**

14

15    101.    While consumers would reasonably believe that the coffee contained in the package

16  shown in Figure ME-1 originated from Kona, the lab tests tell a different story. On the below scatter

17  plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products

18  (marked by red diamonds) are well outside the range of authentic Kona.  In other words, L&K's

19  designation of Kona as the origin of the coffee in these products is false.

20
21
22
23
24
25
26
27

**FIRST AMENDED COMPLAINT - 46**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure ME-A**

102.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, L&K's designation of Kona as the origin of the coffee in these products is false.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure ME-B**

14    103.    In fact, these bags contain very little Kona coffee, if any.  As an indicator, note that

15  authentic Kona has an average of less than forty times (40x) as much manganese as nickel.  In contrast,

16  Magnum Exotics samples range as high as one hundred forty-five times (145x) as much manganese

17  as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that

18  there is very little Kona in L&K's Magnum Exotics coffee products.

19

20    104.    Even a consumer understanding the coffee in the package shown in ME-1 to be a blend

21  of Kona and other coffees (a conclusion that very few consumers would draw based on this particular

22  packaging) would expect the package to contain a meaningful percentage of Kona beans.  Given the

23  deviation in the concentration ratios, though, it is implausible that this package meets those consumer

24  expectations.

25

26    105.    *COPPER MOON COFFEE.*  Copper Moon falsely designates the geographic origin of

27  its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.  In

**FIRST AMENDED COMPLAINT - 48**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

addition, Copper Moon uses deceptive names for its products intended to mislead consumers into believing that the coffee products contain a significant amount of Kona coffee. The deceptive product names include "Kona 100% Arabica Premium Blend," and "Kona Premium Blend."  On its website, Copper Moon identifies the sources of the beans used in their coffee products, which include Nicaragua, Rwanda, Peru, and Ethiopia.  Noticeably absent is any description for the source of the Kona coffee that they purportedly use in their Kona coffee products.  Copper Moon also designs its product packaging with imagery and text intended to mislead the consumer into believing that the product labeled "Kona" contains coffee beans predominantly, if not exclusively, grown in the Kona District.  For example, Copper Moon's "Kona" products prominently feature a postage stamp of the iconic plumeria flower, used in Hawaiian lei, to mislead consumers into believing that the origin of the coffee product is Kona, Hawaii.  The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Copper Moon coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Copper Moon charges for ordinary commodity coffee beans.

106.    Below are representative images of Copper Moon's deceptive "Kona" coffee products.

FIRST AMENDED COMPLAINT - 49
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13



**Figure CM-1**

14    107.    Copper Moon follows the term "Kona" with the percentage "100%," which alone

15  reinforces the impression that the coffee is unadulterated Kona.  The misleading placement of "100%"

16  near the term "Kona" is a deceptive practice employed by Copper Moon and other defendants to

17  mislead consumers into believing that the product contains 100% Kona coffee.

18    108.    Copper Moon also labels its product as "100% Arabica," which is a deception that is

19
20  common across many defendants.  Like over 75% of the world's coffee production, Kona is a kind of

21  Arabica coffee bean.  The term "Kona" followed by the phrase "100% Arabica" is therefore consistent

22  with the bag containing pure Kona coffee.  And it is not consistent with the bag containing non-Kona

23
24  Arabica coffees.  Imagine, for example, that the package had said "Kona — 100% Coffee."  That

25  marketing line would be just as true for real Kona, and just as meaningless, as the "100% Arabica"

26  line.  And that language would never be interpreted as allowing the substitution of commodity coffee,

27  since it "discloses" that it contains 100% coffee.  Similarly, labeling a product with the phrase

**FIRST AMENDED COMPLAINT - 50**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

"100% Arabica" does not allow a defendant to substitute cheaper Arabica beans for Kona beans, while misleading consumers to believe that the product contains 100% Kona coffee.

109.   But while consumers would reasonably believe that the package in Figures CM-1 contains 100% Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Copper Moon's designation of Kona as the origin of the coffee in its products is false.



**Figure CM-A**

110.   The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Copper Moon's designation of Kona as the origin of the coffee in its products is false.

**FIRST AMENDED COMPLAINT - 51**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure CM-B**

111.    In fact, these bags contain very little Kona coffee, if any.  As an indicator, note that authentic Kona has an average of less than eight times (8x) as much barium as nickel.  In contrast, a Cooper Moon sample has over thirty times (30x) as much barium as nickel.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

112.    Even a consumer understanding the coffee in the package shown in CB-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.  Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

113.    *CAMERON'S*.  Cameron's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on its packaging.  Cameron's also describes its

**FIRST AMENDED COMPLAINT - 52**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

"Kona" coffee products as "premium," when the coffee beans in the product are not "premium" beans from Kona but are instead merely commodity coffee beans from other regions of the world. To further deceive consumers as to the origin of the coffee beans in their "Kona" coffee products, Cameron's packaging features a tropical flower to further the association between Hawaii and the Cameron's product in the mind of the consumer. Cameron's false designation of Kona as the origin of the coffee is intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Cameron's coffee products contain premium Kona coffee beans in order to justify the high price Cameron's charges for ordinary commodity coffee beans.

114. Below are representative images of the deceptive packaging used by Cameron's for its "Kona" coffee products.

     

**Figure CC-1**          **Figure CC-2**

115. But while consumers could reasonably believe that the packages in Figures CC-1 and CC-2 contain nothing but Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by

**FIRST AMENDED COMPLAINT - 53**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  red diamonds) are well outside the range of authentic Kona.  In other words, Cameron's designation

2  of Kona as the origin of the coffee in its products is false.



**Figure CC-A**

116.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel

ratio reinforces the same conclusion.  These accused products (marked by red diamonds) are well

outside the range of authentic Kona.  In other words, Cameron's designation of Kona as the origin of

the coffee in its products is false.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1
2
3
4
5
6
7
8
9
10
11
12
13
14



**Figure CC-B**

15   117.   Even a consumer understanding the coffee in the package shown in CC-1 to be a blend

16   of Kona and other coffees (a conclusion that very few consumers would draw based on this particular

17   packaging) would expect the package to contain a meaningful percentage of Kona beans.  Given the

18   deviation in the concentration ratios, though, it is implausible that this package meets those consumer

19   expectations.

20

21   118.   *THE KROGER CO*.  With its private-label "Kivu," Kroger falsely designates the

22   geographic origin of its "Kona" coffee products with the prominent placement of KONA on the label

23   of both its pre-packaged products and its self-serve dispensers.  In addition, Kroger sells coffee

24   products from Hawaiian Gold, which also falsely designates Kona as the geographic origin.  Kroger

25   designs its product packaging with imagery intended to mislead the consumer into believing that the

26   coffee product contains coffee beans grown in the Kona District.  The deceptive packaging

27

**FIRST AMENDED COMPLAINT - 55**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

prominently features the word KONA with images of hibiscus flowers and tropical islands.  The self-serve dispensary for the Kivu coffee describes the product as "premium coffee … grown on the steep slopes of the Kona region of Hawaii."  These statements are intended to mislead consumers into believing that the Kona coffee sold under the Kivu label is cultivated in the Kona region, when in fact the product is mostly commodity coffee beans grown in other parts of the world.  The deceptive package design featuring the false designation of Kona as the origin of the coffee is intended to trade off the reputation and goodwill of the Kona name.  They deliberately mislead the consumer into believing that Kroger's coffee products contain nothing but premium Kona coffee beans in order to justify the high price Kroger charges for ordinary commodity coffee beans.

119.    Below is a sample image of the deceptive packaging used by Kroger for its private-label "Kona" coffee product at its self-serve dispensers found in its retail stores.



**Figure Kroger-1**

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

120.    But while consumers could reasonably believe that the package in Figure Kroger-1 contains nothing but Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Kroger's designation of Kona as the origin of the coffee in its Kivu products is false.



**Figure Kroger-A**

121.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion.  These accused Kroger Kivu products (marked by red diamonds) are well outside the range of authentic Kona.  In other words, Kroger's designation of Kona as the origin of the coffee in its Kivu products is false.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100



**Figure Kroger-B**

122.    In fact, these bags contain very little Kona coffee, if any.  As an indicator, note that authentic Kona has less strontium than zinc.  (See Figure Kroger-A.)  In contrast, Kivu samples have between four times (4x) and six times (6x) as much strontium as zinc.  This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

123.    Even a consumer understanding the coffee in the package shown in Kroger-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans. Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

124.    *AMAZON.COM*.  Through its online store at www.amazon.com, Amazon sells a variety of deceptive coffee products, including but not limited to the following:  MCC, Hawaiian Isles, Hawaii

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Gold, Mulvadi, Cameron's, Copper Moon, Hazz, and Magnum Exotics.  Each of these brands offers products through Amazon that falsely designate KONA as the origin of the coffee beans.  And Amazon wrongfully profits on each sale.

125.    *WALMART*.  Walmart sells a variety of deceptive coffee products, including but not limited to the following: MCC, Copper Moon, Cameron's, Hawaiian Gold, Boyer's, Hawaiian Isles, and Mulvadi.  Walmart wrongfully profits on each sale.

126.    *COSTCO*.  Costco sells a variety of deceptive coffee products, including but not limited to Magnum Exotics. Costco wrongfully profits on each sale.

127.    *BED BATH & BEYOND*.  Bed Bath sells a variety of deceptive coffee products, including but not limited to Copper Moon.  Bed Bath wrongfully profits on each sale.

128.    *ALBERTSONS & SAFEWAY*.  Albertsons and Safeway generally offer for sale the same coffee products featuring Kona on the label.  They both sell a variety of deceptive coffee products, including but not limited to Hawaiian Isles.  Safeway also sells deceptive coffee products from Cameron's.  Albertsons and Safeway wrongfully profit on each sale.

129.    *MNS LTD. ("ABC")*.  ABC sells a variety of deceptive coffee products, including but not limited to the following: Mulvadi, MCC and Hawaiian Isles.  ABC wrongfully profits on each sale.

130.    *TJX*.  Through its retail stores branded T.J. Maxx, TJX sells a variety of deceptive coffee products, including but not limited to the following: Hawaiian Gold, Magnum Exotics, and Kona Roasting Co.  TJX wrongfully profits on each sale.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

131.   *MARSHALLS OF MA.*  Through its retail stores branded Marshalls, Marshalls of MA sells a variety of deceptive coffee products, including but not limited to the following: Hawaiian Gold, Magnum Exotics, and Kona Roasting Co.  Marshalls of MA wrongfully profits on each sale.

132.   *SPROUTS.*  Sprouts sells a variety of deceptive coffee products, including but not limited to Cameron's.  Sprouts wrongfully profits on each sale.

**CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, AND**
**UNFAIR COMPETITION UNDER LANHAM ACT §43(a)**
**(15 U.S.C. §1125(a))**

133.   Plaintiffs hereby incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

134.   Section 43(a) of the Lanham Act provides in pertinent part: "Any person, who, on or in connection with any goods or services, or any container of goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. §1125(a)(1)(A)&(B).

135.   Plaintiffs and the Class, comprised entirely of farmers of authentic Kona coffee, have a reasonable and genuine interest to be protected against the Defendants' false designation of origin and sale of coffee products fraudulently labeled as Kona.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

136.    In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1), Defendants have used, continue to use and/or profit from the use of the Kona name as a false designation of origin.

137.    In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A), Defendants' false designation of origin for the coffee products they manufacture, distribute and/or sell in commerce is likely to cause consumer confusion and mistaken purchases, and is likely to deceive consumers as to the origin of the coffee products manufactured, distributed and/or sold by Defendants.

138.    In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B), Defendants have used in commerce descriptions that falsely and/or misleadingly designate Kona as the origin of the coffee products, when most of the coffee beans contained in the coffee products were sourced from other regions of the world.

139.    By marketing and selling coffee products that falsely designate Kona as the origin of coffee beans that are of inferior quality, Defendants are damaging the reputation and goodwill of the Kona name, as well as the market value of authentic Kona coffee, to the detriment of Plaintiffs and the Class.

140.    Plaintiffs and the Class are comprised of farmers of authentic Kona coffee who have been and continue to be damaged by Defendants' violations of the Lanham Act, and are therefore entitled to equitable relief, including a permanent injunction, and damages in an amount to be proven at trial.  As a component of damages to be awarded, Plaintiffs and the Class request a substantial award to finance a national corrective advertising campaign to help remedy the harm that Defendants have caused to the goodwill and reputation of the Kona name.

141.    Because Defendants are sophisticated participants in the coffee industry, with designated coffee buyers and designated coffee product managers, they have full knowledge of exactly

**FIRST AMENDED COMPLAINT - 61**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

what they are buying and what they are selling.  Given the egregious nature of the Defendants' false designation of Kona as the source of their commodity coffee beans, Plaintiffs and the Class seek an award of three times actual damages.

142.     Pursuant to 15 U.S.C. §1117(a), Plaintiffs and the Class are entitled to recover Defendants' profits earned through the sale of various coffee products that falsely designate Kona as the origin of the coffee beans.

143.     As a direct and proximate result of their wrongful conduct as alleged above, Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiffs and the Class, and to their business, reputation, and goodwill, for which there is no adequate remedy at law.  As such, Plaintiffs and the Class are entitled to an injunction under 15 U.S.C. §1116 permanently restraining Defendants, both individually and collectively, from using the name "Kona" in their labels, packaging, promotions, marketing, or advertising of any Kona product that they roast, manufacture, package, or label.

144.     Pursuant to 15 U.S.C.§ 1117, Plaintiffs and the Class seek to recover the cost of this action, and, because this case qualifies as exceptional, their reasonable attorneys' fees.

145.     Plaintiffs and the Class seek to hold Defendants jointly and severally liable for the lost profits of Plaintiffs and the Class and for corrective advertising necessary to restore the reputation and goodwill of the Kona name.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants and other relief as follows:

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

146.   Defendants and its agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting for, with, by and through, or under authority from the Defendants, and each of them, be permanently enjoined from using the term "Kona" in describing, labeling, or packaging Defendants' own coffee products, or advertising, promoting, marketing or selling the same.

147.   Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by falsely designating their coffee products as originating from Kona, when in fact such goods contain no significant amount of Kona coffee beans, if any.

148.   Pursuant to 15 U.S.C. §1117, that Defendants be held jointly and severally liable for all damages suffered by Plaintiffs and the Class resulting from the acts alleged herein.

149.   That as a result of Defendants' deliberate, willful, and intentional conduct in violation of 15 U.S.C. § 1125(a), such damages be trebled.

150.   Pursuant to 15 U.S.C. §1117, that Defendants be compelled to account for, and to disgorge, any and all of the profits derived by Defendants through illegal acts complained of herein.

151.   For an award of funds sufficient to carry out a national corrective advertising campaign to mitigate the reputational harm Defendants' wrongful conduct has caused, for which the Defendants shall be held jointly and severally liable.

152.   That Defendants be ordered, pursuant to 15 U.S.C. §1118, to deliver up for destruction all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material, and products, or the like in possession, custody or under the control of Defendants that are determined to violate Section 43 of the Lanham Act.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

153.    That the Court declare this to be an exceptional case and award full costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

154.    That the Court grant prejudgment and post-judgment interest.

155.    That the Court grant any other remedy to which Plaintiffs and the Class may be entitled as provided by law or equity.

156.    For such other and further relief, including costs and attorneys' fees, as allowed by law and as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

DATED this 21st day of May 2019.

KARR TUTTLE CAMPBELL
*Attorneys for the Plaintiffs*

s/ Nathan T. Paine
Nathan T. Paine, WSBA #34487
Mark A. Bailey, WSBA #26337
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: 206-223-1313
Facsimile: 206-682-7100
Email:  npaine@karrtuttle.com
           mbailey@karrtuttle.com

s/ Paul Richard Brown
Paul Richard Brown, WSBA #19357
Daniel T. Hagen, WSBA #54015
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: 206-223-1313
Facsimile: 206-682-7100
Email: pbrown@karrtuttle.com
           dhagen@karrtuttle.com

FIRST AMENDED COMPLAINT - 64
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

**CERTIFICATE OF SERVICE**

2
I, Kay M. Sagawinia, affirm and state that I am employed by Karr Tuttle Campbell in

3
King County, in the State of Washington.  I am over the age of 18 and not a party to the within

4
action. My business address is: 701 Fifth Ave., Suite 3300, Seattle, WA  98101. On this day, I

5
caused to be filed with the Court a true and correct copy of the foregoing FIRST AMENDED

6
COMPLAINT via the Court's electronic filing system, which caused service of the document

7
to all parties registered to receive notifications through CM/ECF.

8
AND VIA ELECTRONIC MAIL TO:

9
Trenton H. Norris, (CA Bar #164781)
Arnold & Porter Kaye Scholer LLP

10
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024

11
Phone: 415-471-3303
Fax: 415-471-3400

12
Email: trent.norris@arnoldporter.com

13
*Attorneys for Bed Bath & Beyond Inc., Copper Moon Coffee, LLC*

14

15
I declare under penalty of perjury under the laws of the State of Washington that the

16
foregoing is true and correct, to the best of my knowledge.

17
Dated this 21st day of May 2019, at Seattle, Washington.

18

19
*/s/ Kay M. Sagawinia*

20
Kay M. Sagawinia
Legal Assistant

21

22

23

24

25

26

27

**FIRST AMENDED COMPLAINT - 65**
#1241718 v3 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100