The Honorable Robert S. Lasnik

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9   BRUCE CORKER d/b/a RANCHO ALOHA,
    *et. al.* on behalf of themselves and others
10  similarly situated,

11              Plaintiffs,

12        v.

13  COSTCO WHOLESALE CORPORATION, a
    Washington corporation, *et al.*

14              Defendants.

15

CASE NO. 2:19-cv-00290-RSL

**PLAINTIFFS' CONSOLIDATED
OPPOSITION TO DEFENDANTS'
THREE MOTIONS TO DISMISS**

*Noted for Consideration:*

**June 28, 2019**

16

17

18

19

20

21

22

23

24

25

26

**12(b)(6) Opp.**
Case No. 2:19-cv-00290-RSL

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   AT-ISSUE CLAIMS ......................................................................................... 2

III.  RELEVANT FACTS ........................................................................................ 3

IV.  STANDARD OF REVIEW ............................................................................ 4

V.   ARGUMENT ..................................................................................................... 4

    A.    Plaintiffs state a claim for false designation of origin. ........................... 5

          1.    Defendants' arguments are contravened by the plain text of the Act. ....... 6

               a.    The plain text of the Lanham Act provides for false designation of origin claims under Section 43(a)(1)(A). ............... 6

               b.    A claim for false designation of origin does not require a trademark. .................................................................................... 8

               c.    A claim for false designation of origin does not require a statement. ................................................................................... 10

    B.    Plaintiffs state a claim for false advertising. ......................................... 10

          1.    The Retailer Defendants are not immune from Lanham Act false advertising claims ..................................................................... 12

               a.    Two of the "Retailers" are also "Suppliers." .............................. 12

               b.    The text of the Act, courts within this circuit, and the leading treatise all reject Retailers' claimed immunity from suit. ..................................................................................... 13

               c.    The only case to support Retailers' position is an outlier from the Northern District of Texas. ............................................ 14

          2.    References to Colorado do not shield BCC from liability. ...................... 15

    C.    Plaintiffs have pled their claims with sufficient specificity. ................... 17

          1.    Plaintiffs describe their allegations in significant detail. ........................ 18

          2.    Plaintiffs are not required to detail facts known only to other parties. ................................................................................................ 21

    D.    The Communications Decency Act does not bar claims against online retailers. .................................................................................................. 21

          1.    The CDA permits all Lanham Act claims expressly. .............................. 21

          2.    Even if the CDA did not exempt all claims under the Lanham Act, Plaintiffs' claims would be permissible. .................................................. 23

    E.    Plaintiffs may plead in the alternative ..................................................... 23

VI.  CONCLUSION .............................................................................................. 24

**12(b)(6) Opp.**
No. 2:19-cv-290

- i -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1

2

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

3

**Cases**

4

*4 Peaks Tech. LLC v. Green*,
  No. CV-13-1493, 2014 WL 12643161 (D. Ariz. Nov. 6, 2014) .................................................. 9

5

*5-Hour Energy Mktg. & Sales Practices Litig.*,
  No. MDL 13-2438, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................... 19

6

*ADT LLC v. NorthStar Alarm Servs. LLC*,
  No. 9:18-80283-CV, 2018 WL 6504398 (S.D. Fla. Sept. 19, 2018) ........................................ 19

7

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  No. CV1403053, 2015 WL 12778048 (C.D. Cal. Oct. 23, 2015) ............................................ 20

8

9

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) ...................................................................................................... 4

10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 4

11

12

*Associated Bank-Corp. v. Earthlink, Inc.*,
  No. 05-C-0233-S, 2005 WL 2240952 (W.D. Wis. Sept. 13, 2005).......................................... 22

13

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  No. C 10-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ................................................ 19

14

*Baden Sports v. Kabushiki Kaisha Molten & Molten U.S.A., Inc.*,
  No. C06-210P, 2007 WL 703394 (W.D. Wash. Mar. 2, 2007) .................................................. 9

15

16

*Belen Jesuit Preparatory Sch., Inc. v. Sportswear, Inc.*,
  No. 1:15-CV-22194-UU, 2016 WL 4718162 (S.D. Fla. May 3, 2016) .................................... 10

17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 4

18

19

*Belmora LLC v. Bayer Consumer Care AG*,
  819 F.3d 697 (4th Cir. 2016)................................................................................................. 9, 23

20

*Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*,
  633 F.2d 746 (8th Cir. 1980)........................................................................................ 4, 7, 9, 16

21

*Broomfield v. Craft Brew All., Inc.*,
  No. 17-CV-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017).................................... 17

22

23

*Caché, Inc. v. M.Z. Berger & Co.*,
  99-cv-12320, 2001 WL 38283 (S.D.N.Y. Jan. 16, 2001) ........................................................ 13

24

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
  No. C10-861RSM, 2012 WL 5360972 (W.D. Wash. Oct. 31, 2012)........................................ 9

25

26

**OPPOSITION TO MOTION TO DISMISS**
No. 2:19-cv-290

- ii -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1
2

**TABLE OF AUTHORITIES (cont'd)**

<u>Page(s)</u>

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*Chan v. AT&T Mobility LLC*,
No. C11-1766, 2012 WL 13019050 (W.D. Wash. July 18, 2012) ........................................... 24

*Classic Media, Inc. v. Mewborn*,
532 F.3d 978 (9th Cir. 2008) ............................................................................................ 3, 23

*Coastal Abstract Serv. Inc. v. Firm Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ................................................................................................ 12

*Contessa Food Prods., Inc. v. Lockpur Fish Processing Co., Ltd.*,
No. CV98-8218, 2003 WL 25778704 (C.D. Cal. Jan. 29, 2003) ............................................ 24

*Corbis Corp. v. Amazon.com, Inc.*,
351 F. Supp. 2d 1090 (W.D. Wash. 2004) ............................................................................ 22

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) .......................................................................................................... 7, 8

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ................................................................................................ 18

*Dumas v. Diageo PLC*,
2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) .......................................................................... 17

*Enigma Software Grp. USA LLC v. Malwarebytes Inc.*,
No. 5:17-CV-02915-EJD, 2017 WL 5153698 (N.D. Cal. Nov. 7, 2017) .................................. 22

*Fischer v. Forrest*,
No. 14CIV1304PAEAJP, 2017 WL 2992663 (S.D.N.Y. July 14, 2017) .................................... 8

*Fish Kiss LLC v. N. Star Creations, LLC*,
No. CV 17-8193 (JBS/AMD), 2018 WL 3831335 (D.N.J. Aug. 13, 2018) .............................. 16

*Forschner Grp., Inc. v. Arrow Trading Co. Inc.*,
30 F.3d 348 (2d Cir. 1994) .................................................................................................... 17

*Free Kick Master LLC v. Apple Inc.*,
140 F. Supp. 3d 975 (N.D. Cal. 2015) .................................................................................. 22

*Gen. Steel Domestic Sales, LLC v. Chumley*,
No. 14-CV-01932-REB-CBS, 2015 WL 4911585 (D. Colo. Aug. 18, 2015) .......................... 22

*Glassybaby, LLC v. Provide Gifts, Inc.*,
No. C11-380 MJP, 2011 WL 2218583 (W.D. Wash. June 6, 2011) ........................................ 10

*Grasshopper House, LLC v. Clean and Sober Media, LLC*,
2:18-cv-923, 2018 WL 6118440 (C.D. Cal. Jul. 18, 2018) .................................................... 13

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) .................................................................................. 20

**12(b)(6) Opp.**
No. 2:19-cv-290

- iii -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Hiam v. HomeAway.com, Inc.*,
   267 F. Supp. 3d 338 (D. Mass. 2017) ...................................................................... 22

*Hillis v. Heineman*,
   626 F.3d 1014 (9th Cir. 2010) .................................................................................. 24

*Hydro-Blok USA LLC, et al. v. Wedi Corp.*,
   No. C15-671 TSZ, 2019 WL 2515318 (W.D. Wash. June 18, 2019) .................. 11, 15

*In re Park W. Galleries, Inc.*,
   732 F. Supp. 2d 1181 (W.D. Wash. 2010) ............................................................... 18

*Instant Checkmate, Inc. v. Background Alert, Inc.*,
   14-cv-1182, 2014 WL 12526275 (S.D. Cal. Dec. 5, 2014) ...................................... 17

*Jackson v. Odenat*,
   9 F. Supp. 3d 342 (S.D.N.Y. 2014) ............................................................................ 8

*Jones v. Progressive Cas. Ins. Co.*,
   No. 16-CV-06941-JD, 2018 WL 4521919 (N.D. Cal. Sept. 19, 2018) ..................... 20

*JST Distribution, LLC v. CNV.com, Inc.*,
   17-cv-6264, 2018 WL 6113092 (C.D. Cal. Mar. 7, 2018) ................................... 13, 14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................. 18

*Kent-Matta v. Citigroup Inc.*,
   No. CV-19-00710-PHX-DJH, 2019 WL 1000905 (D. Ariz. Mar. 1, 2019) ................ 4

*Kerodin v. ServiceMagic, Inc.*,
   No. RWT 11CV2981, 2013 WL 951754 (D. Md. Mar. 11, 2013) .............................. 9

*Kremerman v. Open Source Steel, LLC*,
   No. C17-953-BAT, 2017 WL 3970894 (W.D. Wash. Sept. 8, 2017) ......................... 10

*Lacey v. Maricopa County*,
   93 F.3d 896 (9th Cir. 2012) ........................................................................................ 4

*Lasoff v. Amazon.com, Inc.*,
   741 Fed. App'x. 400 (9th Cir. 2018) .......................................................................... 24

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................................... 8, 23

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) .............................................................................................. 4, 5, 11

*Meeker v. Starfish Children's Servs.*,
   No. C17-376, 2018 WL 784585 (W.D. Wash. Feb. 8, 2018) .................................... 18

12(b)(6) Opp.
No. 2:19-cv-290

- iv -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1

**TABLE OF AUTHORITIES (cont'd)**

2

Page(s)

3
*Meggitt Orange County Inc. v. Nie,*
   No. 13-cv-239, 2014 WL 12588633 (C.D. Cal. Jul. 17, 2014)................................. 18

4
*Miller v. Glenn Miller Prods., Inc.,*
5
   454 F.3d 975 (9th Cir. 2006)........................................................................................ 10

6
*Moore v. Kayport Package Express, Inc.,*
   885 F.2d 531 (9th Cir.1989)......................................................................................... 21

7
*Obesity Research Institute, LLC v. Fiber Research International, LLC,*
8
   165 F. Supp. 3d 937 (S.D. Cal. 2016)......................................................... 5, 6, 10, 11

9
*Optimum Techs., Inc. v. Home Depot U.S.A., Inc.,*
   217 F. App'x 899 (11th Cir. 2007) ............................................................................. 14

10
*Optimum Techs., Inc. v. Home Depot USA, Inc.,*
   1:04-cv-3260, 2005 WL 3307058 (N.D. Ga. Dec. 2, 2005) ...................................... 14
11

*Outlaw Lab., LP v. Shenoor Enter.,*
12
   371 F. Supp. 3d 355 (N.D. Tex. 2019)........................................................................ 14

13
*Parts.com, LLC v. Yahoo! Inc.,*
   996 F. Supp. 2d 933 (S.D. Cal. 2013)......................................................................... 22
14

*Perfect 10, Inc. v. CCBill LLC,*
15
   488 F.3d 1102 (9th Cir. 2007)..................................................................................... 22

16
*Pernod Ricard v. Bacardi,*
   653 F.3d 241 (3rd Cir. 2011) ...................................................................................... 17

17
*POM Wonderful LLC v. Coca-Cola Co.,*
   573 U.S. 102 (2014) ....................................................................................................... 4
18

*Preston v. Boyer,*
19
   No. C16-1106, 2018 WL 4103668 (W.D. Wash. Aug. 29, 2018) .............................. 24

20
*Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.,*
   No. 14-1616 (FAB), 2016 WL 3406091 (D.P.R. June 16, 2016) .............................. 20

21
*Ryan-Beedy v. Bank of New York Mellon,*
22
   293 F. Supp. 3d 1101 (E.D. Cal. 2018)...................................................................... 21

23
*Satmodo, LLC v. Whenever Commc'ns, LLC,*
   No. 17-CV-0192-AJB-NLS, 2017 WL 6327132 (S.D. Cal. Dec. 8, 2017) ............... 19

24
*Scotch Whisky Ass'n v. Barton Distilling Co.,*
   489 F.2d 809 (7th Cir. 1973)......................................................................................... 9
25

*Shaker v. Nature's Path,*
26
   2013 WL 6729802 (C.D. Cal. 2013)........................................................................... 17

**12(b)(6) Opp.**
No. 2:19-cv-290

– v –

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

**TABLE OF AUTHORITIES (cont'd)**

Page(s)

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .................................................................. 11, 15

*Straightshot Commc'ns, Inc. v. Telekenex, Inc.*,
   No. C10-268Z, 2011 WL 1770935 (W.D. Wash. May 9, 2011) ............................ 21

*Sugai Prods., v. Kona Kai Farms*,
   No. 07-43, 1997 WL 824022 (D. Haw. Nov. 19, 1997) ...................................... 8

*U.S. ex rel. Brooks v. Trillium Community Health Plan, Inc.*,
   No. 6:14-cv-1424-MC, 2017 WL 2805863 (D. Or. June 28, 2017) ........................ 19

*United States ex rel. Fox Rx, Inc. v. Omnicare*,
   No. 1:11-cv-962-WSD, 2013 WL 2303768, at *7 (N.D. Ga. May 17, 2013) ............ 20

*United States ex rel. Morgan v. Champion Fitness, Inc.*,
   No. 1:13-CV-1593, 2018 WL 5114124 (C.D. Ill. Oct. 19, 2018) ........................... 20

*United States v. Ctr. for Diagnostic Imaging, Inc.*,
   787 F. Supp. 2d 1213 (W.D. Wash. 2011) ..................................................... 20

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) .................................................................... 20

*Universal Life Church Monastery Storehouse v. Maurice King, et al.*,
   No. 2:19-CV-00301-RSL, 2019 WL 2524993 (W.D. Wash. June 19, 2019) ............ 18

*Washington Land Dev., LLC v. Lloyds TSB Bank, PLC*,
   No. C14-0179-JCC, 2014 WL 3563292 (W.D. Wash. July 18, 2014) ..................... 4

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
   758 F.3d 1069 (9th Cir. 2014) .................................................................. 11, 12

*Yucesoy v. Uber Technologies, Inc.*,
   15-cv-262, 2016 WL 493189 (N.D. Cal. Feb. 9, 2016) ...................................... 21

*Zango, Inc. v. Kaspersky*,
   568 F.3d 1169 (9th Cir. 2009) .................................................................... 23

**Statutes**

15 U.S.C. § 1125(a) ...................................................................................... 2

15 U.S.C. § 1125(a)(1) ................................................................................... 1

15 U.S.C. § 1125(a)(1)(A) ........................................................................... 6, 23

15 U.S.C. § 1125(b)(1)(B) .............................................................................. 13

47 U.S.C. § 230(e)(2) .................................................................................... 21

**12(b)(6) Opp.**
No. 2:19-cv-290

- vi -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page(s)</u>

**Rules**

Fed. R. Civ. P. 8(d)(2)-(3) ............................................................................................ 24

**Treatises**

5 McCarthy on Trademarks and Unfair Competition § 27:52 (5th ed. 2019) .............................. 14

**12(b)(6) Opp.**
No. 2:19-cv-290

- vii -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1    Plaintiffs respectfully ask the Court to deny Defendants' three motions to dismiss in their

2    entirety.  *See* Dkts. 100 (BBC Assets, LLC), 106 (Retailers), 107 (Suppliers).

3    **I.    INTRODUCTION**

4        Each of the Defendants sell coffee labeled as originating from Kona, Hawaii.  The

5    objective chemical analyses alleged in the Complaint plainly demonstrate that the Defendants sell

6    coffee which could not possibly come from that region.  Defendants have flooded the market with

7    ordinary, commodity coffee they pass off as rare, difficult to grow Kona coffee.  This injures

8    Plaintiffs and other similarly situated Kona coffee growers by driving down the price of real Kona

9    coffee, impeding the sale of genuine Kona coffee, and harming the reputations of honest growers.

10   Plaintiffs' Complaint alleges in detail each Defendants' affirmative representations of the origin

11   of their coffee as well as the grounds for their falsity, backed by scientific, forensic analysis.

12   Defendants' false labeling, as alleged, violates the Lanham Act's express prohibitions against

13   "false designations of origin" and "false advertising."  Plaintiffs have fully satisfied their pleading

14   burden and have stated claims upon which relief can be granted.

15       Defendants' three motions fail to identify any legitimate basis to dismiss Plaintiffs'

16   claims.  Defendants predicate their arguments to dismiss the "false designation of origin" claims

17   on a demonstrably incorrect quotation of the text of the Lanham Act.  When considered under the

18   actual text of the Act, Plaintiffs claims fall fully within its ambit and are consistent with Supreme

19   Court jurisprudence thereunder.

20       Defendants' Arguments against Plaintiffs' "false advertising" claim fare no better.  Again,

21   finding no controlling precedent to support dismissal, Defendants press this Court to be the first

22   in this Circuit to adopt a strained reading of the Lanham Act that would exculpate retailers from

23   their direct participation in the dissemination of the false claims at issue.  In so doing, they

24   misread Judge Rothstein's opinion in *Lasoff v. Amazon.com Inc.*, C16-151, 2017 WL 372948, at

25   *2 (W.D. Wash. Jan. 26, 2017), which merely holds that retailers have no liability where they bid

26   on search engine "keywords."

**12(b)(6) Opp.**
No. 2:19-cv-290                                                        - 1 -

1739016.3

#1255176 v1 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

1    Defendants also make a misplaced attempt to exaggerate Rule 9(b)'s pleading standard,

2    arguing that Plaintiffs should identify every bag of coffee falsely labeled.  The Complaint,

3    however, satisfies Rule 9(b) by detailing the how the mislabeling is supported by science, and

4    thereby providing the who, what, where and when of the fraudulent conduct, apprising

5    Defendants of the nature of the mislabeling sufficiently for them to answer the Complaint.

6    Certain Defendants make an equally misplaced attempt to raise the Communications Decency Act

7    ("CDA") as a defense to their false labeling.  The text of the Act and case law makes plain that

8    the CDA does not preempt *any* claims under the Act, much less the particular claims at issue here.

9    Respectfully, none of Defendants arguments justify dismissal, and Plaintiffs' allegations

10   more than plausibly set forth a basis for establishing that Defendants' marketing and selling of

11   false labeled Kona coffee violated the Lanham Act.

12   **II.    <u>AT-ISSUE CLAIMS</u>**

13   Plaintiffs filed this litigation under the Lanham Act, 15 U.S.C. § 1125 (the "Act").  In

14   relevant part, the Act provides:

15       (1) Any person who, on or in connection with any goods or services, or any
         container for goods, uses in commerce any word, term, name, symbol, or device,
16       or any combination thereof, or any false designation of origin, false or misleading
         description of fact, or false or misleading representation of fact, which –
17

18           (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
             affiliation, connection, or association of such person with another person,
19           <u>or</u> as to the origin, sponsorship, or approval of his or her goods, services,
             or commercial activities by another person, or

20           (B) in commercial advertising or promotion, misrepresents the nature,
             characteristics, qualities, or geographic origin of his or her or another
21           person's goods, services, or commercial activities,

22       shall be liable in a civil action by any person who believes that he or she is likely
         to be damaged by such act.
23

24   15 U.S.C. § 1125(a) (emphasis added).  Courts generally refer to Section 43(a)(1)(A) claims as

25   claims for "false designation of origin" or "false association" and Section 43(a)(1)(B) claims as

26   claims for "false advertising."  *See, e.g., Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990-91

**12(b)(6) Opp.**
No. 2:19-cv-290

- 2 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1   (9th Cir. 2008).

2        Plaintiffs respectfully note that Defendants omitted the emphasized word "or" from

3   Section 43(a)(1)(A).  *See* Dkt. 106 at 11; Dkt. 107 at 11.  That omission is the (erroneous) basis of

4   many of their arguments relating to Section 43(a)(1)(A).

5   **III.**   **RELEVANT FACTS**

6        Plaintiffs are farmers who grow and sell coffee in the Kona District on the Big Island of

7   Hawaii ("Kona").  Dkt. 81 (FAC) ¶ 38.  It is extraordinarily expensive to grow Kona coffee

8   because the region has volcanic topography, making it nearly impossible to use modern farming

9   machinery.  *Id*. ¶ 48.  And coffee trees only grow on 3800 acres of land within the Kona District

10   (approximately six square miles), further reducing the ability of Kona farmers to achieve

11   economies of scale.  *See id*. ¶ 38.

12        Defendants are companies that sell and distribute coffee labeled as being "Kona Coffee,"

13   "100% Kona," and "Kona Blend."  *See id.* ¶¶ 2, 8-27, 29, 45, 60-132, 135, 136.  Scientific testing,

14   however, shows that they are lying: their coffee is not from Kona.  *See id*. ¶ 61.  Indeed, while

15   real Kona farmers only grow approximately 2.7 million pounds of Kona coffee every year,

16   retailers sell over 20 million pounds of coffee labeled "Kona" every year.  *See id*. ¶ 44.  This is

17   possible only because Defendants sell products falsely labeled as Kona coffee.  *See id*.

18        Defendants' factual response to the above focuses on what is known as "blending."  *See*

19   Dkt. 106 at 7; Dkt. 107 at 7.  They explain that Hawaii law permits Kona blends (products that

20   combine Kona coffee with coffee from other regions).  *See id*.  But this is not a case about

21   whether or not a company can sell a product that is labeled accurately:  Defendants' products do

22   not appear to contain a meaningful quantity of Kona coffee, so they cannot be presented honestly

23   as Kona blends.  Even if Hawaii law were relevant to this case, moreover, and even if

24   Defendants' products do contain some nontrivial amount of Kona coffee, that law would not

25   shield Defendants.  Under Hawaiian law, Defendants' labels must state the percentage of Kona

26   coffee on any blended product sold in Hawaii.  *See* Haw. Rev. Stat. § 486-120.6(a)(2) &

**12(b)(6) Opp.**
No. 2:19-cv-290
- 3 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1  (3).  None of the "Kona blend" labels at issue in this case do, and thus none could be used legally

2  in Hawaii.  *See* Dkt. 81 (FAC) at ¶¶ 66, 70, 73, 78, 84, 94, 100, 106, 114 & 119.

3  **IV.**    **STANDARD OF REVIEW**

4       On a motion to dismiss under Rule 12(b)(6), a court determines only whether plaintiffs are

5  entitled to offer evidence in support of their claims.  *See Bell Atl. Corp. v. Twombly*, 550

6  U.S. 544, 563 n.8 (2007) (citation omitted).  Plaintiffs must merely plead enough facts "to state a

7  claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009).  A claim

8  need not be more likely to succeed than fail; rather, "plausibility is a standard lower than

9  probability . . . ."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012);

10  *see also, e.g.*, *Washington Land Dev., LLC v. Lloyds TSB Bank, PLC*, No. C14-0179-JCC, 2014

11  WL 3563292, at *2 (W.D. Wash. July 18, 2014) (Coughenour, J.).  Accordingly, a motion to

12  dismiss must be denied unless there is no "reasonable expectation that discovery will reveal

13  evidence" that would enable the trier of fact, after weighing contested evidence and making

14  allowable inferences, to decide the case for the plaintiffs.  *Matrixx Initiatives, Inc. v. Siracusano*,

15  563 U.S. 27, 46 (2011) (citation omitted).[1]

16  **V.**    **ARGUMENT**

17       While Defendants' alleged misconduct is remarkable, Plaintiffs claim to recover for that

18  misconduct is not.  For decades, the Lanham Act has allowed authentic suppliers of a good to

19  recover from those who trade on the authentic good's reputation.  *See, e.g.*, *POM Wonderful LLC*

20  *v. Coca-Cola Co.*, 573 U.S. 102, 110 (2014) (finding no preemption of Lanham Act suit against

21  beverage manufacturer when label did not state "the minuscule amount" of particular

22  ingredients); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 749 (8th Cir. 1980)

23

24  [1] In conducting its analysis, a court should consider only the operative complaint. *See, e.g., Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Indeed, a court should "treat an original complaint as non-existent." *Kent-Matta v. Citigroup Inc.*, No. CV-19-00710-PHX-DJH, 2019 WL 1000905, at *2 (D. Ariz. Mar. 1, 2019) (citing same). Defendants' references to differences between the original and amended complaint are irrelevant. *See* Dkt. 106 at 9; Dkt. 107 at 8.

25

26

12(b)(6) Opp.
No. 2:19-cv-290

- 4 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

(granting an injunction to South Dakota jewelry manufacturers against defendants selling jewelry falsely designated as coming from the Black Hills of South Dakota). This case is no different, and Plaintiffs assert proper claims for both false designation of origin and false advertising under the Act.

### A. Plaintiffs state a claim for false designation of origin.

A plaintiff asserting a claim for false designation of origin under the Lanham Act must show:

(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin;

(2) the use was in interstate commerce;

(3) the use was in connection with goods or services;

(4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and

(5) plaintiff has been or is likely to be damaged by these acts.

*Obesity Research Inst., LLC v. Fiber Research International, LLC*, 165 F. Supp. 3d 937, 949 (S.D. Cal. 2016).  Defendants challenge *none* of these elements under Rule 8.

Nor could they: Plaintiffs' complaint shows a "reasonable expectation that discovery will reveal evidence" proving all five elements of this claim.  *Matrixx Initiatives*, 563 U.S. at 46 (citation omitted).  First, Plaintiffs allege a designation: "Kona."  *See, e.g.,* Dkt. 81 (FAC) ¶¶ 8-17.  Second, Plaintiffs plead that this designation was used in interstate commerce because these products were sold both wholesale and retail in multiple states.  *See, e.g., id.* ¶¶ 9, 17-27.  Third, coffee is indisputably a "good."  Fourth, Plaintiffs allege that labeling a product as containing Kona coffee is likely to make the reasonable consumer believe the product does, in fact, contain coffee grown in Kona.  *See e.g., id.* ¶¶ 60-123.  Finally, Plaintiffs detail their damages from

**12(b)(6) Opp.**
No. 2:19-cv-290

- 5 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1    Defendants' actions.  *See e.g., id.* ¶¶ 46-50.

2         Nothing more is required to state a claim for false designation of origin.  *Obesity*

3    *Research*, 165 F. Supp. 3d at 949.

4              **1.       Defendants' arguments are contravened by the plain text of the Act.**

5         Defendants contend that Section 43(a)(1)(A) requires a plaintiff to show that a defendant

6    "has created a false association between his or her goods and the goods of the plaintiff," and that

7    the Act thus excludes claims based on the "geographical origin of the defendant's goods."  Dkt.

8    106 at 11.  This position is based on a mis-transcription of the statutory text and is contradicted by

9    Supreme Court precedent.  Defendants' secondary arguments also fare no better: a claim for false

10   designation of origin requires neither a trademark nor a statement.

11             **a.       The plain text of the Lanham Act provides for false designation**
             **of origin claims under Section 43(a)(1)(A).**
12

13        Section 43(a)(1)(A) of the Lanham Act prohibits a false designation that "is likely to

14   cause confusion . . . as to the association of such person with another person, **or** as to the origin,

15   sponsorship, or approval of his or her goods."  15 U.S.C. § 1125(a)(1)(A) (emphasis added).  The

16   plain text of the Act thus makes clear that a defendant need not have "created a false association

17   between his or her goods and the goods of the plaintiff" in order to be liable for false designation

18   of origin.  *See id.*

19        Defendants contend that this text bars Plaintiffs' claim, but they reach that conclusion

20   only by omitting the word "or" from the statutory text.  *See* Dkt. 106 at 11; Dkt. 107 at 11.  Their

21   brief quotes the Act's prohibition on false designation of origin as "likely to cause confusion, or

22   to cause mistake, or to deceive as to the affiliation, connection, or association of *such person with*

23   *another person*, as to the origin, sponsorship, or approval of *his or her* goods."  *Id.* (emphasis in

24   original).

25

26

**12(b)(6) Opp.**
No. 2:19-cv-290

- 6 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

Section 43(a)(1)(A):

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, *or* as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**person, *or* as to the origin**

Defendants' briefing:

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**person, as to the origin**

That is not the text of the Act, and the actual text does not support Defendants' argument.

Defendants' position is also irreconcilable with the ordinary meaning of the term "origin." As the Supreme Court has explained, "a case can be made that a proper reading of § 43(a), as originally enacted, would treat the word 'origin' as referring *only* to the geographic location in which the goods originated." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (internal quotation marks omitted and emphasis added). Treating as axiomatic that "origin" includes geographic location, the *Dastar* Court explained that "origin" is sufficiently broad to *also* apply to other forms of origin of production. *Id.* at 30. The Supreme Court's conclusion is unsurprising: the initial meaning of the phrase "false designation of origin" as used in the Lanham Act was "to continue [the] tradition of providing protection against outsiders for those using a geographical name." *Black Hills*, 633 F.2d at 749 (granting injunction against defendants selling jewelry falsely designated as coming from the Black Hills).

Defendants also contend that the term "origin" in Section 43(a)(1)(A) must exclude claims related to "geographic origin" because Congress used the phrase "geographic origin" in Section 43(a)(1)(B). *See* Dkt. 100 at 12. But that difference means, if anything, that 'origin' claims under Section 43(a)(1)(B) concern *only* geographic origin, whereas claims under Section 43(a)(1)(A) are not so limited. If a hypothetical statute referred to "cars" in one section and "red

**12(b)(6) Opp.**
No. 2:19-cv-290

- 7 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1  cars" in another, one would not infer that red cars were excluded from the part of the statute that

2  applied to "cars."  Similarly, the meaning of "origin" is broader than "geographic origin."

3  Defendants' argument also makes no sense in light of the Supreme Court's holding in *Dastar*,

4  which interpreted 'origin' in the Lanham Act to refer to *either* geographic or commercial sources.

5  If Defendants were right, and Section 43(a)(1)(A) referred only to "commercial" and Section

6  43(a)(1)(B) referred only to "geographic origin," then there would have been no reason for the

7  Supreme Court to decide whether the term 'origin' encompassed both.

8  Finally, Defendants rely extensively on a snippet from *Sugai Prods.*, *v. Kona Kai Farms*,

9  No. 07-43, 1997 WL 824022 (D. Haw. Nov. 19, 1997).  *See* Dkt. 100 at 12.  That opinion states

10  in passing that "a claim for false 'geographic origin' . . . is specifically addressed by [Section

11  43(a)(1)(B)]."  *Sugai*, 1997 WL 824022 at *11.  But *Sugai* did not analyze the text of the Lanham

12  Act and predated the Supreme Court's decision in *Dastar*.  *Sugai* held only that the plaintiffs did

13  not have standing under the Ninth Circuit's then-applicable test, *see id*., which was overruled in

14  *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014).[2]

15  **b.    A claim for false designation of origin does not require a**

16  **trademark.**

17  While the Lanham Act deals mostly with trademarks, "15 U.S.C. § 1125(a) is one of the

18  few provisions that goes beyond trademark protection."  *Dastar Corp.*, 539 U.S. at 28-29.  For

19  this reason, "[a] trademark is not required for a successful section 43(a) claim, which 'mak[es]

20  certain types of unfair competition federal statutory torts, whether or not they involved

21  infringement of a registered trademark."  *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL

22  2992663, at *21 (S.D.N.Y. July 14, 2017) (citing *Jackson v. Odenat*, 9 F. Supp. 3d 342, 354

23  (S.D.N.Y. 2014)); *see also, e.g.*, *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706

24

25  _____

26  [2] In *Lexmark*, the Court held that a plaintiff has standing under the Act so long as the plaintiff alleges "injury to a commercial interest in reputation or sales."  572 U.S. at 138.

**12(b)(6) Opp.**
No. 2:19-cv-290

- 8 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1   (4th Cir. 2016).  Defendants' arguments about what Plaintiffs would have to establish if they

2   brought a trademark infringement claim are irrelevant.  *See* Dkt. 100 at 10-12; Dkt. 106 at 12-14.

3           Courts in this district have held, for example, that merely *omitting* a geographically

4   descriptive term can qualify as a false designation of origin.  *See Baden Sports v. Kabushiki*

5   *Kaisha Molten & Molten U.S.A., Inc.*, No. C06-210P, 2007 WL 703394, at *5 (W.D. Wash. Mar.

6   2, 2007) (Pechman, J.).  *Baden* involved a Lanham Act claim against a basketball manufacturer

7   importing basketballs into the United States without indicating their place of origin.  That court

8   surveyed the relevant caselaw and held that even the "failure to mark the country of origin is

9   actionable under the Lanham Act."  *Id.*; *see also Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No.

10  C10-861RSM, 2012 WL 5360972, at *7 (W.D. Wash. Oct. 31, 2012) (Martinez, J.) (denying

11  motion for summary judgment, and explaining that "failure to mark the country of origin is

12  actionable under the Lanham Act").  The Lanham Act has long permitted claims exactly like the

13  ones Plaintiffs bring here, in which plaintiffs alleged that they have been harmed by a defendant's

14  use of a false designation of geographic origin.  *See e.g.*, *Black Hills Jewelry*, 633 F.2d at 750-51;

15  *Scotch Whisky Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 813 (7th Cir. 1973) (affirming

16  summary judgment for plaintiffs when defendant blended spirits from Scotland with local spirits

17  yet labeled the product as originating in Scotland).

18          Defendants cite two cases for the proposition that trademarks are required for a claim

19  under the Act, but those cases required trademarks *because they were trademark infringement*

20  *cases*.  *See 4 Peaks Tech. LLC v. Green*, No. CV-13-1493, 2014 WL 12643161, at *2 (D. Ariz.

21  Nov. 6, 2014) ("Defendant claims Plaintiff uses a "'fraudulent trademark . . . .'"); *Kerodin v.*

22  *ServiceMagic, Inc.*, No. RWT 11CV2981, 2013 WL 951754, at *1 (D. Md. Mar. 11, 2013)

23  ("[I]nfringed and otherwise interfered with their alleged service marks . . . .").  Such cases

24

25

26

**12(b)(6) Opp.**
No. 2:19-cv-290

- 9 -

#1255176 v1 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

expressly require some analysis of whether the plaintiff's trademark or service mark at issue is protectable because there can be no trademark infringement without a trademark.[3]

### c. A claim for false designation of origin does not require a statement.

Defendants assert twice that they can be liable for false designation of origin only if they made a "statement." *See* Dkt. 106 at 11; Dkt. 107 at 11. Neither the text of the Act nor any of Defendants' citations use that term in connection with a claim for false designation of origin. The statute and caselaw require only that the defendants "use" a false designation, and that the use occur in "commerce." *Obesity Research*, 165 F. Supp. 3d at 949. Plaintiffs have pled both correctly, *see, e.g., id.* ¶¶ 9, 17-27, and Defendants do not argue to the contrary.

### B. Plaintiffs state a claim for false advertising.

Plaintiffs have also pled the elements of their claim for false advertising properly. A plaintiff alleging false advertising must show:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

---

[3] Plaintiffs are not required to allege that the term "Kona" had acquired a secondary meaning because they do not assert a trademark claim. *Contra* Dkt. 100 at 11. But if they were, Plaintiffs' Complaint includes facts to establish that the term "Kona," in addition to being geographically descriptive, has acquired such a meaning. *See e.g.* Dkt. 81, ¶ 1. ("Kona coffee, renowned for its distinctive flavor and aroma, is one of the most famous and revered specialty coffees in the world."). Plaintiffs have adequately alleged that the term "Kona" has caused "a sufficient segment of a relevant market group comes to associate the phrase not just with the geographic place it originally signified, but also with a single source of goods . . . ." *Belen Jesuit Preparatory Sch., Inc. v. Sportswear, Inc.*, No. 1:15-CV-22194-UU, 2016 WL 4718162, at *8 (S.D. Fla. May 3, 2016). In any event, questions such as whether a term has acquired such secondary meaning are factual disputes, inappropriate for resolution on a motion to dismiss. *See, e.g., Kremerman v. Open Source Steel, LLC*, No. C17-953-BAT, 2017 WL 3970894, at *5 (W.D. Wash. Sept. 8, 2017) (Tsuchida, MJ.) (quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 991 (9th Cir. 2006)); *Glassybaby, LLC v. Provide Gifts, Inc.*, No. C11-380 MJP, 2011 WL 2218583, at *2 (W.D. Wash. June 6, 2011) (Pechman, J.) (quoting same).

12(b)(6) Opp.
No. 2:19-cv-290
\- 10 -
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1

2

(3) the deception is material, in that it is likely to influence the purchasing decision;

3

(4) the defendant caused its false statement to enter interstate commerce; and

4

5

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

6

7   *Obesity Research*, 165 F. Supp. 3d at 949; *see also Wells Fargo & Co. v. ABD Ins. & Fin. Servs.,*

8   *Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014).  A plaintiff may prove the second element (deception)

9   either by: (1) showing that statements are literally false; or (2) showing that consumers are likely

10  to be confused.  *See, e.g., Hydro-Blok USA LLC, et al. v. Wedi Corp.*, No. C15-671 TSZ, 2019

11  WL 2515318, at *4 n.1 (W.D. Wash. June 18, 2019) (citing *Southland Sod Farms v. Stover Seed*

12  *Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).  A statement is literally false within the meaning of the

13  Act if it is false "on its face" or "by necessary implication."  *Id.*

14       There is a "reasonable expectation that discovery will reveal evidence" proving all five

15  elements of Plaintiffs' false advertising claim.  *Matrixx Initiatives*, 563 U.S. at 46 (citation

16  omitted).  First, Plaintiffs allege a false statement of fact in a commercial advertisement: the word

17  "Kona" on product labels.  *See, e.g.,* Dkt. 81 (FAC) ¶¶ 8-17.  Second, Plaintiffs explain why the

18  statement that a product is Kona coffee has the tendency to deceive consumers into believing that

19  it is, in fact, Kona coffee.  *See e.g., id.* ¶¶ 60-123.  Third, for that same reason, they properly

20  plead that the deception is material.  *See id.*  Fourth, they plead that this designation was used in

21  interstate commerce because these products were sold both wholesale and retail in multiple states.

22  *See, e.g., id.* ¶¶ 9, 17-27.  Finally, Plaintiffs detail their injuries, including diversion of sales and

23  loss of goodwill.  *See e.g., id.* ¶¶ 46-50.

24       The Supplier Defendants appear to concede that Plaintiffs have pled all five of these

25  elements properly under Rule 8.  The Retailer Defendants, however, argue that they did not make

26  any "false statement."  *See* Dkt. 106 at 9-11.  And Defendant BCC argues that consumers were

12(b)(6) Opp.
No. 2:19-cv-290

- 11 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

unlikely to be deceived because their product indicates clearly that it was roasted in Colorado. *See* Dkt. 100 at 12-20.  These arguments are without merit.

### 1. The Retailer Defendants are not immune from Lanham Act false advertising claims.

Retailer Defendants claim sweeping immunity from false advertising claims, asserting that they cannot be liable because the misleading product labels at issue originate with suppliers. These Defendants press the Court for a categorical and expansive ruling that "[t]he Lanham Act does not hold *retailers* liable for statements (whether on labels or otherwise) originating with their vendors and suppliers."  Dkt. 106 at 10 (emphasis in original).  This is wrong both factually and legally.  It is wrong factually because it ignores Plaintiffs' well-pled allegations.  And it is wrong legally because it ignores the text of the Act, the law within the Ninth Circuit, and the majority of decisions outside of the Ninth Circuit in favor of a single Texas court.

#### a. Two of the "Retailers" are also "Suppliers."

The Retailers' assertion that Plaintiffs have not alleged "a false statement of fact by the defendant in a commercial advertisement about its own or another's product" is mistaken.  Dkt. 106 at 9 (quoting *Wells Fargo*, 758 F.3d at 1071).[4]  Plaintiffs alleged that both Defendants Cost Plus/World Market and The Kroger Co. market and sell private-label coffees that falsely designate their origin as Kona.  *See* Dkt. 81 at ¶¶ 17 and 118 (as to Kroger's "Kivu" brand) and ¶¶ 9 and 93 (as to Cost Plus's "Hawaiian Kona Blend" brand).  The Retailers cannot dispute that these labels constitute allegedly false statements by the Defendants themselves.  *Cf. Coastal Abstract Serv. Inc. v. Firm Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (holding that product labeling is advertising for purposes of the Lanham Act, a proposition Defendants appear to acknowledge).

---

[4] The Retailers cite the *Wells Fargo* case three times, even though it involved only review of a denial of a motion for a preliminary injunction. The district court did not consider the plaintiffs' false advertising claim at all in that case, which the Ninth Circuit found to be an abuse of discretion. *See* 758 F.3d at 1072. And that case certainly did not address whether a retailer's dissemination of misrepresentations can establish liability under the Act. *See* 758 F.3d at 1072.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

1

        **b.**     **The text of the Act, courts within this circuit, and the leading treatise all reject Retailers' claimed immunity from suit.**

2

3        The Lanham Act's prohibition on false advertising is not circumscribed solely to

4  manufacturers and suppliers, but instead imposes liability on:

5          Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, device, or any combination thereof, or any false designation

6          of origin, false or misleading description of fact, or false or misleading representation of fact, which… (B) in commercial

7          advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's

8          goods, services, or commercial activities.

9

10  15 U.S.C. § 1125(a)(1)(B).  Consistent with this statutory language, courts apply liability under

11  this provision "to extend beyond those who actually misrepresent goods or directly place such

12  goods in commerce." *Grasshopper House, LLC v. Clean and Sober Media, LLC*, 2:18-cv-923,

13  2018 WL 6118440, at *7 (C.D. Cal. Jul. 18, 2018) (internal quotation and citation omitted).

14        In particular, liability under the Act "extends to any person who knowingly causes a false

15  representation to be used in connection with goods and services in commerce." *Id.*; *see also JST*

16  *Distribution, LLC v. CNV.com, Inc.*, No. 17-cv-6264, 2018 WL 6113092, at *4 (C.D. Cal. Mar. 7,

17  2018) (denying motion to dismiss where Plaintiff claimed that "Defendant used, promoted, and

18  disseminated the false advertising through its website.").  And "sale of [a] product is sufficient

19  'use' for [a retailer] to be liable for the results of such infringement." *Caché, Inc. v. M.Z. Berger*

20  *& Co.*, No. 99-cv-12320, 2001 WL 38283, at *15 (S.D.N.Y. Jan. 16, 2001) (internal quotation

21  and alteration omitted).  A retailer's "claimed lack of knowledge of its supplier's infringement,

22  even if true, provides no defense." *Id.* (internal quotation and alteration omitted).

23        These cases are consistent with a leading treatise's synthesis of Lanham Act false

24  advertising claims, which explains that "[a] plaintiff has a § 43(a) claim against all those

25  allegedly responsible for falsely describing and placing in commerce the advertised goods."  5

26  McCarthy on Trademarks and Unfair Competition § 27:52 (5th ed. 2019).

**12(b)(6) Opp.**
No. 2:19-cv-290

- 13 -

1

**c.    The only case to support Retailers' position is an outlier from the Northern District of Texas.**

2

3    The Retailers rely heavily on a recent decision from the Northern District of Texas,

4    *Outlaw Lab., LP v. Shenoor Enter.*, 371 F. Supp. 3d 355, 368 (N.D. Tex. 2019).  *Outlaw* conflicts

5    expressly with *JST Distribution*, a recent decision from within this Circuit in which the court

6    found that a retailer's dissemination of false statements that they did not author or create was

7    sufficient to establish liability under the Lanham Act for false advertising.  *See JST Distribution*,

8    2018 WL 6113092, at *4.  And as explained above, *JST Distribution* is consistent with the

9    statutory text, longstanding practice, and leading treatise—*Outlaw* is not.

10    The Retailers' other two cases do not stand for the proposition that retailers are shielded

11    from liability when they sell products that violate the Act.  The first involved a defendant's use of

12    outdated shelf tags.  *See Optimum Techs., Inc. v. Home Depot USA, Inc.*, No. 1:04-cv-3260, 2005

13    WL 3307058 (N.D. Ga. Dec. 5, 2005).  While the product on the shelf was "packaged and

14    marked" correctly, the shelf tags (and customer receipts) reflected a different product.  *Optimum*

15    *Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 901 (11th Cir. 2007) (unpublished).

16    The quotation that the Retailers highlight—"[i]t is difficult to see how merely displaying products

17    on a store shelf qualifies as speech"—was solely in the context of explaining that *where a product*

18    *is placed on the shelf* does not qualify as "commercial speech."  *Optimum Techs*, 2005 WL

19    3307058, at *6.  This case involves neither shelf placement nor the question of what qualifies as

20    "commercial speech."

21    Finally, the Retailers have misread *Lasoff*, 2017 WL 372948, at *2.  In that case, the

22    plaintiff complained that "when potential online customers would click on links advertising" the

23    plaintiff's product, they were directed "to competing listings."  *Id*. at *2.  The *Lasoff* complaint

24    was directed solely at the allegation that Amazon should not be permitted to "bid[] on" or "use"

25    certain trademarks as "keywords" for internet search engines.  *Id*.  Indeed, while the plaintiff in

26    *Lasoff* submitted a declaration complaining that competing listings "falsely advertised products"

12(b)(6) Opp.
No. 2:19-cv-290

- 14 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1    as being the plaintiff's own brand, the plaintiff expressly disclaimed that Amazon actually sold

2    such products.  *Id*. at *2.  In this context, Judge Rothstein explained that Amazon could not be

3    liable when its "advertising and other promotional materials truthfully depict what is offered for

4    sale."  *Id*. at *8.

5         The fact pattern in this case is opposite *Lasoff*.  Here, Plaintiffs' well-pled allegations are

6    that Amazon and the other the Retailers: (1) do *not* "truthfully depict what is offered for sale;"

7    and (2) *are* selling products that violate the Lanham Act.  In particular, the Retailers depict (and

8    sell) coffee as being from Kona when it is not.  And while one of the Retailer Defendants

9    (Amazon) *also* advertises products sold by third-party vendors, *Lasoff* stands for the proposition

10   that Plaintiffs are entitled to develop a record to determine Amazon's level of knowledge about

11   that third-party conduct, just as the *Lasoff* plaintiff was permitted to develop a factual record to

12   attempt to demonstrate such knowledge.  *See Lasoff*, 2017 WL 372948, at *8.

13                    **2.       References to Colorado do not shield BCC from liability.**

14        Defendant BCC ("Boyer's") makes one argument that is not applicable to other

15   Defendants.  It argues that no reasonable consumer would be likely to identify Boyer's coffee as

16   being from Hawaii because Boyer's plainly identifies itself as a Colorado company.  *See* Dkt. 100

17   at 12-20.  This argument misconstrues Plaintiffs' claim both legally and factually.

18        First, Plaintiffs do not have to demonstrate likelihood of confusion.  Under the Act, a

19   plaintiff may prove its claim either by showing that statements are literally false *or* by showing

20   that consumers are likely to be confused.  *See, e.g.*, *Hydro-Blok*, 2019 WL 2515318, at *4 (citing

21   *Southland Sod*, 108 F.3d at 1139.  Plaintiffs have alleged plausibly that Defendants' claims that

22   their "Kona" coffee includes an appreciable amount of coffee from Kona is literally false.

23

24

25

26

**12(b)(6) Opp.**
No. 2:19-cv-290

\- 15 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1    Second, Plaintiffs *have* appropriately pled that consumers are likely to be confused.

2  Boyer's does not undermine this pleading.  Instead, Boyer's presents many pages of argument

3  demonstrating that consumers are likely to understand that Boyer's is a Colorado company, a

4  proposition Plaintiffs do not dispute.  But this litigation is about the origin of the coffee beans, not

5  the place in which the beans were roasted.  And no reasonable consumer could believe that *any*

6  coffee beans originate in Colorado:  Coffee does not grow in Colorado.  *See, e.g.*,

7  http://www.ncausa.org/about-coffee/coffee-around-the-world.

8    Indeed, Boyer's markets many of its coffee products as being roasted in Colorado, but

9  from some other place of origin:



18  Just as Colombian farmers would state a claim under the Lanham Act if Boyer's "Colombian

19  Café" coffee does not actually contain an appreciable quantity of coffee from Colombia, Kona

20  farmers state a claim because Boyer's Café Kona is not from Kona.  *See Black Hills Jewelry*, 633

21  F.2d at 749; *cf. Fish Kiss LLC v. N. Star Creations, LLC*, No. CV 17-8193 (JBS/AMD), 2018 WL

22  3831335, at *9 (D.N.J. Aug. 13, 2018) (permitting a claim under the Lanham Act when product

23  asserts it was "Made in the USA" but includes materials from China).

24    Boyer's caselaw does not support its position that no reasonable consumer could be

25  confused in this case.  Four of the five stand only for the unremarkable proposition that if a product

26

12(b)(6) Opp.
No. 2:19-cv-290
- 16 -
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104
#1255176 v1 / 72448-001

states clearly that it was manufactured in one place, a reasonable consumer generally would not believe that it was manufactured in another. In particular, courts have held:

- No reasonable consumer would believe that Rum "distilled and crafted in Puerto Rico" was made in Cuba. *Pernod Ricard v. Bacardi*, 653 F.3d 241, 252 (3rd Cir. 2011).

- No reasonable consumer would believe a product labeled as "made in China" was made in Switzerland, even if called a "Swiss Army Knife." *Forschner Grp., Inc. v. Arrow Trading Co. Inc.*, 30 F.3d 348, 355 (2d Cir. 1994).

- Without additional misrepresentations, no reasonable consumer would believe a beer explicitly labeled as being brewed in six different locations was brewed exclusively in Hawaii despite being labeled as "Kona" beer. *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *6 (N.D. Cal. Sept. 1, 2017).

- No reasonable consumer would believe a beer labeled as "brewed and bottled in Latrobe, Pennsylvania" was brewed in Jamaica. *Dumas v. Diageo PLC*, No. 15-cv-16841 BTM,2016 WL 1367511, at *4 (S.D. Cal. Apr. 6, 2016).

And Boyer's fifth case is similar to the above four: it holds that no reasonable consumer would believe an unrefrigerated box of cereal that stated "strawberries shown as a serving suggestion" actually contained fresh strawberries. *See Shaker v. Nature's Path*, No. EDCV 13-1138-GW, 2013 WL 6729802 (C.D. Cal. Dec. 13, 2013).

These cases are inapposite. This is not a case about whether Boyer's roasts its coffee in Colorado; this is a case about whether the coffee beans are from Kona. Because they are not, Boyer's statements are literally false, and Plaintiffs do not have to show consumer confusion. But even if Plaintiffs did have to show consumer confusion, they have plausibly alleged that they could show it here because no reasonable consumer would believe that *any* coffee was grown commercially in Colorado, much less Kona coffee.

### C.   Plaintiffs have pled their claims with sufficient specificity.

Courts are "split on the issue" of the extent to which Rule 9(b) applies to false designation of origin and false advertising claims under the Act. *Instant Checkmate, Inc. v. Background Alert, Inc.*, No. 14-cv-1182, 2014 WL 12526275, at *6 (S.D. Cal. Dec. 5, 2014). Plaintiffs

12(b)(6) Opp.
No. 2:19-cv-290

\- 17 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1    respectfully submit that the better reasoned cases recognize that "[f]raud is not an essential

2    element of a Section 43(a) claim because a plaintiff could assert a Section 43(a) claim without

3    alleging scienter or intent." *Meggitt Orange County Inc. v. Nie*, No. 13-cv-239, 2014 WL

4    12588633, at *3 (C.D. Cal. Jul. 17, 2014) (collecting cases) (quotation and alteration omitted);

5    *see also, e.g.*, *Universal Life Church Monastery Storehouse v. Maurice King, et al.*, No. 2:19-CV-

6    00301-RSL, 2019 WL 2524993, at *1 (W.D. Wash. June 19, 2019) (Lasnik, J.) (applying Rule 8

7    to Section 43(a) claims).  As the court well-explained in *Meggitt*, "the proper approach is to test

8    only the allegations of fraudulent conduct against the heightened Rule 9(b) standard."  2014 WL

9    12588633, at *3.

10          To whatever extent Rule 9(b) may apply, however, there should be little question that

11   Plaintiffs meet its standard.  Rule 9(b) requires a complaint to identify the "who, what, where,

12   when, and how of the misconduct charged." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d

13   643, 668 (9th Cir. 2019).  Fraud allegations must be "specific enough to give defendants notice of

14   the particular misconduct . . . so that they can defend against the charge and not just deny that

15   they have done anything wrong." *Meeker v. Starfish Children's Servs.*, No. C17-376, 2018 WL

16   784585, at *5 (W.D. Wash. Feb. 8, 2018) (Jones, J.) (quoting *Kearns v. Ford Motor Co.*, 567

17   F.3d 1120, 1124 (9th Cir. 2009)).  Rule 9(b) is not a straitjacket to be applied formulaically:  the

18   question is whether Plaintiffs' complaint provides "a factual basis for the averment of fraud and

19   [is] sufficient to allow [Defendants] to prepare an answer." *In re Park W. Galleries, Inc.*, 732 F.

20   Supp. 2d 1181, 1185–86 (W.D. Wash. 2010) (Lasnik, J.).  There is no serious question that

21   Defendants can answer Plaintiffs' allegations.

22                    **1.      Plaintiffs describe their allegations in significant detail.**

23          Plaintiffs' claims of misrepresentation are straightforward.  Plaintiffs allege that each of

24   the Defendants has labeled its product "Kona," even though it does not contain a detectable

25

26

12(b)(6) Opp.
No. 2:19-cv-290                                         - 18 -

#1255176 v1 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

amount of Kona coffee.[5]  Label-based claims of this nature easily pass muster under Rule 9(b).

As one court put it, "[t]he 'who' are the defendants; the 'what' are their allegedly misleading

claims; the 'when' is the proposed class period, during which those claims were made; the

'where' is the offending label; and the 'how' is the plaintiff's explanation why the defendant's

claims are misleading."  *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. MDL 13-2438,

2014 WL 5311272, at *17 (C.D. Cal. Sept. 4, 2014) (collecting authorities); *see also Astiana v.*

*Ben & Jerry's Homemade, Inc.*, No. C 10-4387, 2011 WL 2111796, at *6 (N.D. Cal. May 26,

2011).

      The Complaint puts the Defendants on notice of the at-issue conduct: the sale of coffee

labeled as "Kona."  And Defendants acknowledge, as they must, that the Complaint offers

numerous specific examples of products that falsely designate Kona as the origin of their coffee

beans.  *See* Dkt. 106 at 7.  Courts hold that such examples satisfy Rule 9(b).  *See, e.g.*, *ADT LLC*

*v. NorthStar Alarm Servs. LLC*, No. 9:18-80283-CV, 2018 WL 6504398, at *2 (S.D. Fla. Sept.

19, 2018) (Lanham Act) ("ADT contends that pleading fraud by examples fails Rule 9(b)'s

requirements.  The Court rejects ADT's argument."); *Satmodo, LLC v. Whenever Commc'ns,*

*LLC*, No. 17-CV-0192-AJB-NLS, 2017 WL 6327132, at *2 (S.D. Cal. Dec. 8, 2017)

("Representative examples are one way of meeting the particularity requirement." (quoting *U.S.*

*ex rel. Brooks v. Trillium Community Health Plan, Inc.*, No. 6:14-cv-1424-MC, 2017 WL

2805863, at *2 (D. Or. June 28, 2017))).

      Defendants, however, attempt to fault Plaintiffs for not having a "comprehensive list" of

any and all allegedly mislabeled products that the Defendants have marketed and sold.  Dkt. 107

at 7.  They essentially seek to limit Plaintiffs' claims to the specific products of which Plaintiffs

are currently aware (as detailed in the Amended Complaint).  But Rule 9(b) is not intended to

---

[5] Contrary to Defendants' assertions, moreover, they are not "lumped together," the Complaint
specifies each Defendant's actions in detail and includes data specifically demonstrating that each
Defendant's "Kona coffee" does not contain Kona coffee.  *See* Dkt. 81 (FAC) ¶¶ 2, 8-27, 29, 45,
60-132, 135, 136.

**12(b)(6) Opp.**
No. 2:19-cv-290

- 19 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1   require a plaintiff to identify each and every misrepresentation a defendant may have ever made,

2   nor limit liability and damages to the specific fraudulent examples identified in the Complaint:

3   plaintiffs "need not allege a precise time frame [or] describe in detail a single specific

4   transaction…." *Jones v. Progressive Cas. Ins. Co.*, No. 16-CV-06941-JD, 2018 WL 4521919, at

5   *2 (N.D. Cal. Sept. 19, 2018) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d

6   1161, 1180 (9th Cir. 2016)); *see also, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth*

7   *Grp., Inc.*, No. CV1403053, 2015 WL 12778048, at *6 (C.D. Cal. Oct. 23, 2015) ("Rule 9(b)

8   does not require that [the party] include every example of a fraudulent claim.").[6]

9        An opinion from the Northern District of California is instructive.  *See Ham v. Hain*

10   *Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014).  There, as here, plaintiffs

11   alleged that certain wording on product labels was inaccurate (in that case, "all natural").  *See id*.

12   There, as here, plaintiffs submitted examples of labels with the inaccurate wording.  *See id*.  The

13   defendant in that case moved to dismiss under Rule 9(b), and the Court rejected that argument,

14   finding that exemplar product labeling is sufficient when "determining which products are at

15   issue [] does not present a challenge."  *Id*.  The same is true here.

16        *United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213 (W.D. Wash.

17   2011) (Lasnik, J.) is not to the contrary.  In that case, this Court held that it would be

18   unreasonable to "extrapolate a broader scheme from [a] lone statement."  *Id*. at 1222.  Here,

19   Plaintiffs tested multiple bags of coffee from each Defendant: they are not extrapolating from a

20   "lone" example.

21   _____

[6] *See also, e.g.*, *United States ex rel. Morgan v. Champion Fitness, Inc.*, No. 1:13-CV-1593, 2018
22   WL 5114124, at *3 (C.D. Ill. Oct. 19, 2018) ("[E]very district court in the circuit[] has allowed the
    use of representative examples to serve as the requisite substantiation for Rule 9(b)."); *Puerto Rico*
23   *Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*, No. 14-1616 (FAB), 2016
    WL 3406091, at *3 (D.P.R. June 16, 2016) ("Rule 9(b) does not require allegations of every
24   fraudulent claim; rather, 'providing *some* representative examples of defendants' alleged
    fraudulent conduct' satisfies Rule 9(b)'s particularity requirement." (internal punctuation
25   omitted)); *United States ex rel. Fox Rx, Inc. v. Omnicare*, No. 1:11-cv-962-WSD, 2013 WL
    2303768, at *7 (N.D. Ga. May 17, 2013) ("[P]rolonged multi-act schemes may satisfy Rule 9(b)
26   by pleading examples of the fraudulent actions alleged rather than pleading the details of every
    act.").

**12(b)(6) Opp.**
No. 2:19-cv-290
- 20 -
KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

**2.      Plaintiffs are not required to detail facts known only to other parties.**

The general rule (and commonsense intuition) that exemplar labels are sufficient to meet Rule 9(b) is especially true here because Plaintiffs cannot yet allege the exact labeling found on discontinued products.  It is well-established that a plaintiff may allege facts "on information and belief when the facts in question are peculiarly within the opposing party's knowledge" so long as the complaint sets forth the factual basis for the plaintiff's beliefs.  *Straightshot Commc'ns, Inc. v. Telekenex, Inc.*, No. C10-268Z, 2011 WL 1770935, at *8 (W.D. Wash. May 9, 2011) (Zilly, J.) (citation omitted); *see also, e.g.*, *Ryan-Beedy v. Bank of New York Mellon*, 293 F. Supp. 3d 1101, 1109 (E.D. Cal. 2018) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989)).

Similarly, if Plaintiffs' factual allegations "sound in fraud," that fraud was not perpetuated against Plaintiffs, but against third-party consumers.  For that reason, to whatever extent Rule 9(b) does apply, "less particularity is required" than if Plaintiffs were asserting that *they* had been defrauded personally.  *Yucesoy v. Uber Technologies, Inc.*, No. 15-cv-262, 2016 WL 493189, at *4 (N.D. Cal. Feb. 9, 2016) ("[L]ess particularity is required where the plaintiff is not asserting that the fraud was committed against it but against a third party." (citation omitted)).

**D.      The Communications Decency Act does not bar claims against online retailers.**

Defendants also argue that Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230 immunizes online retailers from liability.  *See* Dkt. 106 at 16-18.  They are incorrect: the CDA permits claims brought under the Lanham Act because the CDA cannot be "construed to limit or expand any law pertaining to intellectual property," 47 U.S.C. § 230(e)(2), and any hypothetical immunity would be particularly unwarranted on the facts of this case.

**1.      The CDA permits all Lanham Act claims expressly.**

The text of the CDA expressly provides that it cannot be "construed to limit or expand any law pertaining to intellectual property."  47 U.S.C. § 230(e)(2).  This includes claims under the

12(b)(6) Opp.
No. 2:19-cv-290

- 21 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1   Lanham Act.  *See, e.g., Gen. Steel Domestic Sales, LLC v. Chumley*, No. 14-CV-01932-REB-

2   CBS, 2015 WL 4911585, at *9 (D. Colo. Aug. 18, 2015) ("The immunity provided by § 230 does

3   not apply to the Lanham Act claim…").  For this reason, courts in this district and throughout the

4   Ninth Circuit consider the merits of claims under the Lanham Act even when the CDA preempts

5   other claims under state law.  *See, e.g., Lasoff*, 2017 WL 372948, at *4; *Parts.com, LLC v.

6   Yahoo! Inc.*, 996 F. Supp. 2d 933, 938 (S.D. Cal. 2013).

7          Defendants' cases are not to the contrary.  Indeed, two support Plaintiffs' position

8   directly.  *See Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015);

9   *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1117 (W.D. Wash. 2004).  In those

10  cases, courts analyzed Lanham Act claims on the merits despite dismissing state law claims under

11  the CDA.  *See id*.  And one of Defendants' cases involved *only* state law claims.  *See Hiam v.

12  HomeAway.com, Inc.*, 267 F. Supp. 3d 338, 346 (D. Mass. 2017) ("The CDA, therefore, precludes

13  a state law claim where three criteria are met . . . .").  It has no relevance to this litigation.  *Cf.

14  Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118–19 (9th Cir. 2007) ("[W]e construe the term

15  'intellectual property' to mean 'federal intellectual property' . . . .").

16         Defendants' remaining two cases considered the situation in which an antivirus program

17  incorrectly identifies a safe product or website as harmful.  *See Enigma Software Grp. USA LLC

18  v. Malwarebytes Inc.*, No. 5:17-CV-02915-EJD, 2017 WL 5153698, at *3 (N.D. Cal. Nov. 7,

19  2017); *Associated Bank-Corp. v. Earthlink, Inc.*, No. 05-C-0233-S, 2005 WL 2240952, at *3

20  (W.D. Wis. Sept. 13, 2005).[7]  The law expressly shields antivirus software manufacturers from

21  liability in such circumstances.  *See Enigma Software*, 2017 WL 5153698, at *3 (citing *Zango,

22  Inc. v. Kaspersky*, 568 F.3d 1169 (9th Cir. 2009)).  This case, however, involves the marketing

23  and sale of products that violate the Act, not antivirus software.

24

25  ─────────────────────
    [7] The Wisconsin court's short opinion did not address the interplay between the CDA and the Act,
26  nor did it specifically cite the provision of law that immunizes antivirus providers.

**12(b)(6) Opp.**
No. 2:19-cv-290

\- 22 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1    **2.   Even if the CDA did not exempt all claims under the Lanham Act,**
2    **Plaintiffs' claims would be permissible.**

3    Out of an abundance of caution, Plaintiffs respectfully stress that any hypothetical CDA

4    immunity would not extend to this litigation for three reasons.  First, the Retailers do not attempt

5    to argue that the CDA somehow bars Plaintiffs' claim for false designation of origin.  *See* 15

6    U.S.C. § 1125(a)(1)(A).  They argue only (and incorrectly) that Plaintiffs' false designation of

7    origin claim fails on the merits.  Second, all of the Retailers other than Amazon sell the at-issue

8    products in "brick and mortar" stores in addition to online.  The Retailers do not contend that the

9    CDA extends to such sales.  Third, Cost Plus/World Market and Kroger sell their own "private

10   label" coffee in addition to third-party products.  The Retailers cannot and do not contend that the

11   CDA would somehow bar claims for such products.

12   Plaintiffs, moreover, note that all Retailers sell and ship the allegedly false representations

13   to consumers (Amazon also allows consumers to buy products from third-party sellers, and some

14   of those sellers ship the products themselves).  As explained above, while Defendants do not cite

15   any case in which a Court has held that the CDA bars *any* claim under the Lanham Act, Plaintiffs

16   respectfully submit that the CDA could not be read to bar a claim when the Defendant physically

17   ships the false representation (package and receipt) to the consumer because the Defendant is then

18   responsible for that representation in its physical form.

19   **E.   Plaintiffs may plead in the alternative.**

20   As explained above, Section 43(a) of the Lanham Act provides two independent bases for

21   liability: false designation of origin and false advertising.  *See, e.g.*, *Lexmark*, 572 U.S. at 122;

22   *Classic Media*, 532 F.3d at 990-91.  Plaintiffs allege that Defendants are liable under both prongs,

23   and courts permit plaintiffs to maintain cases alleging violations of both.  *See Belmora*, 819 F.3d

24   at 715 (permitting the Plaintiff to proceed under theories of both false association and false

25   advertising); *see also Contessa Food Prods., Inc. v. Lockpur Fish Processing Co., Ltd.*, No.

26   CV98-8218, 2003 WL 25778704, at *2–3 (C.D. Cal. Jan. 29, 2003) (considering the merits of

**12(b)(6) Opp.**
No. 2:19-cv-290

- 23 -

#1255176 v1 / 72448-001

1  both claims on summary judgment, finding neither proven).  Indeed, even if the bases for

2  Plaintiffs' claims were inconsistent (they are not), the Federal Rules provide that "[a] party may

3  state as many separate claims or defenses as it has, regardless of consistency."  *Hillis v.*

4  *Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) (quoting Fed. R. Civ. P. 8(d)(2)-(3)); *Preston v.*

5  *Boyer*, No. C16-1106, 2018 WL 4103668, at *2 (W.D. Wash. Aug. 29, 2018) (Theiler, MJ.); *cf.,*

6  *e.g., Chan v. AT&T Mobility LLC*, No. C11-1766, 2012 WL 13019050, at *2 (W.D. Wash. July

7  18, 2012) (Robart, J.) ("[E]ven if the court accepted [Defendant's] argument that the allegations

8  are conditional (rather than pleaded in the alternative), the cases on which [Defendant] relies do

9  not support its position that such pleading is grounds for dismissal.").

10      Defendants' caselaw does not support a contrary conclusion.  *Contra* Dkt. 106 at 11.  In

11  *Lasoff v. Amazon.com, Inc.*, 741 Fed. App'x. 400, 402 (9th Cir. 2018) (unpublished), the Ninth

12  Circuit held that summary judgment against a plaintiff's false advertising claim was proper when

13  the court had already separately granted summary judgment for a factually identical trademark

14  infringement claim.  The two claims in *Lasoff* rested on identical facts, which the plaintiff had

15  failed to prove.  *Id.* at 402.  That summary judgment opinion does not somehow stand for the

16  proposition that a plaintiff cannot plead false designation of origin and false advertising in the

17  alternative.

18  **VI.**     **CONCLUSION**

19      For the above reasons, Plaintiffs respectfully ask this Court to deny Defendants' motions

20  to dismiss in their entirety.  In the alternative, Plaintiffs request leave to cure any pleading

21  deficiencies.

22

23

24

25

26

**12(b)(6) Opp.**
No. 2:19-cv-290

- 24 -

#1255176 v1 / 72448-001

Dated: June 24, 2019

KARR TUTTLE CAMPBELL
*Attorneys for the Plaintiffs*

*s/ Nathan T. Paine*
Nathan T. Paine, WSBA #34487
Mark A. Bailey, WSBA #26337
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
206.223.1313
npaine@karrtuttle.com

*s/ Paul Richard Brown*
Paul Richard Brown, WSBA #19357
Daniel T. Hagen, WSBA #54015
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
206.223.1313
pbrown@karrtuttle.com
*Attorneys for the Plaintiffs*

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

*s/ Jason L. Lichtman*
Jason L. Lichtman (*pro hac vice*)
Daniel E. Seltz (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY  10013
212.355.9500
jlichtman@lchb.com

Michael W. Sobol (*pro hac vice*)
275 Battery Street
San Francisco, CA 94111
415.956.1000

Andrew Kaufman (*pro hac vice*)
222 2nd Avenue South, Suite 1640
Nashville, TN  37201
615.313.9000

*Attorneys for the Plaintiffs
and the Proposed Class*

**12(b)(6) Opp.**
No. 2:19-cv-290

- 25 -

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
SEATTLE, WASHINGTON 98104

#1255176 v1 / 72448-001

1

**CERTIFICATE OF SERVICE**

2
   I, Sherelyn Anderson affirm and state that I am employed by Karr Tuttle Campbell in

3
King County, in the State of Washington. I am over the age of 18 and not a party to the within

4
action. My business address is: 701 Fifth Ave., Suite 3300, Seattle, WA  98101. On this day, I

5
caused to be filed with the Court a true and correct copy of the foregoing Plaintiffs' Consolidated

6
Opposition to Defendants Three Motions to Dismiss, via the Court's electronic filing system,

7
which caused service of the document to all parties registered to receive notifications through

8
CM/ECF.

9
   I declare under penalty of perjury under the laws of the State of Washington that the

10
foregoing is true and correct, to the best of my knowledge.

11
   Dated this 24th day of June 2019, at Seattle, Washington.

12
                              _s/ Sherelyn Anderson_____
                              Sherelyn Anderson
13
                              Litigation Legal Assistant

14

15

16

17

18

19

20

21

22

23

24

25

26

**12(b)(6) Opp.**
No. 2:19-cv-290

- 26 -

#1255176 v1 / 72448-001