# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| BRUCE CORKER d/b/a RANCHO ALOHA; COLEHOUR BONDERA and MELANIE BONDERA, husband and wife d/b/a KANALANI OHANA FARM; and ROBERT SMITH and CECELIA SMITH, husband and wife d/b/a SMITHFARMS, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation; AMAZON.COM, INC., a Delaware corporation; HAWAIIAN ISLES KONA COFFEE, LTD., LLC, a Hawaiian limited liability company; COST PLUS/WORLD MARKET, a subsidiary of BED BATH & BEYOND, a New York corporation; BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC., a Colorado corporation; JAVA LLC, a Michigan limited liability company; MULVADI CORPORATION, a Hawaii corporation; COPPER MOON COFFEE, LLC, an Indiana limited liability company; GOLD COFFEE ROASTERS, INC., a Florida corporation; CAMERON'S COFFEE AND DISTRIBUTION COMPANY, a Minnesota corporation; PACIFIC COFFEE, INC., a Hawaii corporation; THE KROGER | Case No. 2:19-cv-00290-RSL<br><br>**STIPULATED MOTION FOR ENTRY OF PROTOCOL FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")** |

CO., an Ohio corporation; WALMART INC., a Delaware corporation; BED BATH & BEYOND INC., a New York corporation; ALBERTSONS COMPANIES INC., a Delaware Corporation; SAFEWAY INC., a Delaware Corporation; MNS LTD., a Hawaii Corporation; MARMAXX OPERATING CORP. d/b/a T.J. MAXX and MARSHALLS, a Delaware corporation; SPROUTS FARMERS MARKET, INC. a Delaware corporation,

Defendants.

The parties[1] hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.    ESI Disclosures**

Within 14 days[2] after the entry of this Order or November 14, 2019, whichever is sooner, each

---

[1] The "parties" and "defendants" include all parties to this case and defendants, except for BCC Assets, LLC d/b/a Boyer's Coffee Company, Inc.

[2] Except for (1) Kroger, who will have 30 days after the entry of this Order or December 2, 2019, whichever is sooner, to disclose the information required in Section B for its Harris Teeter brand; (2) Albertsons and Safeway who will have until December 9, 2019 to disclose the information required in Section B; and (3) Amazon, who has 30 days after the entry of this Order or December 2, 2019, whichever is sooner, to disclose the information required in Section B.

party shall disclose:

1. <u>Custodians.</u> Plaintiffs and distributor defendants shall disclose up to 5 custodians, retailer defendants (including those with at-issue private label products) shall disclose up to 7 custodians. The parties shall meet and confer if either party believes additional custodians would be proportionate to the needs of the litigation. See Fed. R. Civ. P. 26(b)(1). The parties make no further representations or agreements regarding custodians and whether or not they should be limited or expanded. This stipulated ESI order does not create a presumptive limit on custodians for any party.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.     Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2.      All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (C)(3) or (D)(1)-(2) below).

3.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a.  Deleted, slack, fragmented, or other data only accessible by forensics.
    b.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
    c.  On-line access data such as temporary internet files, history, cache, cookies, and the like.
    d.  Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).
    e.  Back-up data that are substantially duplicative of data that are more accessible elsewhere.
    f.  Server, system or network logs.
    g.  Data remaining from systems no longer in use that is unintelligible on the systems in use.
    h.  Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**D.     Privilege**

1.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

2.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

3.      The production of privileged or work-product protected documents, electronically stored information ("ESI") or information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).  Nothing contained herein

is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

4. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

5. Privilege Log Based on Metadata. The parties agree that privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

**E.     ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search methodology.</u> The Parties will meet and confer in good faith to determine how each of them will review ESI from such custodians (e.g., predictive coding, search terms). Should the parties employ search terms, in the absence of agreement on appropriate search terms, the following procedures shall apply:

a. A producing party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. The parties shall meet and confer to attempt to reach an agreement on the producing party's search

terms and/or other methodology.

  b. If search terms or queries are used to locate ESI likely to contain discoverable information, a requesting party is entitled to no more than 5 additional terms or queries to be used in connection with further electronic searches absent a showing of good cause or agreement of the parties. The 5 additional terms or queries, if any, must be provided by the requesting party within 14 days of receipt of the producing party's production.

  c. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. Absent a showing of good cause, each search term or query returning more than 250 megabytes of data is presumed to be overbroad, excluding Microsoft PowerPoint files, image and audio files, databases, and similarly large file types.

  d. The producing party shall search both non-custodial data sources and ESI maintained by the custodians identified above.

  3. <u>Format.</u> The Parties shall generally produce ESI that is responsive, not privileged, and not work product, in electronic format as a Bates numbered single-page TIFF image. The production of documents requiring color shall be made in single page JPEG format that provides sufficient quality for the review of these documents and/or ESI to the extent reasonably possible. All production items will be provided with a delimited data file or "load file." Acceptable formats for the load file are .log, .opt, .dii .lfp, .txt, .dat, or .csv. Each party will designate its preferred load file format and provide specific details regarding the structure/format of the preferred load file. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Each deliverable volume should limit directory contents to approximately 1000 files per folder. Unless otherwise agreed to by the parties, files that are not easily converted to or reviewable in image format, such as spreadsheet, database, drawing and

audio/video files, should be produced in native format. Documents produced natively shall be represented in the set of imaged documents by a slip sheet indicating the production identification number and confidentiality designation for the native file that is being produced

4. <u>Document Unitization</u>. Emails and related attachments will be produced such that their parent-child or family relationship is maintained. If the only responsive document in a family is entirely privileged, then the non-responsive documents in that family need not be produced. If an email contains attachments, each attachment should be produced sequentially following the email. When emails are converted to TIFF for production, they should be imaged in a manner that displays the following headers: (i) the sender, (ii) the recipient(s), (iii) the carbon-copy recipients ("CCs"), (iv) the blind-copy recipients ("BCCs"), if available, (v) the date and time the email was sent, and (vi) the subject of the email. The Parties will attempt in good faith to unitize documents correctly.

5. <u>Electronic Production of Physical Documents.</u> Whenever practicable, documents that are located solely in physical hardcopy format are to be scanned and produced as text-searchable TIFF or PDF files in lieu of photocopy production in their physical form.

6. <u>Databases.</u> Databases may contain substantial information that is not relevant or responsive. Thus, a Party may opt to produce relevant and responsive information from databases in an alternate, static format, such as a report or data table, and these reports or data tables may be used by the Parties (including as evidence in support of a motion or at trial) in lieu of, and without production of, the original database. Should a Party opt to produce such information as a report/data table, any report/data table that is produced will be deemed authentic and an accurate representation of information included in the counterpart database. A Party that withholds any part of a database as non-responsive to a request for production should not later be permitted to rely on the withheld information in the event that such information was responsive to the request absent good cause or lack of prejudice to the receiving party.

7. <u>De-duplication.</u> A Party is only required to produce a single copy of a

responsive document (provided that all custodians are identified in an "All Custodian" or other metadata field). Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash5 value matching. A Party is only required to produce the inclusive email(s) in an email chain, including any associated attachments. Attachments for each inclusive e-mail shall be produced in accordance with the terms of Paragraph 5 above. Parties may remove relevant, non-inclusive emails from production consideration provided the excluded content is included in an inclusive email within the production set or designated on the privilege log. Any email that changes recipients shall identified as inclusive and shall be produced if relevant and not privileged. Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced. To the extent the Parties de-duplicate stand-alone electronic documents against an email attachment, the attachment to the email must be the document that is produced.

        8. <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced: document type; custodian and duplicate custodians; author/from; recipient/to, cc and bcc; title/subject; file name and size; original file path; date and time created, sent, modified and/or received; and hash value.

**F.     Federal Rules**

The parties agree that discovery must be conducted in furtherance of the Federal Rules. Accordingly, this Protocol should be interpreted to further the just, speedy, and inexpensive resolution of this action. Fed. R. Civ. P. 1.

**G.     Resolution of Disputes**

The Parties shall meet and confer in good faith to resolve any dispute arising in regard to ESI and/or any condition or term of this Protocol, and, to the extent possible, shall resolve any such disputes without involving the Court.

| | |
|---|---|
| Dated: October 31, 2019 | Dated: October31, 2019 |
| Respectfully submitted, | Respectfully submitted, |
| DAVIS WRIGHT TREMAINE LLP<br>*Attorneys for Defendants Cameron's Coffee and Distribution Company; Gold Coffee Roasters, Inc.; The Kroger Co.; Albertson's Companies Inc.; Safeway Inc.; Walmart, Inc.; The TJX Companies d/b/a T.J. Maxx; Marshalls of MA, Inc. d/b/a Marshalls; Amazon.Com, Inc.; Copper Moon Coffee LLC; and Bed Bath & Beyond Inc.*<br><br>By *s/ Jaime Drozd Allen*<br>Jaime Drozd Allen, WSBA #35742<br>Stephen M. Rummage, WSBA #11168<br>Ambika Doran, WSBA #38237<br>Jacob M. Harper (*pro hac vice*)<br>Benjamin J. Robbins, WSBA #53376<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104-1610<br>Telephone: (206) 757-8039<br>Fax: (206) 757-7039<br>E-mail: jaimeallen@dwt.com<br>E-mail: steverummage@dwt.com<br>E-mail: ambikadoran@dwt.com<br>E-mail: jharper@dwt.com<br>E-mail: benrobbins@dwt.com<br><br>ARNOLD & PORTER KAYE SCHOLER LLP<br>*Attorneys for Defendant Bed Bath & Beyond Inc. and Copper Moon Coffee LLC*<br><br>Trenton H. Norris (pro hac vice)<br>Trent.Norris@arnoldporter.com<br>Tommy Huynh (pro hac vice)<br>Tommy.Huynh@arnoldporter.com<br>Three Embarcadero Center, 10th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 471-3100<br>Fax: (415) 471-3400 | KARR TUTTLE CAMPBELL<br>*Attorneys for Plaintiffs and the Proposed Class*<br><br>By: *s/ Nathan Paine* (per email authorization)<br>Paul Richard Brown, WSBA #19357<br>Nathan T. Paine, WSBA #34487<br>701 Fifth Avenue, Suite 3300<br>Seattle, Washington 98104<br>Telephone: (206) 223-1313<br>E-mail: pbrown@karrtuttle.com<br><br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>*Attorneys for Plaintiffs and the Proposed Class*<br><br>By: *s/ Daniel Seltz* (per email authorization)<br>Jason L. Lichtman<br>Daniel E. Seltz<br>250 Hudson Street, 8th Floor<br>New York, NY 10013<br>Telephone: (212) 355-9500<br>E-mail: jlichtman@lchb.com<br><br>CADES SCHUTTE LLP<br>*Attorneys for Defendant MNS Ltd.*<br><br>By *s/ Kelly G. LaPorte* (per email authorization)<br>Kelly G. LaPorte, *pro hac vice*<br>Nathaniel Dang, *pro hac vice*<br>1000 Bishop Street, 12th Floor<br>Honolulu, HI 96813<br>Ph: (808) 521-9200  Fax: (808) 521-9210<br>E-mail: klaporte@cades.com<br>E-mail: ndang@cades.com |

| | |
|---|---|
| 1 | DORSEY & WHITNEY LLP<br>*Attorneys for Defendant Sprouts Farmers Market, Inc.* |
| 2 | |
| 3 | By *s/ Brian Janura* (per email authorization)<br>J. Michael Keyes, WSBA #29215 |
| 4 | Erin C. Kolter, WSBA #53365<br>Brian J. Janura, WSBA #50213 |
| 5 | Columbia Center<br>701 Fifth Avenue, Suite 6100 |
| 6 | Seattle, WA 98104<br>Telephone: (206) 903-8800 |
| 7 | E-mail: keyes.mike@dorsey.com<br>E-mail: kolter.erin@dorsey.com |
| 8 | E-mail: janura.brian@dorsey.com |
| 9 | |
| 10 | LANE POWELL PC<br>*Attorneys for Defendant Hawaiian Isles Kona Coffee Company, Ltd., Costco Wholesale Corporation, CostPlus, Inc. and L&K Coffee Co. LLC* |
| 11 | |
| 12 | By *s/ Erin M. Wilson* (per email authorization) |
| 13 | Erin M. Wilson, WSBA No. 42454<br>Tiffany Scott Connors, WSBA No. 41740 |
| 14 | Jessica Walder, WSBA No. 47676<br>1420 Fifth Avenue, Suite 4200 |
| 15 | P.O. Box 91302<br>Seattle, WA 98111-9402 |
| 16 | Ph: (206) 223-7000  Fax: (206) 223-7107 |
| 17 | E-mail: wilsonem@lanepowell.com<br>E-mail: connorst@lanepowell.com |
| 18 | E-mail: walderj@lanepowell.com |
| 19 | |
| 20 | BULLIVANT HOUSER BAILEY, PC<br>*Attorneys for Defendant MNS Ltd.* |
| 21 | |
| 22 | By *s/ Daniel R. Bentson* (per email authorization)<br>Daniel R. Bentson, WSBA #36825 |
| 23 | Owen R. Mooney, WSBA #45779<br>1700 Seventh Avenue, Suite 1810 |
| 24 | Seattle, WA 98101<br>Ph: (206) 292-8930  Fax: (206) 386-5130 |
| 25 | E-mail: dan.bentson@bullivant.com<br>E-mail: owen.mooney@bullivant.com |
| 26 | |

STIPULATED MOTION FOR ENTRY OF PROTOCOL FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI") - 10

BUCHALTER
A Professional Corporation
*Attorneys for Defendant Mulvadi Corporation*

By *s/ Bradley P. Thoreson* (per email authorization)
Bradley P. Thoreson, WSBA #18190
1420 Fifth Ave., Ste. 3100
Seattle, WA 98101-1337
Telephone: (206) 319-7052
E-mail: bthoreson@buchalter.com


WILSON SMITH COCHRAN DICKERSON
*Attorneys for Defendant Pacific Coffee, Inc.*

By *s/ Maria E. Sotirhos* (per email authorization)
Alfred E. Donohue, WSBA #32774
Maria E. Sotirhos, WSBA #21726
901 Fifth Avenue, Suite 1700
Seattle, WA 98164
Ph: (206) 623-4100  Fax: (206) 623-9273
E-mail: donohue@wscd.com
E-mail: sotirhos@wscd.com


BRYAN CAVE LEIGHTON PAISNER LLP
*Attorneys for Defendant Cost Plus, Inc.*

By *s/ Merrit Jones* (per email authorization)
Marcy J. Bergman (CA Bar No. 75826, *pro hac vice*)
Merrit M. Jones (CA Bar No. 209033, *pro hac vice*)
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070
Ph: (415) 675-3400  Fax: (415) 675-3635
E-mail: Marcy.Bergman@bclplaw.com
E-mail: Merrit.Jones@bclplaw.com

# ORDER

Based on the foregoing, IT IS SO ORDERED.

Dated this 1st day of November, 2019.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge