UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUCE CORKER, *et al.*,

    Plaintiffs,

v.

COSTCO WHOLESALE CORPORATION, *et al.*,

    Defendants.

NO. C19-0290RSL

ORDER GRANTING IN PART RETAILERS' MOTION TO DISMISS

This matter comes before the Court on the "Retailers' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)." Dkt. # 106.[1] The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles

---

[1] The defendants bringing this motion are The Kroger Co., Amazon.com, Inc., Walmart Inc., Albertsons Companies, Inc., Safeway Inc., The TJX Companies d/b/a T.J. Maxx, Marshalls of MA, Inc. d/b/a Marshalls, Costco Wholesale Corporation, Cost Plus, Inc., Bed, Bath, & Beyond Inc., MNS Ltd., and Sprouts Farmers Market, Inc. Dkt. # 106 at 6 n.1.

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 1

the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded factual allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

Having reviewed the First Amended Complaint and the memoranda and supplemental authority submitted by the parties,[2] the Court finds as follows:

Plaintiffs are coffee farmers in the Kona District of the Big Island of Hawaii. They allege that moving defendants sell coffee products that falsely designate the geographic origin of the coffee as "Kona." All of the retailers are accused of selling deceptively labeled "Kona" coffee produced and packaged by one or more of the supplier defendants. Cost Plus and Kroger are also accused of selling their own private label "Kona" coffee that falsely designate's the coffee's geographic origins. Dkt. # 81 at ¶¶ 9 and 17. Plaintiffs provide examples of the private label and third-party packaging in which the offending products are sold by the retailers and allege that the products carrying the Kona label (and other symbols suggestive of a tropical provenance) actually contain little to no coffee from the Kona District. With regards to the private label

---

[2] This matter can be decided on the papers submitted. The retailer defendants' request for oral argument is DENIED.

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 2

products, plaintiffs further allege that the retailer defendants deliberately and intentionally mislead consumers into believing their products contain an appreciable amount of Kona coffee beans in order to use the reputation and goodwill of the Kona name to justify higher prices for what is actually ordinary commodity coffee. Plaintiffs have tested packages of the retailer defendants' private label "Kona" products as well as the third-party "Kona" products sold by the retailers and found that their ratios of various metal (strontium to zinc, barium to nickel, cobalt to zinc, and manganese to nickel) are well outside the range of that which is found in authentic Kona coffee. Plaintiffs expressly allege that the private label and third-party designation of Kona as the origin of the coffee in the "Kona" products they sell is false. Plaintiffs assert that, even if there were some Kona coffee in the products manufactured and/or sold by the retailer defendants, it is not the meaningful percentage that a consumer would expect based on the packaging.

Based on these allegations, plaintiffs assert claims of false designation of origin, false advertising, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The retailer defendants argue that the claims should be dismissed because (1) plaintiffs have failed to plausibly allege a false advertising claim under Section 43(a)(1)(B), (2) plaintiffs have failed to plausibly allege a false association claim under Section 43(a)(1)(A), (3) the claims are grounded in fraud but are not pled with the particularity required under Fed. R. Civ. P. 9(b), and (4) the claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230.

**(1) False Advertising Claim under Section 43(a)(1)(B)**

In the context of this case, a false advertising claim under Section 43(a)(1)(B) requires plaintiffs to plausibly allege that the retailer defendants "use[]" "in commercial advertising or

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 3

promotion" a misrepresentation regarding the geographic origin of the retailers' or another person's coffee products. 15 U.S.C. § 1125(a)(1)(B). The first element of the Ninth Circuit's five-element test for false advertising claims requires "a false statement of fact by the defendant in a commercial advertisement about its own or another's product." Skydive Ariz., Inc. v. Quattrocchi, 673 F.3d 1105, 1110 (9th Cir. 2012). To the extent that the moving defendants are merely retailers of products manufactured, produced, and packaged by third parties,[3] the issue is whether they made a false statement of fact in commercial advertising when they put the third-party vendor's product on their shelves or websites. There is limited case law on this subject, and the Ninth Circuit has not weighed in on this issue. Having surveyed the relevant court authority, however, the Court finds that the answer is "no." See Baldino's Lock & Key Serv., Inc. v. Google, Inc., 624 Fed. Appx. 81, 82 (4th Cir. 2015) ("[T]he locksmiths who generated the information that appeared on Defendants' websites are solely responsible for making any faulty or misleading representations or descriptions of fact" for purposes of Section 43(a)(1)(B)); Outlaw Lab., LP v. Shenoor Enter., 371 F. Supp.3d 355, 362-68 (N.D. Tex. 2019) (concluding that retailers are not liable for false advertising under the Lanham Act because they do not make a false statement simply be displaying or selling a product that was falsely labeled by another); Lasoff v. Amazon.com, Inc., C16-0151BJR, 2017 WL 372948, at *8 (W.D. Wash. Jan. 26, 2017) (holding that where the misrepresentation of which plaintiff complains originated with a

---

[3] In their moving papers, defendants neither acknowledge nor address plaintiffs' allegations that defendants Cost Plus and Kroger falsely and deliberately designated their private label coffees as from the Kona District. Arguments raised for the first time in reply (Dkt. # 118 at 9 n.1) have not been considered. To the extent plaintiffs have alleged that Cost Plus and Kroger not only retail other manufacturers' coffees, but also produce and package their own, they are properly categorized as "supplier defendants" and the claims against them may proceed.

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 4

third-party vendor, the liability for the false representations lies with the third-party vendor, not with the retailer who truthfully depicts what is for sale on its shelves or website); Optimum Techs., Inc. v. Home Depot USA, Inc., C04-3260TWT, 2005 WL 3307508, *5-6 (N.D. Ga. Dec. 5, 2005) (noting that, to be actionable under Section 43(a)(1)(B), a misrepresentation must be made "in commercial advertising or promotion," which presumes that the defendant be in commercial competition with the plaintiff, not merely a retailer of a third-party's goods). In addition, the policy implications of imposing liability for false advertising on all downstream participants in a retail chain are troubling. As noted by the Outlaw Laboratory court:

> Finally and significantly, the policy concerns stemming from a decision that holds retailers liable for false advertisements created and controlled solely by third parties could be severe. Here, Defendants undoubtedly sell many products—should they be responsible for scrutinizing and determining the veracity of every claim on every product label in their stores simply because they sell the product? At least under a false-advertising theory, the Court holds no; instead, to support a false advertising claims against these retailers, Plaintiff must plead in good faith allegations that support a finding that Defendants made false statements in the context of advertising or promotion.

371 F. Supp.3d at 368.

The Court does not mean to imply that a retailer can never be held liable on a false advertising claim under the Lanham Act. If, for example, a retailer controls or participates in the creation of the offending label or creates additional marketing materials for a product that amplify the manufacturer's misrepresentations, imposition of liability for false advertising may be appropriate. See JST Distr., LLC v. CNV.com, Inc., C17-6264PSG, 2018 WL 6113092 (C.D. Cal. Mar. 7, 2018) (allowing Lanham Act claim to proceed against retailer who marketed and advertised deceptively-labeled products on its website and was alleged to be "at the center of a

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 5

massive hub-and-spoke conspiracy to sell tainted" product). Plaintiffs have not, however, alleged such activities on the part of the moving defendants to the extent they were simply retailing products produced, manufactured, and packaged by third parties. The false advertising claims against the retailer defendants, acting solely in their roles as retailers, may not proceed.

**(2) False Association Claim under Section 43(a)(1)(A)**

To state a claim under Section 43(a)(1)(A) in the context of this case, plaintiffs must allege that the retailer defendants (1) used in commerce (2) a false designation of origin (3) which is likely to cause confusion as to the origin of the coffee they sell and (4) that such use has or is likely to damage plaintiffs. 15 U.S.C. § 1125(a)(1)(A). See <u>Freecycle Network, Inc. v. Oey</u>, 505 F.3d 898, 902 (9th Cir. 2007). The retailer defendants argue that plaintiffs have failed to allege a plausible claim of false association under Section 43(a)(1)(A) because there is no indication that defendants falsely linked their products with the plaintiff farmers, their businesses, or their products. Claims arising under Section 43(a)(1)(A) are generically described as "false association" claims (see <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118, 122 (2014)), but the plain language of the subsection prohibits more than just a false association with a particular producer or manufacturer. Section 43(a)(1)(A) provides a federal cause of action when a person's use of a word or symbol in commerce is likely to cause confusion "as to the . . . association of such person with another person, <u>or</u> as to the origin . . . of his goods . . . ." 15 U.S.C. § 1125(a)(1)(A) (emphasis added). The retailers conflate the two by omitting the word "or" and arguing that Section 43(a)(1)(A) requires a showing of confusion regarding the association of their goods with plaintiffs, as opposed to confusion regarding the association of the goods with a particular locality or region. Correcting the error shows,

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 6

however, that this provision applies where a person's use of a word or symbol would likely cause consumer confusion regarding the origin of the goods.

"Origin," in this context, has long been understood to include the geographic origin of the good or service. See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29-30 (2003) ("Although a case can be made that a proper reading of § 43(a), as originally enacted, would treat the word "origin" as referring only "to the geographic location in which the goods originated,". . . the Courts of Appeals considering the issue, beginning with the Sixth Circuit, unanimously concluded that it "does not merely refer to geographical origin, but also to origin of source or manufacture" . . . . .) (internal citations omitted); Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 750 (8th Cir. 1980) (finding that the original object of Section 43(a) was to codify the traditional protections afforded to persons and businesses in a specific locality or region against outsiders who falsely designated the origins of their products as the same geographical area). A claim of "false designation of origin" existed under the original version of Section 43(a) and was initially "understood to be limited to false advertising of geographic origin." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 777 (1992). Congress is presumed to be aware of the judicial constructions of its enactment and chose to use the same term - "origin" - in the 1989 revision of the Lanham Act that separated false association claims from false advertising claims. While Congress made clear that false advertising claims under Section 43(a)(1)(B) can only be based on misrepresentations regarding geographic origin, it used the broader term "origin" in the false association subsection. That term was left unmodified for purposes of the false association claim, and it had previously been construed to include geographic origin as well as the source of manufacture. Defendants have not identified any

statutory language or legislative history indicating that Congress meant to change the accepted construction of "origin" when it amended the Lanham Act in 1989.[4]

The retailer defendants further argue that plaintiffs' false association claim should be dismissed as duplicative of their false advertising claim. The claims offer "distinct bases of liability," however (Lexmark, 572 U.S. at 122), and the cases defendants cite do not require dismissal of one in favor of the other.

The retailer defendants, like the supplier defendants, argue that a false association claim under Section 43(a)(1)(A) requires a protectable ownership interest in a mark. The Court will assume, for purposes of this motion, that if plaintiffs were claiming that defendants used a mark that caused consumer confusion as to the relationship between the product and plaintiffs, plaintiffs would have to establish a protectable interest in the mark. Plaintiffs, however, are using Section 43(a)(1)(A) to challenge what they consider unfair competition, namely the false designation of the geographic origin of the coffee the retailer defendants sell. This kind of protection has historically been afforded by Section 43(a). Black Hills Jewelry, 663 F.2d at 750.

---

[4] Defendants cite Sugai Prods., Inc. v. Kona Kai Farms, Inc., 1997 WL 824022, at * 11 (D. Haw. Nov. 19, 1997), for the proposition that a false association of origin claim protects only against misrepresentations as to the identify of a product's manufacturer. While misrepresentations regarding a product's manufacturer undoubtedly fall within the scope of a false association claim, they are not the only types of claims that can be asserted. As recognized in Forschner Group v. Arrow Trading Co., 30 F.3d 348, 356 (2nd Cir. 1994), the only case cited by the Sugai court, if a word or words used in commerce misrepresent the product's geographic origin, a false association claim will lie. The problem in Forschner was that the phrase "Swiss Army" is not a geographic representation but rather a reference to a military unit. Id. Sugai's interpretation of Section 43(a)(1)(A) is not supported by textual or legislative analysis, and the cited authority does not stand for the proposition that misrepresentations of geographical origin are not a cognizable basis for a claim under Section 43(a)(1)(A). The Court declines to follow Sugai: it is not bound by the decision, is not persuaded by its reasoning, and notes that no other court has adopted Sugai's holding in the twenty-plus years since it was decided.

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 8

The Supreme Court has expressly held that Section 43(a) of the Lanham Act goes beyond trademark protection and makes actionable unfair competition claims such as that brought by plaintiffs.

> The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in ... commerce against unfair competition." 15 U.S.C. § 1127. While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection. As originally enacted, § 43(a) created a federal remedy against a person who used in commerce either "a false designation of origin, or any false description or representation" in connection with "any goods or services." 60 Stat. 441. . . .

Dastar, 539 U.S. at 28-29 (2003) (internal footnotes omitted). See also Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th Cir. 2016) ("Significantly, the plain language of § 43(a) does not require that a plaintiff possess or have used a trademark in U.S. commerce as an element of the cause of action."); Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc., 796 F.3d 576, 587 (6th Cir. 2015) ("As Dastar makes plain, an entity makes a false designation of origin sufficient to support a reverse passing off claim [under Section 43(a)(1)(A)] only where it falsely represents the product's geographic origin or represents that it has manufactured the tangible product that is sold in the marketplace when it did not in fact do so."). The Court finds that Section 43(a) provides a federal remedy for "a false designation of origin" - a phrase that has always been construed as encompassing false statements regarding the geographic origin of the product - without regard to the existence of a protectable trademark.

**(3) Pled With Particularity**

The retailer defendants argue that plaintiffs have failed to plead with particularity the

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 9

what, when, and where of the intentional falsehoods on which their false designation of origin claims are based. In the retailers' view, plaintiffs have failed to allege any false statements by the retailer defendants and do not identify which products contain the alleged false designation of origin. The Court disagrees: while it is possible that the alleged false statements may not give rise to a cognizable claim, may not be false, and/or may not cause consumer confusion, they are adequately pled. Taking the allegations against Costco as an example, plaintiffs allege that Costco "sells a variety of deceptive coffee products, including but not limited to Magnum Exotics." Dkt. # 81 at ¶ 126. Plaintiffs allege that certain Magnum Exotics products are marked with the word Kona on the front of the packaging and that the designation of origin is false. Id. at ¶ 11 and ¶ 99. Plaintiffs also allege that the Magnum Exotics "Kona" products contain deceptive taglines, slogans, and imagery that imply, falsely, that the coffee in its "Kona" products originated in the Kona District: examples of the offending text and imagery are provided. Id. at ¶ 99. Plaintiffs provide an image of the front of one of a Magnum Exotics Kona Blend Coffee package showing the use of the word Kona and associated tropical imagery. Id. at ¶ 100.

Plaintiffs have adequately alleged the who, what, when, where, and how of the allegedly false statements. Costco ("the who") is accused of using the word Kona and other text and imagery that implies that the coffee in the package it is selling originated from the Kona District (the "what") on the packaging of "Kona" Magnum Exotics products (the "where") that are stocked and sold at Costco's stores (the "when" and "how"). The fact that plaintiffs specifically identified exemplar products of the supplier defendants - providing an image of the packaging and test results confirming the absence of Kona coffee in the packages sold by the retailer

defendants - does not invalidate or make unclear the allegation that Magnum Exotics products marked with the word Kona and sold by Costco contain a false designation of origin.[5] The allegations adequately "inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007). Plaintiffs have met the Rule 9(b) pleading requirement.

**(4) Communications Decency Act**

The Communications Decency Act ("CDA"), 47 U.S.C. § 230, states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The retailer defendants argue that they are therefore immune from plaintiffs' claims to the extent they are based the fact that defendants offer offending products for sale on a website. Plaintiffs do not contest that the retailer defendants are providers/users of interactive computer services when they retail through a website, but argue that the statute's immunity does not "limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). As discussed above, however,

---

[5] At one point in the sixty-four page First Amended Complaint, plaintiffs allege that "[s]ampling has shown that nearly every product labeled 'Kona' in [the supplier defendants'] product lines misrepresents the origin of the coffee beans contained in the package." Dkt. # 81 at ¶ 61. Defendants latch onto this sentence, arguing that plaintiffs are not challenging every product labeled "Kona" and defendants therefore have no way of knowing what products are at issue in this case. The following sentences make clear, however, that plaintiffs are alleging a consistent practice of false designation of origin, even if a few Kona beans made their way into an individual package.

> Given the scarcity of authentic Kona coffee (remember that Kona coffee represents on 0.01% of the worldwide supply of coffee) and the high profitability of marketing commodity coffee as if it were Kona coffee, it is no surprise that any defendant that is willing to engage in such deceptive practices would consistently practice their deception across all product lines. An unscrupulous merchant selling counterfeit Rolex watches on a street corner tends not to mix a real Rolex into inventory every once in a while.

Id.

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 11

plaintiffs' claims in this case do not involve an intellectual property right or trademark: the false association claim that survives this motion to dismiss does not, therefore, fall within the CDA's intellectual property exception to immunity under the analysis recently adopted by the Ninth Circuit in <u>Enigma Software Group USA, LLC v. Malwarebytes, Inc.</u>, 938 F.3d 1026, 1038-39 (9th Cir. 2019) (noting that Section 43(a) is one of the few provisions of the Lanham Act that goes beyond trademark protection and holding that a claim of false advertising is barred by the CDA unless it involves an intellectual property right).

The reach of CDA immunity in this case is unclear. As plaintiffs point out and defendants concede, the immunity does not apply to goods stocked and sold in a physical store, and it does not apply to private label products sold on-line by Cost Plus or Kroger. In addition, plaintiffs argue that once an on-line sale is made, any act the retailer defendant takes in the physical world to deliver the offending package to the purchaser would not be covered by the CDA. Defendants have not responded to this argument. To the extent shipping a supplier's allegedly false designation of origin to a customer generates liability under Section 43(a)(1)(A), defendants have not established that the CDA's immunity provision would apply.

//

//

//

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 12

For all of the foregoing reasons, the retailer defendants' motion to dismiss (Dkt. # 106) is GRANTED in part and DENIED in part. Plaintiffs' Section 43(a)(1)(B) false advertising claim against the retailer defendants acting solely in their role as retailers is DISMISSED. Plaintiffs' Section 43(a)(1)(A) false association claim against the retailer defendants is barred by the CDA to the extent their conduct is limited to making a product available for sale on a website. Defendants' motion to dismiss is denied in all other respects.

Dated this 12th day of November, 2019.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART
RETAILERS' MOTION TO DISMISS - 13