The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

BRUCE CORKER d/b/a RANCHO ALOHA; COLEHOUR BONDERA and MELANIE BONDERA, husband and wife d/b/a KANALANI OHANA FARM; and ROBERT SMITH and CECELIA SMITH, husband and wife d/b/a SMITHFARMS, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

COSTCO WHOLESALE CORPORATION, a Washington corporation; AMAZON.COM, INC., a Delaware corporation; HAWAIIAN ISLES KONA COFFEE, LTD., LLC, a Hawaiian limited liability company; COST PLUS/WORLD MARKET, a subsidiary of BED BATH & BEYOND, a New York corporation; BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC., a Colorado corporation; L&K COFFEE CO. LLC, a Michigan limited liability company; MULVADI CORPORATION, a Hawaii corporation; COPPER MOON COFFEE, LLC, an Indiana limited liability company; GOLD COFFEE ROASTERS, INC., a Delaware corporation; CAMERON'S COFFEE AND DISTRIBUTION COMPANY, a Minnesota corporation; PACIFIC COFFEE, INC., a Hawaii corporation; THE KROGER CO., an Ohio corporation; WALMART INC., a Delaware corporation; BED BATH &

Case No. 2:19-cv-00290

**PLAINTIFFS' OPPOSITION TO CAMERON'S COFFEE AND DISTRIBUTION COMPANY, GOLD COFFEE ROASTERS, INC., AND THE KROGER CO.'S MOTION TO COMPEL DISCOVERY**

***Noted for Consideration:***
**June 19, 2020**

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

BEYOND INC., a New York corporation; ALBERTSONS COMPANIES INC., a Delaware Corporation; SAFEWAY INC., a Delaware Corporation; MNS LTD., a Hawaii Corporation; THE TJX COMPANIES d/b/a T.J. MAXX, a Delaware Corporation; MARSHALLS OF MA, INC. d/b/a MARSHALLS, a Massachusetts corporation; SPROUTS FARMERS MARKET, INC. a Delaware corporation; COSTA RICAN GOLD COFFEE CO., INC., a Florida corporation;

Defendants.

PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO COMPEL
(No. 2:19-cv-00290-RSL)

#1323110 v1 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## TABLE OF CONTENTS

I. PROCEDURAL HISTORY ..... 2

A. Many Defendants Have Produced Few Documents, and None Have Produced Documents Pre-Dating 2015 ..... 2

B. Defendants Have Served Voluminous, Disproportionate Discovery. ..... 3

C. Plaintiffs Offered to Compromise to Avoid the Primary Dispute Before the Court. ..... 3

D. Plaintiffs Agreed to Produce Many Pre-2015 Documents. ..... 4

II. ARGUMENT ..... 4

A. Defendants Are Not Entitled to Pre-Litigation Scientific Investigation Because It Is Consulting Expert Opinion. ..... 5

1. Plaintiffs' Scientific Testing Data Is Not Discoverable. ..... 7

2. If the Court Finds That Plaintiffs Must Produce Expert Evidence, Plaintiffs Should Only Be Ordered to Produce Expert Evidence Relied On in the Complaint. ..... 7

B. Defendants Are Not Entitled to Pre-2015 Discovery, Particularly Because Defendants Themselves Refuse to Produce Such Discovery. ..... 9

C. Defendants Should Not Be Permitted to Seek Irrelevant, Harassing, and Unduly Burdensome Discovery Into Absent Class Members. ..... 10

III. CONCLUSION ..... 12

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

# TABLE OF AUTHORITIES

Page

Cases

*A.B. v. Pac. Fertility Ctr.*, No. 18-CV-01586-JSC, 2019 WL 6605883 (N.D. Cal. Dec. 3, 2019) .......... 11

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .......... 10

*Does 1-10 v. Univ. of Washington*, No. C16-1212JLR, 2018 WL 3417017 (W.D. Wash. July 13, 2018) (Robart, J.) .......... 10

*Dover v. British Airways, PLC (UK)*, 2014 U.S. Dist. LEXIS 143995 (E.D.N.Y. Oct. 9, 2014) .......... 3, 6, 7, 8, 9

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85 (S.D.N.Y. 2016) .......... 3

*Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005) .......... 8

*In re Washington Mut. Mortg. Backed Sec. Litig.*, No. C09-37 MJP, 2011 WL 1789975 (W.D. Wash. May 9, 2011) (Pechman, J.) .......... 11

*Koo v. Rubio's Rests.*, Inc., 109 Cal. App. 4th 719, 135 Cal. Rptr. 2d 415 (2003) .......... 10

*Ludwig v. Pilkington N.A., Inc.*, 2003 U.S. Dist. LEXIS 17789 (N.D. Ill. Sept. 29, 2003) .......... 8

*Murray v. S. Route Mar., S.A.*, 2014 U.S. Dist. LEXIS 58852 (W.D. Wash. Apr. 28, 2014) (Lasnik, J.) .......... 5, 8

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......... 10

*Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264 (S.D.N.Y. 2019) .......... 10

*Plymovent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139 (D. N.J. 2007) .......... 5

*Sims v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 10067 (N.D. Cal. Dec. 27, 2006) .......... 8

*Taylor v. Universal Auto Grp. I, Inc.*, 2014 U.S. Dist. LEXIS 164312 (W.D. Wash. Nov. 24, 2014) .......... 10

*United States Inspection Servs. v. NL Engineered Sols., LLC*, 268 F.R.D. 614 (N.D. Cal. 2010) .......... 5, 6

*Wiegele v. FedEx Ground Package Sys.*, 2007 EL 628041 (S.D. Cal. Feb. 8, 2007) .......... 10

*Worley v. Avanquest N. Am., Inc.*, 2013 U.S. Dist. LEXIS 175305 (N.D. Cal. Dec. 13, 2013) .......... 8

*Zeiger v. Wellpet LLC*, 2018 U.S. Dist. LEXIS 110439 (N.D. Cal. June 29, 2018) .......... 3, 7

Rules

Fed. R. Civ. P. 23 .......... 10

Fed. R. Civ. P. 26(b) .......... 10

Fed. R. Civ. P. 26(b)(2) .......... 6

Fed. R. Civ. P. 26(b)(4)(D) .......... 5, 6, 7

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Plaintiffs are farmers who grow and sell coffee in the Kona District on the Big Island of Hawaii. Defendants are businesses that sell and distribute coffee labeled as "Kona Coffee," "100% Kona," and "Kona Blend," although their labels are false or misleading. In anticipation of litigation, Plaintiffs conducted comprehensive scientific testing to determine which products on the market were labeled "Kona coffee" accurately. Plaintiffs filed suit only against manufacturers and retailers whose products were deceptive. These Plaintiffs now ask the Court to deny Defendants' Motion to Compel three categories of information.

In their motion, Defendants primarily request *all* scientific testing about coffee from Plaintiffs' consulting experts regardless of relevance, privilege, or work product. While any testifying expert witnesses must, of course, produce their materials in accordance with this Court's orders and the federal rules, Defendants give no reason that the Court should order disclosure prior to that time, much less for disclosure of work product specifically protected by the Federal Rules. This is particularly so because Defendants know the origin of all the coffee in their products with a Kona label. Defendants do not need Plaintiff's scientific testing data to prove what they already know: they put little to no authentic Kona coffee in their products.

Defendants also seek broad categories of discovery going back more than a decade. This request, too, should be rejected. Defendants ostensibly seek these documents to support a defense of laches. But there are no documents demonstrating that Plaintiffs had knowledge of claims against these Defendants because Plaintiffs did not have knowledge of their claims against these defendants (nor could Plaintiffs have had such knowledge). In any event, if Defendants may seek pre-2015 discovery in support of a ill-founded laches defense, Plaintiffs must also be permitted discovery from that same period, both to counter Defendants' laches defense and establish tolling of the statute of limitation. Yet Defendants flatly refuse to produce any pre-2015 discovery. It would be unfair to permit Defendants to attempt to establish laches without also requiring them to produce the evidence that would show their own culpability from that same time period.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Defendants' motion concludes by seeking information in Plaintiffs' possession identifying individual class members and otherwise delving into class member identities, going so far as to suggest that understanding the "identity" of class members is relevant. Defendants offer no coherent argument that this information is relevant. To the contrary, Defendants' attempt to turn a proposed class action into discovery into each of the 600-1000 individual farmers is improper, and Defendants offer no case in which a court has permitted a defendant such extraordinary discovery.

## I. PROCEDURAL HISTORY

### A. Many Defendants Have Produced Few Documents, and None Have Produced Documents Pre-Dating 2015.

Obtaining relevant information from the Defendants has been difficult. Lichtman Decl. at ¶ 4-6. They have uniformly refused to provide any pre-2015 discovery regardless of relevance. *Id*., Exs. A at 1, B at 3, D at 1. Albertson's/Safeway has produced only a single document in response to Plaintiffs' multiple rounds of discovery requests. *Id*. at ¶5(c). Amazon has produced only two documents and has dragged its feet on producing third-party sales data. *Id*., Ex. C at 2. Amazon and Walmart have refused to provide international sales data despite having no legal basis to refuse such production. *Id*. at ¶5(d). TJ Maxx provided only a fraction of the requested sales and costs data, claiming it does not keep sales records for more than a year. *Id*. at ¶5(f). While meet and confers typically result in a trickle of additional documents, the glacial pace of discovery has caused a needless waste of resources.

Supplier Defendants have been similarly intransigent. Gold claims not to keep records of sales data at all and has produced only purchase orders beginning from the date of its receipt of a litigation hold letter from Plaintiffs served with the Complaint in February 2019. *Id.* at ¶5(g). Mulvadi has refused to produce any responsive documents beyond a couple of labels. *Id.* at ¶5(h). Only a few defendants have produced reports indicating the percentage of Kona coffee in their blends, which is information they are required to maintain by law and is central to this dispute. *Id.*

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

at ¶5(i). Documents and other discovery produced thus far, however, demonstrate that there is little to no Kona Coffee in Defendants' products. *Id.* at ¶5(j).

**B. Defendants Have Served Voluminous, Disproportionate Discovery.**

Plaintiffs are three small farms, none owned by more than a husband and wife. Yet Defendants have collectively served over 100 Requests for Production of Documents ("RFPs"), 20 Interrogatories ("ROGs"), and approximately 90 Requests for Admission ("RFAs"). *Id.* at ¶6. In responding to these discovery requests, Plaintiffs collected and reviewed 66,503 pages of hard copy documents, reviewed 32,680 ESI documents, and are in the process of reviewing an additional 144,903 ESI documents. *Id.* at ¶4. Plaintiffs have currently produced a total of 7,062 documents (14,388 pages). Defendants have thus already forced Plaintiffs to expend an extraordinary amount of effort reviewing information with no relevance to this case at all. *Id.*[1]

**C. Plaintiffs Offered to Compromise to Avoid the Primary Dispute Before the Court.**

Throughout the meet and confer process, Plaintiffs offered to compromise on disputed issues. *See, e.g., id.*, Exs. A, B at 2, C. When Defendants requested expert analysis, for example, Plaintiffs explained that Defendants were only entitled to expert material that would be used to support trial testimony. *See id.*, Ex. B at 2 (relying on *Dover v. British Airways, PLC (UK)*, 2014 U.S. Dist. LEXIS 143995, at *3 (E.D.N.Y. Oct. 9, 2014)). Defendants countered that other cases, including *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85 (S.D.N.Y. 2016) and *Zeiger v. Wellpet LLC*, 2018 U.S. Dist. LEXIS 110439, at *12-13 (N.D. Cal. June 29, 2018) indicated that Plaintiffs *did* need to produce expert evidence if they relied on that evidence in the Complaint.

Plaintiffs offered to compromise by producing the scientific testing referenced in the Complaint so long as Defendants did not seek additional expert information prior to expert

[1] Plaintiffs review has not been limited to documents dated after 2015 - 35,809 pages of the hard copy documents that have been reviewed date from earlier than 2015, as do 17,779 ESI documents. *Id*. at ¶ 4. 58,234 of the ESI documents in the review queue date from before 2015. *Id*. Of the documents already produced, 519 (1,103 pages) are dated pre-2015. *Id*.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

discovery. *Id*. This was a very reasonable compromise given that two of Defendants' cases indicated that this was the only thing that Plaintiffs were required to produce even if they *lost* a motion to compel. *Id*. Defendants rejected this offer, insisting on *all* expert work product. *Id*., Exs. A at 1; B at 1, 2; D at 2. In other words, Defendants refused to accept Plaintiffs suggestion that the parties agree to follow two of the cases Defendants cited.

**D. Plaintiffs Agreed to Produce Many Pre-2015 Documents.**

While Plaintiffs do not agree that they should have to produce documents prior to 2015 given that Defendants are refusing to produce such documents, Plaintiffs *did* ultimately agree to produce many of the documents that Defendants requested. This includes documents about their lobbying activities and any documents that indicated suspicion about counterfeiting in general (not the standard for laches). *See id.*, Ex. B at 4. Despite this, Defendants still refuse to produce any of their own pre-2015 documents relevant to laches.

## II. ARGUMENT

For years, Defendants wrongfully passed off ordinary commodity coffee as "Kona" coffee. Dkt. 271 (SAC) ¶ 2. When Defendants flooded the market with that coffee, they wrongfully profited from Plaintiffs' hard work, drove down the price of real Kona coffee, impeded the sale of genuine Kona coffee, and harmed the reputations of honest farmers. Dkt. 271 ¶ 2-3.

All information that could prove the deception, i.e. the origin of the coffee contained in the accused products, has long been in Defendants' exclusive control. Dkt. 271 ¶ 36. The type of testing required to determine the provenance of a coffee bean is expensive, and very few labs have the capability to perform it. Dkt. 271 ¶35. Plaintiffs were only able to have the testing performed in the months leading up to this litigation. Dkt. 271 ¶35. They used that testing to determine which coffee products on the market accurately or falsely designated Kona as the origin. When Plaintiffs filed their Complaint, they included those test results in the Complaint in the form of graphical representations of elemental abundance ratios showing that the coffee in the accused products had a chemical composition that was not consistent with coffee from Kona. Dkt. 271 ¶¶ 22-58.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

While the scientific testing was necessary to identify which coffee products falsely designated the origin of the contents, the scientific testing is unlikely necessary to prove Plaintiffs' case at trial. Instead, Plaintiffs need only rely on the discovery from Defendants showing the origins of the coffee in the product and the *de minimis* amount of Kona coffee therein. For Defendants that have produced documents or interrogatory answers revealing the contents of their accused coffee products, discovery has confirmed the pleadings.

**A. Defendants Are Not Entitled to Pre-Litigation Scientific Investigation Because It Is Consulting Expert Opinion.**

Plaintiffs have told Defendants that Plaintiffs will not produce documents "created by, or in the possession of, any expert witnesses." Lichtman Decl., Ex. A at 3. Plaintiffs' refusal is appropriate: neither party has yet disclosed any testifying experts under the scheduling order. In other words, Defendants seek discovery from Plaintiffs' consulting experts. Such material is protected from disclosure under Rule 26(b)(4)(D), which "creates a safe harbor whereby facts and opinions of non-testifying, consulting experts are shielded from discovery except upon a showing of exceptional circumstances." *United States Inspection Servs. v. NL Engineered Sols., LLC,* 268 F.R.D. 614, 617 (N.D. Cal. 2010) (quotation omitted).

Rule 26(b)(4)(D) provides in pertinent part:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only…(ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

The policy considerations of this rule include encouraging the rigorous and open investigation of one's case, pre-filing, without subjecting the results or process of that investigation to adversarial scrutiny. *See Plymovent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139, 143 (D. N.J. 2007); *see also Murray v. S. Route Mar., S.A.*, 2014 U.S. Dist. LEXIS 58852, at *2 (W.D. Wash. Apr. 28, 2014) (Lasnik, J.) ("The right to keep the opinions of non-testifying experts secret is based on the same concerns that motivate the work product doctrine: counsel must have a safe space in which

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

to investigate, analyze, and prepare his client's case without fear that the opposing party will be able to exploit his efforts").

Courts have recognized that these protections afforded to consulting experts are rooted in the fairness doctrine, thus Rule 26(b)(4)(D)'s protections are not considered waivable and compelling discovery from non-testifying consulting experts is impermissible. *See NL Engineered Sols*., 268 F.R.D. at 624 (surveying cases and legal authorities for the proposition).

Viewed under this lens, Defendants are not justified in obtaining the Complaint investigation *at all* because they do not need discovery on evidence that will not be presented at trial (or summary judgment) and thus requires no rebuttal. *That* evidence will come from Defendants' own discovery responses and potentially a scientific testifying expert, from whom Defendants can seek discovery as permitted by the Federal Rules and scheduling order. *Dover* is squarely on point. 2014 U.S. Dist. LEXIS 143995, at *3, *5 (consulting expert analysis underlying complaint should not be produced if plaintiffs are not relying on that analysis at trial). Put simply, Defendants suffer no prejudice if the Complaint investigation is withheld.

Defendants, however, seek the identification of "each coffee product tested" (whether referenced in the complaint or not) and the production of "all documents relating to testing alleged in the Complaint", "all documents relating to all testing you have done on any other products", and "all scientific studies you have commissioned or reviewed relating to the origin or content of coffee products[.]" Dkt. 257 at 17-18 (ROG 6 and RFPs 8, 9 & 13). None of these requests limit their scope to data, documents, or information that Plaintiffs referenced in the Complaint, much less that Plaintiffs will use to support their case at trial.[2] They simply are not entitled to this. *See Dover*, 2014 U.S. Dist. LEXIS 143995, at *3.

---

[2] Plaintiffs objected to ROG 6 and RFPs 8, 9, 10, 13, 47-50 on the basis of "attorney-client privilege, work product protection, Rule 26(b)(2), and premature [expert discovery]." Dkt. 257 at 17-21. Plaintiffs objected to RFPs 45, 46, and 51-63 on the basis that the requests are "Premature." Dkt. 257 at 19-21. All of the aforementioned requests seek information concerning Plaintiffs' scientific testing of products. Contrary to Defendants' position, relevance is not the basis for Plaintiffs' objection to the production of the scientific testing information. As illustrated in Defendants' Appendix A to their motion, Plaintiffs have objected to only two discovery requests at issue on the basis of relevance. Dkt. 257 at 17. Neither pertained to scientific testing. Those two objections were in response to Defendants' request that Plaintiffs "produce all documents and communications relating to any attempts or efforts to

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

**1. Plaintiffs' Scientific Testing Data Is Not Discoverable.**

Plaintiffs contend that the scientific testing performed by their consulting expert in Plaintiffs' prelitigation investigation is not discoverable. In *Dover*, the plaintiffs relied on a particular scientific analysis in its complaint and in opposition to a motion to dismiss but then disclaimed any future reliance; instead they ultimately conducted a different analysis with different data and sought work product protection for the original analysis. 2014 U.S. Dist. LEXIS 143995, at *3, *5. The court found that because the original analysis would not be an issue at trial there was no compelling reason it should be disclosed. *Id*. at 5.

Here, because Plaintiffs can prove the contents of Defendants' accused products through documents produced and admissions made by Defendants, they do not anticipate the need to use the scientific testing identified in the Complaint at trial. Therefore, consistent with the holding in *Dover*, the scientific testing qualifies for work product protection and is not discoverable. This case is even more compelling than *Dover* because Defendants did not put the analysis at issue in their motion to dismiss.

**2. If the Court Finds That Plaintiffs Must Produce Expert Evidence, Plaintiffs Should Only Be Ordered to Produce Expert Evidence Relied On in the Complaint.**

Even when courts find "exceptional circumstances" meriting disclosure under Rule 26(b)(4)(D)'s protections, courts apply waiver narrowly and compel discovery only of information specifically identified in a given complaint (i.e., the exact compromise Plaintiffs offered Defendants). For example, in one case Defendants' cite, the court held specifically that the plaintiffs had "no obligation to disclose other testing or communications with or opinions by consulting experts beyond that specifically referenced in the [complaint]." *Zeiger v. WellPet LLC*, 2018 U.S. Dist. LEXIS 110439 (N.D. Cal. June 29, 2018). In sum, if the *Zeiger* court is correct

---

contact members of the putative class," and produce "all documents and communications reflecting the number or percentage of the putative class that sell, desire to sell, or wish to have their coffee used in only 100% Kona coffee products." Dkt. 257 at 18. These objections are further addressed in Section C. Nevertheless, Defendants have made relevance their primary basis for their demand for the scientific evidence. *See* Dkt. 257 at 9. Even assuming *arguendo* that the requested material is relevant, Defendants' motion must be denied because they have failed to satisfy their burden of showing the work product is discoverable.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

and the *Dover* court is wrong, Plaintiffs still must only produce the information from the Complaint.

Defendants, however, contend that because Plaintiffs included graphs illustrating the chemical difference between authentic Kona coffee and the coffee in Defendants' products, the Court should find that Plaintiffs' waived all work product protections for any scientific testing performed in anticipation of litigation. Defendants even demand the test results for products of non-parties. Defendants have not cited any legal authority to support such a broad application of waiver of work product and the law even they cite is directly to the contrary.

Defendants also rely upon *Worley v. Avanquest N. Am., Inc.*, 2013 U.S. Dist. LEXIS 175305 (N.D. Cal. Dec. 13, 2013). But the *Worley* court recognized that any departure from the ordinary rules regarding expert discovery is not "without limitation." *Id.* at 17. In fact, cases cited by the *Worley* court support Plaintiffs' position for a limited waiver. All limited the discovery to the specific disclosed statements and no further. *See Sims v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 10067, at *3 (N.D. Cal. Dec. 27, 2006) (statements in expert declarations); *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 521-22 (N.D. Ill. 2005) (disclosed portion of expert report); *Ludwig v. Pilkington N.A., Inc.*, 2003 U.S. Dist. LEXIS 17789, at *3 (N.D. Ill. Sept. 29, 2003) (disclosed material only).

This Court's decision in *Murray* is instructive. 2015 U.S. Dist. LEXIS 58852, at *4-5. In *Murray*, plaintiffs disclosed an expert report to settle a third-party dispute and then sought to protect the disclosed report as work product in another matter. This Court found that plaintiffs in that case needed to produce the specific disclosed document, but held that plaintiffs had "preserved the confidentiality of the *underlying examination records and any unreported facts or opinion held by the examining experts*." *Id.* at *8 (emphasis added). The Court held that "[w]hile a party cannot shield the material which it has already disclosed or on which its witnesses rely, where the disclosure is limited, the waiver applies only to the matters disclosed or relied upon." *Id.* at 9.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Defendants contend in their brief that "it would be unfair to allow a party to use expert testimony as both a sword and a shield." Plaintiffs agree, but Plaintiffs are attempting no such thing. Plaintiffs may not need to rely on any scientific testing at trial given Defendants' documents and discovery responses, and Plaintiffs will fully disclose any expert evidence on which they *will* rely consistent with the Court's scheduling order. As such, consistent with *Dover*, Plaintiffs need not disclose consulting expert investigation to Defendants merely because Plaintiffs referenced scientific analysis to establish that their claims were plausible. Defendants' motion to compel should thus be denied. Otherwise, consistent with the very cases Defendants' cite, Plaintiffs should be ordered to produce only the scientific data identified in the Complaint.

**B. Defendants Are Not Entitled to Pre-2015 Discovery, Particularly Because Defendants Themselves Refuse to Produce Such Discovery.**

When Plaintiffs propounded their first set of discovery requests, Defendants refused provide any documents outside of the statute of limitations period. Plaintiffs argued that under theories of fraudulent concealment and estoppel, the statute of limitations was tolled and thus certain discovery from prior to the statute was appropriate.[3] The parties ultimately agreed to produce discovery for the period four years prior to the filing of the Complaint; i.e., 2015. Defendants now contend that they need discovery from Plaintiffs dating back before 2015 to support their laches defense, *but they continue to refuse to produce any of their own pre-2015 documents, including those relevant to laches*.

Plaintiffs cannot agree that Defendants are free to seek pre-2015 discovery to support their defenses while Plaintiffs are prejudiced by Defendants refusal to produce any pre-2015 discovery that could be used to rebut that same defense. This is particularly so because pre-2015 discovery is relevant to Plaintiffs' fraudulent concealment and estoppel defenses for equitable tolling of the limitations period. And if the parties are ordered to produce pre-2015 discovery, such discovery

[3] The Lanham Act does not have a statute of limitations. Courts typically look to the analogous state law for guidance on the appropriate limitations period. The parties disagree on which state law is most analogous to the claims in this case.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

should be narrowly tailored to be focused (mutually) on laches, unclean hands, and equitable tolling of the statute of limitations. But there is no basis to grant Defendants' motion, awarding them free-ranging pre-2015 discovery while they refuse to provide even a single pre-2015 document.

**C. Defendants Should Not Be Permitted to Seek Irrelevant, Harassing, and Unduly Burdensome Discovery Into Absent Class Members.**

Defendants claim that they are entitled to discover information and documents relating the putative class members. The Supreme Court has ruled that identifying information of class members "may be appropriately disclosed to the *plaintiffs* to determine class members, but that [Federal Rule of Civil Procedure] 26(b) was not the vehicle to do so, more appropriately Rule 23." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355 (1978) (emphasis added). Indeed, defendants do not cite a single case in which a *defendant* has been granted license to embark on a fishing expedition into absent class members. *See* Dkt. 257 at 10.[4] For good reason: it is well-established that discovery into absent class members is "disfavored." *Does 1-10 v. Univ. of Washington*, No. C16-1212JLR, 2018 WL 3417017, at *2 (W.D. Wash. July 13, 2018) (Robart, J.).; *see also, e.g.*, *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 279 (S.D.N.Y. 2019) ("Discovery of absent class members is rarely permitted . . . ." (citation omitted)).

Regardless of what party is seeking the information, it must be relevant. *Oppenheimer Fund*, 437 U.S. at 352. And the specific identity of class members is emphatically *not* relevant to class certification, which "hinges on whether the identity of the putative class members can be objectively ascertained; *the ascertaining of their actual identities is not required*." *Taylor v. Universal Auto Grp. I, Inc.*, 2014 U.S. Dist. LEXIS 164312, at *48 (W.D. Wash. Nov. 24, 2014) (emphasis added); *see also, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017).

---

[4] One of the cases defendants cited, *Wiegele v. FedEx Ground Package Sys.*, 2007 EL 628041, at *2 (S.D. Cal. Feb. 8, 2007), quoted *Koo v. Rubio's Rests., Inc.*, 109 Cal. App. 4th 719 (2003) where the California state court, in dicta, talked about "equal access" to putative class members. However, according to the court, the "decision addresses only the solitary issue before [the] court—whether the trial court abused its discretion in disqualifying Carlton." *Koo v. Rubio's Rests.*, Inc., 109 Cal. App. 4th 719, 736, 135 Cal. Rptr. 2d 415, 428 (2003).

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

     Defendants, however, speculate that absent class members might have information relevant to Defendants' *substantive* defenses. But absent class members have information relevant to the litigation in *every* class action, and that does not justify such discovery. As one court in the Northern District of California summarized the law: "nearly every absent class member potentially possesses information relevant to certification. Nonetheless, discovery of absent class members is generally not permitted unless the class member has inserted herself into the litigation." *A.B. v. Pac. Fertility Ctr.*, No. 18-CV-01586-JSC, 2019 WL 6605883, at *1 (N.D. Cal. Dec. 3, 2019); *see also, e.g.*, *In re Washington Mut. Mortg. Backed Sec. Litig.*, No. C09-37 MJP, 2011 WL 1789975, at *1 (W.D. Wash. May 9, 2011) (Pechman, J.) ("[D]iscovery from absent class members is 'generally disfavored' . . . (citation omitted)).

Far from showing particularized, special circumstances that would justify discovery into absent class members, Defendants instead make the speculative argument that they require Class Information because they seek "insight" into the class that might support their "substantive defenses." Dkt. 257 at 15. Defendants actually suggest that the farmers provide the identities of their "acquaintances and neighbors" to opposing counsel, and suggest Plaintiffs Colehour Bondera, Bruce Corker, and Cecelia Smith use their position on the board of the Kona Coffee Farmers' Association ("KCFA") to give Defendants access to their members. *Id.*[5] No case supports providing Defendants such information. In this matter, relevance is tied to determining whether Defendants passed off lower quality coffee as "Kona" coffee. Defendants fail to explain how "insight" into the class members is relevant to their substantive defenses nor do they explain why they cannot perform their own investigations into the matter (they obviously can, they are in the course of doing so now).

[5] Defendants *have already subpoenaed KCFA* requesting its membership list making this portion of their motion irrelevant and duplicative and further demonstrating that Defendants do not have a proper purpose for seeking this information beyond harassment. Lichtman Decl., Ex. E.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## III.  CONCLUSION

Defendants' Motion to Compel wanders far from the established norm. Defendants seek lopsided discovery time frames, expert discovery pre-deadline regarding testing of *their own* coffee, coffee purchase records for *their own* companies, prying into a nonparty nonprofit organization's membership, seeking identifying information regarding class members before the Court has even certified a class, and prematurely demand expert witness information and documentation. Plaintiffs thus ask that the Court deny Defendants' Motion to Compel.

Dated this 15th day of June 2020.

KARR TUTTLE CAMPBELL, P.S.

*/s/ Nathan T. Paine*
Nathan T. Paine, WSBA #34487
Paul Richard Brown, WSBA #19357

Daniel T. Hagen, WSBA #54015
Andrew W. Durland, WSBA #49747
Joshua M. Howard, WSBA #52189
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 223-1313
Email: pbrown@karrtuttle.com
         npaine@karrtuttle.com
         dhagen@karrtuttle.com
         adurland@karrrtuttle.com
         jhoward@karrtuttle.com

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

Jason L. Lichtman (*pro hac vice*)
Daniel E. Seltz (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Email: jlichtman@lchb.com
         dseltz@lchb.com

Andrew Kaufman (*pro hac vice*)
222 Second Avenue South, Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Email: akaufman@lchb.com

PLAINTIFFS' OPPOSITION TO CERTAIN
DEFENDANTS' MOTION TO COMPEL - 12
(No. 2:19-cv-00290-RSL)

#1323110 v1 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Michael W. Sobol (*pro hac vice*)
275 Battery Street
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: msobol@lchb.com

*Attorneys for the Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO COMPEL - 13
(No. 2:19-cv-00290-RSL)

#1323110 v1 / 72448-001

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

CERTIFICATE OF SERVICE

I, Julie Nesbitt, affirm and state that I am employed by Karr Tuttle Campbell in King County, in the State of Washington. I am over the age of 18 and not a party to the within action. My business address is: 701 Fifth Avenue, Suite 3300, Seattle, WA 98104. On this day, I caused to be filed with the Court a true and correct copy of the foregoing PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO COMPEL, via the Court's electronic filing system, which caused service of the document to all parties registered to receive notifications through CM/ECF.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct, to the best of my knowledge.

Dated this 15th day of June, 2020, at Seattle, Washington.

*/s/ Julie Nesbitt*
Julie Nesbitt, Legal Assistant

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100