CIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUCE CORKER d/b/a RANCHO ALOHA;
COLEHOUR BONDERA and MELANIE
BONDERA, husband and wife d/b/a
KANALANI OHANA FARM; ROBERT SMITH
and CECELIA SMITH, husband and
wife d/b/a SMITHFARMS, and SMITHFARMS,
LLC on behalf of themselves and others similarly
situated,

                    Plaintiff,

          v.

COSTCO WHOLESALE CORPORATION, a
Washington corporation; AMAZON.COM, INC., a
Delaware corporation; HAWAIIAN ISLES KONA
COFFEE, LTD., LLC, a Hawaiian limited liability
company; COST PLUS/WORLD MARKET, a
subsidiary of BED BATH & BEYOND, a New York
corporation; BCC ASSETS, LLC d/b/a BOYER'S
COFFEE COMPANY, INC., a Colorado
corporation; L&K COFFEE CO. LLC, a Michigan
limited liability company; MULVADI
CORPORATION, a Hawaii corporation; COPPER
MOON COFFEE, LLC, an Indiana limited liability
company; GOLD COFFEE ROASTERS, INC., a
Delaware corporation; CAMERON'S COFFEE
AND DISTRIBUTION COMPANY, a Minnesota
corporation; PACIFIC COFFEE, INC., a Hawaii
corporation; THE KROGER CO., an Ohio
corporation; WALMART INC., a Delaware
corporation; BED BATH & BEYOND INC., a New
York corporation; ALBERTSONS COMPANIES
INC., a Delaware Corporation; SAFEWAY INC., a
Delaware Corporation; MNS LTD., a Hawaii
Corporation; THE TJX COMPANIES d/b/a T.J.
MAXX, a Delaware Corporation; MARSHALLS OF
MA, INC. d/b/a MARSHALLS, a Massachusetts
corporation; SPROUTS FARMERS MARKET,
INC. a Delaware corporation; COSTA RICAN
GOLD COFFEE CO., INC., a Florida Corporation;
and KEVIN KIHNKE, an individual,

                    Defendants.

CASE NO. 2:19-CV-00290-RSL

**MOTION FOR ATTORNEYS'
FEES, REIMBURSEMENT
OF EXPENSES, AND SERVICE
AWARDS, AND MEMORANDUM
IN SUPPORT**

The Honorable Robert S. Lasnik

Noted for consideration: June 11, 2021

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

**TABLE OF CONTENTS**

2

**Page**

3   I.   Introduction ...................................................................................................... 1

4   II.  Background........................................................................................................ 3

    III. Argument ......................................................................................................... 6

5        A.   Class Counsel's Requested Fee is Fair, Reasonable, and Appropriate. ................ 7

6             1.   Class Counsel Achieved an Outstanding Result For the Class. ................ 7

7             2.   The Complexity and Risk Associated With This Litigation
                   Supports the Requested Fees. ................................................................ 10

8             3.   The Requested Fees Are Consistent With Other Common Fund
                   Cases Involving Valuable Injunctive Relief. ............................................ 13

9             4.   A Lodestar Cross-Check, If Conducted, Confirms the
10                 Reasonableness of the Requested Award. ................................................ 14

         B.   Class Counsel's Expenses Are Reasonable. .......................................................... 16

11       C.   Service Awards for the Class Representatives Are Appropriate.......................... 16

12  IV.  Conclusion ...................................................................................................... 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-CV-00290-RSL                                    -i-

2140660.2

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Merit Energy Co.*,
07-916, 2009 WL 3378526 (D. Colo. Oct. 20, 2009) ....................................................14

*Arthur v. Sallie Mae Inc.*,
10-cv-198, 2012 WL 4076119 (W.D. Wash. Sept. 17, 2012)..........................................16

*Beck, et al. v. Boeing Co.*,
Case No. 00-CV-0301-MJP, Dkt. 1067 (W.D. Wash. Oct. 8, 2004) ...............................17

*Been v. O.K. Indus., Inc.*,
No. CIV-02-285-RAW, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011) .........................17

*Beesley v. Int'l Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ......................16

*Bennett v. SimplexGrinnell LP*,
No. 11-1854, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015)...................................8, 9, 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .........................................................................................................6

*Browning v. Yahoo! Inc.*,
No. 04-1463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)...........................................10

*Campbell v. Facebook Inc.*,
No. 4:13-cv-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017).........................15

*Chieftain Royalty Co. v. XTO Ener. Inc.*,
No. 11-29, 2018 WL 2296588 (E.D. Okla. Mar. 27, 2018) ......................................10, 14

*Corzine v. Whirlpool Corp.*,
No. 15-5764, 2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ...........................................9

*Craft v. Cty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008)...........................................................................14

*de Mira v. Heartland Emp't Serv., LLC*,
No. 12 -4092, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) .........................................13

*DeStefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016)....................................................................12

*Farrell v. Bank of Am. Corp.*,
*N.A.*, 827 Fed. Appx. 628 (9th Cir. 2020) ......................................................................14

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002)...........................................................................................14

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)...........................................10

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................17

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-CV-00290-RSL

-ii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

2140660.2

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
    No. C05–5437–RBL, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008)...........................15

4

*Hanlon v. Chrysler Grp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................................................7

5

6

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 6619983  (N.D. Cal. Dec. 18, 2018)...........................14

7

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .........................................................................................................7

8

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .......................15

9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ......................................................................................7, 10

10

*In re Checking Account Overdraft Litig.*,
    2013 WL 11319243........................................................................................................10, 14

11

*In re High-Tech Employee Antitrust Litig.*,
    11-cv-2509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ........................................17, 18

12

*In re HQ Sustainable Maritime Indus., Inc. Deriv. Litig.*,
    No. 11-910, 2016 WL 5421626 (W.D. Wash. Sept. 26, 2013) .........................................7

13

14

*In re Infospace, Inc. Sec. Litig.*,
    330 F. Supp. 2d 1203 (W.D. Wash. 2004) ......................................................................12

15

*In re Intuit Data Litig.*,
    No. 15-CV-1778-EJD-SVK, 2019 WL 2166236 (N.D. Cal. May 15, 2019)...................15

16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000), as amended (June 19, 2000) .............................................13

17

*In re Mercury Interactive Corp. Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010).............................................................................................3

18

19

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)...............................................................7, 10, 13

20

*In re Titanium Dioxide Antitrust Litig.*,
    No. 10-318, 2013 WL 6577029 (D. Md. Dec. 13, 2013) .................................................17

21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...........................6, 15

22

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...........................15

23

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ......................................................................................6, 12

24

25

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ....................................................................................17

26

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-CV-00290-RSL

-iii-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

2140660.2

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Knight v. Red Door Salons, Inc.*,
  08-cv-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................13

*Linney v. Cellular Alaska P'ship*,
  No. 96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997) .............................13

*Lucken Family Ltd. P'ship, LLLP v. Ultra Resources, Inc.*,
  2010 WL 5837559 (D. Colo. Dec. 22, 2010) ....................................................10

*Lusby v. GameStop Inc.*,
  No. 12-3783, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ...........................13

*Pelletz v. Weyerhaeuser Co.*,
  592 F. Supp. 2d 1322 (W.D. Wash. 2009) ........................................................15

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ...........................................................................7

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...........................................................................16

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ...........................................................................8

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  140 S. Ct. 1492 (2020) .....................................................................................12

*Rosado v. Ebay Inc.*,
  No. 12-04005, 2016 WL 3401987 (N.D. Cal. June 21, 2016) .........................15

*Seaman v. Duke Univ.*,
  No. 1:15-CV-462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019)...................18

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................passim

*Tiro v. Public House Investments, LLC*,
  2013 WL 4830949 (S.D.N.Y. Sep. 10, 2013) .................................................10

*Velez v. Novartis Pharm. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ........17

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...........................................................................6

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .....................................................................7, 14

*Wilson v. Playtika, Ltd.*,
  18-cv-5277,  2021 WL 512230 (W.D. Wash. Feb. 11, 2021) ....................10, 14

**Statutes**

15 U.S.C. § 1125, *et seq.* ...........................................................................................3

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-CV-00290-RSL

2140660.2

-iv-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................................................6

Fed. R. Civ. P. 23(h) ............................................................................................................6, 7

**Treatises**

Federal Judicial Center, *Manual for Complex Litigation*
        § 21.71 (4th ed. 2004) ..........................................................................................7

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-CV-00290-RSL                    –v–

2140660.2

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

I. **Introduction**

Plaintiffs and Settlement Class Counsel[1] hereby move the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order awarding attorneys' fees, partial reimbursement of litigation expenses, and service awards to the named Plaintiffs in connection with *two* sets of settlements recently preliminarily approved by the Court. *See* Dkt. 400, 414. The Court granted preliminary approval to the first set of settlements on February 17, 2021. *See* Dkt. 400. The Court granted preliminary approval to the second set of settlements, on March 9, 2021. *See* Dkt. 414.[2] The Court set a consolidated hearing on final approval on both sets of settlements for June 18, 2021. *See* Dkt. 400, 414.

From the first set of settlements, Plaintiffs and Settlement Class Counsel seek an Order: (a) awarding Settlement Class Counsel attorneys' fees in the amount of $3 million, plus partial reimbursement of litigation expenses in the amount of $600,000; and (b) awarding the named Plaintiffs service awards of $20,000 for their commitment and effort on behalf of the Settlement Class, with such attorneys' fees, expenses, and service award to be paid from the Settlement Funds. *See* Dkt. 400.

From the second set of settlements, Plaintiffs and Settlement Class Counsel seek an order a) awarding Settlement Class Counsel attorneys' fees in the amount of $2.6 million, plus partial reimbursement of litigation expenses in the amount of $600,000; and (b) awarding the named Plaintiffs service awards of $15,000, with such attorneys' fees, expenses, and service award to be

---

[1] Settlement Class Counsel are those counsel so appointed pursuant to the Court's Order Granting Motion for Preliminary Approval and Directing Issuance of Notice (Dkt. 400) ¶ 5: Paul Richard Brown and Nathan T. Paine of Karr Tuttle Campbell, and Jason Lichtman, Daniel Seltz, and Andrew Kaufman of Lieff Cabraser Heimann & Bernstein LLP.

[2] The first set of settlements includes settlements with BCC Assets LLC d/b/a Boyer's Coffee ("BCC"), Cameron's Coffee and Distribution Company ("Cameron's"), Copper Moon Coffee, LLC ("Copper Moon"), Cost Plus Inc. ("Cost Plus"), and Pacific Coffee, Inc., d/b/a Maui Coffee Company ("MCC"). The second set of settlements includes three settlements: one with Gold Coffee Roasters, Inc., Costa Rican Gold Coffee Company, Inc., and John Parry ("Gold"), one with Costco Wholesale Corporation ("Costco"), and one with The TJX Companies, Inc. and Marshalls of MA, Inc. (together, "TJX"). These Defendants are collectively referred to as "Settling Defendants."

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

2140660.2

1    paid from the Settlement Funds.

2         As demonstrated below, this request is fair and reasonable under the standard to be

3    applied by this Court.  Class Counsel's efforts have led to a group of settlements that deliver

4    substantial monetary relief, unprecedented and long-awaited changes in labeling practices on the

5    part of each of the Settling Defendants who are suppliers, and new requirements on the suppliers

6    of *all* suppliers of Kona-labeled coffee to the Settling Defendants who are retailers.  Together,

7    the settlements include monetary components totaling $13,105,750, which will deliver

8    immediate, substantial, and needed cash payments to the coffee farmers of the Kona region.

9    Further, the changes in business practices mandated by these settlements will deliver ever greater

10   value to the Settlement Class. Each of the Settling Defendants has agreed to changes in labeling

11   practices that will deliver additional and accurate information about the contents of the coffee

12   they are selling and generate substantial economic benefits to the Settlement Class into the

13   future.  As a result of these settlements, consumers will understand the origin of the coffee they

14   are buying, and the name and reputation of Kona coffee will be strengthened and protected.  As

15   explained below, expert economists estimate the total economic value of the injunctive relief

16   provisions of the supplier defendants alone to be $37.9 million over five years.  *See* Schreck

17   Decl. ¶ 8.  The requested fee is only 10.98 percent of the total value ($51 million) of the

18   settlements.

19        These settlements represent an outstanding outcome in a case that presented unusual

20   challenges and obstacles.  This was not and is not a run-of-the-mill consumer class action, nor a

21   typical trademark infringement dispute between businesses.  This case pitted three small, long-

22   time Kona coffee farms against 22 coffee suppliers and retailers, selling a variety of coffee

23   products across the country in multiple channels of commerce.  While many Kona farmers had

24   previously expressed frustration at the misuse of the Kona name, they had been without the

25   information and tools to identify defendants and formulate cognizable legal claims.  Class

26   Counsel were able to take a general sense of concern and deliver results, not only in the form of

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL                                          -2-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

monetary relief, but also through injunctive provisions that will clear a cloud of confusion that has hung over Kona-labeled products to the detriment of Class members.

Taking on 22 defendants on behalf of a proposed class of coffee farmers in Hawaii is not a simple undertaking, nor an inexpensive one.  Investigating and litigating this case has required a significant investment of time and money on the part of Class Counsel.  Even as the case continues against several Defendants, Class Counsel have spent, as of April 1, 2021, 18,671 hours to this case, with 38 attorneys, paralegals, and other staff each devoting substantial time (at least 40 hours) to this case, for a total lodestar of $8,359,974.  Every aspect of the litigation has been hard fought.  Class Counsel's work has included: successfully opposing multiple motions to dismiss, document production and review of thousands of documents from the named plaintiffs, review of thousands of documents from Defendants, a dozen discovery motions, third party discovery that has involved 36 subpoenas and the production of more than 4,800 documents, and multiple depositions, including full-day depositions of each of the plaintiffs.  Class Counsel have spent $1,589,694.56 in out-of-pocket costs, much of it attributable to identifying and working with several top-notch experts, who are prepared to testify concerning the coffee industry, marketing, accounting, and damages.  The compensation that Class Counsel seek for their work is reasonable.[3]

## II.    Background

Class Counsel filed this case in 2019 following an extensive and unprecedented investigation aimed at solving a question that had troubled Kona farmers: How is more than 20 million pounds of coffee labeled as "Kona" sold annually, when only a fraction of that is actually produced each year from the Kona region?  *See* Third Am. Compl. (Dkt. 381) ¶ 44.  The answer, Plaintiffs alleged, was that these suppliers were selling coffee labeled as "Kona" coffee that expert testing revealed contained little or no authentic Kona coffee.  Plaintiffs alleged that this

---

[3] Consistent with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010), Class Counsel are making this application well in advance of the deadline for Settlement Class Members to opt-out or object to the proposed settlements, and will also post this application on the settlement website.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL                                       -3-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   conduct violated the Lanham Act, 15 U.S.C. § 1125, *et seq.*, and sought monetary compensation,

2   as well as injunctive relief that would repair the Kona name going forward.  Class actions under

3   the Lanham Act, while not unheard of, are unusual, and to Class Counsel's knowledge, no other

4   case invoking the statute had been brought on behalf of a class of Kona farmers to remedy the

5   harms alleged here.  Following the investigation set out in the complaint into the contents of the

6   coffee at issue, Plaintiffs identified and named nineteen Defendants, ultimately adding two

7   additional defendants as the case progressed.

8        The parties have intensively litigated this case.  Class Counsel successfully opposed three

9   motions to dismiss (*see* Dkt. 154-56),[4] and an extended period of hard-fought discovery began in

10   the fall of 2019.  The sheer number of parties, their geographic dispersal, and their separate

11   representation would have presented management challenges in ordinary times, but the onset of

12   the global health crisis in March 2020 compounded these difficulties. Class Counsel were up to

13   the challenge: they gathered more than 39,000 documents, totaling more than 197,000 pages

14   from all of the defendants (including production of data in large spreadsheets).  They also

15   responded to comprehensive requests to the Class Representatives, who themselves produced

16   more than 58,000 documents, totaling more than 114,000 pages, in response to a collective 543

17   requests for documents, while also responding to 261 interrogatories and 514 requests for

18   admission.  The parties also engaged in extensive third-party discovery, collectively serving 36

19   subpoenas, which have yielded 4,801 documents and more than 106,000 pages.  While Class

20   Counsel sought to find efficiencies where at all possible and to avoid judicial intervention in

21   discovery disputes, they filed five motions to compel (Dkt. 180, 188, 206, 222, 355) and opposed

22   one (Dkt. 257).  They also opposed nine separate motions for protective orders filed by a range

23   of defendants (Dkt. 112, 211, 227, 294, 300, 304, 317, 330, 372).  Plaintiffs also moved to strike

24   certain affirmative defenses asserted by most Defendants (Dkt. 179), prompting the withdrawal

25   of the affirmative defenses by certain defendants (Dkt. 191), as well as the Court's striking the

26

---

[4] The Court granted one part of the retailer defendants' motion.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-4-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1  defenses of another defendant (Mulvadi Corporation).  Dkt. 230.  Plaintiffs have taken five

2  depositions, and each of the five named plaintiffs sat for full-day depositions themselves.

3  　　　Class Counsel balanced this ongoing and heavy discovery work with efforts at resolution

4  on the part of certain defendants.  This included an early mediation in San Francisco with Hon.

5  David Garcia on January 30, 2020, which resulted in the settlement with Copper Moon, a near-

6  global mediation on June 2, 2020 with Hon. Edward Infante, which resulted in the settlement

7  with BCC, with settlements with Cost Plus and Maui Coffee Company following that mediation

8  after ongoing correspondence and further negotiations.  Cameron's and Plaintiffs participated in

9  an all-day mediation with Mark LeHocky, of ADR Services, Inc., on November 17, 2020, which

10 led to the fifth of the settlements that the Court approved in February.  Mr. LeHocky then

11 supervised a subsequent all-day mediation between Plaintiffs and Gold on November 30, 2020,

12 with the parties reaching an agreement soon thereafter.  The settlements with TJX and Costco

13 followed subsequent, protracted negotiations between Class Counsel and counsel for TJX and

14 Costco.  In connection with these mediations and in order to negotiate effectively on behalf of

15 the Settlement Class, Class Counsel identified, interviewed, engaged, and intensively worked

16 with nationally recognized experts in the fields of marketing, accounting, and the coffee industry,

17 as well as retained damages experts.

18 　　　The settlements that resulted from these efforts represent an outstanding outcome for the

19 Settlement Class.  The relatively small class of approximately 700 farms will see significant

20 payments from these settlements.  And the labeling changes coming out of these settlements are

21 dramatic: the Settling Defendants' products "will accurately and unambiguously state on the

22 front label of the product the minimum percentage of authentic Kona coffee beans contained in

23 the product," and only coffee certified and graded by the Hawaii Department of Agriculture as

24 100% Kona shall be considered authentic Kona coffee."  Dkt. 393, at 3-4, Dkt. 411, at 3 (quoting

25 settlement agreements).  The Settling Defendants will follow Hawaii's more stringent labeling

26 standards, even if those standards grow more stringent, and regardless of whether the coffee is

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-5-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   sold in Hawaii or elsewhere.  *Id.* TJX and Costco will institute certification processes for all of

2   their vendors of Kona coffee to ensure that the vendors' labeling for those products meets new

3   and improved requirements.  Dkt. 411, at 3-4.

4        Class Counsel's work is not over.  Since the Court entered the orders preliminarily

5   approving these settlements, Class Counsel have been working diligently with the notice

6   administrator to effectuate the notice plan and prepare to distribute the settlement funds.  Class

7   Counsel will also present a claims process with their forthcoming motion for final approval of

8   these settlements, and work with the Settlement Administrator to implement that process

9   promptly after final approval.

10   **III.**   **<u>Argument</u>**

11        Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's

12   fees and costs in class action settlements as authorized by law or by the parties' agreement.  Fed.

13   R. Civ. P. 23(h).  "[L]awyer[s] who recover[] a common fund . . . [are] entitled to a reasonable

14   attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980);

15   *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In deciding whether a

16   requested fee is appropriate, the Court's task is to determine whether such amount is

17   "fundamentally fair, adequate, and reasonable."  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th

18   Cir. 2003) (quoting Fed. R. Civ. P. 23(e)); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19

19   F.3d 1291, 1294-95 n.2 (9th Cir. 1994) (overriding principle is that the fee award be "reasonable

20   under the circumstances").

21        In this Circuit, the determination typically involves analysis of a number of factors,

22   including: (1) the results achieved by class counsel; (2) the complexity of the case and skill

23   required; (3) the risks of litigation; (4) the benefits to the class beyond the immediate generation

24   of a cash fund; (5) the market rate of customary fees for similar cases; (6) the contingent nature

25   of the representation and financial burden carried by counsel; and (7) a lodestar cross-check.

26   *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-6-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

2672 CRB (JSC), 2017 WL 1047834, at *1 (N.D. Cal. Mar. 17, 2017) ("*VW 2L Fee Order*") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-52 (9th Cir. 2002)).  Each of these factors supports Class Counsel's request in this case.

Because the benefit achieved "is easily quantified in common-fund settlements," courts can "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).[5]  When awarding attorney's fees on the percentage of the fund method in common fund cases, twenty-five percent (25%) is the benchmark, but a court may adjust that benchmark up or down when warranted.  *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (holding that "complexity and novelty of the issues" can justify upward departure from benchmark); *In re HQ Sustainable Maritime Indus., Inc. Deriv. Litig.*, No. 11-910, 2016 WL 5421626, at *3 (W.D. Wash. Sept. 26, 2013) (Lasnik, J.) (holding that complexity of the dispute, including number of participants, justified upward departure from benchmark).  Courts have recognized that "in most common fund cases, the award exceeds that [25%] benchmark."  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

A.   **Class Counsel's Requested Fee is Fair, Reasonable, and Appropriate.**

1.   **Class Counsel Achieved an Outstanding Result For the Class.**

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *In re Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation* § 21.71, p. 336 (4th ed. 2004) (the "fundamental focus is the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).  Here, any assessment of the results achieved must include both the monetary and injunctive components of these settlements.

---

[5] Courts rely on the lodestar method in cases very different than this one, in which "there is no way to gauge the net value of the settlement or of any percentage thereof."  *Hanlon*, 150 F.3d at 1029.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-7-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    While each standing alone is outstanding, they together form what is unquestionably an

2    exceptional result, and one that justifies the fee sought.

3         Where a class settlement includes both monetary and injunctive relief, courts "include

4    [the latter] as part of the value of a common fund for purposes of applying the percentage

5    method of determining fees" when "the value to individual class members of benefits deriving

6    from injunctive relief can be accurately ascertained." *Staton*, 327 F.3d at 974; *see also Roes, 1-2*

7    *v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019) ("readily quantifiable"); *see also,*

8    *e.g., Bennett v. SimplexGrinnell LP*, No. 11-1854, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3,

9    2015) (taking into account future value of settlement in awarding percentage of the common

10   fund).  Here, the Court's fee calculation should reflect the actual and readily-quantifiable

11   economic value of the Settling Defendants' agreements to stop selling mislabeled Kona coffee.

12        Because this is a Lanham Act case, retrospective relief (damages due to past sales of

13   infringing products) and prospective relief (agreement to stop selling in the future) are two sides

14   of the same coin. Either way, the theory of liability and damage is the same: the sale of fake

15   Kona coffee products depresses the market price of legitimate Kona coffee products. As an

16   economic matter, whether that price impact occurred in the past or will occur in the future is

17   immaterial: the farmer loses money both times in the same way and for the same reason.[6] In

18   other words, the past misconduct (remediated) and future misconduct (prevented) cause or would

19   cause the *same injury* to Plaintiffs and the class. *See* Schreck Decl. ¶ 10 (explaining that the

20   damages due to past infringement are the best tool to use to calculate the value of future non-

21   infringement).

22        To prove the economic value of the prospective relief, Plaintiffs submit three expert

---

[6] That distinguishes this case from other class settlements where the damages and injunctive relief are fundamentally distinct. For example, it is common in class settlements for the defendant to pay damages for past harm, and to institute practice changes to reduce the *risk* of future harm—better warnings, more training of personnel, etc. In those situations, courts are understandably reluctant to assign an economic value to the injunctive relief, as doing so can be inherently speculative. *See, e.g., Roes*, 944 F.3d at 1041 (in employee misclassification case, relief included unpaid minimum wages and an "injunction … under which any dancer interested in working at the clubs would be given the 'option' of working as an employee or independent contractor").

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-8-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

declarations. Each expert's qualifications are set forth in his declaration and/or accompanying

C.V., and each is available to answer any questions the Court has through formal testimony,

supplemental declaration, or informal appearance at a hearing:

- Economists Dr. Jeremy Verlinda and Dr. Yong Paek of the Brattle Group calculate the revenue of each of the supplier defendants attributable to mislabeled Kona products. *See* Verlinda & Paek Decl. ¶¶ 5-7 & Table 1.[7]

- Economist Dr. Michael J. Schreck of Analysis Group calculates the total market price damages attributable to counterfeit Kona coffee during the period 2015 – 2019 and then forecasts the economic benefit of the removal of mislabeled coffee from the market. Schreck Decl. ¶¶ 27-34. He uses the revenue numbers calculated by Drs. Verlinda and Paek to calculate the economic value of the injunction against each Settling Defendant. *Id.* ¶¶ 35-36.

- Industry expert César Vega explains why Jamaican Blue Mountain coffees are the closest analogue to Kona coffee, sharing attributes of a specific designated origin, limited production, and pricing.

Using the above methodology, Dr. Schreck calculates that the injunctions achieved in this

set of settlements with the supplier defendants provide $37.9 million in value to the class.

This approach is analytically sound and sufficiently rigorous to "accurately ascertain[]"

the value of the injunctive relief. *Staton*, 327 F.3d at 974. It is the same one Plaintiffs used to

value their case for settlement. It is, in broad strokes, the same one Plaintiffs would use at class

certification and trial had the cases against these defendants not settled. And it is the same one

Plaintiffs will use at class certification and trial for the remaining cases against the remaining

defendants if they do not settle. It is thus highly appropriate for the court to use this measure to

value the relief in this case. *See id.*[8]

---

[7] A number of Defendants have not settled this matter. Kroger's counsel in particular has stated that Kroger disputes Plaintiffs' damages theories and calculations, including but not limited to its market share theory, and reserves all rights to rebut Plaintiffs' analysis at the appropriate time. Plaintiffs do not understand any non-settling defendants to have waived such objections.

[8] Indeed, courts have accounted for the value of prospective relief in cases where that value was less ascertainable and certain than the logical and straightforward economic calculation here. *See Bennett*, 2015 WL 12932332, at *6 (acknowledging it was "difficult to determine the monetary value of … prospective relief" in the form of "future payment of prevailing wages," but given the "substantial and immediate benefit to the class," employing a

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-9-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    Taking the already substantial cash component of the settlements and adding the future

2    economic value, there can be no question that these settlements represent an outstanding result

3    for the Settlement Class, and one that merits the fees requested.

4        **2.      The Complexity and Risk Associated With This Litigation Supports
             the Requested Fees.**

5        The degree of complexity and risk present at all stages of this case weighs heavily in

6    favor of the requested fee.  *See, e.g., In re Bluetooth*, 654 F.3d at 942 (noting complexity and

7    novelty of issues as among factors justifying departure from benchmark percentage).  This was

8    and is far from a cookie-cutter case, and Class Counsel have had to anticipate and respond to

9    arguments that do not tend to emerge in most class actions to continue to drive the case towards

10   trial.  "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a

11   case involving complicated legal issues, is a significant factor in the award of fees."  *Omnivision*,

12   559 F. Supp. 2d at 1046-47.  Courts "have recognized the risk of litigation to be perhaps the

13   foremost factor to be considered in determining the award of appropriate attorneys' fees [in part

14   because] despite the most vigorous and competent of efforts, success is never guaranteed."  *Tiro*

15   *v. Public House Invs., LLC*, 2013 WL 4830949 at *13 (S.D.N.Y. Sep. 10, 2013) (citations and

16   quotations omitted).

17       This case presented risks at every stage.  To start, Defendants advanced a legal theory

18   that the Lanham Act does not authorize the core claim in this case—false designation of

19

20   "conservative assumption" of future value, resulting in a fee equal to 38.8% of the cash component); *Corzine v.*
21   *Whirlpool Corp.*, No. 15-5764, 2019 WL 7372275, at *12 (N.D. Cal. Dec. 31, 2019) (on cross-check, crediting
     expert valuation of an extended warranty); *Chieftain Royalty Co. v. XTO Ener. Inc.*, No. 11-29, 2018 WL 2296588,
22   at *4 (E.D. Okla. Mar. 27, 2018) (policy change with respect to calculating and paying royalties, fee equal to 40% of
     the cash component); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-8405, 2015 WL 10847814, at *14-15 (S.D.N.Y. Sept.
23   9, 2015) (change in insurance policies permitting rate changes and challenges to validity and enforceability under
     certain circumstances); *In re Checking Account Overdraft Litig.*, No. 09-2036, 2013 WL 11319243, at *13-14 (S.D.
24   Fla. Aug. 2, 2013) (changes to how transactions are posted for purposes of assessing overdraft fees, fee equal to 38%
     of cash component); *Browning v. Yahoo! Inc.*, No. 04-1463, 2007 WL 4105971, at *13 (N.D. Cal. Nov. 16, 2007)
25   (retail cost of free credit scores); *Lucken Family Ltd. P'ship, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559, at
     *2 (D. Colo. Dec. 22, 2010) (basing fee award on percentage of common fund including future economic benefit of
26   settlement). *See also Wilson v. Playtika, Ltd.*, 18-cv-5277,  2021 WL 512230, at *2 (W.D. Wash. Feb. 11, 2021)
     (Lasnik, J.) (considering "whether counsel's performance generated benefits beyond the cash settlement fund" in
     assessing reasonableness of fee request).

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-10-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    geographic origin.  *See* Dkt. 107, at 6.  Although the Court denied Defendants' motions to

2    dismiss on that basis, the issue would remain alive in the case through appeal.

3            Defendants also had factual defenses that (1) consumers were not confused by false

4    designations of Kona geographic origin and that (2) Plaintiffs' claims were barred by laches.

5    Although Plaintiffs believed these defenses to be meritless, they posed an undeniable risk at

6    summary judgment, trial, and on appeal. In particular, whether consumers were confused or were

7    likely to be confused by Defendants' product labels would have come down to a "battle of the

8    experts" at trial, the result of which is always uncertain.

9            This case was also risky because it was a class action. Although many elements of a

10   Lanham Act claim map well onto the Rule 23 class certification requirements, successful

11   Lanham Act cases are rare. The typical Lanham Act plaintiff is an individual or corporation

12   holding rights to a trademark. There is virtually no such thing as collective ownership of

13   trademarks.  A class case was possible here only because the geographic designation at issue is

14   legitimately used by a relatively small and identifiable group of people.

15           Class certification here posed particular risks because of the need to prove that damages

16   could be measured on a class-wide basis. This required assessing the market for coffee in

17   general, specialty coffees more specifically, and Kona coffee more precisely than that, and then

18   creating a "but-for" world where there was no counterfeiting of coffee. Doing so required

19   accounting for variations in how coffee is sold (green, cherry, or roasted). Defendants would

20   have attacked such analysis at both *Daubert* and summary judgment, and they would have put

21   forward their own experts to testify that market price damages are not measurable on a classwide

22   basis or, in the alternative, that damages were small. If Plaintiffs could not put forward a reliable,

23   admissible, and ultimately persuasive damages model, then no class could be certified. Plaintiffs

24   are confident that they could have overcome these hurdles, but as the attached records show, it

25   has been expensive to develop a defensible damages methodology.

26           Other forms of damages carried real risks too. When this case was filed, the law of the

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

Ninth Circuit, since reversed by the Supreme Court, *see Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492 (2020), was that a finding of willfulness was a prerequisite to an award of profits. Plaintiffs also sought to recover funds for corrective advertising, and undoubtedly, Defendants would have submitted competing expert testimony challenging the existence and amount of any corrective advertising damages

Finally, this case was inherently risky because it involved more 22 defendants. Any task, any work, any expense could potentially be multiplied by 22. Although the case did produce some economies of scale, this risk materialized in very real form in conducting discovery against so many defendants simultaneously.

Despite these risks, Class Counsel took on this case on a contingent basis.  It is an established practice to reward attorneys who assume representation on a contingent basis to compensate them for the risk that they might be paid nothing at all.  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney.  *Id*.  That Class Counsel have foregone other work to litigate the case on a contingent basis also favors the request.  *See In re Infospace, Inc. Sec. Litig.*, 330 F. Supp. 2d 1203, 1212 (W.D. Wash. 2004) (noting that "preclusion of other employment by the attorney due to acceptance of the case" is a factor to consider when determining an appropriate fee award).

Moreover, the quality of the opposition they faced should also be considered. *See DeStefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("The quality of opposing counsel is also relevant to the quality and skill that class counsel provided.").  Class Counsel faced well-resourced and experienced counsel for each of the Settling Defendants.  This factor also weighs in favor of the requested fee.

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-12-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

### 3.     The Requested Fees Are Consistent With Other Common Fund Cases Involving Valuable Injunctive Relief.

A review of fee awards in other common fund cases underscores the reasonableness of the fee requested here.  Class Counsel here request a fee totaling 10.98 percent of the total economic value of the settlements, which is substantially lower than the benchmark percentage in this district.  As set out above, it is appropriate for the Court to include the value of the settlements' injunctive relief "as part of the value of a common fund for purposes of applying the percentage method of determining fees."  *Staton*, 327 F.3d at 974; § III(A)(1), *supra*.  Class Counsel's request is in line with fees approved in other settlements involving both a common fund and quantifiable injunctive relief.

If the common fund in this case includes the total economic value of the settlement, Class Counsel's requested fee, of approximately 11 percent, is less than that frequently awarded in class actions.  *See, e.g. Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds that [25%] benchmark."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), as amended (June 19, 2000) (affirming fee award of one third of common fund); *Lusby v. GameStop Inc.*, No. 12-3783, 2015 WL 1501095, at *9 (N.D. Cal. Mar. 31, 2015) (awarding fee of one-third of common fund); *de Mira v. Heartland Emp't Serv., LLC*, No. 12 - 4092, 2014 WL 1026282, at *4 (N.D. Cal. Mar. 13, 2014) (awarding fee of 28% of common fund); *Knight v. Red Door Salons, Inc.*, 08-cv-1520, 2009 WL 248367, at *7-*8 (N.D. Cal. Feb. 2, 2009)(awarding 30% of common fund); *Linney v. Cellular Alaska P'ship*, No. 96-3008, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997) (granting fee award of one-third common fund where settlement provided additional non-monetary relief).

Even if the Court treated the immediate monetary benefits and the injunctive components of the settlements separately, Class Counsel's request is still consistent with awards in cases in which the Court took note of benefits beyond a cash settlement.  *See Bennett*, 2015 WL 12932332, at *6 (taking into account future value, awarding fee equal to 38.8% of the cash

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-13-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

component); *Anderson v. Merit Energy Co.*, 07-916, 2009 WL 3378526, at *1 (D. Colo. Oct. 20, 2009) (awarding 26 percent of common fund including future economic benefit, or 45 percent of immediate cash component); *Chieftain Royalty*, 2018 WL 2296588, at *4 (awarding fee equal to 40% of the cash component in settlement also prospective changes to royalty calculation)); *In re Checking Account Overdraft Litig.*, 2013 WL 11319243, at *13-14 (awarding fee equal to 38% of cash component in settlement also mandating changes to how transactions are posted for purposes of assessing overdraft fees).

### 4.    A Lodestar Cross-Check, If Conducted, Confirms the Reasonableness of the Requested Award.

Courts evaluating the reasonableness of fee requests have the discretion to perform a lodestar cross-check, "which measures the lawyers' investment of time in the litigation." *Vizcaino*, 290 F.3d at 1050. The Ninth Circuit has held that district courts need not perform a such a check in assessing fee applications.  *See Wilson*, 2021 WL 512230, at *2 (citing *Farrell v. Bank of Am. Corp., N.A.*, 827 F. Appx. 628, 630 (9th Cir. 2020)); *see also Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.").  Nevertheless, courts sometimes employ a "streamlined" lodestar analysis to "cross-check" the reasonableness of a requested award. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").  A lodestar cross-check, should the Court undertake one, only reaffirms the reasonableness of the requested fees, because it results in a *negative* multiplier of .67.[9]

Courts in this Circuit widely recognize that the existence of a negative lodestar multiplier "strongly suggests the reasonableness" of the requested fee. *Rosado v. Ebay Inc.*, No. 12-04005,

---

[9] It is a "well established" common practice for "attorneys in common fund cases" to adjust their billing to their current levels to account for "any delay in payment."  *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 n.17  (N.D. Cal. Dec. 18, 2018) (quoting *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002)).

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (Davila, J.) (collecting cases).  Moreover, the

2   gap between the requested fee and the actual lodestar will only grow, as Class Counsel are likely

3   to spend substantial amounts of time ensuring that the claims process goes smoothly and that the

4   settlements are implemented effectively.

5         The lodestar figure producing the negative multiplier is also reasonable and reliable.

6   Class Counsel had every incentive to litigate this case efficiently, not only because of the

7   contingent nature of their payment, but because the number of defendants demanded that

8   efficiencies be found wherever possible.  Class Counsel have also been conservative in totaling

9   hours devoted to the case, omitting timekeepers with fewer than 40 hours devoted to the case.

10  *See* Lichtman Decl. ¶ 17; Paine Decl. ¶ 22  Further, the rates on which the lodestar are based are

11  reasonable.  Lieff Cabraser's rates have been approved repeatedly in this circuit, and specifically

12  within this district.  *See* Lichtman Decl. ¶ 19.[10]  Karr Tuttle's rates are consistent with rates

13  charged to the firm's clients who pay hourly rates and have also been approved by other courts.

14  *See* Paine Decl. ¶ 24.

15        Class Counsel's blended rate for the case is $448 per hour, which is in line with

16  numerous other cases in which courts in this Circuit have found such rates to be reasonable.  *See,*

17  *e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672

18  CRB (JSC), Dkt. 3396-2 ¶ 29 (N.D. Cal. June 30, 2017) (noting that the average blended rate of

19  40 class action settlements approved in Northern District of California in 2016 and 2017 was

20  $528.11 per hour); *VW 2L Fee Order*, 2017 WL 1047834, at *5 (approving blended average

21  billing rate of $529 per hour in MDL).

---

[10] *See Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1327 (W.D. Wash. 2009) (citing *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. C05–5437–RBL, 2008 WL 1901988, at *3 (W.D. Wash. Apr. 24, 2008)); *see, e.g.*, *In re Intuit Data Litig.*, No. 15-CV-1778-EJD-SVK, 2019 WL 2166236, at *1 (N.D. Cal. May 15, 2019); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving rates of $400 to $970 for partners, $185 to $850 for non-partner attorneys, and $95 to $440 for paralegals and other staff); *Campbell v. Facebook Inc.*, No. 4:13-cv-05996-PJH, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017); *VW 2L Fee Order*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates "ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL
-15-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

### B. Class Counsel's Expenses Are Reasonable.

2

"The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of

3

class action settlement." *Arthur v. Sallie Mae Inc.*, 10-cv-198, 2012 WL 4076119, at *2 (W.D.

4

Wash. Sept. 17, 2012) (citing *Staton*, 327 F.3d at 974); *see also* Fed. R. Civ. P. 23(h). This

5

includes expenses that are reasonable, necessary, directly related to the litigation, and normally

6

charged to a fee-paying client. *See, e.g.*, *Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015

7

WL 3863625, at *7 (N.D. Cal. June 22, 2015).

8

Here, Class Counsel seeks reimbursement of $600,000 in expenses from this first set of

9

settlements, and $600,000 from the second set of settlements. Class Counsel have expended

10

$1,589,694.56 in out-of-pocket expenses to date, so this combined request will cover only a

11

portion of their expenses to date. *See* Lichtman Decl. ¶ 22; Paine Decl. ¶ 27.

12

Litigating a case of this size and complexity inevitably costs money, and these expenses –

13

attributable largely to, among other items set out in the accompanying declarations of counsel,

14

experts, travel, document hosting, and multiple mediation days – are commensurate with the

15

stakes, complexity, intensity, and technical nature of the litigation. They also demonstrate Class

16

Counsel's commitment to the litigation, even as Class Counsel have made every effort to litigate

17

efficiently. *See Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *3

18

(S.D. Ill. Jan. 31, 2014) ("Class Counsel had a strong incentive to keep expenses at a reasonable

19

level due to the high risk of no recovery when the fee is contingent.").

20

### C. Service Awards for the Class Representatives Are Appropriate.

21

As the Ninth Circuit has recognized, "named plaintiffs, as opposed to designated class

22

members who are not named plaintiffs, are eligible for reasonable [service awards]." *Staton*, 327

23

F.3d at 977; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards

24

"are fairly typical in class action cases"). Such awards are "intended to compensate class

25

representatives for work done on behalf of the class [and] make up for financial or reputational

26

risk undertaken in bringing the action." *Rodriguez*, 563 F.3d at 958. Service awards are

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-16-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

appropriate in this case, in which the Class Representatives have invested enormous amounts of time into the prosecution of this action, even as they continue to run their small coffee farms.

As the accompanying declarations of each of the class representatives show, the class representatives have unflaggingly devoted themselves to this case on behalf of their community. While running their small coffee farms, they have kept abreast of all developments in the case, regularly meeting with Class Counsel in person and then remotely.  They spent numerous hours responding to discovery requests and produced huge volumes of documents and data.  They personally attended each and every mediation.  They have made themselves visible in their community through their participation in this lawsuit, and have spent additional countless hours answering questions from other class members about the case.

Under these circumstances, the requested service awards ($20,000 from the first set of settlements, and $15,000 from the second set) are within the range regularly awarded by Ninth Circuit courts.  *See, e.g.,  In re High-Tech Employee Antitrust Litig.*, 11-cv-2509, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (awarding service awards of $120,000 and $80,000); *Beck, et al. v. Boeing Co.*, Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash. Oct. 8, 2004) (awarding $100,000 service payments to each named plaintiff); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (granting $20,000 service award where plaintiff "was subjected to questioning regarding her personal financial affairs and other sensitive subjects").  Courts elsewhere have awarded amounts far exceeding those sought here. *See, e.g., In re Titanium Dioxide Antitrust Litig.*, No. 10-318, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (approving $125,000 service award); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 service payments to each of four representative plaintiffs); *Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2011 WL 4478766, at *12–13 (E.D. Okla. Aug. 16, 2011) (awarding $100,000 service awards ); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *8, *26 (S.D.N.Y. Nov. 30, 2010) (granting service awards of $175,000 and higher); *Seaman v.*

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-17-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   *Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at \*7–8 (M.D.N.C. Sept. 25, 2019)

2   (approving service award of $125,000).

3           In assessing the reasonableness of service awards, courts occasionally look to the ratio

4   between the awards and average class recovery.  *See, e.g., In re High-Tech*, 2015 WL 5158730,

5   at \*18.  Here, if each of the approximately 700 members make a claim against the settlement

6   funds net of the requested fees and costs, the average payout would be approximately $9,000, for

7   a ratio of five, well within the approved range.  *See id.* (approving awards with ratios of 14 and

8   21, and gathering authorities approving awards with ratios above 10).

9   **IV.     <u>Conclusion</u>**

10          For the foregoing reasons, Class Counsel respectfully request that the Court approve

11   attorneys' fees, partial reimbursement of litigation expenses, and service awards to the named

12   plaintiffs in the requested amounts.

13

14   Dated:  April 21, 2021

15   KARR TUTTLE CAMPBELL                      LIEFF CABRASER HEIMANN &
                                                BERNSTEIN, LLP

16   /s Nathan T. Paine                        /s/ Jason L. Lichtman
     Paul Richard Brown, WSBA #19357           Jason L. Lichtman (*pro hac vice*)
17   Nathan T. Paine, WSBA #34487              Daniel E. Seltz (*pro hac vice*)
     Daniel T. Hagen, WSBA #54015             250 Hudson Street, 8th Floor
18   701 Fifth Avenue, Suite 3300              New York, NY  10013-1413
     Seattle, Washington 98104                 Telephone:  212-355-9500
19   206.223.1313

20                                             Andrew Kaufman (*pro hac vice*)
                                               222 2nd Avenue South, Suite 1640
21                                             Nashville, TN  37201
                                               615.313.9000
22
                                               *Attorneys for the Plaintiffs*
23                                             *and the Proposed Settlement Class*

24                   **<u>CERTIFICATE OF SERVICE</u>**

25          I, Daniel E. Seltz, certify that on April 21, 2021, I caused the foregoing to be

26   electronically filed with the Clerk of the Court using the CM/ECF system, which will send

MOTION FOR ATTORNEYS' FEES AND                    -18-
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

notification of such filing to those attorneys of record registered on the CM/ECF system.

/s *Daniel E. Seltz*
Daniel E. Seltz

MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES
Case No. 2:19-cv-00290-RSL

-19-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592