1

2

3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BRUCE CORKER d/b/a RANCHO ALOHA;
COLEHOUR BONDERA and MELANIE
BONDERA, husband and wife d/b/a
KANALANI OHANA FARM; ROBERT SMITH
and CECELIA SMITH, husband and
wife d/b/a SMITHFARMS, and SMITHFARMS,
LLC on behalf of themselves and others similarly
situated,

Plaintiffs,

v.

COSTCO WHOLESALE CORPORATION, a
Washington corporation; AMAZON.COM, INC., a
Delaware corporation; HAWAIIAN ISLES KONA
COFFEE, LTD., LLC, a Hawaiian limited liability
company; COST PLUS/WORLD MARKET, a
subsidiary of BED BATH & BEYOND, a New York
corporation; BCC ASSETS, LLC d/b/a BOYER'S
COFFEE COMPANY, INC., a Colorado
corporation; L&K COFFEE CO. LLC, a Michigan
limited liability company; MULVADI
CORPORATION, a Hawaii corporation; COPPER
MOON COFFEE, LLC, an Indiana limited liability
company; GOLD COFFEE ROASTERS, INC., a
Delaware corporation; CAMERON'S COFFEE
AND DISTRIBUTION COMPANY, a Minnesota
corporation; PACIFIC COFFEE, INC., a Hawaii
corporation; THE KROGER CO., an Ohio
corporation; WALMART INC., a Delaware
corporation; BED BATH & BEYOND INC., a New
York corporation; ALBERTSONS COMPANIES
INC., a Delaware Corporation; SAFEWAY INC., a
Delaware Corporation; MNS LTD., a Hawaii
Corporation; THE TJX COMPANIES d/b/a T.J.
MAXX, a Delaware Corporation; MARSHALLS OF
MA, INC. d/b/a MARSHALLS, a Massachusetts
corporation; SPROUTS FARMERS MARKET,
INC. a Delaware corporation; COSTA RICAN
GOLD COFFEE CO., INC., a Florida Corporation;
and KEVIN KIHNKE, an individual,

Defendants.

CASE NO. 2:19-CV-00290-RSL

**MOTION FOR FINAL APPROVAL
OF EIGHT CLASS ACTION
SETTLEMENTS**

The Honorable Robert S. Lasnik

Noted for consideration: June 11, 2021

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

I.      Introduction ....................................................................................................2

II.     Procedural History..........................................................................................2

III.    Summary of the Settlements............................................................................3

IV.     The Class Notice Plan Was Successfully Implemented. ...................................5

V.      Final Approval is Warranted. ..........................................................................5

        A.      Settlement Approval Process.................................................................5

        B.      The Settlements Are Fair, Reasonable, and Adequate. .........................6

                1.      Rule 23(e)(2)(A): Class Counsel and the Settlement Class
                        Representatives Have and Will Continue to Zealously Represent
                        the Class...................................................................................6

                2.      Rule 23(e)(2)(B): The Settlements Are the Result of Arms-Length,
                        Informed Negotiations..............................................................6

                3.      Rule 23(e)(2)(C): The Settlements Provide for Substantial
                        Compensation. .........................................................................7

                        a.      The Settlements deliver excellent monetary and injunctive
                                relief...............................................................................7

                        b.      The costs, risks, and delay of trial and appeal weigh in
                                favor of final approval. ...................................................8

                        c.      The method of distributing relief is simple and fair. ......9

                        d.      The request for attorneys' fees is reasonable and supported.......10

                        e.      There are no agreements bearing on final approval. ...................10

                4.      Rule 23(e)(2)(D): The Settlement Treats All Class Members
                        Equitably Relative to One Another. .........................................10

                5.      The Settlement Satisfies the Ninth Circuit's Additional Factors for
                        Final Approval..........................................................................11

        C.      The Settlement Class Should be Finally Certified. ............................12

VI.     Conclusion.....................................................................................................12

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

2161016.1

-i-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4
*Baker v. Seaworld Ent't, Inc.*
    No. 14-2129, 2020 WL 4260712 (S.D. Cal. July 24, 2020)................................8

5
*Chun-Hoon v. McKee Foods Corp.*
    716 F. Supp. 2d 848 (N.D. Cal. 2010)................................................12

6

7
*Free Range Content, Inc. v. Google, LLC,*
    No. 14-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) .................7

8
*Gaudin v. Saxon Mort. Servs., Inc.*
    No. 11-1663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015)..........................11

9
*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ........................................................11

10
*Hefler v. Wells Fargo & Company,*
    No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)............9

11

12
*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018) ...................................................7

13
*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ........................................................11

14
*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ........................................................7

15
*In re Mercury Interactive Corp. Sec. Litig.*
    618 F.3d 988 (9th Cir. 2010) ........................................................10

16

17
*Sandoval v. Tharaldson Emp. Mgmt., Inc.,*
    No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010)..........................6

18
*Thomas v. MagnaChip Semiconductor Corp.,*
    No. 14-01160, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017)........................9

19
**Rules**

20
Fed. R. Civ. P. 23(a) ..................................................................12

21
Fed. R. Civ. P. 23(b)(3) ..............................................................12

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................5

22
Fed. R. Civ. P. 23(e)(1) ..............................................................5

23
Fed. R. Civ. P. 23(e)(1)(B) ..........................................................5

24
Fed. R. Civ. P. 23(e)(2) ..........................................................2, 5, 6

Fed. R. Civ. P. 23(e)(2)(A) ..........................................................6

25
Fed. R. Civ. P. 23(e)(2)(B) ..........................................................6

26
Fed. R. Civ. P. 23(e)(2)(C)(iv) ......................................................10

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

-ii-

**TABLE OF AUTHORITIES**
**(continued)**

Page

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................10

Fed. R. Civ. P. 23(e)(5) ......................................................................................................5

Fed. R. Civ. P. 23(f) ...........................................................................................................8

**Treatises**

Joseph M. McLaughlin, *McLaughlin on Class Actions* (8th ed. 2011)..........................6

William B. Rubenstein, et al., *Newberg on Class Actions* (5th ed. 2012).......................7

-iii-

1    I.    **Introduction**

2         This Court recently granted preliminary approval to two sets of settlements, involving

3    eight defendants, and directed that notice issue to the Settlement Class.[1]  *See* Dkts. 400, 414.

4    The settlements collectively provided both for substantial monetary relief, totaling $13,105,750,

5    and injunctive relief that will result in changes in the labeling of coffee described as containing

6    coffee from the Kona region, thus preventing further economic harm to Settlement Class

7    Members, the growers of legitimate Kona coffee.  This Court found that it was likely to be able

8    to approve the proposed settlements applying the criteria set out in Rule 23(e)(2), and to certify

9    the class for purposes of settlement, and directed notice to issue to the class.  *Id.*

10        The Settlement Administrator then effectuated the notice plan approved by this Court,

11   including both direct notice and publication in the *West Hawaii Daily*, as well as the

12   establishment of a settlement website, toll-free number, and post office box for Settlement Class

13   Members.  The postmark deadline for opt-outs and objections for the first set of settlements was

14   May 5, and the deadline for the second set of settlements was May 25.  To date, ***zero*** Settlement

15   Class Members have opted-out or objected to the terms of the settlements.  Not one.

16        It is clear that this Court's preliminary determination that these settlements should be

17   approved was correct.  Plaintiffs now seek final approval, so that the benefits promised in these

18   settlements can begin to flow to class members.  The settlements represent an excellent result for

19   the Settlement Class and satisfy all criteria for final approval under Ninth Circuit law.

20   II.   **Procedural History**

21        The Court is familiar with the procedural history of this litigation, and much of it was set

22

23   ---

[1] The settlements are with the following defendants, collectively referred to here as "Settling Defendants": (1) BCC
24   Assets, LLC d/b/a Boyer's Coffee ("BCC"), (2) Cameron's Coffee and Distribution Company ("Cameron's"), (3)
     Copper Moon Coffee, LLC ("Copper Moon"), (4) Cost Plus Inc. ("Cost Plus), (5) Pacific Coffee, Inc., d/b/a Maui
25   Coffee Company ("MCC"), (6) Gold Coffee Roasters, Inc., Costa Rican Gold Coffee Company, Inc., and John Parry
     ("Gold"), (7) Costco Wholesale Corporation ("Costco"), and (8) The TJX Companies, Inc. and Marshalls of MA,
26   Inc. (together, "TJX") (collectively, "Settling Defendants").  Capitalized terms have the meanings assigned to them
     in the Settlement Agreements, which were filed with Plaintiffs' motion for preliminary approval.

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL
                                            -2-
2161016.1

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    out in Plaintiffs' preliminary approval motions.  Plaintiffs will not repeat that history here, but, as

2    detailed in the declarations of counsel accompanying those motions (Dkts. 394, 395, 412, 413),

3    emphasize that this case presented unique challenges from the start, given the number of parties,

4    the global health crisis, and a set of legal and factual hurdles that Plaintiffs were forced to clear.

5    The case has been hard-fought and heavily litigated, including motions to dismiss, multiple

6    discovery motions, and the exchange of huge volumes of documents and data concurrent with

7    depositions.  The negotiations that led to these settlements were extensive and adversarial,

8    supervised by nationally known mediators.  Plaintiffs otherwise incorporate their description of

9    the procedural history of this case in their prior motions.  *See* Dkts. 393 and 411.

10   **III.    Summary of the Settlements**

11        Plaintiffs' motions for preliminary approval of these settlements also summarized the

12   terms of each of the settlements that this Court preliminarily approved, *see* Dkts. 393, 411, and

13   Plaintiffs provide a brief summary here for the sake of completeness.

14        Each of the settlements with defendants who are suppliers of coffee provides for a

15   substantial monetary payment to the class,[2] for a total of $13,105,750: BCC will pay $1,125,000;

16   Cameron's will pay $4,900,000; Cost Plus will pay $200,000; Copper Moon will pay $360,000;

17   Gold will pay $6.1 million, and MCC will pay $420,750.

18        The settlements with these defendants include injunctive relief provisions that achieve a

19   key objective of this litigation: to change the labeling practices for the subject products.  All of

20   the settling defendants have agreed "that any of its current or future products labeled as 'Kona'

21   will accurately and unambiguously state on the front label of the product the minimum

22   percentage of authentic Kona coffee beans contained in the product.  Only Kona coffee certified

23   and graded by the Hawaii Department of Agriculture as 100% Kona shall be considered

24   authentic Kona coffee."  *See* Dkt. 394-1 (Copper Moon Agreement), at § 8(a); Dkt. 394-2 (BCC

25   _____

26   [2] The Settlement Class is defined uniformly across the eight settlements as "all persons and entities who, between February 27, 2015, and the date of Court's order granting preliminary approval to this settlement, farmed Kona coffee in the Kona District and then sold their Kona coffee."

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

Agreement), at § 12(a); Dkts. 394-3 and 4 (Cost Plus and MCC Agreements), at § 13(a); Dkt. 394-5 (Cameron's Agreement), at § 13(a); Dkt. 412-1 (Gold Agreement), at § 13(a). BCC, MCC, and Cost Plus agreed that for any current or future Kona-labeled products, they will comply with the more stringent labeling standards provided for under Hawaii law, even if that statute is modified, and whether or not the product is sold in Hawaii.  *See* Dkt. 394-2, at § 12(b); Dkts. 394-3 and 4, at § 13(b).  Similarly, Cameron's and Gold have agreed to use at least the percentage required by Hawaii law, unless Hawaiian law provides for a percentage greater or equal to 51 percent, in which case Cameron's agrees to use at least 51 percent.  Dkt. 394-5 at § 13(b); Dkt. 412-1 § 13(b).  The Copper Moon agreement also includes detailed labeling requirements that must be met to satisfy Section 8(a)'s accuracy provision, *see* Dkt. 394-1 at § 12, and provides that if at least three of certain of the supplier defendants in this litigation are subsequently obligated to comply with alternative labeling requirements, it will be similarly obligated.  *Id.*

The injunctive terms in the settlements with the two retailer defendants – Costco and TJX – reinforce these labeling changes, but apply even more broadly to Costco's and TJX's vendors of Kona-labeled coffee.  Costco and TJX have agreed that their vendors must include clear and conspicuous labeling of the contents of Kona-labeled coffee.  Both defendants have agreed that "any coffee product labeled as 'Kona coffee' or 'Kona Blend coffee' will state on the front of the product's label the percentage of Kona coffee beans the supplier of the products states are contained in the product, using the same font type and same color as the word Kona or a similar color scheme and no smaller than one-half the size as the word "Kona" appears, on the front of the package."  Dkts. 412-2 and 3 at § 13(a).  The agreements also provide for a certification process in which vendors of coffee labeled as "Kona" or "Kona blend" are or will be requested to certify to Costco or TJX that that their labeling complies with Paragraph 13(a). Dkts. 412-2 and 3 at § 13(d).

In exchange for these benefits, Settlement Class Members release the Settling Defendants

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

-4-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    from claims asserted in this litigation, as described and set out in the Settlement Agreements.

2    **IV.      The Class Notice Plan Was Successfully Implemented.**

3            This Court's Preliminary Approval Orders directed that the parties effectuate a multi-

4    faceted notice plan, including direct notice to Settlement Class Members, and the establishment

5    of a dedicated settlement website, post office box, and toll-free telephone number.  The parties,

6    in consultation with the Settlement Administrator, have carried out the notice plan.  Consistent

7    with the Court's orders, the Settlement Administrator will provide a declaration on June 4 (two

8    weeks before the final approval hearing) confirming its implementation of the notice plan.  That

9    affidavit will also report on whether any of the more than 700 Settlement Class Members who

10   were sent direct notice have elected to opt out of or object to the settlements.  To date, not a

11   single opt-out or objection has been received.  Following final approval, the Settlement

12   Administrator will effectuate the claims and payment process to class members, which is

13   described in more detail below.

14   **V.       Final Approval is Warranted.**

15            **A.       Settlement Approval Process**

16            Federal Rule of Civil Procedure 23(e) provides that class actions "may be settled … only

17   with the court's approval."  Rule 23(e) governs a district court's analysis of the fairness of a

18   proposed class action settlement and creates a multistep process for approval.  This Court has

19   already taken the first two steps.  First, it has determined that it is likely to (i) approve the

20   proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in

21   Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing.  *See* Fed. R.

22   Civ. P. 23(e)(1)(B).  Second, it has directed notice to the class, approving notice that describes

23   the terms of the proposed settlement and the definition of the proposed class, and explains how

24   class members can object to or opt out of the proposed settlement.  *See* Fed. R. Civ. P.

25   23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5).  Plaintiffs now ask that this Court take the third and

26   final step, which is to grant final approval of the proposed settlements.  *See* Fed. R. Civ. P.

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL                            -5-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

23(e)(2).

**B.    The Settlements Are Fair, Reasonable, and Adequate.**

All of the factors set forth in Fed. R. Civ. P. 23(e)(2) weigh strongly in favor of final approval. Indeed, in granting preliminary approval, the Court already observed that the proposed Settlement appeared "fair, reasonable, and adequate," so that notice was appropriate.  Dkts. 400, 414 ¶ 4.  These same conclusions counsel in favor of final approval here.

**1.    Rule 23(e)(2)(A): Class Counsel and the Settlement Class Representatives Have and Will Continue to Zealously Represent the Class.**

The Court's preliminary determination, under Rule 23(e)(2)(A), that Class Counsel and the Plaintiffs have zealously advanced the interests of the Plaintiffs and the proposed Settlement Class, was correct.  As the motions for preliminary approval detailed, Class Counsel and Plaintiffs have worked tirelessly to advance this case to this point, from the extensive pre-filing investigation through challenges to the pleadings, intensive discovery against over twenty defendants and from numerous third parties, and through the negotiations of these settlements. The Plaintiffs, too, have devoted countless hours to representing the class, even as they have continued to operate their small coffee farms and navigate the challenges of the last year.

**2.    Rule 23(e)(2)(B): The Settlements Are the Result of Arms-Length, Informed Negotiations.**

Rule 23(e)(2)(B) directs the Court to determine if a class action settlement was negotiated at arm's-length.  Here, too, the Court's preliminary determination was correct.

First, as Plaintiffs explained, the involvement of experienced mediators in the negotiations creates a presumption of fairness.  *See* Joseph M. McLaughlin, *McLaughlin on Class Actions* (8th ed. 2011); *see also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Free Range Content, Inc. v. Google, LLC*, No. 14-02329, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) (holding

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    that a "presumption of correctness" attaches where, as here, a "class settlement [was] reached in

2    arm's-length negotiations between experienced capable counsel after meaningful discovery").

3          Second, Class Counsel negotiated the Settlements with a full understanding of the legal

4    claims and their factual basis, negotiating only after conducting discovery and obtaining sales

5    and other pertinent data as to the settling defendants' businesses, and successfully litigating

6    dispositive and non-dispositive motions.  Where extensive information has been exchanged, "[a]

7    court may assume that the parties have a good understanding of the strengths and weaknesses of

8    their respective cases and hence that the settlement's value is based upon such adequate

9    information."  William B. Rubenstein, et al., *Newberg on Class Actions* § 13:49 (5th ed. 2012);

10   *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018)

11   (concluding that the "extent of discovery" and factual investigation undertaken by the parties

12   gave them "a good sense of the strength and weaknesses of their respective cases in order to

13   'make an informed decision about settlement'") (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213

14   F.3d 454, 459 (9th Cir. 2000)).

15          **3.    Rule 23(e)(2)(C): The Settlements Provide for Substantial
              Compensation.**

16

17          The Court may also find for purposes of final approval that the relief provided for the

18   class is "adequate."  Fed. R. Civ. P. 23(e)(2)(C).  This subsection asks the Court to take into

19   account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

20   method of distributing relief to the class, including the method of processing class-member

21   claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment;

22   and (iv) any agreement required to be identified under Rule 23(e)."  The Court can readily

23   adhere to and confirm its preliminary determination that the settlement is adequate upon review

24   of these factors.

              **a.    The Settlements deliver excellent monetary and injunctive
              relief.**

25

26          The Settlements deliver immediate monetary relief and practice changes.  Plaintiffs'

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL                          -7-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   damages experts calculate that the supplier Settling Defendant together caused approximately

2   $36 million in market-price damages to the class.  *See* Dkt. 428 (sealed Schreck Declaration) at

3   Table 2, ¶ 28, & n.38.  Against that number, the total cash value of the Settlements is

4   $13,105,750—or 36% of the potential damages (not including profit disgorgement or corrective

5   advertising).

6          This return standing alone would be comfortably within the range of settlement approval.

7   *See, e.g.*, *Baker v. Seaworld Ent't, Inc.*, No. 14-2129, 2020 WL 4260712, at *6 (S.D. Cal. July

8   24, 2020) (approving settlement, describing "14% of the maximum recoverable amount" as "a

9   significant recovery," and collecting cases). In this case, the results obtained are exceptional

10  given that the class also benefits from injunctive relief valued at $37.9 million.  Dkt. 428 at ¶ 36.

11  This is all the more so because some of the Settlements reflect those Defendants' inability to pay

12  more, meaning that, as to those Defendants, the recovery is closer to 100% of what could be

13  obtained even after trial.  *See* Dkt. 394-2 (BCC) at § 9; Dkt. 394-3 (MCC) at § 9; Dkt. 394-4

14  (Cost Plus) at § 9.

15                    **b.    The costs, risks, and delay of trial and appeal weigh in favor of**
                            **final approval.**
16

17         The amount obtained is reasonable in light of the risks, delays, and costs attendant to

18  class certification, potential interlocutory appeal under Rule 23(f), summary judgment motions,

19  trial, and appeals. Plaintiffs explained some of those risks in the declarations in support of the fee

20  motion.  *See* Dkt. 416 at ¶¶ 10-16. To start, Defendants have advanced a legal theory that the

21  Lanham Act does not authorize the central claim in this case: false designation of geographic

22  origin. Although the Court denied the motions to dismiss on that basis, the issue would remain

23  alive in this case through summary judgment, trial, and appeal. Defendants also had factual

24  defense that consumers were not confused by false designations of Kona geographic origin and

25  that Plaintiffs' claims were barred by laches.  Although Plaintiffs are confident in the merits of

26  their claims, each of those issue created risk at summary judgment and trial.  In particular,

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL                              -8-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    whether consumers were confused or likely to be confused by Defendants' product labels would

2    likely come down to a "battle of the experts" at trial, the result of which is always uncertain.

3    Plaintiffs also faced risk at class certification, compounded by the potential lengthy delay of an

4    appeal under Rule 23(f).  *See* Dkt. 416 at ¶ 14.

5         Success at each stage can never be assured, but delay and costs would be certain.  The

6    Settlements are an outstanding outcome under any measure, but particularly in light of those

7    risks.

8              **c.    The method of distributing relief is simple and fair.**

9         The proposed method of distributing relief to the class, including claims processing, is

10   straightforward, simple, and designed to maximize participation in the settlement.  First, the

11   Settlement Class is defined by a reference to a discrete geographic area (the Kona region), such

12   that direct notice was feasible, with publication notice acting as informational reinforcement,

13   making it easier to identify and reach the class.  Settlement Class Members will be sent a

14   straightforward, two-page claim form that asks for basic information about their farm and the

15   acreage used to produce coffee over the relevant time period.  *See* Ex. A (claim form).  As

16   Plaintiffs have explained, the information requested is that which coffee farmers typically

17   maintain and keep accessible, and will allow for a fair and efficient distribution of the net

18   settlement proceeds.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16- 05479, 2018 WL 6619983,

19   at *12 (N.D. Cal. Dec. 18, 2018) (approving pro rata settlement distribution based on the

20   purchase and sales data provided by class members); *Thomas v. MagnaChip Semiconductor*

21   *Corp.*, No. 14-01160, 2017 WL 4750628, at *8-9 (N.D. Cal. Oct. 20, 2017) (same).

22        Class Counsel developed the claim form in consultation with the Settlement

23   Administrator, which has extensive experience designing plain-English forms and implementing

24   claims processes, and solicited input from class members to ensure that the form will be

25   intelligible and prompt claims. The form will also be available in Japanese.  Class members will

26   be able to make claims by returning hard copy forms by mail or through an online submission

1   form on the settlement website.  The Settlement Administrator will then calculate class

2   members' pro rata share of the net settlement funds at the end of the claims period and promptly

3   send checks to class members who made valid claims.

4           **d.**    **The request for attorneys' fees is reasonable and supported.**

5       As explained in the separately-filed motion for attorneys' fees, Class Counsel have

6   sought a percentage of the total economic value of the settlements, a request that is consistent

7   with fee awards in other cases involving significant and valuable injunctive relief, and reasonable

8   for all of the reasons described in that motion.  *See* Dkt. 415.  Class Counsel's request was

9   consistent with what was described in the notice, and not a single class member has objected to

10  the request.  The application itself was made prior to the expiration of the opt-out and objection

11  deadlines, consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th

12  Cir. 2010).

13          **e.**    **There are no agreements bearing on final approval.**

14      Rule 23(e)(2)(C)(iv) requires that the proponents of the settlement identify any agreement

15  (other than the settlement agreement) entered into in connection with the proposed settlement.

16  There are no such agreements.

17          **4.**    **Rule 23(e)(2)(D): The Settlement Treats All Class Members Equitably
    Relative to One Another.**

18

19      Finally, Rule 23(e)(2)(D) directs the Court to consider whether the settlements treat class

20  members equitably. This subsection of Rule 23(e) determines "whether the apportionment of

21  relief among class members takes appropriate account of differences among their claims, and

22  whether the scope of the release may affect class members in different ways that bear on the

23  apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Note to 2018

24  amendments.  As previously explained in the preliminary approval motions, each member of the

25  proposed Class will receive a pro rata share of the settlement based on their coffee production

26  during the claims period, such that class members will receive meaningful compensation directly

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

-10-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

proportional to the harm they suffered based on their actual sales.  Additionally, Plaintiffs have requested service awards for each plaintiff farm (three in total), as are commonly awarded in class actions, and are justified here by Plaintiffs' efforts in prosecuting the litigation, as explained in Plaintiffs' motion for approval of those awards and in the supporting declarations filed with the motion. *See* Dkt. 415.

### 5. The Settlement Satisfies the Ninth Circuit's Additional Factors for Final Approval.

The Ninth Circuit has identified a number of additional factors for courts to consider when evaluating the fairness, reasonableness, and adequacy of a class action settlement.  Those factors include: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.  *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).  Many of these—*e.g.*, the strength of plaintiffs' case, the risk and duration of further litigation, and the amount offered— overlap with the Rule 23(e)(2)(C) factors and are addressed above.  The remaining relevant factors favor final approval as well.

Most significant is the "reaction of the class to the proposed settlement." The verdict of the class has been unanimous: "We approve."  Not a single class member has objected to the settlements, or the requests for fees, costs, and service awards.  Not a single class member has opted out. This universal support strongly favors approval. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Gaudin v. Saxon Mort. Servs., Inc.*, No. 11-1663, 2015 WL 7454183, at *7 (N.D. Cal. Nov. 23, 2015) ("[T]he absence of a large number of objections to a

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

-11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   proposed class settlement raises a strong presumption that the terms of a proposed class

2   settlement are favorable to the class members.") (citation and alteration omitted); *id.* (finding that

3   "opt-out rate [] less than 1% … favors approval of settlement"); *Chun-Hoon v. McKee Foods*

4   *Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that 4.86% opt-out rate strongly

5   supported approval).

6          Other factors weigh in favor of approval as well. First, there is a real risk of "maintaining

7   class action status through trial." As explained in the counsel declarations, any class action

8   carries risks of denial of certification or de-certification. Dkt. 416 ¶ 14. Here, case-specific risks

9   included the need to prove that damages could be measured on a class-wide basis. *Id.* No

10  individual farmer can prove their market-price damages without such a model, and so

11  Defendants' inevitable *Daubert* and summary judgment challenges to the analysis posed risk not

12  just to the merits of the case, but to class certification as well. *Id.* Second, the "experience and

13  views of counsel" support approval. Counsel are experienced in both complex class actions and

14  Lanham Act litigation, and well-versed in particular with the issues in this case, having

15  investigated it thoroughly and litigated it extensively. *See* Dkt. 416 ¶¶ 4-9; Dkt. 417 ¶¶ 4-13.

16  Counsel unreservedly support the settlement.

17          **C.     The Settlement Class Should be Finally Certified.**

18          As the Court concluded in granting preliminary approval and directing notice to the

19  Class, the Settlement Class "likely meets the requirements under Fed. R. Civ. P. 23(a) and

20  23(b)(3)." Dkt. 400, 414 ¶ 3.  This remains true, and the Settlement Class should be certified.

21  **VI.    Conclusion**

22          For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant final

23  approval to these settlements.

24

25

26

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL                                    -12-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

Dated: May 27, 2021

KARR TUTTLE CAMPBELL

/s Nathan T. Paine
Paul Richard Brown, WSBA #19357
Nathan T. Paine, WSBA #34487
Daniel T. Hagen, WSBA #54015
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
206.223.1313

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

/s/ Jason L. Lichtman
Jason L. Lichtman (*pro hac vice*)
Daniel E. Seltz (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212-355-9500

Andrew Kaufman (*pro hac vice*)
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
615.313.9000

*Attorneys for the Plaintiffs*
*and the Proposed Settlement Class*

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

-13-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

## **CERTIFICATE OF SERVICE**

2

I, Andrew R. Kaufman, certify that on May 27, 2021, I caused the foregoing to be

3

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to those attorneys of record registered on the CM/ECF system.

5

6

/s *Andrew R, Kaufman*
Andrew R. Kaufman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

-14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592