# Exhibit A

Declaration of Nathan T. Paine

**In the Matter of:**

Corker, Bruce d/b/a Rancho Aloha, et al. vs Costco Wholesale Corp, et al.

**STEVEN MICHAEL MULGREW**

*March 17, 2021*

*Job Number: 728551*

CENTEXT LITIGATION SERVICES
855.CENTEXT

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

_____

BRUCE CORKER d/b/a RANCHO          )
ALOHA, etc., et al.,               )
                                   )
            Plaintiffs,            )
                                   )
       v.                          )No. 2:19-cv-00290-RSL
                                   )
COSTCO WHOLESALE CORPORATION,      )
a Washington corporation, etc.,    )
et al.,                            )
                                   )
            Defendants.            )
_____

CERTIFIED COPY

Videotaped 30(b)(6) Deposition Upon Oral Examination

of

MULVADI CORPORATION

by

STEVEN MICHAEL MULGREW

_____

Taken Remotely Via Zoom Videoconference

DATE:  Wednesday, March 17, 2021

REPORTED BY:  Ronald L. Cook
              CCR, CRR, RDR, FAPR
              WA CCR #2523; CA CSR #13928

STEVEN MICHAEL MULGREW - 03/17/2021

hours.  Part-time.

Q.    BY MR. PAINE:  And just so we have a definitive time period, when you say pre-COVID and post-COVID, are you talking March time frame -- March of 2020 time frame?

A.    Sounds correct.

Q.    In March of 2020, you said some employees were laid off, some were reduced -- had their hours reduced and worked part-time.  Do you recall how many employees were laid off?

A.    Say three.

Q.    And is -- considering you currently have about 10 to 12 employees since 2021, and you had about 15 prior to COVID, is it fair to assume, then, that those three laid-off employees were never rehired?

MR. CROSETTO:  Object to form.

THE WITNESS:  Yes.

Q.    BY MR. PAINE:  Sorry.  Was that a yes?

A.    Yes.

Q.    Do you have any plans to rehire those three laid-off employees or --

A.    Hopefully.

Q.    Doesn't sound like concrete plans.

A.    No, not really.  I mean, it could be somebody -- we're still not busy yet here in Hawaii.

STEVEN MICHAEL MULGREW - 03/17/2021

It's still very slow.  No tourism yet.

I mean, I did have to meet standards of the PP loan forgiveness, so I would have had less people, but I had to keep so many people on board to satisfy the loan forgiveness, so that would indicate why I had at least those people on board, which aren't completely necessary.

Q.     Okay.

So I take it from that that Mulvadi received a PPP loan?

A.     Yes.

Q.     And when did Mulvadi receive a PPP loan?

A.     We received a PP loan in 2020, and I received a second PP loan just recently, 2021.

Q.     Do you recall the amounts of each?

A.     The first one was maybe 1 -- over 150,000, I know that.  Maybe 170, 180 -- 180,000.

And the one I just received was significantly less, but over a hundred thousand.

Q.     And were these loans for the purposes of paying payroll?

A.     Payroll, rent, electric bill, health insurance.

Q.     And I take it from your testimony that the PPP loan that you received in 2020, as one of the

conditions for loan forgiveness, you had to retain a number of your staff even if you didn't feel like you needed them; is that --

A.    Yes.

MR. CROSETTO:  Object to form.

Q.    BY MR. PAINE:  So how many of Mulvadi's employees were you required to retain in order to qualify for the loan forgiveness?

A.    I think maybe the guidelines was I could lose a certain percentage.  Maybe like two or three, based on their criteria.

Q.    Is it fair to say, then, that the three people that Mulvadi laid off in early 2020 was -- sounds like that was the most that you could lay off while still qualifying for loan forgiveness under the PPP loan program; is that accurate?

A.    Yes.

MR. CROSETTO:  Object to form.

See if you can wait a beat there so I can get my objection in.  You don't want to talk over each other and mess up the transcript.

THE WITNESS:  Yes, John.

Q.    BY MR. PAINE:  Okay.

And then what bank did you apply -- or did Mulvadi apply to for the PPP loans?

STEVEN MICHAEL MULGREW – 03/17/2021

But besides Mulvadi just accepting the information on the invoice at face value, has Mulvadi done any sort of due diligence or independent investigation to confirm that the 100 percent Kona freeze-dried product that it purchases from Hawaii Coffee Connection is, in fact, 100 percent Kona coffee?

MR. CROSETTO:  Objection.  Asked and answered.

THE WITNESS:  No.

Q.    BY MR. PAINE:  Is Hawaii Coffee Connection the only supplier that Mulvadi purchases the freeze-dried 100 percent Kona coffee from?

A.    Yes.  Yes.

Q.    And has that been true going all the way back to 2015?

A.    Yes.

Q.    And since 2015, I believe you testified earlier that Hawaii Coffee Connection has been Mulvadi's sole supplier of the roasted 100 percent Kona coffee that Mulvadi uses in its coffee products; is that correct?

A.    Yes.

Q.    Does Mulvadi always purchase the coffee from Hawaii Coffee Connection in roasted form?

STEVEN MICHAEL MULGREW - 03/17/2021

Q.    And in your role as president and CEO and owner of Mulvadi, you are not only familiar with the fact that Mulvadi keeps electronic QuickBooks records but you also help to maintain those records, correct?

MR. CROSETTO:  Object to form.

THE WITNESS:  Yes.

Q.    BY MR. PAINE:  And when you're presenting this declaration to the court explaining Mulvadi's financial hardship with scanning 40-plus boxes of documents of information, much of which is also included in the QuickBooks file, why didn't Mulvadi, to save itself the time and expense, simply offer to produce the QuickBooks file as a potential alternative to the scanning of documents?

MR. CROSETTO:  Objection.  The witness has already answered that this is attorney-client --

MR. PAINE:  You can state your -- no, you can state your objection.  I'm asking why, as the president and CEO and only owner of Mulvadi, he didn't offer up the QuickBooks file as a potential suitable alternative to scanning 40 boxes of documents.

MR. CROSETTO:  And I'm instructing the witness not to answer with any attorney-client communications, which are protected.

So if you can answer without divulging

STEVEN MICHAEL MULGREW - 03/17/2021

any attorney-client communications --

THE WITNESS:  I'll answer it.

I was asked to make hard copies of all the documents.  That's what I was told to do.  And that was going to be a hardship for me.  And it was a hardship.

So I was told to scan all of the documents that I have and turn them over to my (inaudible), and that's -- that's what I did.

Q.    BY MR. PAINE:  But do you know whether or not at any point in time Mulvadi disclosed, either to plaintiffs or to the court, the fact that Mulvadi maintained detailed QuickBooks records of all of its purchases of 100 percent Kona coffee from its suppliers as well as all of its sales of a hundred percent Kona coffee to its customers?

MR. CROSETTO:  Objection.  Assumes facts not in evidence.

THE WITNESS:  That wasn't asked of me. What was asked, to make hard-copy documents of all my files.

Q.    BY MR. PAINE:  Sir, that's not the question.  The question is:  Did you ever disclose, either to plaintiffs or to the court, the fact that Mulvadi kept detailed electronic records through

STEVEN MICHAEL MULGREW - 03/17/2021

QuickBooks of all of its Kona coffee purchases and all of its sales of 100 percent Kona coffee Mulvadi products?

MR. CROSETTO:  Same objection.  Asked and answered.

THE WITNESS:  I don't really understand your question.  I was not told to offer -- I was told to make documents, hard copies.

Q.    BY MR. PAINE:  Sir, I'm not asking what you were told.  I'm asking whether or not Mulvadi ever disclosed the existence of its electronic records maintained in QuickBooks.

MR. CROSETTO:  Objection.  Asked and answered.

THE WITNESS:  Again, I didn't disclose of it, no.

MR. PAINE:  Putting up on the screen what will be marked as Deposition Exhibit 3, which is another declaration of Steve Mulgrew, this one dated August 21st, 2019.

(Deposition Exhibit 3 was marked
        for identification.)

Q.    BY MR. PAINE:  Let us know when you need us to scroll down to the second page of this document.

A.    Okay, you can scroll down.

STEVEN MICHAEL MULGREW - 03/17/2021

used "sourced" versus "grown" here?

A.    No.

Q.    Okay.

And then your next paragraph you write, "We also have purchase and sale information and business records that Mulvadi was required to provide to the State of Hawaii Department of Agriculture for calendar years 2017 and 2018.  That information is summarized as follows."

Do you see that?

A.    Yes.

Q.    What purchase and sale information was Mulvadi required to provide to the State of Hawaii Department of Agriculture in 2017-2018?

A.    Well, they received a complaint from a source in Kona, and they asked me to provide it voluntarily so I did.

Q.    Do you recall what exactly you provided?

A.    What you see right here on this signed declaration.

Q.    So you just provided the State of Hawaii Department of Agriculture with these two charts and that was it?

A.    Yes.

Q.    And you didn't provide the State of

STEVEN MICHAEL MULGREW - 03/17/2021

Hawaii Department of Agriculture with any backup documentation to support the figures listed in these two charts?

A.    No.

Q.    And then you also -- in addition to the purchase and sale information, you declare that you also provided Mulvadi's business records to the State of Hawaii Department of Agriculture for 2017-2018. What business records did you provide to the State?

MR. CROSETTO:  Object to form.

THE WITNESS:  This is the business record here.

Q.    BY MR. PAINE:  Just these two charts?

A.    Yes.

Q.    Okay.

Do you know who made the complaint that triggered the State of Hawaii Department of Agriculture to reach out to Mulvadi for these business records?

A.    I do not know.  I can speculate but I do not know.

Q.    Do you know what the complaint was that was made?

A.    That there was no -- they thought that there was not enough beetle borer marks in my beans.

STEVEN MICHAEL MULGREW - 03/17/2021

THE REPORTER:  Sorry.  Can you say that term again?  "Beetle form marks"?

THE WITNESS:  Yeah, "beetle borer." There's a beetle borer problem in Kona --

THE REPORTER:  I'm not getting the words. I don't need an explanation, but --

"Beetle"?

THE WITNESS:  Beetle borer.

THE REPORTER:  Thank you.

MR. PAINE:  And it's borer, b-o-r-e-r.

Q.    So if I'm understanding you correctly --

Well, let me back up.  So the Kona region has a problem with an infestation of the coffee borer beetle with respect to the Kona coffee crops, correct?

A.    Yes.

MR. CROSETTO:  Object to form.

Q.    BY MR. PAINE:  And the concern that somebody had raised with the Department of Agriculture was that Mulvadi's beans sold in its hundred percent Kona coffee products did not show enough damage caused by the coffee beetle borer and, therefore, raised suspicions as to whether or not those coffee beans, in fact, originated from Kona?

MR. CROSETTO:  Object to form.

THE WITNESS:  That -- they said not

enough.  There was beetle borer marks, but evidently not enough for somebody.

Q.    BY MR. PAINE:  Right.  That's -- so your understanding of the complaint was the coffee beans contained in Mulvadi's 100 percent Kona coffee products did not show enough damage from coffee beetle borers in their opinion, therefore, raising suspicion as to whether those coffee beans, in fact, originated from Kona or some other origin?  Is that your understanding of the complaint?

A.    That's what was mentioned.  It was investigated by Jeri Kahana, who was Department of Ag, who went over there, and was satisfied with how the operation was being conducted over there.

Q.    What kind of investigation did Jeri do besides ask for these two charts of information concerning coffee purchases and sales from Mulvadi?

MR. CROSETTO:  Object to form.

THE WITNESS:  She went to Kona and spoke with Hawaii Coffee Connection and did her due diligence on how her operation was being done.

Q.    BY MR. PAINE:  Well, I'm not going to ask you to testify as to what Jeri did with respect to Hawaii Coffee Connection.  I'm really just interested in what kind of investigation Jeri did with respect to

STEVEN MICHAEL MULGREW - 03/17/2021

Mulvadi.

So other than to ask Mulvadi to produce the information in these two charts, did Jeri do any other type of investigation with respect to Mulvadi only?

A.    No.

Q.    And when did that investigation take place?

A.    Before this lawsuit.

Q.    So this lawsuit was filed at the end of February 2019.  Would that investigation have been at the beginning of 2019 or the end of 2018?

A.    Right around -- maybe at the end of 2018 or probably early 2019.

Q.    And these two charts here for -- that display data from 2017 and 2018 concerning Mulvadi's purchases and sales of Kona coffee, do you see that there in your declaration?

A.    Yes.

Q.    Where did that data come from?

A.    It came from our QuickBooks program.

Q.    So Mulvadi was able to generate this data by reviewing its -- the QuickBooks program that it maintains at Mulvadi's offices?

MR. CROSETTO:  Object to form.

STEVEN MICHAEL MULGREW - 03/17/2021

THE WITNESS:  Yes.

Q.     BY MR. PAINE:  And is it fair to say that Mulvadi also can produce this same data from QuickBooks for the years 2015, 2016, 2019, 2020 and 2021?

MR. CROSETTO:  Object to form.

THE WITNESS:  Yes.

Q.     BY MR. PAINE:  Do you recall this morning you offered testimony concerning the number of employees employed by Mulvadi Corporation each year?

A.     Yes.

Q.     And you generally estimated the number of employees to be somewhere between 12 and 15 each year?

A.     That's an estimate.

Q.     Right, but do you recall that testimony?

A.     Yes.

MR. CROSETTO:  Object to form.

Q.     BY MR. PAINE:  And that 12- to 15-employee estimate included yourself, correct?

A.     Yes.

Q.     And then you had testified that, consistent with the sworn statement made in your declaration, that you had -- or Mulvadi Corporation had laid off its entire workforce as of I think it was March 26, 2020, correct?

STEVEN MICHAEL MULGREW - 03/17/2021

MR. CROSETTO:  Object to form.

THE WITNESS:  Yes.

Q.    BY MR. PAINE:  And then I think you said within several weeks you ended up -- or Mulvadi Corporation ended up rehiring all of its staff except for three employees, who continue to be laid off to this day?

MR. CROSETTO:  Object to form.

THE WITNESS:  They weren't -- they weren't laid off.  They just didn't come to work, so it wasn't like I laid off, rehired.  Just nobody came to work.  Governor's orders.

Q.    BY MR. PAINE:  Well, that's not what you said in your declaration.

MR. CROSETTO:  Objection.

Q.    BY MR. PAINE:  In your sworn declaration, submitted on April 8th, 2020, you state, and I quote, "As a result of virtually no demand for my products, on March 25th, 2020, I laid off all personnel of Mulvadi, and I'm" -- "and am the only person working for the company at this time."

Wasn't that your sworn testimony?

A.    Yes.

Q.    So which is it?  Did you lay them off on March 25th, 2020, or did they just not come to work

STEVEN MICHAEL MULGREW - 03/17/2021

per governor's orders after March 25th?

MR. CROSETTO:  Objection.  Misstates prior testimony, argumentative.

THE WITNESS:  It's saying that they just stopped working.  It's a combination of many things. At that time survival was the key, so I didn't have anybody working.

Q.    BY MR. PAINE:  Okay.

But you stated in a sworn statement to the court, to Judge Lasnik, that you had laid off all personnel of Mulvadi on March 25th, 2020.  Is that not true, when you made that representation to the court on April 8th, 2020?

MR. CROSETTO:  Objection.  Misstates prior testimony, argumentative.

THE WITNESS:  So, yes, I laid off workers.  Yes.  At one time over here I was the only person working.

Q.    BY MR. PAINE:  Right.  And then I believe you testified earlier that several weeks later you rehired or had most of your workers come back to work except for three, that continue to be laid off as of this day.  Do you recall that?

A.    Yes.  I -- slowly they were coming back, yes.

STEVEN MICHAEL MULGREW - 03/17/2021

Q.    Okay.

And then do you recall that you testified that you had the employees come back before Mulvadi had obtained a PPP loan from Central Pacific Bank?

A.    Yes.

Q.    And do you recall the date upon which Mulvadi Corporation received its first PPP loan from Central Pacific Bank?

A.    No.

Q.    Do you remember having to fill out an application with Central Pacific Bank for the PPP loan?

A.    Yes.

Q.    Did you retain a copy of that application?

A.    Do I have a copy of the application?

Q.    Yes.

A.    I'm sure I do somewhere.

Q.    Do you remember how many employees you represented to the bank that Mulvadi Corporation was employing as of the time it made its application for the PPP loan?

A.    No.

Q.    Would it have been the 12- to 15-employee number that you testified to previously?

STEVEN MICHAEL MULGREW - 03/17/2021

MR. CROSETTO:  Objection.  Asked and answered.

THE WITNESS:  I'm sorry.  What was the question, again?

Q.    BY MR. PAINE:  Would the number of employees that you put down on your PPP loan application -- would that have been the 12 to 15 employees that you testified earlier to as Mulvadi staff as of that time?

MR. CROSETTO:  Same objection.

THE WITNESS:  Again, yes, but these are estimated numbers.  I'm not exactly positive of exact numbers, but -- you know, I have to hire so many people back to qualify, yes.

Q.    BY MR. PAINE:  But I realize 12 to 15 is an estimated range, but --

A.    Right.

Q.    So it could be 10, it could be 17?

A.    Might be more on the side -- more on the side of less.

Q.    But it wouldn't be more than 20, I think you testified earlier, right?

MR. CROSETTO:  Object to form.

THE WITNESS:  Wouldn't be more than 20.

MR. PAINE:  I'm putting in front of you

STEVEN MICHAEL MULGREW - 03/17/2021

what's going to marked as Deposition Exhibit 4, which is a publicly available document obtained through ProPublica, which reports on the PPP loans made, and the -- ProPublica has a PPP loan for the Mulvadi Corporation for $235,600, approved by the Central Pacific Bank on April 5th, 2020.

(Deposition Exhibit 4 was marked for identification.)

Q.    BY MR. PAINE:  Let me know when you would like us to scroll to the next page of the document.

A.    You can scroll.

MR. CROSETTO:  What did you say was the source of this document?

MR. PAINE:  Right on the document.  It's ProPublica.

MR. CROSETTO:  I mean, you pulled it from online; is that correct?

MR. PAINE:  Yes.  It's a publicly available document, pulled from online.

THE WITNESS:  You can scroll down.

Okay.

Okay.

Okay.

Q.    BY MR. PAINE:  Now, earlier you were asked if you could recall the amount of the first PPP

STEVEN MICHAEL MULGREW - 03/17/2021

loan that you had received from Central Pacific Bank, and you had estimated around $180,000.  Do you recall that?

A.    Yes.

Q.    According to this document here, though, the loan amount appears to have actually been $235,600.  Do you see that there?

A.    Yes.

MR. CROSETTO:  Objection.  Foundation.

Q.    BY MR. PAINE:  Does that help refresh your recollection as to what the actual loan amount is that you received from Central Pacific Bank?

MR. CROSETTO:  Same objection.

THE WITNESS:  Certainly I have two other companies that also received PPP loans, so I'm not exact with numbers, but this looks correct.

Q.    BY MR. PAINE:  Well, but this document only identifies Mulvadi Corporation, correct?

A.    Yes.

Q.    When Mulvadi Corporation made its -- or filed the application for its PPP loan, did it also file the application on behalf of other companies other than Mulvadi?

A.    Other companies filed separate entities for the PP loan that I own.

STEVEN MICHAEL MULGREW - 03/17/2021

Q.    Okay.

So, for example, Aloha Oils filed its own separate application for a PPP loan, correct?

A.    Yes.

MR. CROSETTO:  Objection.

Q.    BY MR. PAINE:  Now, back to my previous question.  Does this loan amount shown here on this document refresh your recollection as to the exact loan amount that Mulvadi Corporation received from Central Pacific Bank for its PPP loan?  That being $235,600.

A.    I would have to check.

Q.    Could that number be accurate?

A.    It could be accurate.

Q.    And do you see just below the loan amount, it says, "Where they said the money will go"?  Do you see that?

A.    Yes.

Q.    And it lists payroll.  Do you see that?

A.    Yes.

Q.    Did Mulvadi, in fact, use its PPP loan to pay payroll?

A.    Yes.

MR. CROSETTO:  Object to form.

Q.    BY MR. PAINE:  What was that?

STEVEN MICHAEL MULGREW - 03/17/2021

A.      Yes.

Q.      Okay.

And then if you look down a little bit, according to this document, the number of jobs reported on the PPP loan application for Mulvadi was 24.  Do you see that?

A.      Yes.

Q.      But earlier you had testified that it was unlikely that Mulvadi had more than 20 employees as of March-April 2020.  Do you recall that testimony you just gave?

MR. CROSETTO:  Object to form.

Q.      BY MR. PAINE:  What was that?

A.      That number was -- yeah, it's surprising a little bit.  I thought it was less than that.

Q.      Okay.

So which is accurate, then?  The number of jobs reported on your PPP loan application to Central Pacific Bank or the number of jobs you had -- or employees you had identified in your testimony just a few moments ago?

MR. CROSETTO:  Objection.  Misstates prior testimony, argumentative.

THE WITNESS:  I have to look at the original form that we applied for to compare it to

what is on the printout here.

Q.    BY MR. PAINE:  And your testimony earlier was that you believe that Mulvadi still has that form, correct?

A.    I think we should, yes.  If I don't have it, I'm sure that the bank has it.

Q.    And was this first PPP loan from Central Pacific Bank forgiven?

A.    We're in the process now, and I'm not totally certain.  I know we're working on trying to satisfy the other company.  I'm not sure how this one is right now, if it's forgiven yet.

Q.    All right.

And then was the -- after Mulvadi received the PPP loan, was that money, in fact, used to rehire your employees, keep them employed with Mulvadi Corporation?

A.    Yes.

MR. PAINE:  I'm going to mark this as Deposition Exhibit 5, which is another ProPublica report for Mulvadi Corporation, PPP loan in the amount of $150,000, approved on January 26th, 2021.

(Deposition Exhibit 5 was marked for identification.)

Q.    BY MR. PAINE:  Take a moment to review

STEVEN MICHAEL MULGREW - 03/17/2021

C E R T I F I C A T E

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I, the undersigned Washington Certified Court Reporter, pursuant to RCW 5.28.010, authorized to administer oaths and affirmations in and for the State of Washington, do hereby certify:

That the foregoing deposition of the witness named herein was taken stenographically before me and reduced to a typed format under my direction;

That, according to CR 30(e), the witness was given the opportunity to examine, read and sign the deposition after same was transcribed, unless indicated in the record that the review was waived;

That all objections made at the time of said examination have been noted by me;

That I am not a relative or employee of any attorney or counsel or participant and that I am not financially or otherwise interested in the action or the outcome herein;

That the witness coming before me was duly sworn or did affirm to tell the truth;

That the deposition as transcribed is a full, true and correct transcript of the testimony, including questions and answers and all objections, motions and exceptions of counsel made at the time of the foregoing examination;

That as a matter of firm policy, the stenographic notes of this transcript will be destroyed three years from the date appearing on this transcript, unless notice is received otherwise from any party or counsel hereto on or before said date.

_____
RONALD L. COOK, CCR, RDR, FAPR
State of Washington CCR #2523