UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUCE CORKER, d/b/a RANCHO ALOHA, *et al.*,

Plaintiffs,

v.

COSTCO WHOLESALE CORPORATION, *et al.*,

Defendants.

Case No. C19-0290RSL

ORDER DENYING KEVIN KIHNKE'S MOTION TO DISMISS (DKT. # 488)

This matter comes before the Court on defendant Kevin Kihnke's motion to dismiss. Dkt. # 488. The named plaintiffs grow Kona coffee in the Kona District of the Big Island of Hawaii and allege that various distributors, wholesalers, and retailers of coffee products sell ordinary commodity coffee labeled as "Kona" coffee, to the detriment of those who grow actual Kona coffee. Among these defendants is Kevin Kihnke, the president and sole owner of L&K Coffee Co. (which is also named as a defendant in the present action). Dkt. # 488 at 7. On November 18, 2020, plaintiffs moved to amend their complaint to add Kihnke as a defendant after reviewing L&K's Rule 30(b)(6) deposition testimony, which led plaintiffs to believe "Kihnke was personally liable for L&K's Lanham Act violations because he 'authorized and directed' them." Dkt. # 508 (quoting *POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x

577, 581 (9th Cir. 2009)); *see also* Dkt. # 348. The Court granted plaintiffs' motion on January 4, 2021. *See* Dkt. # 379. Kihnke contends that he should be dismissed from this action because the Court lacks personal jurisdiction over him. Dkt. # 488 at 7-14. Kihnke also contends that he should be dismissed for improper venue. *Id.* at 15-16. If the Court finds personal jurisdiction exists, Kihnke contends that "the scope of the personal jurisdiction . . . must be limited to the claims with a connection to the forum state." Dkt. # 512 at 16.

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Where, as here, the defendant's motion is based on written materials, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Id.* The plaintiff cannot simply "rest on the bare allegations of its complaint" if an allegation is challenged by the defendant, but uncontroverted allegations in the complaint must be taken as true. *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Similarly, the plaintiff bears the burden of showing that venue is proper. *eBay, Inc. v. Digital Point Sols.*, 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)). When considering a motion to dismiss for improper venue, "the allegations in the complaint need not be accepted as true, and the court may consider evidence outside the pleadings." *Id.*; *see also Argueta v. Banco*

*Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). However, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

**A. Personal Jurisdiction**

Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the district court sits. *Mavrix Photo*, 647 F.3d at 1223 (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, permits the exercise of jurisdiction to the full extent of the Due Process Clause of the United States Constitution. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have "certain minimum contacts" with the relevant forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

There are two recognized bases for exercising personal jurisdiction over a non-resident defendant: "general jurisdiction" and "specific jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017). Here, plaintiffs argue the Court has specific jurisdiction, which "arises when a defendant's specific contacts with the forum give rise to the claim in question." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1118 (C.D. Cal. 2009) (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408,

414-16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050-51 (9th Cir. 1997)); Dkt. # 508 at 7.

The Ninth Circuit utilizes a three-prong test for determining whether due process allows for the exercise of specific jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Photo Mavrix*, 647 F.3d at 1227-28. Plaintiffs bear the burden of proving the first two prongs. *Id.* If they do so, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Kihnke argues that even if the Court's exercise of personal jurisdiction over L&K is proper,[1] the corporation's contacts with Washington cannot be imputed to Kihnke and his alleged contacts with Washington, on behalf of himself and/or L&K, do not constitute purposeful direction at the forum.

---

[1] Kihnke states, without separate argument or support, that he "does not concede L&K's relevant contacts with the state of Washington were sufficient to confer jurisdiction [over] L&K." Dkt. # 488 at 9 n.2.

**1. Forum Contacts of a Corporate Officer/Director**

"[U]nder the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). However, courts can exercise personal jurisdiction over a corporate officer where a plaintiff demonstrates that the officer is personally liable for wrongdoing in the forum or if the corporation is the alter ego of the individual officer. *Id.* at 520-21. A "corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Thus, "a corporate officer's contact on behalf of a corporation is sufficient to subject the officer to personal jurisdiction where the officer 'is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities.'" *Allstar*, 666 F. Supp. 2d at 1120; *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) ("[T]he actions of a corporate entity can be imputed to an individual officer who is the 'guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity.'").

Here, the wrongdoing plaintiffs allege is the selling of ordinary commodity coffee labeled as "Kona" coffee to the detriment of those who grow actual Kona coffee. Thus, the relevant question for both Kihnke's personal liability and personal jurisdiction is whether plaintiffs have made a prima facie showing that Kihnke is the "guiding spirit" behind L&K's alleged selling of commodity coffee as "Kona" coffee in Washington. Defendant argues that plaintiffs cannot

make such a showing, as they have failed to provide "prima facie evidence that the *di minimis* amount of coffee L&K sold in Washington . . . violated the Lanham Act." Dkt. # 512 at 3. Defendant offers two supporting points for this argument. First, Kihnke's declaration stating that he is "unaware that [he] had any involvement in the development of the particular Kona Blend recipes" or "labeling of the products" that "were included in those small volume sales," namely, the L&K Kona Blend products that were delivered to Washington. Dkt. # 501 at 2. Second, the settlement agreements between plaintiffs and other defendants, under which plaintiffs agree that defendants may lawfully sell and market coffee as a "Kona" designated product, so long as it contains at least 10% Kona coffee. Dkt. # 512 at 9-11. Defendant argues that because these settlement agreements indicate "plaintiffs' understanding that not all Kona-designated product sales violate the Lanham Act," to establish that L&K committed a "wrong" in Washington, plaintiffs must "show this court some evidence of what L&K actually sold in Washington." *Id.* at 10.

Defendant acknowledges that "plaintiffs need not prove their case against L&K to establish a prima facie case to support jurisdiction," yet that is essentially what he is demanding. *Id.* at 11. Plaintiffs have marshaled evidence showing (1) Kihnke is L&K's president and sole owner, Dkt. # 348 at 7; (2) Kihnke is L&K's coffee bean buyer and selects the coffee beans that make up L&K's coffee products, Dkt. # 348-1 at 3-4, 12; (3) Kihnke had sole approval power over L&K's decisions and L&K employees were instructed to throw at most a handful of Kona coffee beans into a 30+ pound vat and call the result "Kona" coffee, *id.* at 3-4, 7-9, 11-12, 15-16; and (4) Kihnke's signature is on L&K's "Kona" coffee packages, Dkt. # 365 at 9. There is

no suggestion that Kona Blend products for Washington customers were prepared any differently, and Kihnke's declaration stating that he is "unaware" of his involvement in the recipe creation or packaging for these "small volume orders" does not contravene the deposition testimony relied upon by plaintiffs. Indeed, even if it did, all factual disputes must be resolved in plaintiffs' favor on this motion to dismiss. *Photo Mavrix*, 647 F.3d at 1223. Thus, given Kihnke's central role in producing L&K's Kona Blend products which were sold in Washington, plaintiffs have met their burden of demonstrating that Kihnke is a "central figure in the challenged corporate activity." *Facebook*, 844 F.3d at 1069.

**2. Purposeful Direction**

Having established that Kihnke's contact with the forum on behalf of L&K can serve as the basis for an exercise of personal jurisdiction, we turn to the first prong of the personal jurisdiction analysis. Because plaintiffs seek relief under the Lanham Act, their action sounds in tort, making "'purposeful direction' the proper analytical framework." *Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*, 826 F. Supp. 2d 1242, 1254 (W.D. Wash. 2011) (citing *Photo Mavrix*, 647 F.3d at 1228).

In purposeful direction cases, it is appropriate to apply an "'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Photo Mavrix*, 647 F.3d at 1228. The effects test "requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)). The "intentional act" prong can be met

by operating an interactive website. *Blue Nile, Inc. v. Ideal Diamond Sols.*, No. C10–380TSZ, 2011 WL 830724, at *2 (W.D. Wash. Mar. 1, 2011) ("Operating a website is an intentional act." (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). The "expressly aimed" prong can be met by conducting business over the internet and selling products to forum residents. *See Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co., Ltd.*, No. C18-01032TSZ, 2019 WL 1572675, at *4 (W.D. Wash. Apr. 11, 2019) ("With respect to acts 'expressly aimed' at the forum state, personal jurisdiction is appropriate where an entity is conducting business over the internet and has offered for sale and sold its products to forum residents."); *see also Mavrix Photo*, 647 F.3d at 1229-30. The "causing harm" prong can be met by marketing and selling deceptive products in the forum. *See Philips Oral*, 2019 WL 1572675, at *5 (finding because defendants marketed and sold "allegedly infringing products to Washington residents, they caused harm they knew was likely to be felt in Washington").

Here, there is no disagreement that L&K operated an interactive website. Dkt. # 488 at 9; Dkt. # 491 at 4-7. Nor is it contested that L&K sold and shipped nearly $15,000 worth of its Kona Blend products to Washington residents during the relevant time period. Dkt. # 491 at 2. Furthermore, L&K allegedly also sold its Kona Blend products wholesale to retail outlets in Washington including Costco, Amazon, Walmart, T.J. Maxx, and Marshalls. Dkt. # 381 at 8-9. Finally, plaintiffs allege that L&K has harmed the consuming public by marketing and selling its deceptive products to Washington residents. *Id.* at 5, 22 ("Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee. A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price" and

will be "misled into concluding that Kona coffee is nothing special."). Because defendant marketed and sold allegedly deceptive products to Washington residents, he caused harm he knew was "likely to be felt" in Washington.

**3. Arising Out of Forum-Related Activities**

The second prong of the specific jurisdiction test requires that the plaintiff's claims arise out of defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit has adopted a "but for" test to assess if this requirement is met. *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015). "[I]n trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied." *Id.* (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011)).

Here, defendant's contacts with the forum are L&K's sales of allegedly deceptive Kona Blend coffee to customers in Washington state; but for L&K's sales, plaintiffs would not have been injured. Accordingly, the second requirement for specific jurisdiction is satisfied.

**4. Reasonableness of Exercising Jurisdiction**

Because plaintiffs have satisfied the first two prongs of the specific jurisdiction test, the burden shifts to defendant to "'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *CollegeSource*, 653 F.3d at 1079 (quoting *Burger King*, 471 U.S. at 477-78). Reasonableness is assessed by weighing the following factors: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Rio Props.*, 284 F.3d 1007, 1021 (9th Cir. 2002); *see also World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980).

***i. Burden on Defendant***

Defendant argues that the burden of litigating in Washington is severe, given he is a Florida resident and the president of a Michigan LLC. Dkt. # 488 at 18. He further points out that he is simultaneously involved in litigation against his insurer, challenging the insurer's denial of his request to provide legal defense in the present case, in the Western District of Michigan. *Id.* at 18-19. Both defendant and plaintiffs point out that the litigation between Kihnke and his insurers was originally filed (by Kihnke) in this district but was subsequently transferred to Michigan. *Id.*; Dkt. # 508 at 6. Despite Kihnke's residence and concurrent litigation in Michigan, the reality is that as the sole owner and president of L&K, Kihnke is already defending in the current forum. In fact, as plaintiffs point out, Kihnke has already sat for a deposition in his personal capacity in this forum. Dkt. # 508 at 13. Thus, litigating in this forum in his personal capacity is not so burdensome as to counsel against a finding of personal jurisdiction.

***ii. Forum State's Interest in Adjudicating the Dispute***

Defendant argues that Washington has no interest in the dispute, as: (1) none of the current parties are Washington residents; (2) no residents of Washington have been harmed by defendant's alleged Lanham Act violations, and; (3) L&K has suspended production of its Kona

line of products and there is "no chance" it will resume production. Dkt. # 488 at 19. Although neither Kihnke nor the plaintiffs are Washington residents, the allegedly deceptive products were sold to Washington consumers. This factor thus favors a finding that the exercise of jurisdiction is reasonable, as states have "a strong interest in protecting [their] citizens from trademark infringement and consumer confusion." *Allstar*, 666 F.Supp.2d at 1125 (quoting *Nissan Motor Co. Ltd. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000)); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) (explaining that states have an interest in "safeguarding [their] populace from falsehoods"). Defendant's argument that he has stopped production of Kona Blend products and will not resume is unavailing. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).

***iii. Efficient Judicial Resolution***

Defendant argues that because "adding Kihnke to the case changes nothing about the relief available to the plaintiffs," as any "provable harm caused by Kihnke would be no different than the harm caused by L&K," this factor should weigh against a finding of jurisdiction. Dkt. # 488 at 19. However, this factor does not analyze relief available to plaintiffs, but instead focuses on the location of the evidence and witnesses. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). Furthermore, this factor "is no longer weighed heavily given the modern advances in communication and transportation." *Id.* Here, the case has already been litigated in the current forum for over two years, and L&K is already defending the suit in this

forum. Dkt. # 508 at 5. Thus, efficient judicial resolution is best served by asserting personal jurisdiction over Kihnke in this forum.

***iv. Convenient and Effective Relief for Plaintiff***

Given the posture of the present litigation as a multi-defendant class action, it would be remarkably inconvenient for plaintiffs to litigate their case against Kihnke in a separate forum, while pursuing the current litigation against the myriad other defendants named in the suit (including L&K). Although "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff," this factor weighs in favor of plaintiffs. *Ziegler v. Indian River Co.*, 64 F.3d 470, 476 (9th Cir. 1995).

***v. Additional Factors***

While not explicitly discussed by either party, the remaining three factors do little to change the calculus:

*Defendant's purposeful injection into the forum*: As demonstrated by L&K's interactive website and sales to Washington residents, defendant has purposefully injected himself into Washington state. However, because L&K's sales in the forum were not extensive, this factor is neutral in assessing whether exercising jurisdiction over defendants is reasonable. *Cf. Allstar*, 666 F. Supp. 2d at 1124 (finding this factor favored a "finding of reasonableness" where defendants' sold a "substantial amount of allegedly infringing products to [forum] customers"); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (finding where defendants' contacts were attenuated but sufficient to meet the "purposeful availment" prong, the court could not "say that [the factor] weighs heavily in their favor").

*Conflict with sovereignty of defendant's state*: Given defendant is a resident of Florida rather than a foreign nation, any conflicting sovereignty interests can be resolved through application of the choice-of-law rules: this factor therefore "is of little importance in the court's assessment of reasonableness." *Allstar*, 666 F. Supp. 2d at 1125.

*Existence of an alternative forum*: Given plaintiffs have not shown that an alternative forum, such as the Western District of Michigan, is unavailable, this factor weighs slightly against a finding of jurisdiction. See *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) ("The plaintiff bears the burden of proving the unavailability of an alternative forum.").

Weighing all seven factors together, it is reasonable for this Court to assert personal jurisdiction over Kihnke.

**B. Venue**

Venue over trademark claims is governed by the general venue statute, 28 U.S.C. § 1391. *See Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 n.3 (D. Ariz. 2009). 28 U.S.C. § 1391(b) provides:

> A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendant argues that under § 1391(b), venue is improper in the Western District of Washington. Dkt. # 488 at 21-23. Specifically, defendant argues that: (a) § 1391(b)(1) is unavailable, as Kihnke is a citizen and a resident of Florida; (b) § 1391(b)(2) is unavailable as the amount of L&K Kona Blend coffee sold in Washington is too small a percentage of the total L&K Kona Blend coffee sold to constitute a "substantial part of the events . . . giving rise to the claim"; and (c) § 1391(b)(3) is unavailable as either the Western District of Michigan or the Middle District of Florida are alternative, proper venues. *Id.*

Plaintiff argues that under the Federal Circuit's decision in *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, venue in the current district is proper as to Kihnke because it is proper as to L&K, and "venue for personal liability of a corporate officer/owner for acts of infringement by the corporation . . . may reasonably be based on the venue provisions of the corporation." 84 F.3d 1408, 1410 (Fed. Cir. 1996). However, the *Hoover* court analyzed venue under the patent venue statute, 28 U.S.C. § 1400(b), and thus far, *Hoover*'s reasoning has only been applied in the patent context. *See, e.g.*, *Timeline, Inc. v. Proclarity Corp.*, No. C05-1013JLR, 2006 WL 2038255 (W.D. Wash. July 20, 2006); *Pactool Int'l. Ltd. v. Kett Tool Co., Inc.*, No. C06–5367BHS, 2011 WL 834151 (W.D. Wash. Mar. 3, 2011).

However, this Court need not reach whether *Hoover*'s reasoning applies here, because, although defendant's sales of its Kona Blend coffee in this district were a modest portion of its total sales, venue is proper under § 1391(b)(2). For actions "brought under the Lanham Act, a 'substantial part' of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, 'whether that occurs solely in one district or in

many.'" *Golden Scorpio*, 596 F. Supp. 2d at 1286 (*quoting Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)); *see also Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956) ("[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.").

Courts have found that a "'modest' amount of sales of infringing product is sufficient to support venue in a particular district." *Allstar*, 666 F. Supp. 2d at 1130; *see Sutter Home Winery, Inc. v. Madrona Home Vineyards, L.P.*, No. C 05–0587 MHP, 2005 WL 701599, at *4 n.2 (finding venue appropriate despite the fact that defendant's "sales in this district appear to be relatively modest" given the "possibility that some potential purchasers of plaintiff's wine who reside in this district may be confused by defendant's use of the 'Mélange de Trois' mark"); *Radical Prods., Inc. v. Sundays Distrib.*, 821 F. Supp. 648, 649-50 (W.D. Wash. 1992) (finding venue over a trademark infringement claim to be proper on the ground that the defendant had mailed brochures describing its product to the district in which action was filed); *Sidco Indus., Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1346-47 (D. Or. 1991) (finding venue proper in Oregon where any impact on the plaintiff's business that would result from an out-of-state defendant's advertising directed at Oregon consumers was likely to occur in that state).

Thus, because the defendant shipped almost $15,000 worth of Kona Blend coffee products to Washington customers and sold wholesale Kona Blend coffee products to retail outlets in Washington, the current Court is a district in which "consumers are likely to be

confused by the accused goods." *Golden Scorpio*, 596 F. Supp. 2d at 1286. Thus, venue is proper under § 1391(b)(2).

**C. Striking Class Allegations**

Defendant's motion to dismiss originally requested that, should the Court find the exercise of personal jurisdiction proper, the class action allegations against Kihnke be stricken from the complaint. Dkt. # 488 at 23-27. Defendant argued that this Court does not have jurisdiction over claims from absent class members under *Bristol Myers Squibb Co v. Superior Court*. *Id.* However, as defendant notes in his reply, the Ninth Circuit has subsequently weighed in, finding that at the motion to dismiss stage, defendants do "not have 'available' a Rule 12(b)(2) personal jurisdiction defense to the claims of unnamed putative class members who [are] not yet parties to the case." *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021); Dkt. # 512 at 15-16. The court explained that "[t]o conclude otherwise would be to endorse 'the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation before the class is certified.'" *Id.* (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011)).

Here, because a class has not been certified, this argument is not yet available to defendant. *See* Dkt. # 597 (order granting extension of plaintiff's deadline for Reply in Support of Motion for Class Certification to 2/15/2022). Defendant has also raised this argument in his opposition to class certification, which will be the appropriate setting to consider it. Dkt. # 589 at 30.

**D. Jurisdiction Over Nationwide Damages**

Finally, defendant argues that if the Court finds personal jurisdiction exists in the current forum, jurisdiction "should be limited to the $15,000 of L&K's sales of Kona Blends that L&K delivered to Washington state during the relevant four-year time frame." Dkt. # 512 at 16. Defendant argues that after the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, actions for nationwide damages "must be brought where the defendant is subject to general jurisdiction." *Id.*

Defendant's argument is foreclosed by the Supreme Court's decision in *Keeton v. Hustler Magazine, Inc.*, which was further explained by the Court in *Bristol-Myers Squibb Co.* 137 S. Ct. at 1782. In *Keeton*, the Supreme Court found specific jurisdiction existed in New Hampshire where a New York resident sued Hustler (which was not subject to general jurisdiction in New Hampshire) for libel. *Id.* at 1782. Although the magazine was distributed throughout the country, the Court found that the 10,000 to 15,000 copies sold monthly in New Hampshire was sufficient, noting that "false statements of fact harm both the subject of the falsehood and the readers of the statement." *Id.* (quoting *Keeton*, 465 at 776). After finding personal jurisdiction in New Hampshire, the Court further found that "there was jurisdiction in New Hampshire to entertain the plaintiff's request for damages suffered outside the state." *Id.*

Here, much like in *Keeton*, the personal jurisdiction conclusion rests "principally on the connection between the circulation of [defendant's Kona Blend coffee] in [Washington] and damage allegedly caused within the State." *Id.* Thus, because this is the basis for personal jurisdiction, it is "'fair' to compel [defendant] to defend a multistate lawsuit in [Washington]

seeking nationwide damages for all [Kona Blend coffee], even though only a small portion . . . [was] distributed in [Washington]." *Keeton*, 465 U.S. at 775.

For all of the foregoing reasons, the defendant's motion to dismiss (Dkt. # 488) is DENIED.

Dated this 14th day of February, 2022.

Robert S. Lasnik
United States District Judge