The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE CORKER d/b/a RANCHO ALOHA; COLEHOUR BONDERA and MELANIE BONDERA, husband and wife d/b/a KANALANI OHANA FARM; and ROBERT SMITH and CECELIA SMITH, husband and wife d/b/a SMITHFARMS, on behalf of themselves and others similarly situated, | No. 2:19-cv-00290-RSL

**KEVIN KIHNKE'S ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT – CLASS ACTION**

**JURY TRIAL DEMANDED** |

Plaintiffs,

v.

COSTCO WHOLESALE CORPORATION, a Washington corporation; AMAZON.COM, INC., a Delaware corporation; HAWAIIAN ISLES KONA COFFEE, LTD., LLC, a Hawaiian limited liability company; COST PLUS/WORLD MARKET, a subsidiary of BED BATH & BEYOND, a New York corporation; BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC., a Colorado corporation; L&K COFFEE CO. LLC, a Michigan limited liability company; KEVIN KIHNKE, an individual; MULVADI CORPORATION, a Hawaii corporation; COPPER MOON COFFEE, LLC, an Indiana limited liability company; GOLD COFFEE ROASTERS, INC., a Delaware corporation; DEFENDANT COFFEE AND DISTRIBUTION COMPANY, a Minnesota corporation; PACIFIC COFFEE, INC., a Hawaii corporation; THE KROGER CO., an Ohio corporation; WALMART INC., a Delaware corporation; BED BATH & BEYOND INC., a New York corporation; ALBERTSONS COMPANIES INC., a Delaware corporation; SAFEWAY INC., a Delaware corporation; MNS LTD., a Hawaii corporation; THE TJX COMPANIES d/b/a T.J. MAXX, a Delaware corporation; MARSHALLS OF MA, INC. d/b/a MARSHALLS, a Massachusetts corporation; SPROUTS FARMERS MARKET, INC. a Delaware corporation,

Defendants.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 1

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

Defendant Kevin Kihnke ("KIHNKE") files this Answer to Plaintiffs' Third Amended Complaint ("Complaint").  To the extent that any allegation in the Complaint is not specifically admitted, the allegation is denied.  In addition, KIHNKE is still investigating the claims brought by Plaintiffs and reserves the right to supplement this Answer.  KIHNKE answers the corresponding numbered paragraphs of the Complaint as follows:

## I.  **INTRODUCTION**

1.      This class action is filed on behalf of the Kona coffee farmers who grow the entire worldwide supply of authentic Kona coffee. Kona coffee, renowned for its distinctive flavor and aroma, is one of the most famous and revered specialty coffees in the world. But only coffee grown on farms located within the Kona District of the Big Island of Hawaii ("Kona District" defined in paragraph 38 below) can be truthfully marketed, labeled, and sold as Kona coffee. The volcanic soil, the elevation, and the humidity of this region combine to give Kona coffee its distinctive characteristics. The term "Kona" tells consumers their coffee comes from this distinctive geographic region.

**ANSWER**: KIHNKE admits that Plaintiffs have brought this putative class action against Defendants.  KIHNKE denies that the action is filed on behalf of the Kona coffee farmers because Defendant is aware of Kona coffee farmers who do not support this lawsuit and who believe that the economic theories upon which it is based are incorrect, and that, if successful, this lawsuit will drive down the price paid Kona farmers for their products.  KIHNKE denies that only coffee grown on farms located within the Kona district can be truthfully marketed, labeled, and sold as Kona coffee.  KIHNKE also denies that the term "Kona" tells consumers their coffee comes from any distinctive region.  L&K Coffee Co. does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 1, and therefore denies the same.

2.      Plaintiffs bring this action against coffee distributors, wholesalers, and retailers who for years have wrongfully profited from the goodwill and reputation associated with the

geographic region of Kona by passing off ordinary commodity coffee as "Kona" coffee. Defendants' deceptive practices have flooded the market with counterfeit "Kona" coffee products, injuring honest Kona farmers in two distinct ways. First, the marketplace is overwhelmed with counterfeit "Kona" products, and that excessive supply drives the price down sharply. Second, because the counterfeit products are basically comprised of generic commodity coffee, consumers are misled into concluding that Kona coffee is nothing special. These deceived consumers become less likely to pay a premium for authentic Kona coffee in the future.

**ANSWER**: KIHNKE admits that Plaintiffs have brought this action against the Defendants.  KIHNKE denies the remaining allegations in Paragraph 2.  KIHNKE also specifically denies that there is any type of "ordinary commodity coffee," or that Defendants' coffee is "ordinary."  By classifying coffee as an "ordinary commodity type" versus an "authentic Kona," Plaintiffs wrongfully assume that the majority of coffee consumers paying $5-10 per pound for coffee: (1) Distinguishes one coffee from another based on its geographic origin; (2) is even aware of an "authentic Kona" product, and (3) Might ever have even the slightest interest in paying $35 to $50 per pound for "authentic Kona" if the "ordinary commodity" coffee with the word "Kona" on the label did not exist.  KIHNKE also denies this allegation because it relies on the term "authentic Kona coffee," which remains undefined by Plaintiffs.  KIHNKE is left without knowledge as to what constitutes "authentic Kona."  KIHNKE will not repeat this issue with the term "authentic Kona" but denies each and every allegation herein that incorporates that term. L&K Coffee Co. does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 2, and therefore denies the same.

3.     By their actions, Defendants have artificially depressed the market price of authentic Kona coffee, harmed the reputation of authentic Kona coffee as a premium product, and caused consumer confusion as to the legitimate sources of Kona coffee. As a direct result, Plaintiffs

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1    have lost considerable profits, and Defendants have made considerable unjust profits, all in

2    violation of the Lanham Act, 15 U.S.C. § 1125.

3    **ANSWER**: KIHNKE denies the allegations in Paragraph 3.  L&K Coffee Co. does not sell any

4    of the products described in this complaint and has not sold any since 2019.  L&K Coffee Co.'s

5    withdrawal of its Kona products from the market has had no measurable impact on the price of

6    Kona coffee, thereby disproving the allegation that L&K Coffee Co.'s sale of its Kona coffee

7    "artificially depressed" the price of Kona coffee.  Even if the allegations in this paragraph were

8    true, KIHNKE would not be responsible factually or legally for the effect, if any, that any seller of

9    Kona products has had on the price of Kona coffee. Not only is there no joint liability among

10   defendants in this case, there is also an unlawful misjoinder of the parties.

11

12       4.       Plaintiffs bring this action to obtain redress for all Kona coffee growers who have

13   been similarly injured by the conduct of the Defendants. Plaintiffs seek to recover for the members

14   of the Class all damages available under the Lanham Act, including compensation for lost profits,

15   disgorgement of profits of the Defendants, corrective advertising damages, and statutory attorneys'

16   fees and costs. Plaintiffs also seek equitable relief in the form of an injunction permanently

17   prohibiting the Defendants responsible for producing the accused coffee products from marketing,

18   selling, or distributing any coffee products labeled Kona. Plaintiffs further seek an injunction

19   prohibiting the retail Defendants from selling any coffee products that falsely designate Kona as

20   the source of origin of the coffee.

21       **ANSWER**: KIHNKE admits that Plaintiffs claim that they seek to recover all alleged

22   damages available under the Lanham Act for the purported members of the Class. L&K Coffee

23   Co. does not sell any of the products described in this complaint and has not sold any since 2019.

24   KIHNKE denies that the Plaintiffs are entitled to the relief they seek, and denies the remaining

25   allegations in Paragraph 4.

26

27

Hatton, Petrie & Stackler APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1

## II.    PARTIES

2      5.     Plaintiff Bruce Corker is an individual who throughout the class period described

3  in this Complaint has done business under the name of "Rancho Aloha," growing, harvesting, and

4  roasting Kona coffee within the Kona District. Mr. Corker sells his Kona coffee under the "Rancho

5  Aloha" label to consumers around the world through his website, www.ranchoaloha.com.

6      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

7  Paragraph 5, and therefore denies the same.

8

9      6.     Plaintiffs Colehour and Melanie Bondera are a married couple who throughout the

10 class period described in this Complaint have done business under the name of "Kanalani Ohana

11 Farm," growing, harvesting, and roasting Kona coffee within the Kona District. The Bonderas sell

12 their Kona coffee under the "Kanalani Ohana Farm" label to consumers around the world through

13 their website, www.kanalaniohana.farm.

14     **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

15 Paragraph 6, and therefore denies the same.

16

17     7.     Plaintiffs Robert and Cecelia Smith are a married couple who conducted business

18 under the name of "Smithfarms," growing, harvesting, and roasting Kona coffee for decades within

19 the Kona District until approximately June 17, 2015 when they formed Smithfarms, LLC. Plaintiff

20 Smithfarms, LLC ("Smithfarms") is a Hawaii limited liability company registered on or about June

21 17, 2015 with its principal place of business in Honaunau, Hawaii. Since registration, Smithfarms

22 has grown, harvested, and roasted Kona coffee within the Kona District. Smithfarms' sole member

23 is "The Robert H. Smith Revocable Trust" for which Plaintiff Robert Smith is the grantor and sole

24 trustee.  Smithfarms is governed by its two managers, Robert and Cecelia Smith (the "Smiths"), a

25 married couple. Smithfarms and the Smiths sell or sold their Kona coffee under the "Smithfarms"

26 label to consumers around the world through the website, www.smithfarms.com, throughout the

27 class period described in the Complaint.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 5

1    **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

2    Paragraph 7, and therefore denies the same.

3

4        8.    On information and belief, defendant HAWAIIAN ISLES KONA COFFEE LTD.,

5    LLC ("Hawaiian Isles"), is a Hawaii limited liability company with its principal place of business

6    in Honolulu, Hawaii.  Hawaiian Isles sells a variety of coffee products throughout the United

7    States, including this Judicial District, through various retail outlets, including but not limited to

8    Cost Plus World Market, Kroger, Safeway, Albertsons, ABC Stores, Amazon, and Walmart.

9    Hawaiian Isles falsely designates the geographic origin of its "Kona" coffee products with the

10   prominent placement of KONA on the front of the packaging. Hawaiian Isles advertises its coffee

11   products nationally on the Internet and with digital marketing campaigns through social media

12   sites such as Facebook.

13       **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

14   Paragraph 8, and therefore denies the same.

15

16       9.    On information and belief, defendant COST PLUS/WORLD MARKET ("World

17   Market") is a retail chain with 276 stores across the United States including 11 stores located in

18   this Judicial District. World Market, with its headquarters in Alameda, California, is a wholly

19   owned subsidiary of BED, BATH & BEYOND INC., a New York corporation. Through its retail

20   locations and its own online store, www.worldmarket.com, World Market sells in this Judicial

21   District and throughout the United States both its own private-label Kona coffee products as well

22   as Kona coffee products offered by third parties. World Market falsely designates the geographic

23   origin of its "Kona" coffee products with the prominent placement of KONA on the front of the

24   packaging. Certain third-party coffee products that World Market sells, such as those from

25   Hawaiian Isles, similarly feature on the label the false designation of KONA as the geographic

26   origin of the coffee.

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 6

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 9, and therefore denies the same.

10.     On information and belief, BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC. ("Boyer's") is a Colorado corporation with its principal place of business in Denver, Colorado. Boyer's is a wholly owned subsidiary of Luna Gourmet Coffee and Tea Company, LLC, which is a Colorado limited liability company also based in Denver, Colorado. Boyer's sells its coffee products in this Judicial District and throughout the United States through its online store at www.boyerscoffee.com as well as through national retailers including but not limited to Amazon, Walmart, and Safeway. Boyer's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the packaging.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 10, and therefore denies the same.

11.     On information and belief, defendant L&K COFFEE CO. LLC ("L&K") is a Michigan limited liability company with its principal place of business at Nunica, Michigan. L&K primarily does business under the name Magnum Coffee Roastery, under which it sells a variety of coffee products under its Magnum Exotics label. L&K sells its coffee products throughout the United States, including this Judicial District, through both its own online store, www.javaboulevard.com, and various retail outlets, including but not limited to Costco, Amazon, Walmart, T.J. Maxx and Marshalls. L&K falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.

**ANSWER**: KIHNKE admits that L&K is a Michigan limited liability company with its principal place of business in Nunica, admits that L&K primarily does business under the name Magnum Coffee Roastery, and that it sells a variety of coffee products under a Magnum Exotics label.  Defendant admits that L&K sells and/or has sold coffee products throughout the United States, including very limited amounts in this Judicial District, through both its own online store,

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 7

1    www.javaboulevard.com, and various retail outlets.  L&K does not sell any of the products

2    described in this complaint and has not sold any since 2019.  L&K has never sold Kona coffee

3    products in the state of Hawaii.  KIHNKE denies the remaining allegations.

4

5          12.     On information and belief, KEVIN KIHNKE ("Kihnke") is an individual that

6    resides in Grand Rapids, Michigan. Kihnke is owner and president of L&K and is the primary

7    decision-maker for the package design of L&K's coffee products, including coffee products that

8    have been falsely designated as originating from "Kona." Kihnke is also solely responsible for

9    determining the percentage of Kona coffee included in L&K's "Kona" coffee products.

10          **ANSWER**: Kihnke admits he is L&K's president and owner.  Defendant denies the

11    remaining allegations of Paragraph 12.  Kihnke denies that he is liable in any manner in this

12    lawsuit.  Kihnke denies that he is an appropriate defendant herein.  L&K does not sell any of the

13    products described in this complaint and has not sold any since 2019.

14

15          13.     On information and belief, defendant MULVADI CORPORATION is a Hawaii

16    corporation with its principal place of business in Honolulu, Hawaii. Mulvadi sells a variety of

17    coffee products throughout the United States, including this Judicial District, through various retail

18    outlets, including but not limited to ABC Stores, Amazon, and Walmart. Mulvadi falsely

19    designates the geographic origin of its "Kona" coffee products with the prominent placement of

20    KONA on the front of the packaging.

21          **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

22    Paragraph 13, and therefore denies the same.

23

24          14.     On information and belief, defendant COPPER MOON COFFEE, LLC ("Copper

25    Moon") is an Indiana limited liability company with its principal place of business in East

26    Lafayette, Indiana. Copper Moon sells a variety of coffee products in this Judicial District and

27    throughout the United States, including this Judicial District, both through its webpage,

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 8

www.coppermooncoffee.com, and through various retail outlets, including but not limited to Copper Moon Coffee Cafes, Amazon, Walmart, Sam's Club, Bed Bath & Beyond (the parent company of World Market), Office Depot, and Staples. Copper Moon falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 14, and therefore denies the same.

15.     On information and belief, defendant GOLD COFFEE ROASTERS, INC., dba Hawaiian Gold and also Parry Estates ("Hawaiian Gold"), is a Delaware corporation with its principal place of business in Jupiter, Florida. Hawaiian Gold sells a variety of coffee products throughout the United States, including this Judicial District, through its own website and various retail outlets, including but not limited to Kroger, Amazon, Walmart, T.J. Maxx and Marshalls. Hawaiian Gold falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the front of the packaging.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 15, and therefore denies the same.

16.     On information and belief, CAMERON'S COFFEE AND DISTRIBUTION COMPANY ("DEFENDANT") is a Minnesota corporation with its principal place of business in Shakopee, Minnesota throughout the United States through its online store at www.cameronscoffee.com as well as through national retailers including but not limited to Amazon, Walmart, Target, Sprouts, and Safeway. DEFENDANT falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the packaging.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 16, and therefore denies the same.

Hatton, Petrie & Stackler APC
12 Journey, Suite 255
Aliso Viejo, CA 92656
949.474.4222

1

2    17.    On information and belief, defendant PACIFIC COFFEE, INC., which does

3    business as Maui Coffee Company ("MCC"), is a Hawaii corporation with its principal place of

4    business in Lahaina, Hawaii. MCC sells a variety of coffee products throughout the United States,

5    including this Judicial District, both through its webpage, www.mauicoffeeco.com, and through

6    various retail outlets, including but not limited to ABC Stores, Amazon, Walmart, and Target.

7    MCC falsely designates the geographic origin of its "Kona" coffee products with the prominent

8    placement of 100% KONA on the front of the packaging.

9    **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

10   Paragraph 17, and therefore denies the same.

11

12   18.    On information and belief, defendant THE KROGER CO. ("Kroger") is an Ohio

13   Corporation, with its principal place of business in Cincinnati, Ohio. Kroger is a retail chain with

14   over 2,700 stores across the United States, including approximately 119 stores located in this

15   Judicial District. Kroger also does business as Fred Meyer and QFC. With its private label "Kivu,"

16   Kroger falsely designates the geographic origin of its "Kona" coffee products with the prominent

17   placement of KONA on the label of both its pre-packaged products and its self-serve coffee

18   dispensers. In addition, Kroger sells coffee products from Hawaiian Gold, and others, which also

19   falsely designates Kona as the geographic origin of its coffee.

20   **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

21   Paragraph 18, and therefore denies the same. L&K has never sold Kroger any of the products

22   described in this complaint.

23

24   19.    On information and belief, defendant AMAZON.COM, INC. ("Amazon") is a

25   Delaware corporation with its principal place of business in Seattle, Washington.  Amazon is the

26   largest online retailer in the world. Through its online store at www.amazon.com, Amazon sells in

27   this Judicial District and throughout the United States a variety of deceptive coffee products,

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 10

1  including, but not limited to, the following: Hawaiian Isles, Hawaii Gold, Mulvadi, Cameron's

2  Copper Moon, Boyer's, Hazz and Magnum Exotics. Each of these brands sells products that falsely

3  designate KONA as the origin of the coffee beans.

4       **ANSWER**: KIHNKE admits that Amazon has sold certain of L&K's products through its

5  online store.  KIHNKE denies that the L&K coffee products sold by Amazon are deceptive, and

6  further denies that such products falsely designate KONA as the origin of the coffee beans.  L&K

7  does not sell any of the products described in this complaint and has not sold any since 2019.

8  KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 19,

9  and therefore denies the same.

10

11       20.     On information and belief, defendant WALMART INC. ("Walmart") is a

12  corporation organized and existing under the laws of the State of Delaware with its principal place

13  of business in Bentonville, Arkansas. Walmart has a total of 5,358 stores nationwide, and

14  approximately 67 stores in Washington. Walmart sells in this Judicial District and throughout the

15  United States a variety of deceptive coffee products, including but not limited to the following:

16  MCC, Mulvadi, Copper Moon, Cameron's, Hawaiian Gold, Boyer's, and Hawaiian Isles. Each of

17  these brands sells products that falsely designate KONA as the origin of the coffee beans.

18       **ANSWER**: KIHNKE lacks sufficient information to admit or deny the remaining

19  allegations in Paragraph 20, and therefore denies the same.

20

21       21.     On information and belief, defendant COSTCO WHOLESALE CORPORATION

22  ("Costco") is a corporation organized and existing under the laws of the State of Washington with

23  its principal place of business in Issaquah, Washington. Costco is the second largest retailer in the

24  world, and it owns and operates numerous retail locations within this Judicial District. Through its

25  retail and online stores, Costco sells in this Judicial District and throughout the United States

26  deceptive coffee products such as Magnum Exotics, which falsely designates KONA as the origin

27  of the coffee beans.

**HATTON, PETRIE & STACKLER APC**
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1   **ANSWER**: KIHNKE admits that Costco sold certain of L&K's coffee products.  KIHNKE

2   denies that the L&K coffee products sold by Costco are deceptive, and further denies that such

3   products falsely designate KONA as the origin of the coffee beans. L&K does not sell any of the

4   products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient

5   information to admit or deny the remaining allegations in Paragraph 21, and therefore denies the

6   same.

7

8       22.     On information and belief, defendant BED BATH & BEYOND INC. ("Bed Bath"),

9   is a New York corporation with its headquarters in Union, NJ. Bed Bath operates over 1000 retail

10  locations across the country, including numerous retail locations within this Judicial District. Bed

11  Bath is the parent company of defendant World Market. Through its retail locations and its own

12  online store, Bed Bath sells in this Judicial District and throughout the United States various coffee

13  products labeled "Kona" from brands including, but not limited to, Copper Moon. The Copper

14  Moon coffee products sold by Bed Bath feature on the label the false designation of KONA as the

15  geographic origin of the coffee.

16      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

17  Paragraph 22, and therefore denies the same.

18

19      23.     On information and belief, defendant ALBERTSONS COMPANIES INC.

20  ("Albertsons") is a Delaware corporation with its principal place of business in Boise, Idaho.

21  Albertsons is a national grocery store chain with over 2,300 locations across the United States,

22  including approximately 20 stores in this Judicial District. Albertsons is the parent company of

23  Safeway, Inc. Through its grocery stores in this Judicial District and throughout the United States,

24  Albertsons sells a variety of deceptive coffee products, including but not limited to Hawaiian Isles,

25  which falsely designates KONA as the origin of the coffee beans.

26      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

27  Paragraph 23, and therefore denies the same.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 12

24.     On information and belief, defendant SAFEWAY INC. ("Safeway") is a Delaware corporation with its principal place of business in Pleasanton, CA. Safeway is a national grocery store chain with over 900 locations across the United States, including dozens of stores in this Judicial District. Safeway is a subsidiary of Albertsons. Through its grocery stores in this Judicial District and throughout the United States, Safeway sells a variety of deceptive coffee products, including but not limited to Hawaiian Isles, which falsely designates KONA as the origin of the coffee beans.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 24, and therefore denies the same.

25.     On information and belief, defendant MNS LTD. is a Hawaii corporation with its principal place of business located at Honolulu, Hawaii. Under the tradename ABC Stores, MNS Ltd. (hereinafter "ABC") owns and operates a chain of retail stores through which it sells a variety of coffee products labeled as "Kona." ABC also sells in this Judicial District and throughout the United States coffee products labeled as "Kona" through its online store at www.abcstores.com. Some of the coffee products sold by ABC falsely designate KONA as the origin of the coffee beans. Those offending brands include but are not limited to Mulvadi, MCC, and Hawaiian Isles.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 25, and therefore denies the same.

26.     On information and belief, defendant THE TJX COMPANIES ("TJX") is a Delaware corporation with its principal place of business in Framingham, Massachusetts. TJX Companies, Inc. does business in Washington and elsewhere as T.J. Maxx. TJX operates a chain of T.J. Maxx retail stores in the United States, with numerous locations in this Judicial District, through which it sells a variety of coffee products labeled as "Kona." TJX touts itself as one of the largest off-price retailers in the country. Some of the coffee products sold by TJX falsely designate

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 13

KONA as the origin of the coffee beans. Those offending brands include, but are not limited to, Hawaiian Gold, Magnum Exotics, and Kona Roasting Co.

**ANSWER**: KIHNKE admits that TJX has sold certain of L&K's coffee products. KIHNKE denies that the L&K coffee products sold by TJX are deceptive, and further denies that such products falsely designate KONA as the origin of the coffee beans. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 26, and therefore denies the same.

27. On information and belief, defendant MARSHALLS OF MA, INC. ("Marshalls of MA") is a Massachusetts corporation with its principal place of business in Framingham, Massachusetts. Marshalls of MA does business in Washington and elsewhere as Marshalls. Marshalls of MA operates a chain of Marshalls retail stores in the United States, with numerous locations in this Judicial District, through which it sells a variety of coffee products labeled as "Kona." Marshalls of MA touts itself as one of the largest off-price retailers in the country. Some of the coffee products sold by Marshalls falsely designate KONA as the origin of the coffee beans. Those offending brands include, but are not limited to, Hawaiian Gold, Magnum Exotics, and Kona Roasting Co.

**ANSWER**: KIHNKE admits that Marshalls of MA has sold certain of L&K's coffee products. KIHNKE denies that the L&K coffee products sold by Marshalls of MA are deceptive, and further denies that such products falsely designate KONA as the origin of the coffee beans. KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 27, and therefore denies the same.

28. On information and belief, defendant SPROUTS FARMERS MARKET, INC. ("Sprouts") is a Delaware corporation with its principal place of business in Phoenix, Arizona. Sprouts operates over 200 grocery stores across the United States, including multiple locations

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1    within this Judicial District. Some of the coffee products sold by Sprouts falsely designate KONA

2    as the origin of the coffee beans. Those offending brands include, but are not limited to, Cameron's.

3        **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

4    Paragraph 28, and therefore denies the same.

### III.    JURISDICTION AND VENUE

7        29.    This action arises under 15 U.S.C. §1125(a). This Court has original subject matter

8    jurisdiction over Plaintiffs' claims for Lanham Act violations under 15 U.S.C. §1121(a) and

9    federal question jurisdiction under 28 U.S.C. §§1331.

10       **ANSWER**: KIHNKE admits that Federal Courts have original subject matter jurisdiction

11   over alleged Lanham Act violations under 15 U.S.C. §1121(a) and that they exert federal question

12   jurisdiction under 28 U.S.C. §§1331.   KIHNKE denies that this specific Court properly has

13   jurisdiction over all of the claims this lawsuit and therefore denies the remaining allegations in

14   Paragraph 29.

16       30.    The Defendants conduct business in this Judicial District, have sold products in this

17   Judicial District falsely designating "Kona" as the origin of the coffee, and have injured the

18   reputation of Kona and the farmers of authentic Kona coffee in this Judicial District. Defendant

19   Amazon, which sells many of the other defendants' deceptive "Kona" products, has its principal

20   place of business in this Judicial District. Defendant Costco also has its principal place of business,

21   and numerous retail locations, in this Judicial District. Amazon and Costco are two of the highest-

22   volume retailers in the world. All of the defendants who produce the deceptive "Kona" products

23   identified in this complaint sell such products in this Judicial District, either through numerous

24   physical retail locations (including but not limited to retailers who are also defendants in this

25   litigation) or through online stores (again including but not limited to retailers who are also

26   defendants in this litigation). Many of the defendants who manufacture the deceptive "Kona"

27   products named in this complaint also sell, through their own online stores, such product directly

1   to consumers in this Judicial District. All of the retail defendants who sell the deceptive "Kona"

2   products identified in this complaint either operate multiple retail locations in this Judicial District,

3   or they sell the accused products through an online store and then ship the accused products to

4   consumers in this Judicial District. The prevalence of the sale and distribution of the deceptive

5   "Kona" products in this Judicial District has harmed the reputation and goodwill associated with

6   the Kona origin for coffee and has impaired the Plaintiffs' ability to obtain a fair price for their

7   authentic Kona coffee, or otherwise compete, in this Judicial District. Each of the defendants has

8   committed acts of unfair competition and false advertising in this Judicial District in violation of

9   the Lanham Act.

10      **ANSWER**: KIHNKE admits that L&K conducts very limited business in this district; that

11   unsubstantial amounts of L&K Kona coffee products were sold in this district; and admits that

12   L&K sells some very limited L&K coffee products, which are available to consumers in this

13   Judicial District.   KIHNKE denies that this specific Court properly has jurisdiction over this

14   lawsuit.  KIHNKE denies that L&K's products falsely designate "Kona" as the origin of its coffee;

15   denies that L&K has injured the reputation of Kona and the farmers of "authentic" Kona coffee as

16   Plaintiffs have used that term; denies that L&K manufactures deceptive 'Kona' products; denies

17   that the sale and distribution of the allegedly deceptive "Kona" products in this Judicial District

18   has harmed the reputation and goodwill associated with the Kona origin for coffee and has

19   impaired the Plaintiffs' ability to obtain a fair price for their allegedly authentic Kona coffee, or

20   otherwise compete, in this Judicial District; and denies that L&K has committed acts of unfair

21   competition and false advertising in this Judicial District in violation of the Lanham Act. L&K

22   does not sell any of the products described in this complaint and has not sold any since 2019.

23   KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 30,

24   and therefore denies the same. L&K is a Michigan company that does very limited business in this

25   district and plaintiffs are coffee farmers who reside and do most if not all of their business within

26   the State of Hawaii.  KIHNKE resides in Florida and has no contacts with this forum.

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 16

31.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

**ANSWER**: KIHNKE admits that L&K conducts limited, inconsequential business in this district; that L&K's coffee products are sold in this district; and admits that L&K sells some limited L&K coffee products, which are available to consumers in this Judicial District. KIHNKE denies that L&K's products falsely designate "Kona" as the origin of its coffee; denies that L&K has injured the reputation of Kona and the farmers of "authentic" Kona coffee as Plaintiffs have used that term; denies that L&K manufactures deceptive 'Kona' products; denies that the sale and distribution of the allegedly deceptive "Kona" products in this Judicial District has harmed the reputation and goodwill associated with the Kona origin for coffee and has impaired the Plaintiffs' ability to obtain a fair price for their allegedly authentic Kona coffee, or otherwise compete, in this Judicial District; and denies that L&K has committed acts of unfair competition and false advertising in this Judicial District in violation of the Lanham Act.  L&K does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 30, and therefore denies the same.  KIHNKE denies that venue is proper in this Court as L&K is a Michigan company that does limited business in this district and plaintiffs are coffee farmers who reside and do most if not all of their business within the State of Hawaii.  KIHNKE resides in Florida and has no contacts with this forum.  KIHNKE therefore denied that this Court is the proper venue as to claims against KIHNKE herein.

## IV.    CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated under Federal Rule of Civil Procedure 23. In particular, they seek to represent a Class of:

> All persons and entities who commercially farmed Kona coffee in the Kona District and then sold their Kona coffee, provided that they farmed and sold their Kona coffee during the time that any Defendant sold coffee product with the false designation of Kona as the origin of the coffee product.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1  Plaintiffs also seek to represent 19 Defendant-Specific Subclasses:

2
3           All persons and entities who commercially farmed Kona coffee in the
            Kona District and then sold their Kona coffee, provided that they
            farmed and sold their Kona coffee during the time [Defendant] sold
4           coffee product with the false designation of Kona as the origin of the
            coffee product.
5
6  Excluded from both the Class and the Subclasses are any entities named as Defendants in this

   action.

7          **ANSWER**: KIHNKE admits that Plaintiffs purport to bring a class action, but denies that

8  the Court should certify the proposed class and denies the remaining allegations of Paragraph 32.

9  KIHNKE specifically denies that class certification is appropriate or warranted here.

10

11         33.    Plaintiffs meet the prerequisites of Rule 23(a):

12         a.     **<u>Numerosity</u>**. On information and belief, between 600 and 1,000 sole

13 entities grow Kona coffee. The members of the Class and each Subclass are thus so numerous that

14 joinder of all Class members in this action is not practical.

15         b.     **<u>Commonality</u>**. The answers to questions common to the Class and

16 Subclasses will drive the resolution of this litigation. The common questions of law and fact

17 include:

18                i.     whether Defendants manufactured or sold coffee labeled as

19 "Kona" that was not grown in the Kona District of Hawaii;

20                ii.    whether Defendants' distribution and sale of products falsely

21 labeled as "Kona" has created or is likely to create confusion among consumers;

22                iii.   whether labeling coffee not grown in the Kona District of Hawaii

23 as "Kona" constitutes a violation of the Lanham Act;

24                iv.    whether the Defendants' Lanham Act violations have negatively

25 affected the market price of authentic Kona coffee;

26                v.     whether the Defendants' Lanham Act violations have injured the

27 goodwill and reputation of the Kona name;

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1          vi.      the extent of damages to authentic Kona growers;

2          vii.     the extent of Defendants' profits earned as a result of falsely or

3   misleadingly designating "Kona" as the origin of their coffee products;

4          viii.    viii.    the corrective advertising required to remedy the damage

5   Defendants have caused to the goodwill and reputation of the Kona name; and

6          ix.      the form of injunction necessary to prevent Defendants from

7   causing further harm in violation of the Lanham Act.

8          c.       **Typicality**. Plaintiffs have the same interests as all members of the Class

9   and Subclasses they seek to represent, and Plaintiffs' claims arise out of the same set of facts and

10  conduct as all other members of the Class and Subclasses. Plaintiffs and all proposed Class

11  members grew and sold authentic Kona coffee and competed against the growers and sellers of

12  coffee falsely labeled as "Kona." All of the claims of Plaintiffs and proposed Class members arise

13  out of Defendants' conduct in manufacturing, marketing, and selling coffee falsely labeled as

14

15  "Kona."

16         d.       **Adequacy**. Plaintiffs will fairly and adequately represent and protect the

17  interests of the proposed Class members. Plaintiffs' interests align with those of the class members,

18  and Plaintiffs have no fundamental conflicts with the Class. Plaintiffs have retained counsel

19  competent and experienced in Lanham Act, complex commercial, and class action litigation who

20  will fairly and adequately represent the Class.

21         **ANSWER**: Plaintiffs' allegations in Paragraph 32 (a) through (d) are legal conclusions not

22  requiring a response. To the extent a response is required, KIHNKE denies these allegations.

23  KIHNKE specifically denies that class certification is appropriate or warranted here.

24

25         34.      Plaintiffs meet the prerequisites of Rule 23(b)(2) because Defendants have acted

26  and refused to act on grounds that apply generally to the Class, such that final injunctive relief or

27  corresponding declaratory relief is appropriate respecting the Class as a whole. Defendants' sale

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 19

of coffee mislabeled as "Kona" coffee affected each Plaintiff and Class member in the same way. And the Lanham Act provides for injunctive relief to prevent the Defendants from continuing to sell coffee mislabeled as "Kona" coffee to prevent further harm to each Plaintiff and Class member.

**ANSWER**: The allegations in Paragraph 33 are legal conclusions not requiring a response. To the extent that a response is required, KIHNKE denies these allegations, and specifically identifies the allegation that KIHNKE "has affected each Plaintiff and class member *in the same way*" as false. Many of the purported class members identify *this lawsuit* as harming them, and not the conduct of defendants, as alleged herein. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE specifically denies that class certification is appropriate or warranted here.

35.     Plaintiffs meet the prerequisites of Rule 23(b)(3):

a.     The common questions of law and fact enumerated above predominate over any questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.

b.     Defendants are sophisticated parties with substantial resources, while proposed Class members generally are not, and prosecution of this litigation is likely to be expensive, as proved by the extensive scientific analysis that preceded the filing of this complaint. Because the economic damages suffered by any individual Class member from any individual defendant may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for proposed Class members to seek redress individually for Defendants' wrongful conduct.

**ANSWER**: The allegations in Paragraph 35 (a) and (b) are legal conclusions not requiring a response. To the extent that a response is required, KIHNKE denies these allegations. KIHNKE specifically denies that class certification is appropriate or warranted here. Further, Plaintiff Bruce Corker is a former partner and governor of the Seattle based law firm, Perkins Coie, which

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1   represents some of the largest corporations in the world, including Boeing and Microsoft.  Even if
2   Corker lacked the resources to commence the "investigation" described in this paragraph, Corker
3   at all times possessed the sophistication and legal acumen to understand his rights as alleged herein,
4   and to retain counsel with the financial wherewithal to conduct that "investigation."  Thus, the
5   allegation that plaintiffs lacked the sophistication and resources to timely commence the
6   "investigation" they say was required to commence this lawsuit is false.

7

8                    V.    **STATUTES OF LIMITATIONS TOLLING**

9       36.    **Discovery Rule**.  Plaintiffs and Class members did not know and could not have
10   known about their Lanham Act causes of action because, even assuming general awareness of the
11   sales of fake Kona coffee, it is impossible to know that a particular defendant has sold such coffee
12   without either (1) extensive and expensive chemical analysis of the coffee itself that very few
13   laboratories can perform and which Plaintiffs and the Class members likely cannot afford to pay
14   for on their own, or (2) documents and information in the exclusive possession of the defendant.
15   Reasonable and diligent investigation did not and could not reveal a factual basis for the Lanham
16   Act claims alleged in this complaint prior to the investigation and extensive scientific testing that
17   led to the Complaint itself.

18       **ANSWER**: KIHNKE denies that Plaintiffs did not know, and could not have known, about
19   their Lanham Act causes of action. Plaintiffs have admitted that the "scientific testing" was
20   available to them more than five years before they filed their complaint. KIHNKE denies the
21   remaining allegations in Paragraph 36. Further, Plaintiff Bruce Corker is a former partner and
22   governor of the Seattle based law firm, Perkins Coie, which represents some of the largest
23   corporations in the world, including Boeing and Microsoft.  Even if Corker lacked the resources
24   to commence the "investigation" described in this paragraph, Corker at all times possessed the
25   sophistication and legal acumen to understand his rights as alleged herein, and to retain counsel
26   with the financial wherewithal to conduct that "investigation."  Thus, the allegation that plaintiffs
27   lacked the sophistication and resources to timely commence the "investigation" they say was

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 21

required to commence this lawsuit is false. KIHNKE denies that a "Discovery Rule" is available to plaintiffs in this action under both law and fact.

37. **Fraudulent Concealment**. Any applicable statutes of limitations have been tolled by Defendants' knowing, active, and ongoing concealment of the facts as alleged in this Complaint. Defendants falsely labeled their coffee as "Kona" with the intent that other participants in the market, including Plaintiffs, Class members, and consumers, would be unable to determine whether or not the coffee was authentic Kona coffee. The truth about the origin of the coffee contained in Defendants' products was information within Defendants' exclusive control. The Defendants' had actual knowledge of their acts of concealment. Under the Lanham Act, Defendants owed and owe to Plaintiffs and Class members the duty to refrain from making false designations of the origin of their products.

**ANSWER**: Plaintiffs' allegation regarding KIHNKE's duties under the Lanham Act is a legal conclusion that does not require a response. To the extent a response is required, KIHNKE denies this allegation.  L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE denies the remainder of the allegations in Paragraph 37. KIHNKE denies that a "Fraudulent Concealment" theory is available to plaintiffs in this action under both law and fact.

38. **Estoppel**.  Under the Lanham Act, Defendants owed and owe to Plaintiffs and Class members the duty to refrain from making false designations of the origin of the coffee in their coffee products. Defendants knowingly, affirmatively, and actively concealed the true character of their coffee, and that concealment continues. Defendants know and take unfair advantage of the market for authentic Kona coffee. Defendants are estopped from relying on any statute of limitations or advancing any laches argument in defense of this action.

**ANSWER:** Plaintiffs' allegation regarding KIHNKE duties under the Lanham Act is a legal conclusion that does not require a response. To the extent a response is required, KIHNKE

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

denies this allegation. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE denies the remainder of the allegations in Paragraph 38. Further, Plaintiff Bruce Corker is a former partner and governor of the Seattle based law firm, Perkins Coie, which represents some of the largest corporations in the world, including Boeing and Microsoft.  Even if Corker lacked the resources to commence the "investigation" described in this paragraph, Corker at all times possessed the sophistication and legal acumen to understand his rights as alleged herein, and to retain counsel with the financial wherewithal to conduct that "investigation."  Thus, the allegation that plaintiffs lacked the sophistication and resources to timely commence the "investigation" they say was required to commence this lawsuit is false. KIHNKE denies that an "Estoppel" theory is available to plaintiffs in this action under both law and fact.

## VI.   **FACTUAL BACKGROUND**

39.     Kona coffee is one of the rarest and most prized coffees in the world. Kona coffee is grown in the Kona District on the Big Island of Hawaii (the "Kona District"). *See* map below. *See also* Hawaii Administrative Rules ("HAR") §4-143-3 (defining the geographic region of Kona as the "North Kona and South Kona districts on the island of Hawaii, as designated by the State of



KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 23

Hawaii Tax Map"). The Kona District contains only 3,800 acres of land cultivated for Kona coffee production, which sharply limits the amount of Kona coffee that can be grown.

**ANSWER**: KIHNKE admits that coffee is grown in the Kona District on the Big Island of Hawaii.  KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 39, and therefore denies the same.

40.     Only coffee grown in the Kona District can be sold as Kona coffee. Coffee grown outside of the Kona District, even if grown within the state of Hawaii, cannot be sold as Kona coffee.

**ANSWER**: The allegations in Paragraph 40 are legal conclusions not requiring a response. To the extent a response is required, KIHNKE denies these allegations.

41.     Kona coffee has been grown in the Kona District since 1828. The Kona District's volcanic soil, elevation, rainfall, proximity to the Pacific Ocean, moderate temperatures, and sunshine all interact to create Kona coffee's distinctive characteristics. Kona coffee's unique flavor, aroma, and mouth feel are a direct result of this growing environment.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 41, and therefore denies the same.  KIHNKE further denies the suggestion that Kona coffee can be identified *by consumers* by a uniform or consistent flavor or "mouth feel," or that all Kona coffee tastes the same.

42.     The Kona name tells consumers that they are buying coffee grown in the Kona District. The name also tells consumers that the coffee has a distinctive flavor profile, and that the beans are of the highest quality. Consequently, consumers have been willing to pay a premium for Kona coffee.

**ANSWER**: KIHNKE denies that the Kona name tells consumers that they are buying coffee grown in the Kona District, that the beans are of the highest quality, or that consumers are

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

willing to pay a premium for Kona coffee for this reason. KIHNKE is further unaware of any consumers who purchase L&K's Magnum coffee for $7 or $8 per pound who have any interest in paying $35 to $50 for a pound of *any* coffee. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 42, and therefore denies the same.

43.     Within the Kona District, between 600 and 1,000 farmers grow Kona coffee beans. The typical Kona farmer cultivates no more than five acres, which is a very small farming operation. These farms typically operate as family businesses.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 43, and therefore denies the same.

44.     Kona farmers produce approximately 2.7 <u>million</u> pounds of green Kona coffee each year. That compares to 20 <u>billion</u> pounds of green coffee produced worldwide. In other words, authentic Kona represents approximately 0.01% of worldwide coffee production. It is truly a premium product.

**ANSWER**: KIHNKE denies that the amount of Kona coffee produced each year causes Kona coffee to be "truly a premium product." KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 44, and therefore denies the same.

45.     But even though only **2.7** million pounds of authentic green Kona coffee is grown annually, over **20** million pounds of coffee labeled as "Kona" is sold at retail. That is physically impossible; someone is lying about the contents of their "Kona" products.

**ANSWER**: KIHNKE denies it is lying about the contents of its Kona labeled products. KIHNKE also denies that over 20 million pounds of coffee labeled as "Kona" is sold at retail because Plaintiff mischaracterizes use of the word "Kona" and includes within this category products that are clearly Kona blends or other types of coffee products. L&K does not sell any of

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 45, and therefore denies the same.

46.     Defendants sell packaged coffee products that are presented to consumers as Kona coffee, but that actually contain cheap commodity coffee beans. Some packages contain trace amount of Kona coffee, while other packages contain no Kona coffee at all.

**ANSWER**:  KIHNKE admits L&K and certain Defendants sell L&K's coffee.  KIHNKE denies that L&K is falsely labeling its coffee products.  L&K does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 45 as they pertain to other Defendants or other products, and therefore denies the same.  KIHNKE admits that its Kona blends sold between February 2015 and February 2019 contain a percentage of Kona coffee, but denies that it sold any of this product in the state of Hawaii.  KIHNKE denies the remaining allegations in Paragraph 46.

47.     The malicious actions taken by these Defendants, both individually and collectively, cause significant harm to legitimate Kona farmers. First, the Defendants flood the market with what appears to be Kona coffee. This tremendous supply of counterfeit Kona coffee pushes prices down sharply. And that low pricing artificially restrains the profitability of legitimate Kona coffee farms. Second, the Defendants are selling run-of-the-mill commodity coffee and labeling it as Kona coffee. A consumer who tries that inferior product, thinking it is Kona coffee, will conclude that Kona coffee is not worth a premium price. That consumer will be unwilling to pay a premium price for Kona in the future.

**ANSWER**: KIHNKE denies the allegations in Paragraph 46 of the Complaint as they pertain to L&K or certain retailer defendants' sale of L&K coffee products.  The allegation that a consumer who buys L&K's $7 to $8 per pound Magnum coffee will conclude Kona coffee is not worth a premium price is a false allegation without any basis in fact, since it assumes, without any

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1   basis in fact, that a consumer who buys Magnum's coffee has any interest in buying *any* coffee

2   that retails for $35 to $50 per pound. L&K does not sell any of the products described in this

3   complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny

4   the allegations in Paragraph 47 as they pertain to other Defendants or other products, and therefore

5   denies the same.  KIHNKE denies the remaining allegations in Paragraph 47.

6

7       48.      This pricing damage is not just theoretical; it is visible in the marketplace. Kona

8   coffee performs differently in the marketplace than similarly-situated specialty coffees. For

9   example, the specialty coffee called Jamaica Blue Mountain Coffee ("Blue Mountain") is another

10  premium coffee with a specific geographic designation of origin. Blue Mountain is grown in an

11  annual volume that is comparable to Kona. And Blue Mountain is pushed into the same distribution

12  channels. Yet Blue Mountain sells for <u>between two and five times</u> the price per pound of Kona.

13      **ANSWER**: Whether Jamaica Blue Mountain Coffee is a "specialty" or "premium coffee"

14  is a statement of subjective opinion to which no response is required.  To the extent a response is

15  required, KIHNKE denies that there is any damage to Kona coffee pricing (visible or otherwise)

16  in the marketplace, and further denies that Jamaica Blue Mountain coffee sells for two to five times

17  the price per pound of Kona coffee. Further, Jamaican Blue Mountain blends are also prevalent in

18  the marketplace, with one distinction that is critical here: unlike plaintiffs, certain Jamaican Blue

19  Mountain coffee farmers own and license the use of the Jamaican Blue Mountain name.  In

20  contrast, KIHNKE is informed and believes that an administrative department of the State of

21  Hawaii has the rights to the Kona name. L&K does not sell any of the products described in this

22  complaint and has not sold any since 2019.  L&K's withdrawal of its Kona labelled products from

23  the marketplace has had no measurable impact on the price of Kona coffee.  KIHNKE is not jointly

24  liable for the alleged conduct of all other defendants named in this lawsuit. KIHNKE lacks

25  sufficient information to admit or deny the remaining allegations in Paragraph 48, and therefore

26  denies the same.

27

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

49.     The impact of lower Kona pricing on the Plaintiffs and the Class is significant. Growing Kona coffee is a very expensive proposition, largely because the topography of the Kona District makes it nearly impossible to use modern farming machinery. Kona farms are therefore manual farming operations, with significant labor required to plant and harvest the coffee.

**ANSWER**: KIHNKE denies that there is a lower price of Kona coffee beans as the result of L&K's use of the word Kona on its packaging. There is no joint liability among defendants herein.  L&K does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 49, and therefore denies the same.

50.     Despite the fact that they sell a premium product, the typical Kona coffee farmer, who is forced to sell their Kona coffee at a depressed price due to the actions of the Defendants, struggle to turn a significant profit from their Kona coffee farming operation. Sellers of premium products with worldwide reputations typically enjoy above-market profit margins, reflecting the desirability of the product. The fact that so many Kona farmers struggle is shocking.

**ANSWER**: KIHNKE denies that Plaintiffs sell a "premium product." KIHNKE lacks sufficient information to admit or deny whether the typical Kona coffee farmer struggles to turn a significant profit, and therefore denies that allegation. KIHNKE denies that his or L&K's conduct, as alleged herein, has "depressed" Kona coffee prices. KIHNKE is not jointly responsible for the alleged conduct of all other defendants. KIHNKE denies the remaining allegations in Paragraph 50.

51.     Kona farmers have suspected bad actors in the Kona marketplace for years. The problem has always been determining what was actually in a particular bag as that information has been concealed from the Kona farmers. Modern chemistry can now provide answers to that question.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 28

1    **ANSWER**: KIHNKE admits that Plaintiffs have known of their claims for years and that

2    their claims are barred by laches and/or the applicable statute of limitations. L&K does not sell

3    any of the products described in this complaint and has not sold any since 2019.   Plaintiffs have

4    admitted that the "modern chemistry" was available to them more than five years before they filed

5    their complaint. Further, Plaintiff Bruce Corker is a former partner and governor of the Seattle

6    based law firm, Perkins Coie, which represents some of the largest corporations in the world,

7    including Boeing and Microsoft.   Even if Corker lacked the resources to commence the

8    investigation referred to in this paragraph, Corker at all times possessed the sophistication and

9    legal acumen to understand his rights as alleged herein, and to retain counsel with the financial

10   wherewithal to conduct that investigation.  KIHNKE denies the remaining allegations in Paragraph

11   51.

12

13              **VII.    ELEMENTAL TESTING OF COFFEE**

14       52.    Kona coffee is grown in a very specific geographic area on the Big Island of Hawaii.

15   That geographic area has a distinctive soil composition, due largely to its proximity to volcanoes.

16   And that geographic area has distinctive humidity and rainfall, due largely to its proximity to the

17   Pacific Ocean.

18       **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

19   Paragraph 52, and therefore denies the same.

20

21       53.    As a result of the local soil and rainfall, certain elements are present in high

22   concentrations in Kona coffee beans. If a particular package of coffee truly contains Kona coffee

23   beans, these elements tend to be present in high concentrations. If these elements are not present

24   in high concentrations, then the package is unlikely to contain Kona coffee.

25       **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

26   Paragraph 53, and therefore denies the same.

27

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

54.     Moreover, as a direct result of the local soil and rainfall, certain elements are **not** present in high concentrations in Kona coffee beans. If a particular package of coffee truly contains only Kona coffee beans, then these elements tend **not** to be present in high concentrations. If they are present in high concentrations, then the package is unlikely to contain Kona coffee.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 54, and therefore denies the same.

55.     Scientists can examine the concentration of each of the elements that are found in Kona coffee beans, as well as the concentration of each of the elements that are **not** found in Kona coffee beans. By combining this information, scientists can determine with high confidence whether a particular package is authentic Kona coffee.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 55, and therefore denies the same.

56.     In practice, instead of looking at the concentration of an isolated element like barium (Ba) or nickel (Ni), scientists examine the ***ratio*** of the concentrations of ***pairs*** of elements. The reason for this approach is simple. If you were to roast coffee beans for ten minutes longer, you would not impact the amount of barium or nickel in the sample, but you would burn away more of the overall coffee bean. The concentration of barium would therefore increase, since it is defined as the mass of barium divided by the mass of the total bean. And the concentration of nickel would therefore increase, since it is defined as the mass of nickel divided by the mass of the total bean. But the ratio of the concentration of barium to the concentration of nickel would be unchanged. And since the lab does not know how long particular coffee samples were roasted by the Defendants, the scientists focus on measures that do not change with roasting.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 56, and therefore denies the same.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 30

Hatton, Petrie & Stackler APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

57.     Having tested barium and nickel, scientists have determined that authentic Kona coffee has a *ratio* of the concentration of barium to the concentration of nickel, also called the *relative concentration*, that falls within a certain range. If an unknown sample has a relative concentration within that range, it may or may not be Kona. But if an unknown sample has a relative concentration clearly <u>outside</u> that range, it is highly unlikely to be Kona. (This analysis makes intuitive sense. A veterinarian knows that dogs weigh between 1 and 325 pounds. If that veterinarian sees an animal that weighs 100 pounds, which is clearly in the range of observed dog weights, the veterinarian would say that the animal may or may not be a dog. But if that veterinarian sees an animal that weighs 500 pounds, which is well outside the range of previously-observed dog weights, the veterinarian would immediately note that the animal is highly unlikely to be a dog.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 57, and therefore denies the same.

58.     Determining the concentrations of particular elements and *isotopes* (which are simply variations of a particular element) is a process that requires significant scientific expertise and expensive instrumentation. The scientific techniques of *elemental analysis* and *isotopic analysis*[1] are widely accepted in the scientific community, and have been used in studies of various food products (including coffee). Unfortunately, these tests are very expensive. For that reason, the growers have never before had access to this kind of evidence.

**ANSWER**:   Plaintiffs have admitted that "these tests" were available to them more than five years before they filed their complaint. Further, Plaintiff Bruce Corker is a former partner and governor of the Seattle based law firm, Perkins Coie, which represents some of the largest corporations in the world, including Boeing and Microsoft.  Even if Corker lacked the resources to commence the investigation referred to in this paragraph, Corker at all times possessed the

---

[1] Two different types of isotopic testing have been performed to confirm whether a defendant has falsely designated Kona as the origin of its coffee products. The first test examined strontium isotopes, and the second test examined hydrogen and oxygen isotopes.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1   sophistication and legal acumen to understand his rights as alleged herein, and to retain counsel

2   with the financial wherewithal to conduct that investigation. KIHNKE lacks sufficient information

3   to admit or deny the allegations in Paragraph 58, and therefore denies the same.

4

5   59.     It is important to recognize that Defendants (who are likely to protest any and all

6   aspects of scientific testing) could prove their innocence without retaining a single scientist, and

7   without conducting a single lab test. They could simply provide evidence of where they bought

8   legitimate Kona coffee that they have been selling at retail. Any legitimate Kona coffee products

9   must ultimately have been grown on a farm owned by a Plaintiff or prospective Class member.

10   **ANSWER**: KIHNKE or L&K has provided this "evidence" to plaintiffs. Further, there was

11   no need to sue KIHNKE or L&K to get it.  When plaintiffs told L&K they objected to L&K's use

12   of the word Kona on its packaging in February 2019, L&K not only ceased use of the word Kona

13   on its packaging, it stopped using Kona beans in its products. KIHNKE denies the remaining

14   allegations in Paragraph 59.

15

16   60.     It is also important to recognize that Defendants are sophisticated participants in

17   the premium coffee marketplace. On information and belief, certain named defendants employ

18   professional coffee buyers whose job function is to source coffees for their products. In other

19   words, much like a professional jeweler could never plausibly claim to be confused about the

20   difference between a Rolex and a Timex, these sophisticated defendants cannot plausibly claim to

21   be confused about the coffee they are procuring. The Defendants and their buyers know exactly

22   what they are buying, and what they are selling.

23   **ANSWER**: The first sentence of Paragraph 60 is a statement of subjective opinion, not a

24   factual allegation capable of admission or denial. To the extent that a response is required,

25   KIHNKE denies that it is important to recognize whether or not the Defendants are sophisticated

26   participants in the premium coffee marketplace. KIHNKE admits that L&K has employees whose

27   job functions include sourcing coffee beans for its coffee products. Plaintiffs' allegation that

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1    Defendants cannot plausibly claim to be confused about the coffee they are procuring is a legal
2    conclusion not requiring a response. L&K does not sell any of the products described in this
3    complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny
4    the allegations in Paragraph 60, and therefore denies the same.

6    **VIII.   THE DEFENDANTS' PRODUCTS AND WRONGFUL ACTS**

7        61.    Defendants use marketing and packaging that tell consumers that they are buying
8    packages of Kona coffee, but those packages do not contain Kona coffee.

9        **ANSWER**: KIHNKE denies the allegations in Paragraph 61 to the extent they pertain to
10   L&K coffee products. L&K does not sell any of the products described in this complaint and has
11   not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the allegations in
12   Paragraph 61 to the extent they pertain to other Defendants, and therefore denies the same.

14       62.    For each Defendant, this complaint includes one or more examples of particular
15   products in their product line. The examples provided in this complaint are intended to be
16   representative, and not necessarily exhaustive, of the deceptive products manufactured and/or sold
17   by each defendant. Sampling has shown that <u>nearly every product</u> labeled "Kona" in their product
18   lines misrepresents the origin of the coffee beans contained in the package. Given the scarcity of
19   authentic Kona coffee (remember that Kona coffee represents only 0.01% of the worldwide supply
20   of coffee) and the high profitability of marketing commodity coffee as if it were Kona coffee, it is
21   no surprise that any defendant that is willing to engage in such deceptive practices would
22   consistently practice their deception across all product lines. An unscrupulous merchant selling
23   counterfeit Rolex watches on a street corner tends not to mix a real Rolex into inventory every
24   once in a while.

25       **ANSWER**: KIHNKE admits that the Complaint includes certain images of coffee
26   products.  KIHNKE denies that the sampling referenced in Paragraph 62 demonstrates that L&K
27   coffee products misrepresent the origin of the coffee beans contained therein, and further denies

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 33

that L&K coffee products are highly profitable. KIHNKE otherwise denies the matter stated in this paragraph. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 62 to the extent they pertain to other Defendants and other products, and therefore denies the same.

63.    For each example product, this complaint includes two graphs that shed light on the true contents of the package. The graphs are based on the ratios of elemental concentrations discussed above. The graphs included in this complaint are only a subset of the data collected on each deceptive product. For each product, additional data reinforces the results shown below.

**ANSWER**: KIHNKE denies that the graphs referenced in Paragraph 63 demonstrate that the L&K coffee products do not contain Kona coffee beans. KIHNKE further denies that the graphs are based on the ratios of elemental concentrations in L&K's coffee. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 63, and therefore denies the same.

64.    For any particular coffee sample, a scientist can calculate the ratio between the concentration of strontium (Sr), and the concentration of zinc (Zn). For authentic Kona coffee, that ratio falls within a narrow range. A scientist can similarly calculate the ratio between the concentration of barium (Ba), and the concentration of nickel (Ni). For authentic Kona coffee, that ratio also falls within a narrow range. Those two ratios can be plotted on a scatter plot, creating a visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee. The blue dots in each scatter plot below show the observed ratios from over one hundred samples of authentic Kona coffee. The red diamonds show the observed ratios from the coffee products sold by Defendants.  Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendants' designation of the origin of its coffee products as Kona is false.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

**ANSWER**: KIHNKE lacks sufficient knowledge to admit or deny what plaintiffs' so-called "scientists" did or discovered about L&K's coffees, and therefore denies the allegations in Paragraph 64. L&K does not sell any of the products described in this complaint and has not sold any since 2019.

65.     For any coffee sample, a scientist can also calculate the ratio between the concentration of cobalt (Co), and the concentration of zinc (Zn). For authentic Kona, that ratio falls within a narrow range. And a scientist can calculate the ratio between the concentration of manganese (Mn), and the concentration of nickel (Ni). For authentic Kona, that ratio also falls within a narrow range. As with the earlier ratios, those two ratios can be plotted on a scatter plot, creating another visual that indicates whether a particular sample has concentration ratios that are consistent with Kona coffee. The blue dots in each scatter plot below show the observed ratios from over one hundred samples of authentic Kona coffee. The red diamonds show the observed ratios from the coffee products sold by Defendants. Those red diamonds are far outside the observed ranges for Kona, indicating that the Defendants' designation of Kona as the origin of its coffee products is false.

**ANSWER**: KIHNKE lacks sufficient knowledge to admit or deny what plaintiffs' so-called "scientists" did or discovered about L&K's coffees, and therefore denies the allegations in Paragraph 65. L&K does not sell any of the products described in this complaint and has not sold any since 2019.

66.     *PACIFIC COFFEE ("MAUI COFFEE COMPANY" OR "MCC")*. The Maui Coffee Company packages are unequivocal. The packages prominently say either "100% Kona Coffee" or "100% Kona Macadamia Nut" in large block print on the front panel. Seeing that packaging on a shelf or online, a consumer would conclude that the package contains no coffee beans other than Kona coffee beans.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1    **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in
2    Paragraph 66, and therefore denies the same.

3

4    67.    MCC falsely designates the geographic origin of its "Kona" coffee products with
5    the prominent placement of 100% KONA on the front of the packaging. MCC furthers this
6    deception through its product descriptions published on its online store. MCC deceptively
7    describes its "100% Kona Coffee" product as follows:

8        Without a doubt, one of the world's most sought-after beans by coffee
         connoisseurs! Taste the full rich flavor of 100% Kona Coffee and experience the
9        magic of the Kona Coast for yourself. Our 100% Pure Kona Coffee has a medium
         to full body with mild acidity and will be delivered fresh to your doorstep. Take a
10       trip to the Kona Coast when you experience the full rich flavor of our 100% Pure
         Kona Coffee.

11

12   MCC describes its "100% Kona Macadamia Nut" product as "Kona goodness with a touch of
13   island-grown macadamia nuts. It doesn't get any more Hawaiian than that." MCC also deceptively
14   advertises its coffee products as "100% Kona" on its Internet advertising. The deceptive product
15   descriptions are designed to mislead consumers into believing that MCC's products contain coffee
16   from Hawaii, and more specifically the Kona region of Hawaii. The deceptive marketing, product
17   names, and package designs are all intended to trade off the reputation and goodwill of the Kona
18   name. They deliberately mislead the consumer into believing that MCC coffee products contain
19   nothing but premium Kona coffee beans in order to justify the high price MCC charges for what
20   are actually ordinary commodity coffee beans. Below are representative images of MCC's
21   deceptive "Kona" coffee products.

22

23

24

25

26

27

Hatton, Petrie & Stackler APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 67, and therefore denies the same.


Figure MCC-1


Figure  MCC-2

68.     But while consumers would reasonably believe that the packages in Figures MCC-1 and MCC-2 are pure Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, MCC's designation of Kona as the origin of the coffee in these products is false.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222



**Figure MCC-A.**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 68, and therefore denies the same.

69.     The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion for the MCC products that were tested. These accused MCC products (marked by red diamonds) are well outside the range of authentic Kona. In other words, MCC's designation of Kona as the origin of the coffee in these products is false.



**Figure MCC-B**

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 38

1

2      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

3   Paragraph 69, and therefore denies the same.

4

5      70.      *MULVADI CORPORATION.* The front of the Mulvadi package says "100% Kona

6   Coffee" in two distinct places. The main product banner is "Pure 100% Kona Coffee." And there

7   is a misleading "Official Seal" that says "100% Kona Coffee." The purpose of the language that

8   Mulvadi features on the face of its packaging is to mislead consumers into believing that Mulvadi

9   coffee products come from the Kona District.

10      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

11   Paragraph 70, and therefore denies the same.

12

13      71.      Mulvadi deceptively places a gold sticker on its packaging, which it presents as the

14   "Official Seal" of the "Independent Kona Coffee Growers Association," proclaiming that the

15   product is "100% Kona Coffee" from the "Big Island of Hawaii." On information and belief, there

16   is no such association that is recognized for certifying Kona coffee products as 100% authentic.

17   Instead, the "seal" is a marketing ploy intended to deceive consumers as to the source of origin of

18   the coffee sold by Mulvadi. The deceptive marketing, product names, and package designs are all

19   intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the

20   consumer into believing that Mulvadi coffee products contain premium Kona coffee beans,

21   justifying the high price Mulvadi charges for what is actually ordinary commodity coffee. Below

22

23

24

25

26

27

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

are representative images of Mulvadi's deceptive "Kona" coffee products, including an image othe "seal."



**Figure MUL-1**                    **Figure MUL-2**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 71, and therefore denies the same.

72.     The Mulvadi package is <u>unequivocal</u> as to its contents; it says "100% Kona Coffee" twice on its front face. Seeing that packaging on a shelf or online, any consumer would conclude that the package contains only Kona coffee beans. But the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. These packages are clearly not Kona. In other words, Mulvadi's designation of Kona as the origin of the coffee is false.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222



The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Mulvadi's designation of Kona as the origin of the coffee in these products is false.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 41

1    **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

2    Paragraph 72, and therefore denies the same.

3

4    73.   *HAWAIIAN ISLES KONA COFFEE LTD., LLC.* Hawaiian Isles falsely designates

5    the geographic origin of its "Kona" coffee products with the prominent placement of KONA on

6    the front of the packaging. Hawaiian Isles advertises its coffee products nationally on the Internet

7    and with digital marketing campaigns through social media sites such as Facebook. With its

8    marketing campaigns, Hawaiian Isles uses deceptive taglines and slogans such as "Taste the Kona

9    Difference," "Bring Hawaii Home," "Give the Gift of Aloha," "Drink Kona Coffee and Relax,"

10   and "I Want My Toes in the Sand and Kona Coffee in My Hand," among others. The deceptive

11   slogans are designed to mislead consumers into believing that Hawaiian Isles coffee products

12   primarily contain coffee from Hawaii, and more specifically the Kona District of Hawaii. In

13   addition, Hawaiian Isles uses deceptive names for its products intended to mislead consumers into

14   believing that the coffee products contain a significant amount of Kona coffee. The deceptive

15   product names include "Kona Classic," "Kona Sunrise," "Kona Hazelnut," and "Kona Vanilla

16   Macadamia Nut." Hawaiian Isles also designs its product packaging with imagery, text, and

17   advertising slogans intended to mislead the consumer into believing that the coffee product

18   contains coffee beans predominantly, if not exclusively, grown in Hawaii, and specifically in the

19   Kona District. The deceptive marketing slogans, product names, and package designs are all

20   intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the

21   consumer into believing that Hawaiian Isles coffee products contain significant amounts of

22   premium Kona coffee beans in order to justify the high price Hawaiian Isles charges for ordinary

23   commodity coffee.

24   **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

25   Paragraph 73, and therefore denies the same.

26

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 42

74.     Below are several examples of the deceptive "Kona" products sold by Hawaiian Isles.



**Figure HI-1**



**Figure HI-2**

The packages themselves state "Made in Hawaii" on a banner on the front, above a map of Hawaii and a photograph of palm trees at sunset. The marketing copy on the side of the package states that the contents were "freshly roasted and packaged in Hawaii." The package also states that "Kona Coffee is grown on the Big Island's Kona Coast." Given Hawaiian Isles' unequivocal designation of "Kona" as the origin of the coffee in its products, consumers buying these products would reasonably believe that Kona, and only Kona, was the origin of the coffee contained therein.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 74, and therefore denies the same.

75.     But while consumers would reasonably believe that the packages in Figures HI-1 and HI-2 contain coffee that originates exclusively from Kona, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, the science indicates that the coffee contained in the Hawaiian Isles packages is highly unlikely to originate from Kona.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 43



**Figure HI-A**

The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. Again, the science indicates that the coffee contained in the Hawaiian Isles packages is highly unlikely to originate from Kona. In other words, Hawaiian Isles' designation of Kona as the origin of the coffee in these products is false



**Figure HI-B**

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1   **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

2   Paragraph 75, and therefore denies the same.

3

4   76.   In fact, these bags appear to contain very little Kona coffee, if any. As a simple

5   indicator, note that authentic Kona has an average of less than forty times (40x) as much

6   manganese as nickel. In contrast, some Hawaiian Isles samples have one hundred twenty times

7   (120x) as much manganese as nickel. This evidence, and similar evidence from many other ratios,

8   leads to the conclusion that there must be very little Kona in this package. In other words, Hawaiian

9   Isles' designation of Kona as the origin of the coffee in these products is false.

10   **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

11   Paragraph 76, and therefore denies the same.

12

13   77.   Even a consumer understanding this package to be a blend of Kona and other

14   coffees (which is a conclusion that very few consumers would draw based on this particular

15   packaging) would expect the package to contain a meaningful percentage of Kona beans. Given

16   the deviation in the concentration ratios, though, it is implausible that this package meets those

17   consumer expectations.

18   **ANSWER**: KIHNKE denies all allegations in paragraph 77.

19

20   78.   *GOLD COFFEE ROASTERS, INC.* Hawaiian Gold falsely designates the

21   geographic origin of its "Kona" coffee products with the prominent placement of KONA on the

22   front of the packaging. Hawaiian Gold boasts on its packaging and on its website,

23   www.goldcoffee.com, that the "Kona" coffee contained in its coffee products is cultivated on a

24   900-acre plantation in the Kona District, which Hawaiian Gold commonly refers to as the Parry

25   Estates. With its marketing, Hawaiian Gold uses deceptive taglines and slogans such as "Grown

26   in paradise. Enjoyed worldwide," "The Hawaiian Difference," "From our land to your hand"

27   (superimposed over a photograph of a tropical island), and "Striking flavor. Exotic character"

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 45

(superimposed over an image of lava flow). The deceptive slogans and imagery are designed to mislead consumers into believing that Hawaiian Gold coffee products contain coffee from Hawaii, and more specifically the Kona District of Hawaii. The deceptive product packaging prominently features the word "Kona" in large font and includes pictures of volcanic mountains, Bird of Paradise flowers, and other imagery indicative of Hawaii. The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Hawaiian Gold coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Hawaiian Gold charges for what is actually ordinary commodity coffee.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 78, and therefore denies the same.

79.     Below are representative images of Hawaiian Gold's deceptive "Kona" coffee products.


Figure HG-1


Figure HG-2

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 79, and therefore denies the same.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 46

80.     But while consumers would reasonably believe that the coffee in package HG-1 predominantly consisted of Kona beans, and the coffee in HG-2 contained nothing but 100% Kona, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Hawaiian Gold's designation of Kona as the origin of the coffee in these products is false.



Figure HG-A

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 80, and therefore denies the same.

81.     The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Hawaiian Gold's designation of Kona as the origin of the coffee in these products is false.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 47

1
2
3
4
5
6
7
8
9
10
11
12



**Figure HG-B**

13
14     **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in
15 Paragraph 81, and therefore denies the same.

16
17     82.    In fact, the tested Hawaiian Gold products contain very little Kona coffee, if any.
18 As an indicator, note that authentic Kona has an average of less than forty times (40x) as much
19 manganese as nickel. In contrast, tests show that one of the Hawaiian Gold samples has roughly
20 one hundred forty times (140x) as much manganese as nickel. This evidence, and similar evidence
21 from many other ratios, leads to the conclusion that there is very little Kona in this bag.
22     **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in
23 Paragraph 82, and therefore denies the same.

24
25     83.    Even a consumer understanding the coffee in the package shown in HG-1 to be a
26 blend of Kona and other coffees (a conclusion that very few consumers would draw based on this
27 particular packaging) would expect the package to contain a meaningful percentage of Kona beans.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 48

1   Given the deviation in the concentration ratios, though, it is implausible that this package meets

2   those consumer expectations.

3      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

4   Paragraph 83, and therefore denies the same.

5

6      84.   *COST PLUS/WORLD MARKET*. World Market sells both its own private-label

7   coffee products and coffee products offered by third parties, including coffee products falsely

8   identified as Kona coffee. World Market falsely designates the geographic origin of its "Kona"

9   coffee products with the prominent placement of KONA on the front of the packaging. For

10  example, World Market sells its own private-label coffee product labeled "Hawaiian Kona Blend"

11  in packaging intended to mislead the consumer into believing the that the product contains a

12  significant amount of Kona coffee beans, when the product actually contains little to no Kona

13  coffee. The deceptive packaging features hibiscus flowers and the prominent placement of

14  geographic terms "Hawaiian" and "Kona" in the center of the package label. The deceptive product

15  names and package designs are all intended to trade off the reputation and goodwill of the Kona

16  name. They deliberately mislead the consumer into believing that World Market coffee products

17  contain significant amounts of premium Kona coffee beans in order to justify the high price World

18  Market charges for what is actually ordinary commodity coffee.

19     **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

20  Paragraph 84, and therefore denies the same.

21

22     85.   Below is a sample image of the deceptive packaging used by World Market for its

23  private-label "Kona" coffee product.

24

25

26

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 49



**Figure WM-1**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 85, and therefore denies the same.

86.     In addition, World Market sells a variety of deceptive coffee products from Hawaiian Isles, such as those shown above in paragraph 73, all of which mislead the consumer into believing that the products contain a significant amount of Kona coffee beans when they actually contain little or no Kona.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 86, and therefore denies the same.

87.     While consumers would reasonably believe that the coffee in package WM-1 predominantly consisted of Kona beans, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1   (marked by red diamonds) are well outside the range of authentic Kona. In other words, World

2   Market's designation of Kona as the origin of the coffee in these products is false.



**Figure WM-A**

13   **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

14   Paragraph 87, and therefore denies the same.

16   88.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-

17   nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are

18   well outside the range of authentic Kona. In other words, World Market's designation of Kona as

19   the origin of the coffee in these products is false.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222



**Figure WM-B**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 88, and therefore denies the same.

[Plaintiffs appear to have inadvertently omitted Paragraphs 89 and 90 from their Complaint.]

91.     In fact, these bags contain very little Kona coffee, if any. As an indicator of how little Kona coffee is actually in the package, note that authentic Kona has an average of no more than forty times (40x) as much manganese as nickel. In contrast, World Market samples range as high as one hundred forty times (140x) as much manganese as nickel. This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 91, and therefore denies the same.

92.     Even a consumer understanding the coffee in the package shown in WM-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 52

1    Given the deviation in the concentration ratios, though, it is implausible that this package meets

2    those consumer expectations.

3        **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

4    Paragraph 92, and therefore denies the same.

5

6        93.    *BOYER'S.* Boyer's falsely designates the geographic origin of its "Kona" coffee

7    products with the prominent placement of KONA on the front of the packaging. For example,

8    Boyer's sells at least two different "Kona" coffee products. One is labeled "Café Kona" and the

9    other is labeled "Kona Blend." The Boyer's packaging is intended to mislead the consumer into

10   believing that the product contains a significant amount of Kona coffee beans, when the product

11   actually contains little to no Kona coffee. The deceptive product names are intended to trade off

12   the reputation and goodwill of the Kona name. They deliberately mislead the consumer into

13   believing that Boyer's coffee products contain significant amounts of premium Kona coffee beans

14   in order to justify the high price Boyer's charges for what is actually ordinary commodity coffee.

15   By using the term "Kona" to describe its products, Boyer's is falsely designating the geographic

16   origin of the product, creating confusion around the geographic origin, and damaging the

17   geographic designation itself. Boyer's use of the term "Kona" in the context of extolling the virtues

18   of Colorado roasting undermines the meaning of the term, damaging its value to the farmers of

19   authentic Kona in the Kona District.

20       **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

21   Paragraph 93, and therefore denies the same.

22

23

24

25

26

27

Hatton, Petrie & Stackler APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1

94.     Below are representative images of Boyer's deceptive "Kona" coffee products.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17





Figure BC-1                    Figure BC-2[2]

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 94, and therefore denies the same.

18

19

20

21

22

23

24

25

26

27

---

[2] Boyer's uses several variations of its packaging, but the differences are immaterial. Plaintiffs have archive photographs of each package actually tested.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 54

95.     While the packages say Kona, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Boyer's designation of Kona as the origin of the coffee in these products is false.



**Figure BC-A**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 95, and therefore denies the same.

96.     The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Boyer's designation of Kona as the origin of the coffee in these products is false.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 55

1
2
3
4
5
6
7
8
9
10
11



Figure BC-B

12  **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

13  Paragraph 96, and therefore denies the same.

14

15  97.    In fact, these bags contain very little Kona coffee, if any. As an indicator of how

16  little Kona coffee is actually in the package, note that authentic Kona has an average of no more

17  than forty times (40x) as much manganese as nickel. In contrast, Boyer's samples range as high as

18  one hundred ten times (110x) as much manganese as nickel. This evidence, and similar evidence

19  from many other ratios, leads to the conclusion that there is very little Kona in this bag.

20  **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

21  Paragraph 97, and therefore denies the same.

22

23  98.    Even a consumer understanding the coffee in the packages shown in BC-1 and BC-

24  2 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based

25  on this particular packaging) would expect the package to contain a meaningful percentage of

26  Kona beans. Given the deviation in the concentration ratios, though, it is implausible that this

27  package meets those consumer expectations.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 56

1    **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

2    Paragraph 98, and therefore denies the same.

3

4    99.    *L&K COFFEE CO. LLC (MAGNUM EXOTICS).* L&K falsely designates the

5    geographic origin of its "Kona" coffee products with the prominent placement of KONA on the

6    front of the packaging. With its marketing and packaging, L&K uses deceptive taglines and

7    slogans such as "Certified," "Kona High Mountain Coffee" and "100% High MT. Arabica

8    Coffee." On its online store, L&K describes its "Kona" coffee product as "Grown high in the

9    mountains of Hawaii, this blended coffee has the perfect balance of light taste, full body and

10    moderate acidity." The deceptive marketing is designed to mislead consumers into believing that

11    L&K's Magnum Exotics "Kona" products contain coffee from the Kona District, when the coffee

12    products actually do not contain a significant amount of Kona coffee, if any. L&K also designs its

13    Magnum Exotics product packaging with imagery and text intended to mislead the consumer into

14    believing that the coffee product contains coffee beans predominantly, if not exclusively, grown

15    in Hawaii, and specifically in the Kona region. The deceptive imagery utilized by L&K includes

16    illustrations of beaches, humming birds, hibiscus flowers, toucan birds, and tropical islands. The

17    deceptive marketing, product names, and package designs are all intended to trade off the

18    reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing

19    that L&K's Magnum Exotics coffee products contain significant amounts of premium Kona coffee

20    beans in order to justify the high price L&K charges for what is actually ordinary commodity

21    coffee.

22    **ANSWER**: L&K's online website and its packaging speaks for itself. L&K's Kona blends

23    were marketed and sold as blends in states other than Hawaii. L&K's Kona Blends contained a

24    small amount of Kona beans. L&K denies that consumers were "tricked" into buying a $7 to $8

25    dollar pound of Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No

26    consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or

27    $8 dollars.  KIHNKE denies that L&K's coffee products are deceptively labeled.  L&K does not

sell any of the products described in this complaint and has not sold any since 2019. KIHNKE denies all remaining allegations in paragraph 99.

100.    Below is a representative image of L&K's deceptive "Kona" coffee products.



**Figure ME-1**

**ANSWER**: KIHNKE admits that this package was used by L&K prior to March 2019. KIHNKE denies that L&K's packaging is deceptive and further denies any remaining allegation in paragraph 100.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

101.     While consumers would reasonably believe that the coffee contained in the package shown in Figure ME-1 originated from Kona, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, L&K's designation of Kona as the origin of the coffee in these products is false.



Figure ME-A

**ANSWER**: KIHNKE denies that consumers were "tricked" into buying a $7 to $8 dollar pound of Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or $8 dollars. KIHNKE notes that the scatter plots appear distorted. KIHNKE denies that L&K's coffee products are deceptively labeled.  L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the other allegations in Paragraph 101, and therefore denies the same.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

102.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, L&K's designation of Kona as the origin of the coffee in these products is false.



**Figure ME-B**

**ANSWER**: KIHNKE denies that consumers were "tricked" into buying a $7 to $8 dollar pound of Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee for $7 or $8 dollars. KIHNKE notes that the scatter plots are appear distorted.  KIHNKE denies that L&K's coffee products are deceptively labeled.  L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the other allegations in Paragraph 102, and therefore denies the same.

103.    In fact, these bags contain very little Kona coffee, if any. As an indicator, note that authentic Kona has an average of less than forty times (40x) as much manganese as nickel. In contrast, Magnum Exotics samples range as high as one hundred forty-five times (145x) as much manganese as nickel. This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in L&K's Magnum Exotics coffee products.

Hatton, Petrie & Stackler APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1    **ANSWER**: KIHNKE denies that consumers were "tricked" into buying a $7 to $8 dollar

2  pound of Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No

3  consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or

4  $8 dollars. KIHNKE notes that the scatter plots are appear distorted.  KIHNKE denies that L&K's

5  coffee products are deceptively labeled.  L&K does not sell any of the products described in this

6  complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny

7  the other allegations in Paragraph 103, and therefore denies the same.

8

9    104.    Even a consumer understanding the coffee in the package shown in ME-1 to be a

10  blend of Kona and other coffees (a conclusion that very few consumers would draw based on this

11  particular packaging) would expect the package to contain a meaningful percentage of Kona beans.

12  Given the deviation in the concentration ratios, though, it is implausible that this package meets

13  those consumer expectations.

14    **ANSWER**: KIHNKE denies that consumers were "tricked" into buying a $7 to $8 dollar

15  pound of Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No

16  consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or

17  $8 dollars. KIHNKE denies that L&K's coffee products are deceptively labeled.  L&K does not

18  sell any of the products described in this complaint and has not sold any since 2019. KIHNKE

19  lacks sufficient information to admit or deny the other allegations in Paragraph 104, and therefore

20  denies the same.

21

22    105.    *COPPER MOON COFFEE*. Copper Moon falsely designates the geographic origin

23  of its "Kona" coffee products with the prominent placement of KONA on the front of the

24  packaging. In addition, Copper Moon uses deceptive names for its products intended to mislead

25  consumers into believing that the coffee products contain a significant amount of Kona coffee. The

26  deceptive product names include "Kona 100% Arabica Premium Blend," and "Kona Premium

27  Blend." On its website, Copper Moon identifies the sources of the beans used in their coffee

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

products, which include Nicaragua, Rwanda, Peru, and Ethiopia. Noticeably absent is any description for the source of the Kona coffee that they purportedly use in their Kona coffee products. Copper Moon also designs its product packaging with imagery and text intended to mislead the consumer into believing that the product labeled "Kona" contains coffee beans predominantly, if not exclusively, grown in the Kona District. For example, Copper Moon's "Kona" products prominently feature a postage stamp of the iconic plumeria flower, used in Hawaiian lei, to mislead consumers into believing that the origin of the coffee product is Kona, Hawaii. The deceptive marketing, product names, and package designs are all intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Copper Moon coffee products contain significant amounts of premium Kona coffee beans in order to justify the high price Copper Moon charges for ordinary commodity coffee beans.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 105, and therefore denies the same.

106.   Below are representative images of Copper Moon's deceptive "Kona" coffee products.



**Figure CM-1**

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1  **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in
2  Paragraph 106, and therefore denies the same.

3

4  107.    Copper Moon follows the term "Kona" with the percentage "100%," which alone
5  reinforces the impression that the coffee is unadulterated Kona. The misleading placement of
6  "100%" near the term "Kona" is a deceptive practice employed by Copper Moon and other
7  defendants to mislead consumers into believing that the product contains 100% Kona coffee.

8  **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in
9  Paragraph 107, and therefore denies the same.

10

11  108.    Copper Moon also labels its product as "100% Arabica," which is a deception that
12  is common across many defendants. Like over 75% of the world's coffee production, Kona is a
13  kind of Arabica coffee bean. The term "Kona" followed by the phrase "100% Arabica" is therefore
14  consistent with the bag containing pure Kona coffee. And it is not consistent with the bag
15  containing non-Kona Arabica coffees. Imagine, for example, that the package had said "Kona —
16  100% Coffee." That marketing line would be just as true for real Kona, and just as meaningless,
17  as the "100% Arabica" line. And that language would never be interpreted as allowing the
18  substitution of commodity coffee, since it "discloses" that it contains 100% coffee. Similarly,
19  labeling a product with the phrase "100% Arabica" does not allow a defendant to substitute cheaper
20  Arabica beans for Kona beans, while misleading consumers to believe that the product contains
21  100% Kona coffee.

22  **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in
23  Paragraph 108, and therefore denies the same.

24

25  109.    But while consumers would reasonably believe that the package in Figures CM-1
26  contains 100% Kona coffee, the lab tests tell a different story. On the below scatter plot showing
27  the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

diamonds) are well outside the range of authentic Kona. In other words, Copper Moon's designation of Kona as the origin of the coffee in its products is false.



**Figure CM-A**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 109, and therefore denies the same.

110.   The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Copper Moon's designation of Kona as the origin of the coffee in its products is false.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 64



**Figure CM-B**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 110, and therefore denies the same.

111.    In fact, these bags contain very little Kona coffee, if any. As an indicator, note that authentic Kona has an average of less than eight times (8x) as much barium as nickel. In contrast, a Cooper Moon sample has over thirty times (30x) as much barium as nickel. This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 111, and therefore denies the same.

112.    Even a consumer understanding the coffee in the package shown in CB-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 65

Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 112, and therefore denies the same.

113.   *CAMERON'S*. Cameron's falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on its packaging. Cameron's also describes its "Kona" coffee products as "premium," when the coffee beans in the product are not "premium" beans from Kona but are instead merely commodity coffee beans from other regions of the world. To further deceive consumers as to the origin of the coffee beans in their "Kona" coffee products, Cameron's packaging features a tropical flower to further the association between Hawaii and the Cameron's product in the mind of the consumer. Cameron's false designation of Kona as the origin of the coffee is intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Cameron's coffee products contain premium Kona coffee beans in order to justify the high price Cameron's charges for ordinary commodity coffee beans.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 113, and therefore denies the same.

114.   Below are representative images of the deceptive packaging used by Cameron's for its "Kona" coffee products.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 66

1

2

3

4

5

6

7

8

9



**Figure CC-1**        **Figure CC-2**

10

11

12

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 114, and therefore denies the same.

13

14

15

16

17

18

115.    But while consumers could reasonably believe that the packages in Figures CC-1 and CC-2 contain nothing but Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Cameron's designation of Kona as the origin of the coffee in its products is false.

19

20

21

22

23

24

25

26

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 67

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1



**Figure CC-A**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 115, and therefore denies the same.

116.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Cameron's designation of Kona as the origin of the coffee in its products is false.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 68

1



**Figure CC-B**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 116, and therefore denies the same.

117.    Even a consumer understanding the coffee in the package shown in CC-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans. Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 117, and therefore denies the same.

118.    *THE KROGER CO*. With its private-label "Kivu," Kroger falsely designates the geographic origin of its "Kona" coffee products with the prominent placement of KONA on the label of both its pre-packaged products and its self-serve dispensers. In addition, Kroger sells coffee products from Hawaiian Gold, which also falsely designates Kona as the geographic origin. Kroger designs its product packaging with imagery intended to mislead the consumer into

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

believing that the coffee product contains coffee beans grown in the Kona District. The deceptive packaging prominently features the word KONA with images of hibiscus flowers and tropical islands. The self-serve dispensary for the Kivu coffee describes the product as "premium coffee ... grown on the steep slopes of the Kona region of Hawaii." These statements are intended to mislead consumers into believing that the Kona coffee sold under the Kivu label is cultivated in the Kona region, when in fact the product is mostly commodity coffee beans grown in other parts of the world. The deceptive package design featuring the false designation of Kona as the origin of the coffee is intended to trade off the reputation and goodwill of the Kona name. They deliberately mislead the consumer into believing that Kroger's coffee products contain nothing but premium Kona coffee beans in order to justify the high price Kroger charges for ordinary commodity coffee beans.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 118, and therefore denies the same.

119.    Below is a sample image of the deceptive packaging used by Kroger for its private-label "Kona" coffee product at its self-serve dispensers found in its retail stores.



**Figure Kroger-1**

**Hatton, Petrie & Stackler APC**
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 119, and therefore denies the same.

120.    But while consumers could reasonably believe that the package in Figure Kroger-1 contains nothing but Kona coffee, the lab tests tell a different story. On the below scatter plot showing the strontium-to-zinc ratio and the barium-to-nickel ratio, these accused products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Kroger's designation of Kona as the origin of the coffee in its Kivu products is false.



**Figure Kroger-A**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 120 and therefore denies the same.

121.    The below scatter plot showing the cobalt-to-zinc ratio and the manganese-to-nickel ratio reinforces the same conclusion. These accused Kroger Kivu products (marked by red diamonds) are well outside the range of authentic Kona. In other words, Kroger's designation of Kona as the origin of the coffee in its Kivu products is false.

**HATTON, PETRIE & STACKLER APC**
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222



**Figure Kroger-B**

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 121, and therefore denies the same.

122.    In fact, these bags contain very little Kona coffee, if any. As an indicator, note that authentic Kona has less strontium than zinc. (See Figure Kroger-A.) In contrast, Kivu samples have between four times (4x) and six times (6x) as much strontium as zinc. This evidence, and similar evidence from many other ratios, leads to the conclusion that there is very little Kona in this bag.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 122, and therefore denies the same.

123.    Even a consumer understanding the coffee in the package shown in Kroger-1 to be a blend of Kona and other coffees (a conclusion that very few consumers would draw based on this particular packaging) would expect the package to contain a meaningful percentage of Kona beans. Given the deviation in the concentration ratios, though, it is implausible that this package meets those consumer expectations.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

2   Paragraph 123, and therefore denies the same.

3

4      124.   *AMAZON.COM*. Through its online store at www.amazon.com, Amazon sells a

5   variety of deceptive coffee products, including but not limited to the following: MCC, Hawaiian

6   Isles, Hawaii Gold, Mulvadi, Cameron's, Copper Moon, Hazz, and Magnum Exotics. Each of

7   these brands offers products through Amazon that falsely designate KONA as the origin of the

8   coffee beans. And Amazon wrongfully profits on each sale.

9      **ANSWER**: KIHNKE admits that L&K has sold certain coffee products through

10  Amazon.com. KIHNKE denies that L&K's coffee products are deceptive, and further denies that

11  Amazon wrongfully profits on the sale of L&K coffee products. KIHNKE denies that consumers

12  were "tricked" into buying a $7 to $8 dollar pound of Magnum's Kona Blend instead of buying a

13  $35 to $50 dollar pound of plaintiffs' coffee. No consumer would reasonably believe that they

14  were purchasing $35 to $50 dollar coffee foe $7 or $8 dollars. KIHNKE denies L&K's coffee

15  products are deceptively labeled.  L&K does not sell any of the products described in this

16  complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny

17  the remaining allegations in Paragraph 124, and therefore denies the same.

18

19     125.   *WALMART*. Walmart sells a variety of deceptive coffee products, including but not

20  limited to the following: MCC, Copper Moon, Cameron's, Hawaiian Gold, Boyer's, Hawaiian

21  Isles, and Mulvadi. Walmart wrongfully profits on each sale.

22     **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

23  Paragraph 125, and therefore denies the same.

24

25     126.   *COSTCO*. Costco sells a variety of deceptive coffee products, including but not

26  limited to Magnum Exotics. Costco wrongfully profits on each sale.

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 73

1      **ANSWER**: KIHNKE admits that L&K has sold certain coffee products through Costco.

2   KIHNKE denies that L&K's coffee products are deceptive, and further denies that Costco

3   wrongfully profits on the sale of L&K coffee products. KIHNKE denies that consumers were

4   "tricked" into buying a $7 to $8 dollar pound of Magnum's Kona Blend instead of buying a $35

5   to $50 dollar pound of plaintiffs' coffee. No consumer would reasonably believe that they were

6   purchasing $35 to $50 dollar coffee foe $7 or $8 dollars. KIHNKE denies L&K's coffee products

7   are deceptively labeled.  L&K does not sell any of the products described in this complaint and

8   has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the remaining

9   allegations in Paragraph 126, and therefore denies the same.

10

11      127.   *BED BATH & BEYOND*. Bed Bath sells a variety of deceptive coffee products,

12   including but not limited to Copper Moon. Bed Bath wrongfully profits on each sale.

13      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

14   Paragraph 127, and therefore denies the same.

15

16      128.   *ALBERTSONS & SAFEWAY*. Albertsons and Safeway generally offer for sale the

17   same coffee products featuring Kona on the label. They both sell a variety of deceptive coffee

18   products, including but not limited to Hawaiian Isles. Safeway also sells deceptive coffee products

19   from Cameron's. Albertsons and Safeway wrongfully profit on each sale.

20      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

21   Paragraph 128, and therefore denies the same.

22

23      129.   *MNS LTD. ("ABC")*. ABC sells a variety of deceptive coffee products, including

24   but not limited to the following: Mulvadi, MCC and Hawaiian Isles. ABC wrongfully profits on

25   each sale.

26      **ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in

27   Paragraph 129, and therefore denies the same.

**HATTON, PETRIE & STACKLER APC**
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

130.     *TJX.* Through its retail stores branded T.J. Maxx, TJX sells a variety of deceptive coffee products, including but not limited to the following: Hawaiian Gold, Magnum Exotics, and Kona Roasting Co. TJX wrongfully profits on each sale.

**ANSWER**: KIHNKE admits that L&K has sold certain coffee products through TJX. KIHNKE denies that L&K's coffee products are deceptive, and further denies that TJX wrongfully profits on the sale of L&K coffee products. KIHNKE denies that consumers were "tricked" into buying a $7 to $8 dollar pound of Magnum's Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or $8 dollars. KIHNKE denies L&K's coffee products are deceptively labeled.  L&K does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 130, and therefore denies the same.

131.     *MARSHALLS OF MA.* Through its retail stores branded Marshalls, Marshalls of MA sells a variety of deceptive coffee products, including but not limited to the following: Hawaiian Gold, Magnum Exotics, and Kona Roasting Co. Marshalls of MA wrongfully profits on each sale.

**ANSWER**: KIHNKE admits that L&K has sold certain coffee products through Marshalls. KIHNKE denies that L&K's coffee products are deceptive, and further denies that Marshalls wrongfully profits on the sale of L&K coffee products. KIHNKE denies that consumers were "tricked" into buying a $7 to $8 dollar pound of Magnum's Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or $8 dollars. KIHNKE denies L&K's coffee products are deceptively labeled.  L&K does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient information to admit or deny the remaining allegations in Paragraph 131, and therefore denies the same.

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

*132.*   *SPROUTS*. Sprouts sells a variety of deceptive coffee products, including but not limited to Cameron's. Sprouts wrongfully profits on each sale.

**ANSWER**: KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 132, and therefore denies the same.


**CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, AND**
**UNFAIR COMPETITION UNDER LANHAM ACT §43(A)**
**(15 U.S.C. §1125(A))**

133.   Plaintiffs hereby incorporate by reference the allegations of the foregoing paragraphs as though fully set forth herein.

**ANSWER**: KIHNKE incorporates by reference each of the foregoing paragraphs, including the admissions and denials therein, as though fully set forth herein.


134.   Section 43(a) of the Lanham Act provides in pertinent part: "Any person, who, on or in connection with any goods or services, or any container of goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. §1125(a)(1)(A)&(B).

**ANSWER**: The allegations in Paragraph 134 are legal conclusions not requiring a response.  To the extent that a response is required, KIHNKE denies these allegations.  L&K does not sell any of the products described in this complaint and has not sold any since 2019.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 76

**HATTON, PETRIE & STACKLER APC**
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

135.     Plaintiffs and the Class, comprised entirely of farmers of authentic Kona coffee, have a reasonable and genuine interest to be protected against the Defendants' false designation of origin and sale of coffee products fraudulently labeled as Kona.

**ANSWER**: KIHNKE denies the allegations in Paragraph 135.

136.     In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1), Defendants have used, continue to use and/or profit from the use of the Kona name as a false designation of origin.

**ANSWER**: KIHNKE denies the allegations in Paragraph 136 to the extent they relate to L&K coffee products. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 136 to the extent they relate to other accused coffee products, and therefore denies the same.

137.     In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A), Defendants' false designation of origin for the coffee products they manufacture, distribute and/or sell in commerce is likely to cause consumer confusion and mistaken purchases, and is likely to deceive consumers as to the origin of the coffee products manufactured, distributed and/or sold by Defendants.

**ANSWER**: KIHNKE denies the allegations in Paragraph 137 to the extent they relate to L&K coffee products.  KIHNKE denies that L&K's coffee products are deceptive. KIHNKE denies that consumers were "tricked" into buying a $7 to $8 dollar pound of Magnum's Kona Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No consumer would reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or $8 dollars. KIHNKE denies L&K's coffee products are deceptively labeled.  L&K does not sell any of the products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1   information to admit or deny the allegations in Paragraph 137 to the extent they relate to other

2   accused coffee products, and therefore denies the same.

3

4   138.   In violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B),

5   Defendants have used in commerce descriptions that falsely and/or misleadingly designate Kona

6   as the origin of the coffee products, when most of the coffee beans contained in the coffee products

7   were sourced from other regions of the world.

8   **ANSWER**: KIHNKE denies the allegations in Paragraph 138 to the extent they relate to

9   L&K coffee products.  KIHNKE denies that L&K's coffee products are deceptive. KIHNKE

10  denies that consumers were "tricked" into buying a $7 to $8 dollar pound of Magnum's Kona

11  Blend instead of buying a $35 to $50 dollar pound of plaintiffs' coffee. No consumer would

12  reasonably believe that they were purchasing $35 to $50 dollar coffee foe $7 or $8 dollars.

13  KIHNKE denies L&K's coffee products are deceptively labeled.  L&K does not sell any of the

14  products described in this complaint and has not sold any since 2019.  KIHNKE lacks sufficient

15  information to admit or deny the remaining allegations in Paragraph 138 to the extent they relate

16  to other accused coffee products, and therefore denies the same.

17

18  139.   By marketing and selling coffee products that falsely designate Kona as the origin

19  of coffee beans that are of inferior quality, Defendants are damaging the reputation and goodwill

20  of the Kona name, as well as the market value of authentic Kona coffee, to the detriment of

21  Plaintiffs and the Class.

22  **ANSWER**: KIHNKE denies the allegations in Paragraph 139 to the extent they relate to

23  L&K coffee products. There is and never will be credible evidence that L&K or KIHNKE did

24  anything that had an impact on Kona coffee prices, or the reputation or goodwill of the "Kona

25  name," in which no plaintiff or class member has a legally cognizable ownership or proprietary

26  interest. L&K does not sell any of the products described in this complaint and has not sold any

27  since 2019. KIHNKE lacks sufficient information to admit or deny the remaining allegations in

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

Paragraph 139 to the extent they relate to other accused coffee products, and therefore denies the same.

140.    Plaintiffs and the Class are comprised of farmers of authentic Kona coffee who have been and continue to be damaged by Defendants' violations of the Lanham Act, and are therefore entitled to equitable relief, including a permanent injunction, and damages in an amount to be proven at trial. As a component of damages to be awarded, Plaintiffs and the Class request a substantial award to finance a national corrective advertising campaign to help remedy the harm that Defendants have caused to the goodwill and reputation of the Kona name.

**ANSWER**: KIHNKE denies the allegations in Paragraph 140 to the extent they relate to Plaintiffs' alleged damages arising out of KIHNKE's alleged acts or omissions, or Plaintiffs' alleged entitlement to relief based on any such acts or omissions. L&K does not sell any of the products described in this complaint and has not sold any since 2019. KIHNKE lacks sufficient information to admit or deny the other allegations in Paragraph 139, and therefore denies the same.

141.    Because Defendants are sophisticated participants in the coffee industry, with designated coffee buyers and designated coffee product managers, they have full knowledge of exactly what they are buying and what they are selling. Given the egregious nature of the Defendants' false designation of Kona as the source of their commodity coffee beans, Plaintiffs and the Class seek an award of three times actual damages.

**ANSWER**: Whether or not Defendants are sophisticated participants in the coffee industry is a statement of subjective opinion, not a factual allegation capable of admission or denial. To the extent a response is required, KIHNKE denies the same. KIHNKE admits that L&K has employees whose job functions include sourcing coffee beans for its coffee products. KIHNKE denies the remaining allegations in Paragraph 141 to the extent they pertain to L&K coffee products. L&K does not sell any of the products described in this complaint and has not sold any since 2019.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 79

1    KIHNKE lacks sufficient information to admit or deny the allegations in Paragraph 140 as related

2    to other defendants, and therefore denies the same.

3

4        142.    Pursuant to 15 U.S.C. §1117(a), Plaintiffs and the Class are entitled to recover

5    Defendants' profits earned through the sale of various coffee products that falsely designate Kona

6    as the origin of the coffee beans.

7        **ANSWER**: KIHNKE denies the allegations in Paragraph 142 to the extent they relate to

8    L&K coffee products. KIHNKE lacks sufficient information to admit or deny the allegations in

9    Paragraph 142 to the extent they relate to other accused coffee products, and therefore denies the

10   same.

11

12       143.    As a direct and proximate result of their wrongful conduct as alleged above,

13   Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiffs

14   and the Class, and to their business, reputation, and goodwill, for which there is no adequate

15   remedy at law. As such, Plaintiffs and the Class are entitled to an injunction under 15 U.S.C. §1116

16   permanently restraining Defendants, both individually and collectively, from using the name

17   "Kona" in their labels, packaging, promotions, marketing, or advertising of any Kona product that

18   they roast, manufacture, package, or label.

19       **ANSWER**: KIHNKE denies the allegations in Paragraph 143 to the extent they relate to

20   L&K coffee products. L&K does not sell any of the products described in this complaint and has

21   not sold any since 2019.  KIHNKE lacks sufficient information to otherwise admit or deny the

22   remaining allegations in Paragraph 143, and therefore denies the same.

23

24       144.    Pursuant to 15 U.S.C.§ 1117, Plaintiffs and the Class seek to recover the cost of

25   this action, and, because this case qualifies as exceptional, their reasonable attorneys' fees.

26       **ANSWER**: KIHNKE admits that the Plaintiffs seek the relief referenced in Paragraph 144,

27   but denies Plaintiffs' entitlement thereto as against KIHNKE.  KIHNKE otherwise lacks sufficient

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 80

1  information to admit or deny the remaining allegations in Paragraph 144, and therefore denies the

2  same.

3

4  145.    Plaintiffs and the Class seek to hold Defendants jointly and severally liable for the

5  lost profits of Plaintiffs and the Class and for corrective advertising necessary to restore the

6  reputation and goodwill of the Kona name.

7  **ANSWER**: KIHNKE admits that the Plaintiffs seek the relief referenced in Paragraph 145,

8  but denies Plaintiffs' entitlement thereto as against KIHNKE.  Further, KIHNKE does not have

9  joint liability with all other defendants named herein.  KIHNKE otherwise lacks sufficient

10  information to admit or deny the remaining allegations in Paragraph 145, and therefore denies the

11  same.

12

13  ## IX. PRAYER FOR RELIEF

14  WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants

15  and other relief as follows:

16  146.    Defendants and its agents, officers, employees, representatives, successors, assigns,

17  attorneys and all other persons acting for, with, by and through, or under authority from the

18  Defendants, and each of them, be permanently enjoined from using the term "Kona" in describing,

19  labeling, or packaging Defendants' own coffee products, or advertising, promoting, marketing or

20  selling the same.

21  147.    Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by falsely designating

22  their coffee products as originating from Kona, when in fact such goods contain no significant

23  amount of Kona coffee beans, if any.

24  148.    Pursuant to 15 U.S.C. §1117, that Defendants be held jointly and severally liable

25  for all damages suffered by Plaintiffs and the Class resulting from the acts alleged herein.

26  149.    That as a result of Defendants' deliberate, willful, and intentional conduct in

27  violation of 15 U.S.C. § 1125(a), such damages be trebled.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 81

150.    Pursuant to 15 U.S.C. §1117, that Defendants be compelled to account for, and to disgorge, any and all of the profits derived by Defendants through illegal acts complained of herein.

151.    For an award of funds sufficient to carry out a national corrective advertising campaign to mitigate the reputational harm Defendants' wrongful conduct has caused, for which the Defendants shall be held jointly and severally liable.

152.    That Defendants be ordered, pursuant to 15 U.S.C. §1118, to deliver up for destruction all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material, and products, or the like in possession, custody or under the control of Defendants that are determined to violate Section 43 of the Lanham Act.

153.    That the Court declare this to be an exceptional case and award full costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

154.    That the Court grant prejudgment and post-judgment interest.

155.    That the Court grant any other remedy to which Plaintiffs and the Class may be entitled as provided by law or equity.

156.    For such other and further relief, including costs and attorneys' fees, as allowed by law and as the Court deems just and equitable.

**ANSWER**:   Paragraphs 146-156 of the Third Amended Complaint contain Plaintiffs' prayer for relief to which no response is required. If a response is required, KIHNKE denies that plaintiffs are entitled to any relief whatsoever in this action.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

**ANSWER**:  KIHNKE demands a jury trial as well.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 82

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

## AFFIRMATIVE DEFENSES

Below are KIHNKE's affirmative defenses. By setting forth these affirmative defenses, KIHNKE does not assume any burden of proof as to any fact issue or other element of any cause of action that properly belongs to Plaintiffs.

1.      The Complaint and its purported causes of action fail to state a claim upon which relief can be granted and the complaint is uncertain.

2.      Plaintiffs' causes of action are barred, in whole or in part, because Defendants acted reasonably and in good faith at all times based on all relevant facts and circumstances known by Defendants at the time that Defendants acted.

3.      Plaintiffs' claims are barred by the doctrines of waiver, acquiescence, and/or estoppel and/or release of claims.

4.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches and/or any applicable statute(s) of limitations or repose and/or the doctrine of abandonment.

5.      Plaintiffs' claims are barred, in whole or in part, because they lack a good faith basis to allege necessary elements of their claims.

6.      Plaintiffs' claims are barred, in whole or in part, as a sanction for knowingly making false allegations in their Complaint, failing to conduct a reasonable inquiry as to the veracity of the allegations Plaintiffs represent as true in their Complaint, and/or knowingly making allegations in their Complaint that, while literally true, are intended to mislead to the Court.

7.      Plaintiffs' claims are barred, in whole or in part, because they purport to rely on scientific testing that is wholly unnecessary for any Lanham Act or other claim asserted and which is included only to mislead the Court.

8.      Plaintiffs' claims are barred, in whole or in part, because they are misusing the Lanham Act to try to recover attorneys' fees to circumvent class action law.

9.      Plaintiff's claims are barred, in whole or in part, because they are against the work and intention of the Hawaii legislature and other governmental entities who specifically regulate

coffee from Hawaii and who have been working in the field of coffee and labeling regulation for many years.

10.     Plaintiffs' claims are barred, in whole or in part, because they fail to establish any likelihood of confusion, deception, or mistake on the part of a reasonable consumer and defendant did not lie or mislead and used the truth at all relevant times.

11.     Plaintiffs' claims are barred, in whole or in part, because all or part of the damages they allege were caused by the acts or omissions of themselves or other persons or entities for whose conduct Defendants are not legally responsible.

12.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to prove and cannot prove any actual damages.

13.     Plaintiffs' claims are barred, in whole or in part, because they failed to mitigate damages and to give defendants notice and an opportunity to cure any alleged violations.

14.     Plaintiffs' claims are barred, in whole or in part, because there was no willful conduct on the part of Defendants and, therefore, Plaintiffs cannot recover Defendants' profits.

15.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of fair use.

16.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

17.     Plaintiffs' claims are barred, in whole or in part, by the fact that Defendants were not the proximate cause of their damages, if any, or there were supervening or intervening causes.

18.     Plaintiffs' claims for equitable relief, if any, fail because Plaintiffs have an adequate remedy at law.

19.     Plaintiffs' claims fail, in whole or in part, because Defendants complied with applicable federal and state statutes and regulations.

20.     Plaintiffs' claims fail, in whole or in part, because Defendants relied on guidance from relevant government agencies.

21.     Plaintiffs' claims, and those claims Plaintiffs purport to bring on behalf of members of the putative class, are barred in whole or in part because Plaintiffs and the putative class

HATTON, PETRIE & STACKLER APC
12 JOURNEY, SUITE 255
ALISO VIEJO, CA 92656
949.474.4222

1 members lack standing to assert the alleged claims and this court lacks subject and personal matter

2 jurisdiction over such claims and lacks venue as well.

3      22.    The Court lacks personal jurisdiction over any claims on behalf of absent members

4 of the putative class, as well as personal jurisdiction over Kevin Kihnke and L&K Coffee Co. in

5 this matter and lacks proper venue over such claims.

6      23.    Plaintiffs' claims fail, in whole or in part, because their product labels and

7 marketing are expressive works, and thus entitled to freedom-of-speech protections under the First

8 Amendment of the U.S. Constitution, under the Washington State Constitution, and under other

9 applicable statutory or common law protections of speech or expressive works.  Plaintiffs' claims

10 are barred to the extent such claims infringe on Defendants' right to free speech.

11      24.    The Complaint fails, in whole or in part, because it fails to set forth plausible

12 allegations that satisfy the prerequisites for class certification, including without limitation because

13 the claims by Plaintiffs are neither common nor typical of the claims, if any, by members of the

14 putative class, because the named Plaintiffs are not adequate class representatives, because the

15 putative class is not definite and ascertainable, because interests of certain members of the putative

16 class are in conflict with the interests of other members of the putative class, because individual

17 issues predominate, and because a class action is not the superior way to litigate Plaintiffs' and/or

18 the putative class' claims, if any.

19      25.    L&K alleges as a result of the acts, conduct, or omissions of Plaintiffs or their

20 agents, the Complaint and each claim against KIHNKE presented therein is barred by the doctrine

21 of equitable estoppels and/or the doctrine of superior equities and/or plaintiffs' failure to do equity.

22      26.    KIHNKE alleges as a result of the acts, conduct, or omissions of Plaintiff or their

23 agents, the Complaint and each claim against KIHNKE presented therein is barred by the doctrine

24 of promissory estoppel.

25      27.    KIHNKE alleges that Plaintiffs voluntarily assumed the risk of any and all

26 conditions and damages alleged in the Complaint.

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 85

28.     KIHNKE alleges that because Plaintiffs presently have not suffered any cognizable harm or presently incurred any damages, there is no current case or controversy.  Plaintiffs' claims are therefore not ripe for adjudication since Plaintiffs have not suffered injury or damages cognizable under any State or Federal laws.

29.     KIHNKE alleges that the Complaint and each claim is barred by the doctrine of unjust enrichment.

30.     Plaintiffs have not alleged an adequate basis for the recovery of attorney's fees or costs and is neither entitled to such recovery, nor is any such recovery authorized by law.  Further the costs and fees sought are both unreasonable and unnecessary in nature.

31.     Plaintiffs cannot prove any facts showing that they relied to their detriment, reasonably or otherwise, on any matters stated in the operative Complaint or any information from KIHNKE.

32.     KIHNKE is not liable because the damages or injuries alleged in the Complaint were caused solely by the acts or omissions of one or more third parties and KIHNKE exercised due care with respect to all matters concerned and made no contracts or representations to Plaintiff.

33.     KIHNKE is not liable because the damages or injuries alleged in the Complaint were caused solely by the acts or omissions of one or more third parties and KIHNKE exercised due care with respect to all matters concerned and made no contracts or representations to Plaintiffs.  Further, KIHNKE is not a co-conspirator, aider and abettor, or otherwise in any relationship with any co-defendants herein that would warrant vicarious or joint liability with any defendant.

34.     The complaint is defective in that there has been a misjoinder and/or failure to join necessary parties and/or claims and/or claims have been impermissibly split or joined in this action such that a complete adjudication of this matter cannot be made and this matter must be dismissed. Further, there has been a misjoinder of defendants and/or a failure to join a party to this action under FRCP Rule 19.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 86

35.     This Court lacks personal or subject matter jurisdiction over the claims at issue herein and/or this is an improper venue for this proceeding.

36.     The complaint is barred based on a Plaintiff's consent or agreement to the matters that the Plaintiff now complains of.

37.     The Complaint and all relief sought therein is also barred by the doctrines of caveat emptor, the doctrine of the learned intermediary and/or purchaser, and by the doctrine of lack of justifiable reliance.

38.     That the Plaintiffs themselves did not exercise ordinary care, caution or prudence to avoid the circumstances described in said Complaint and the resulting damages, if any, by them sustained; and that said circumstances and the resulting damages, if any, by them sustained were proximately caused and contributed to by the fault, carelessness and negligence of said Plaintiffs (i.e., the doctrines of comparative and contributory fault/negligence).

39.     This answering Defendant acted in good faith and did not directly or indirectly perform any acts whatsoever which would constitute a violation of any state or federal rights possessed by the Plaintiffs. This answering Defendant acted in good faith and did not directly or indirectly perform any acts whatsoever which would constitute a breach of any duty owed to the Plaintiffs.  Furthermore, defendant has acted at all relevant times in good faith in conformity with the law and the spirit of the law such that there can be no liability on the part of the Defendant.

40.     The Complaint, and each and every cause of action alleged therein, is barred on the grounds that Plaintiffs lack standing individually to make the claims presented in their Complaint; they also lack standing to form a class of plaintiffs; or to be a representative(s) of a class for purposes of pursuing a class action. Nor do they qualify as class representatives because their claims, if any, are not typical of the class's claims as described in the Complaint.  Further, the lack standing to bring the claims they bring and/or are not the real party in interest.

41.     This answering Defendant is informed and believes, and based thereon alleges, that if any defects or inadequacies exist or existed, which this Defendant denies, Complainants failed to timely notify this answering Defendant of such conditions and failed to give this answering

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 87

1   Defendant timely opportunity to secure such conditions.  This conduct by Complainants bars them

2   from any relief from this answering Defendant herein.  This answering Defendant is informed and

3   believes and upon such information and belief alleges, that Complainant's action is barred by its

4   failure to provide Defendant with written notice within a reasonable amount of time.

5       42.     This answering Defendant is informed and believes, and on that basis alleges, that

6   it is entitled to a setoff according to proof and/or otherwise (set-off/off-set/recoupment).

7       43.     This answering Defendant is informed and believes and upon such information and

8   belief alleges, that Complainants were reimbursed for a portion of the claimed damages and/or

9   restitution by a third party and have subrogated to that third-party a portion of the damages and/or

10  restitution claimed herein. Moreover, the purported claims and causes of action contained in the

11  Complaint require for their full, final and complete resolution and adjudication the presence of

12  additional necessary and/or indispensable parties that are not participating in this action. By virtue

13  of the aforementioned subrogation and/or Complainant's failure to name indispensable parties,

14  Complainant has violated the rule against splitting causes of action and/or prejudiced this

15  answering Defendant, thus barring Complainant's recovery herein.

16      44.     The Complaint and the theories presented therein are barred by the business

17  judgment rule and/or any other similar rule and/or regime and/or doctrine.

18      45.     Plaintiffs' claims are equitably barred because L&K Coffee Co. promptly stopped

19  using the word Kona on its products in response to plaintiffs' first complaint to L&K about the use

20  of the word Kona on its labels and packaging.

21      46.     The lawsuits is bared by the doctrine of res judicata or collateral estoppel or law of

22  the case.

23      47.     The lawsuits is barred by the doctrine of competitor's privilege and the doctrine of

24  free speech and expression.

25      48.     The lawsuits is barred by the doctrine of election of remedies.

26      49.     The lawsuit sets forth a moot or unripe or hypothetical or abstract question or issue

27  and asks for an advisory opinion.

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 88

50. Plaintiffs' claims are barred, in whole or in part, to the extent that joint and several liability is an inappropriate or inapplicable remedy under the Lanham Act.

51.     Defendants reserve the right to amend or supplement any affirmative defenses.

## KIHNKE'S PRAYER FOR RELIEF

WHEREFORE, KIHNKE requests entry of judgment in his favor and against Plaintiffs' as follows:

1.     Dismissing Plaintiffs' Complaint in its entirety, with prejudice and on the merits;

2.     Denying Plaintiffs' requests for damages, costs, attorneys' fees, statutory penalties, equitable relief, and all other relief Plaintiffs seek;

3.     Awarding Defendants their costs, expenses, disbursements, and reasonable attorneys' fees as and if permitted by law; and

4.     Awarding Defendants such other further relief that the Court deems just and equitable.

// // //

// // //

// // //

// // //

// // //

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 89

**DEMAND FOR JURY TRIAL**

KIHNKE respectfully demands a trial by jury on all claims and issues so triable.

DATED this 1st day of March, 2022.

HATTON, PETRIE & STACKLER APC

*Attorneys for Defendant L&K Coffee Co. LLC*
*d/b/a Magnum Coffee Roastery and Kevin*
*Kihnke*
By s/ GREGORY M. HATTON
Gregory M. Hatton, CA Bar No. 119810
12 Journey, Suite 255
Aliso Viejo, CA 92656
(949) 474-4222
g_hatton@hattonpetrie.com

ATKINS INTELLECTUAL PROPERTY,
PLLC
*Attorneys for Defendant L&K Coffee Co. LLC*
*d/b/a Magnum Coffee Roastery and Kevin*
*Kihnke*
By s/ MICHAEL G. ATKINS
Michael G. Atkins
113 Cherry Street #18483
Seattle, WA 98104-2205
mike@atkinsip.com

1

### CERTIFICATE OF SERVICE

2

3      I, John A. McMahon, affirm and state that I am employed by Hatton, Petrie & Stackler
APC, in Orange County, in the State of California.  I am over the age of 18 and not a party to the
within action.  My business address is: 12 Journey, Ste 255, Aliso Viejo, CA 92656.  On this
4      day, I caused the foregoing to be served on the parties by the Court's CM/ECF filing system.

5      I declare under penalty of perjury that the foregoing is true and correct, to the best of my
knowledge.
6

7      Dated this 1st day of March 2022, at Aliso Viejo, California.

8                                          HATTON, PETRIE & STACKLER, APC
By: */s/ John A. McMahon*
9                                          John A. McMahon, Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

KIHNKE'S ANSWER TO 3RD AMENDED COMPLAINT - 91