IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE CORKER d/b/a RANCHO ALOHA; COLEHOUR BONDERA and MELANIE BONDERA, husband and wife d/b/a KANALANI OHANA FARM; ROBERT SMITH and CECELIA SMITH, husband and wife d/b/a SMITHFARMS, and SMITHFARMS, LLC on behalf of themselves and others similarly situated, | CASE NO. 2:19-CV-00290-RSL |
| Plaintiffs, | **MOTION FOR FINAL APPROVAL OF THREE CLASS ACTION SETTLEMENTS** |
| v. | |
| COSTCO WHOLESALE CORPORATION, a Washington corporation; AMAZON.COM, INC., a Delaware corporation; HAWAIIAN ISLES KONA COFFEE, LTD., LLC, a Hawaiian limited liability company; COST PLUS/WORLD MARKET, a subsidiary of BED BATH & BEYOND, a New York corporation; BCC ASSETS, LLC d/b/a BOYER'S COFFEE COMPANY, INC., a Colorado corporation; L&K COFFEE CO. LLC, a Michigan limited liability company; MULVADI CORPORATION, a Hawaii corporation; COPPER MOON COFFEE, LLC, an Indiana limited liability company; GOLD COFFEE ROASTERS, INC., a Delaware corporation; CAMERON'S COFFEE AND DISTRIBUTION COMPANY, a Minnesota corporation; PACIFIC COFFEE, INC., a Hawaii corporation; THE KROGER CO., an Ohio corporation; WALMART INC., a Delaware corporation; BED BATH & BEYOND INC., a New York corporation; ALBERTSONS COMPANIES INC., a Delaware Corporation; SAFEWAY INC., a Delaware Corporation; MNS LTD., a Hawaii Corporation; THE TJX COMPANIES d/b/a T.J. MAXX, a Delaware Corporation; MARSHALLS OF MA, INC. d/b/a MARSHALLS, a Massachusetts corporation; SPROUTS FARMERS MARKET, INC. a Delaware corporation; COSTA RICAN GOLD COFFEE CO., INC., a Florida Corporation; and KEVIN KIHNKE, an individual, | The Honorable Robert S. Lasnik  Noted for consideration: June 3, 2022 |
| Defendants. | |

MOTION FOR FINAL APPROVAL
Case No. 2:19-CV-00290-RSL

2412950.1

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

**TABLE OF CONTENTS**

2

**Page**

3

I.     Introduction ........................................................................................................2

II.    Procedural History.............................................................................................2

III.   Summary of the Settlements.............................................................................3

IV.   The Class Notice Plan Was Successfully Implemented. ...................................5

V.    Final Approval is Warranted. ............................................................................5

      A.     Settlement Approval Process........................................................................5

      B.     The Settlements Are Fair, Reasonable, and Adequate. ..........................................6

            1.     Rule 23(e)(2)(A): Class Counsel and the Settlement Class Representatives Have and Will Continue to Zealously Represent the Class............................................................................................6

            2.     Rule 23(e)(2)(B): The Settlements Are the Result of Arms-Length, Informed Negotiations. ..........................................................6

            3.     Rule 23(e)(2)(C): The Settlements Provide for Substantial Compensation. ...........................................................................7

                   a.     The Settlements deliver excellent monetary and injunctive relief.........................................................................................8

                   b.     The costs, risks, and delay of trial and appeal weigh in favor of final approval. ...................................................................8

                   c.     The method of distributing relief is simple and fair. ....................9

                   d.     The request for attorneys' fees is reasonable and supported. .......10

                   e.     There are no agreements bearing on final approval. ...................10

            4.     Rule 23(e)(2)(D): The Settlement Treats All Class Members Equitably Relative to One Another. ...................................................10

            5.     The Settlement Satisfies the Ninth Circuit's Additional Factors for Final Approval...........................................................................11

      C.     The Settlement Class Should be Finally Certified. ...............................................12

VI.   Conclusion......................................................................................................12

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

2412950.1

-i-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

## TABLE OF AUTHORITIES

2
**Page**

3

**Cases**

4
*Chun-Hoon v. McKee Foods Corp.*
5
    716 F. Supp. 2d 848 (N.D. Cal. 2010)...................................................................12
6
*Free Range Content, Inc. v. Google, LLC,*
    No. 14-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ...................................7
7
*Gaudin v. Saxon Mort. Servs., Inc.*
    No. 11-1663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015)...........................................12
8
*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .........................................................................................12
9
*Hefler v. Wells Fargo & Company,*
    No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...............................9
10
*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018) ......................................................................................7
11
*In re Bluetooth Headset Prods. Liab. Litig.,*
12
    654 F.3d 935 (9th Cir. 2011) ...........................................................................................11
13
*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .............................................................................................7
14
*In re Mercury Interactive Corp. Sec. Litig.*
    618 F.3d 988 (9th Cir. 2010) ...........................................................................................10
15
*Sandoval v. Tharaldson Emp. Mgmt., Inc.,*
16
    No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010)...............................................7
17
*Thomas v. MagnaChip Semiconductor Corp.,*
    No. 14-01160, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017)..........................................10

**Rules**
18
Fed. R. Civ. P. 23(a) ...............................................................................................................12
19
Fed. R. Civ. P. 23(b)(3) ...........................................................................................................12
20
Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................................6
21
Fed. R. Civ. P. 23(e)(1) .............................................................................................................6
22
Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................................5
23
Fed. R. Civ. P. 23(e)(2) ....................................................................................................2, 5, 6
24
Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................................6

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................................6
25
Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................................................10

Fed. R. Civ. P. 23(e)(2)(D)........................................................................................................11
26

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3
Fed. R. Civ. P. 23(e)(5) ................................................................................6

4
Fed. R. Civ. P. 23(f) .....................................................................................8

**Treatises**

5

6
Joseph M. McLaughlin, *McLaughlin on Class Actions* (8th ed. 2011)...........................................7

William B. Rubenstein, et al., Newberg on Class Actions (5th ed. 2012) ....................................7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    I.       **Introduction**

2            This motion for final approval of three additional class settlements – with The Kroger Co.

3    ("Kroger"), with Safeway Inc. and Albertsons Companies Inc. ("Safeway/Albertsons"), and with

4    Hawaiian Isles Coffee Co. Ltd. ("HIKC") – is the latest positive development in Plaintiffs' and

5    Class Counsel's efforts to bring meaningful and immediate relief to the class of Kona coffee

6    farmers and to bring this litigation to a just and efficient resolution. These latest settlements,

7    which bring the total amount recovered for the class to over $15.2 million, like the first set of

8    settlements approved and implemented last year, elicited **no objections** and **no opt-outs**. This is

9    especially noteworthy because class members had, by the time they received notice of these

10   settlements, received their checks from the first set of settlements, such that class members had a

11   concrete awareness of this case and its progress.

12           This Court recently granted preliminary approval to these settlements, finding that it was

13   likely to be able to approve the proposed settlements applying the criteria set out in Rule

14   23(e)(2), and to certify the class for purposes of settlement, and directed notice to issue to the

15   class. *See* Dkt. 604. Following the same process that it carried out last year with respect to prior

16   settlements, the Settlement Administrator then effectuated the notice plan approved by this

17   Court, including both direct notice and publication in the *West Hawaii Daily*, and it updated the

18   settlement website and toll-free number for class members. The opt-out and objection deadline of

19   May 2, 2022 passed with *zero* opt-outs and objections.

20           Plaintiffs now seek final approval, so that the benefits promised in these settlements can

21   begin to flow to class members. As set out below, the settlements represent an excellent result for

22   the Settlement Class and satisfy all criteria for final approval under Ninth Circuit law.

23   II.      **Procedural History**

24           Class Counsel detailed the procedural history of this litigation most recently in the

25   motion for preliminary approval of these settlements. *See* Dkt. 602. That motion, and the

26

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

2412950.1

-2-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   declarations that accompanied it, recount this case's specific challenges, the hurdles that

2   Plaintiffs have cleared at each stage of the case, and the hard-fought history of the litigation

3   through discovery and class certification. That work made possible and led to the arms-length

4   negotiations, including with the assistance of a mediator, that produced these settlements.

5   Plaintiffs reference and incorporate that motion and declarations herein.

6   **III.     Summary of the Settlements**

7          Plaintiffs' motion for preliminary approval also summarized the terms of each of the

8   settlements that this Court preliminarily approved. *See* Dkt. 602. Plaintiffs provide a brief

9   summary of each settlement again for the sake of completeness.[1]

10         Like the previous settlements granted final approval by this Court, these settlements

11  deliver substantial monetary relief to the Settlement Class, and include injunctive terms that will

12  continue to change the marketplace: each of the settlements includes changes in the labeling of

13  coffee described as containing coffee from the Kona region, thus preventing further economic

14  harm to the growers of legitimate Kona coffee. The HIKC settlement goes further: the company

15  agreed to change its name to remove the word "Kona" altogether.

16         The Kroger settlement includes both monetary and injunctive terms.  First, Kroger will

17  pay $1,350,000.  It will also now be subject to labeling obligations for the coffee that it sells

18  either under its own name or any brand name that it wholly owns and that is labeled as "Kona

19  coffee" or "Kona Blend."  Those products will state on the front of the product's label the

20  minimum percentage (or the percentage) of Kona coffee beans contained in the product using the

21  same font type and same (or similar) color as the word Kona, and no smaller than one-half (1/2)

22  the size as the word "Kona" appears, on the front of the package.  Dkt. 603-1 ¶ 13.  The

23  injunctive terms of Kroger's settlement compound the benefits of the agreements of the

24  previously settling defendants that increase and improve the information found on Kona-labeled

25

26  _____

[1] The settlement agreements themselves were attached to the preliminary approval motion at Docket 603-1, 603-2, and 603-3.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    products in the marketplace.

2          The Safeway/Albertsons agreement includes injunctive terms that also reinforce the

3    labeling changes that numerous settling suppliers and retailers have already agreed to and have

4    already begun to implement.  Safeway/Albertsons agrees to sell coffee labeled as "Kona" or

5    "Kona blend" only if certain labeling standards are met, and will require its vendors to certify

6    that its Kona-labeled products will meet such standards, ensuring that the labeling information is

7    clear and conspicuous.  *See* Dkt. 603-2 ¶ 13. It agrees that "any coffee product labeled as 'Kona

8    coffee' or 'Kona Blend coffee' will state on the front of the product's label the minimum

9    percentage (or percentage) of Kona coffee beans the supplier of the products states is contained

10   in the Kona Coffee Product using the same font type and same (or similar) color as the word

11   Kona and no smaller than one-half (1/2) the size as the word 'Kona' appears, on the front of the

12   package." *Id.*

13         HIKC will pay $800,000.[2] The non-monetary terms of the HIKC settlement are

14   extraordinary. First, it will change its company name to remove the word "Kona."  Exh. 3 ¶

15   12(c). Second, it will, like previously settling defendants, alter its labeling of Kona-labeled

16   coffee so that such products "will accurately and unambiguously state on the front label of the

17   product the minimum percentage of authentic Kona coffee beans contained in the product using

18   the same font type and same (or similar) color as the word Kona, and no smaller than one-half

19   (1/2) the size as the word "Kona" appears, on the front of the package."  Dkt. 603-3 ¶ 12(a).  The

20   agreements clarifies, "Only Kona coffee certified and graded by the Hawaii Department of

21   Agriculture as 100% Kona shall be considered authentic Kona coffee."  *Id.*  HIKC also agrees

22   "to use at least the percentage of Kona coffee required by Hawaiian law, or as may be required

23   by Hawaii law in the future, in any product labeled as "'Kona' or "'Kona Blend.'" *Id.* ¶ 12(b).

24

25   [2] HIKC is required to pay this amount in three installments. After meeting its first deadline, HIKC did not make its second payment deadline of May 2 (the deadline was April 30, a Saturday). Class Counsel will be pursuing the

26   company and its owners using every tool available to them to ensure that the class is paid what HIKC agreed it would pay, beginning with forthcoming motion practice in this Court, which has jurisdiction to enforce the settlement.

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    Finally, it will send a special communication to its subscriber list, explaining the difference

2    between 100 percent Kona coffee and Kona blend coffees, and that HIKC's current offerings are

3    Kona blends and not 100 percent Kona coffee.  *Id.* ¶ 13.

4    **IV.    The Class Notice Plan Was Successfully Implemented.**

5          This Court's Preliminary Approval Order directed that the parties effectuate a multi-

6    faceted notice plan, including direct notice to Settlement Class Members, and the establishment

7    of a dedicated settlement website, post office box, and toll-free telephone number. The parties, in

8    consultation with the Settlement Administrator, have carried out the notice plan.  Consistent with

9    the Court's orders, the Settlement Administrator will provide a declaration on May 20, 2022 (two

10   weeks before the final approval hearing) confirming its implementation of the notice plan.  That

11   affidavit will also report on whether any of the more than 700 Settlement Class Members who

12   were sent direct notice have elected to opt out of or object to the settlements.  To date, not a

13   single opt-out or objection has been received.  Following final approval, the Settlement

14   Administrator will effectuate the claims and payment process to class members, which is

15   described in more detail below, and which resembles and builds on the successful notice and

16   claims campaign carried out in connection with previous settlements in this case.

17   **V.    Final Approval is Warranted.**

18          **A.    Settlement Approval Process**

19          Federal Rule of Civil Procedure 23(e) provides that class actions "may be settled … only

20   with the court's approval." Rule 23(e) governs a district court's analysis of the fairness of a

21   proposed class action settlement and creates a multistep process for approval. This Court has

22   already taken the first two steps. First, it has determined that it is likely to (i) approve the

23   proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in

24   Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing. *See* Fed. R.

25   Civ. P. 23(e)(1)(B). Second, it has directed notice to the class, approving notice that describes the

26   terms of the proposed settlement and the definition of the proposed class, and explains how class

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

members can object to or opt out of the proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). Plaintiffs now ask that this Court take the third and final step, which is to grant final approval of the proposed settlements. *See* Fed. R. Civ. P. 23(e)(2).

### B.     The Settlements Are Fair, Reasonable, and Adequate.

All of the factors set forth in Fed. R. Civ. P. 23(e)(2) weigh strongly in favor of final approval. In granting preliminary approval, the Court already observed that the proposed Settlement appeared "fair, reasonable, and adequate," so that notice was appropriate.  Dkt. 604 ¶ 4.  The Court can and should reach the same conclusion here at final approval.

#### 1.     Rule 23(e)(2)(A): Class Counsel and the Settlement Class Representatives Have and Will Continue to Zealously Represent the Class.

The Court's preliminary determination, under Rule 23(e)(2)(A), that Class Counsel and the Plaintiffs have zealously advanced the interests of the Plaintiffs and the proposed Settlement Class, was correct.  As the motion for preliminary approval detailed, Class Counsel and Plaintiffs have worked tirelessly to advance this case to this point, from the extensive pre-filing investigation through challenges to the pleadings, intensive discovery against over twenty defendants and from numerous third parties, and through the negotiations of these settlements. The Plaintiffs, too, have devoted countless hours to representing the class, even as they have continued to operate their small coffee farms through the pandemic and beyond. Their commitment to this case has not wavered through the implementation of the first set of settlements, and as this litigation continues against the non-settling defendants.

#### 2.     Rule 23(e)(2)(B): The Settlements Are the Result of Arms-Length, Informed Negotiations.

Rule 23(e)(2)(B) directs the Court to determine if a class action settlement was negotiated at arm's-length.  Here, too, the Court's preliminary determination was correct.

First, as Plaintiffs explained, the involvement of experienced mediators in the negotiations creates a presumption of fairness. *See* Joseph M. McLaughlin, *McLaughlin on*

*Class Actions* (8th ed. 2011); *see also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Free Range Content, Inc. v. Google, LLC*, No. 14-02329, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) (holding that a "presumption of correctness" attaches where, as here, a "class settlement [was] reached in arm's-length negotiations between experienced capable counsel after meaningful discovery"). Judge Infante conducted an early mediation involving all three settling defendants, while Mr. LeHocky assisted in the resolution of the Kroger settlement through multiple sessions.

Second, Class Counsel negotiated the Settlements with a full understanding of the legal claims and their factual basis, negotiating only after conducting discovery and obtaining sales and other pertinent data as to the settling defendants' businesses, and successfully litigating dispositive and non-dispositive motions. Where extensive information has been exchanged, "[a] court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information." William B. Rubenstein, et al., *Newberg on Class Actions* § 13:49 (5th ed. 2012); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) (concluding that the "extent of discovery" and factual investigation undertaken by the parties gave them "a good sense of the strength and weaknesses of their respective cases in order to 'make an informed decision about settlement'") (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). This case is now quite advanced, and Class Counsel are well positioned to understand the risks and benefits of settlement.

### 3. Rule 23(e)(2)(C): The Settlements Provide for Substantial Compensation.

The Court may also find for purposes of final approval that the relief provided for the class is "adequate." Fed. R. Civ. P. 23(e)(2)(C). This subsection asks the Court to take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    method of distributing relief to the class, including the method of processing class-member

2    claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment;

3    and (iv) any agreement required to be identified under Rule 23(e)." *Id.* The Court can readily

4    adhere to and confirm its preliminary determination that the settlement is adequate upon review

5    of these factors.

**a.      The Settlements deliver excellent monetary and injunctive relief.**

7         The Settlements deliver immediate monetary relief and practice changes.  The settlements

8    provide more for than $2.15 million in monetary relief alone. Further, Plaintiffs previously

9    presented evidence that similar practice changes by defendants who settled earlier in the case

10   would mitigate millions of dollars in market-price damages. *See* Dkt. 428 (sealed Schreck

11   Declaration). These settlements, structured similarly to those previously approved, will build on

12   those positive effects.

**b.      The costs, risks, and delay of trial and appeal weigh in favor of final approval.**

15        The amount obtained is reasonable in light of the risks, delays, and costs attendant to

16   class certification, potential interlocutory appeal under Rule 23(f), summary judgment motions,

17   trial, and appeals. Plaintiffs have previously explained some of those risks in connection with the

18   prior set of settlements. *See* Dkt. 416 ¶¶ 10-16. To start, Defendants have advanced a legal

19   theory that the Lanham Act does not authorize the central claim in this case: false designation of

20   geographic origin. Although the Court denied the motions to dismiss on that basis, the issue

21   would remain alive in this case through summary judgment, trial, and appeal. Defendants also

22   had a factual defense that consumers were not confused by false designations of Kona

23   geographic origin and that Plaintiffs' claims were barred by laches.  Although Plaintiffs are

24   confident in the merits of their claims, each of those issue created risk (as to these defendants) at

25   summary judgment and trial.  In particular, whether consumers were confused or likely to be

26   confused by Defendants' product labels would likely come down to a "battle of the experts" at

---

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

-8-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

trial, the result of which is always uncertain.  Plaintiffs also faced risk at class certification, compounded by the potential lengthy delay of an appeal under Rule 23(f).  *See* Dkt. 416 at ¶ 14.

Success at each stage can never be assured, but delay and costs would be certain.  The settlements are an outstanding outcome under any measure, but particularly in light of those risks.

**c.      The method of distributing relief is simple and fair.**

The proposed method of distributing relief to the class, including claims processing, is straightforward, simple, and designed to maximize participation in the settlement.  As the Settlement Administrator attested, it worked effectively to distribute checks to hundreds of class members. *See* Dkt. 600. For this settlement, the distribution of money will be even more streamlined. Any Settlement Class Member who did not previously submit a claim will have the opportunity to do so for this settlement, but those who submitted claims in connection with the first distribution will not have to do so again. Instead, the Settlement Administrator will use the information previously submitted to calculate their pro rata share of the settlement funds.

As the experience with the first set of settlements showed, notice and claims here are straightforward and easily implemented. First, the Settlement Class is defined by a reference to a discrete geographic area (the Kona region), such that direct notice was feasible, with publication notice acting as informational reinforcement, making it easier to identify and reach the class. Settlement Class Members will again be sent a straightforward, two-page claim form that asks for basic information about their farm and the acreage used to produce coffee over the relevant time period.  Those who previously filled this out will not have to do so again; the Settlement Administrator has their information.  As Plaintiffs have explained, the information requested is that which coffee farmers typically maintain and keep accessible, and will allow for a fair and efficient distribution of the net settlement proceeds.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16- 05479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (approving pro rata settlement distribution based on the purchase and sales data provided by class members); *Thomas v.*

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL                                    -9-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1  *MagnaChip Semiconductor Corp.*, No. 14-01160, 2017 WL 4750628, at \*8-9 (N.D. Cal. Oct. 20,

2  2017) (same).

3       Class Counsel developed the claim form in consultation with the Settlement

4  Administrator, which has extensive experience designing plain-English forms and implementing

5  claims processes, and solicited input from class members to ensure that the form will be

6  intelligible and prompt claims. As before, the form will also be available in Japanese.  Class

7  members will be able to make claims by returning hard copy forms by mail or through an online

8  submission form on the settlement website.  The Settlement Administrator will then calculate

9  class members' pro rata share of the net settlement funds at the end of the claims period and

10  promptly send checks to class members who made valid claims.

11             **d.**     **The request for attorneys' fees is reasonable and supported.**

12       As explained in the separately-filed motion for attorneys' fees, Class Counsel have

13  sought a percentage settlement fund, a request that is consistent with fee awards in other cases

14  involving significant and valuable injunctive relief, and reasonable for all of the reasons

15  described in that motion.  *See* Dkt. 654.  Class Counsel's request was consistent with what was

16  described in the notice, and no class member has objected to the request.  The application itself

17  was made prior to the expiration of the opt-out and objection deadlines, consistent with *In re*

18  *Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).

19             **e.**     **There are no agreements bearing on final approval.**

20       Rule 23(e)(2)(C)(iv) requires that the proponents of the settlement identify any agreement

21  (other than the settlement agreement) entered into in connection with the proposed settlement.

22  There are no such agreements.

23          **4.**     **Rule 23(e)(2)(D): The Settlement Treats All Class Members Equitably Relative to One Another.**

24

25       Finally, Rule 23(e)(2)(D) directs the Court to consider whether the settlements treat class

26  members equitably. This subsection of Rule 23(e) determines "whether the apportionment of

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL

-10-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    relief among class members takes appropriate account of differences among their claims, and

2    whether the scope of the release may affect class members in different ways that bear on the

3    apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Note to 2018

4    amendments.  As previously explained in the preliminary approval motions, each member of the

5    proposed Class will receive a pro rata share of the settlement based on their coffee production

6    during the claims period, such that class members will receive meaningful compensation directly

7    proportional to the harm they suffered based on their actual sales.  Additionally, Plaintiffs have

8    requested service awards for each plaintiff farm (three in total), as are commonly awarded in

9    class actions, and are justified here by Plaintiffs' efforts in prosecuting the litigation, as

10   explained in Plaintiffs' motion for approval of those awards and in the supporting declarations

11   filed with the motion. *See* Dkt. 654.

12              **5.    The Settlement Satisfies the Ninth Circuit's Additional Factors for
                       Final Approval.**

13

14        The Ninth Circuit has identified a number of additional factors for courts to consider

15   when evaluating the fairness, reasonableness, and adequacy of a class action settlement.  Those

16   factors include: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and

17   likely duration of further litigation; (3) the risk of maintaining class action status throughout the

18   trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of

19   the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

20   participant; and (8) the reaction of the class members of the proposed settlement.  *In re Bluetooth*

21   *Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).  Many of these—*e.g.*, the

22   strength of plaintiffs' case, the risk and duration of further litigation, and the amount offered—

23   overlap with the Rule 23(e)(2)(C) factors and are addressed above.  The remaining relevant

24   factors favor final approval as well.

25        Most significant is the "reaction of the class to the proposed settlement." The class has

26   again voted with its feet: Not a single class member has objected to the settlements, or the

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1   requests for fees, costs, and service awards.  Not a single class member has opted out. This

2   universal support strongly favors approval. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

3   1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved

4   the offer and stayed in the class presents at least some objective positive commentary as to its

5   fairness."); *Gaudin v. Saxon Mort. Servs., Inc.*, No. 11-1663, 2015 WL 7454183, at \*7 (N.D. Cal.

6   Nov. 23, 2015) ("[T]he absence of a large number of objections to a proposed class settlement

7   raises a strong presumption that the terms of a proposed class settlement are favorable to the

8   class members.") (citation and alteration omitted); *id.* (finding that "opt-out rate [] less than 1%

9   … favors approval of settlement"); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852

10  (N.D. Cal. 2010) (finding that 4.86% opt-out rate strongly supported approval).

11          Other factors weigh in favor of approval as well. First, there is a risk of "maintaining

12  class action status through trial." As explained in prior counsel declarations, any class action

13  carries risks of denial of certification or de-certification. Dkt. 416 ¶ 14. This case is no exception.

14  Second, the "experience and views of counsel" support approval. Counsel are experienced in

15  both complex class actions and Lanham Act litigation, and well-versed in particular with the

16  issues in this case, having investigated it thoroughly and litigated it extensively. *See* Dkt. 416 ¶¶

17  4-9; Dkt. 417 ¶¶ 4-13; Dkt. 603, Dkt. 655, Dkt. 656. Counsel unreservedly support the

18  settlement.

19          **C.      The Settlement Class Should be Finally Certified.**

20          As the Court concluded in granting preliminary approval and directing notice to the

21  Class, the Settlement Class "likely meets the requirements under Fed. R. Civ. P. 23(a) and

22  23(b)(3)." Dkt. 604  ¶ 3.  This remains true, and the Settlement Class should be certified.

23  **VI.    Conclusion**

24          For the foregoing reasons, Plaintiffs respectfully request that the Court grant final

25  approval to these settlements.

26

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1    Dated:  May 17, 2022

2    KARR TUTTLE CAMPBELL          LIEFF CABRASER HEIMANN &
                                   BERNSTEIN, LLP
3

4    /s Nathan T. Paine            /s/ Jason L. Lichtman
     Paul Richard Brown, WSBA #19357   Jason L. Lichtman (*pro hac vice*)
5    Nathan T. Paine, WSBA #34487  Daniel E. Seltz (*pro hac vice*)
     Daniel T. Hagen, WSBA #54015  250 Hudson Street, 8th Floor
6    701 Fifth Avenue, Suite 3300  New York, NY  10013-1413
     Seattle, Washington 98104     Telephone:  212-355-9500
     206.223.1313
7

8                                  Andrew Kaufman (*pro hac vice*)
                                   222 2nd Avenue South, Suite 1640
9                                  Nashville, TN  37201
                                   615.313.9000

10                                 *Attorneys for the Plaintiffs*
                                   *and the Proposed Settlement Class*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL                -13-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel E. Seltz, certify that on May 17, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

/s *Daniel E. Seltz*
Daniel E. Seltz

MOTION FOR FINAL APPROVAL
Case No. 2:19-cv-00290-RSL                           -14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel. 212.355.9500 • Fax 212.355.9592