1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUCE CORKER, d/b/a RANCHO ALOHA, *et al.*,

              Plaintiffs,

        v.

COSTCO WHOLESALE CORPORATION, *et al.*,

              Defendants.

Cause No. C19-0290RSL

ORDER REGARDING
PLAINTIFFS' MOTION FOR
SANCTIONS

     This matter comes before the Court on "Plaintiffs' Motion for Sanctions of Default and an Order to Cease Unlawful Conduct." Dkt. # 546.[1] The named plaintiffs grow Kona coffee in the Kona District of the Big Island of Hawaii and filed this lawsuit alleging that various distributors, wholesalers, and retailers of coffee products sell ordinary commodity coffee labeled as "Kona" coffee, to the detriment of those who grow actual Kona coffee. Despite years of discovery disputes and multiple Court orders, defendant Mulvadi Corporation continues to make it incredibly difficult for plaintiffs to test Mulvadi's factual assertions regarding how much Kona coffee it purchased and sold during the relevant time frame, how much it pays for Kona coffee,

---

[1] This matter can be resolved on the papers submitted. Plaintiffs' request for oral argument is DENIED.

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 1

and how much it has profited from the sales. The question is whether Mulvadi's conduct

justifies striking its answer and granting plaintiffs' prayer for injunctive relief.[2]

## BACKGROUND

In August 2019, Mulvadi demanded that the claims against it be dismissed based on

(a) its representations that it purchased slightly more ground and whole bean Kona coffee than it

sold in 2017 and 2018, (b) a declaration stating that Mulvadi sources all of its Kona coffee from

Hawaii Coffee Connection, (c) a declaration stating that Hawaii Coffee Connection purchases

Kona coffee from three farms located in the Kona District (Llanes Coffee Estates, Inc.,

Makapeuo Farms, and Pacifica Services) and that it has sold only Kona coffee to Mulvadi, and

(d) substantially identical declarations from the three farms stating that they are located within

the Kona district and that they sell their Kona coffee to Hawaii Coffee Connection which, in

turn, sells it to Mulvadi. Dkt. # 555 at 9-22. Mulvadi argues that its representations and the

declarations disprove plaintiffs' theory of the case and that plaintiffs are making a mountain out

of insubstantial discovery violations in order to avoid addressing the merits of their claims.

Plaintiffs were not, however, required to accept Mulvadi's 30,000-foot summary of its 2017 and

2018 transactions in Kona coffee, to assume that sales during other years mirrored the sales as

---

[2] The Court has not considered plaintiffs' "Notice of Additional Facts" in ruling on the motion for dispositive sanctions. If additional, sanctionable conduct has occurred since this motion was filed, those matters can be brought to the Court's attention through a second motion for sanctions. Mulvadi's motion to strike (Dkt. # 640) is DENIED as moot.

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 2

represented for 2017 and 2018, or to accept as true the declarants' various statements. Plaintiffs served discovery.

**A. Purchase and Sale Information**

Mulvadi's response to plaintiffs' discovery was to insist that plaintiffs' counsel travel to Hawaii to review boxes of documents in its warehouse, identify responsive materials, and bear all the costs of production. Given Mulvadi's assertion that its business records were maintained in paper, rather than electronic, form (Dkt. # 201 at ¶ 4), the Court ordered Mulvadi to scan and produce all responsive documents in a text searchable format (Dkt. # 248) as the parties had agreed earlier in the litigation (Dkt. # 151). Mulvadi's motion for reconsideration asserting that it lacked the staff and the funds to satisfy its discovery obligations was denied. Dkt. # 274. Mulvadi was ordered to make the required production by June 18, 2020, and was invited to perform "a basic relevance review before sending the documents to the vendor in Honolulu" if it wanted to reduce costs. *Id.* at 3.

On August 4, 2020, plaintiffs filed a motion to hold Mulvadi in contempt for its failure to comply with the Court's order. Dkt. # 319. Mulvadi produced approximately 46,000 pages of documents a week later. Dkt. # 339 at ¶ 3. The documents consisted primarily of invoices for products sold by Mulvadi from April 2016 through September 2018 and invoices for bulk coffee purchases from Hawaii Coffee Connection from January 2016 through December 2018. Dkt. # 339 at 13-14. Plaintiffs noted that the production did not cover purchases or sales made after 2018, nor did it reflect any electronically-stored information ("ESI"). Nevertheless, plaintiffs

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 3

withdrew the contempt motion. Dkt. # 340. Supplemental document productions were made in December 2020, June 2021, July 2021, and October 2021. Dkt. # 558 at ¶ 2. In total, Mulvadi produced almost 120,000 pages, the majority of which have nothing to do with Kona coffee products. Dkt. # 434 at ¶¶ 3-5; Dkt. # 434-2 at 8 and 11.

In reviewing Mulvadi's production, plaintiffs recognized that some of the documents reflected information stored electronically in QuickBooks. Dkt. # 434 at ¶ 6. When plaintiffs suggested that Mulvadi run specific reports for each year from February 2015 to the present (Dkt. # 434-2 at 11), Mulvadi declined the invitation to create records (*Id.* at 9). During a meet and confer regarding perceived deficiencies in the production, Mulvadi indicated that it would not produce QuickBooks data without a Court order and that plaintiffs should reconstruct the data they sought from the documents that had been scanned and produced.

Mulvadi confirmed at its Rule 30(b)(6) deposition in March 2021 that it maintains its financial records, including purchase and sale data, in QuickBooks and that the summary of purchases and sales provided to plaintiffs in August 2019 was generated from the QuickBooks program not, as previously represented, from Mulvadi's boxes of paper records. Dkt. # 434-3 at 22. Mulvadi also disclosed that it could have queried the program to produce the same data for all of the years that are relevant to this lawsuit, that one could determine the price per pound at which Mulvadi sold its Kona coffee products using the QuickBooks data, that Mulvadi used various electronic means of communications but searched only one of them when responding to plaintiffs' discovery requests, and that it had not produced most of its information related to the

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 4

purchase and sale of Kona freeze-dried coffee products. Plaintiffs filed a second motion to compel and obtained an order requiring Mulvadi to:

> 1. Perform a comprehensive ESI search for responsive documents on all sources (including email accounts, computers, external backup servers, cell phones, etc., used for company business) from February 27, 2015, to the present;
>
> 2. Disclose the search terms, queries, and methodologies used to locate responsive ESI;
>
> 3. Produce all responsive ESI, including documents concerning freeze-dried coffee labeled "Kona;" and
>
> 4. Provide plaintiffs' experts access to its complete QuickBooks data.

Dkt. # 487 at 2. The Court specifically found that "QuickBooks provides functionality not found in stacks of paper documents, acts as a check on the sufficiency of the paper production, and likely captures additional information not contained in the paper purchase and sale documents that have already been produced." *Id.* at 1.

On the day its production was due, Mulvadi filed an untimely and unsupported motion for clarification, essentially arguing that the Court could not possibly have meant to allow plaintiffs' expert "to roam freely through all of Mulvadi's company data in QuickBooks, regardless of whether the information was relevant to this lawsuit." Dkt. # 503 at 2. That is exactly what the Court intended, however, and Mulvadi was again ordered to "allow plaintiffs' expert access to its complete QuickBooks data." Dkt. # 523 at 2. The Court awarded plaintiffs their fees and costs in opposing the motion for clarification.

The next day, plaintiffs contacted Mulvadi to provide their expert's email address and request that Mulvadi provide her "unrestricted read only access to Mulvadi's complete QuickBooks data." Dkt. # 545-8 at 5-6. Mulvadi promised that access would be provided at 2:00 pm PT (11:00 am HI) on September 7, 2021, and that its IT person would email instructions to the expert in advance and be available at that time to "facilitate." *Id.* at 5. Plaintiffs' expert, Lorraine Barrick, thought she was getting access to the QuickBooks data on a cloud-based server which she could use when and as long as she needed. In contrast, Mulvadi's IT person, David Miyasato-Crawford, was instructed to set up a live "TeamViewer" session on a workstation at the warehouse that would be available during Mulvadi's business hours and would be monitored by Mr. Miyasato-Crawford.[3] By the time the misalignment in expectations was discovered, hours had passed, and Ms. Barrick was not prepared to query QuickBooks on-the-spot. Mr. Miyasato-Crawford acknowledged that he could download a copy of Mulvadi's QuickBooks from the server or upload a copy to DropBox, but said he would need permission to do so. Dkt. # 548 at ¶ 8.c.

Permission was apparently granted with regards to data dated after February 27, 2015. Mr. Miyasato-Crawford therefore separated the data that pre-dated February 27, 2015, copied the remainder of the database to a Sharefile, and provided Mulvadi's counsel with the link, username, and password on October 15, 2021, approximately two and a half months after

---

[3] On August 3, 2021, Mulvadi's counsel had notified plaintiffs' counsel that "the only way for someone to access Mulvadi's QuickBooks from outside Mulvadi is with a live link. So, it is not feasible to grant plaintiffs' expert access 'at their convenience;' we'll need to set up a time." Dkt. # 548-1 at 5.

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 6

Mulvadi was to have provided complete access to its QuickBooks data. Dkt. # 556 at ¶ 9. Ms.

Barrick and her staff spent approximately six hours attempting to access and review the

Mulvadi's QuickBooks files using the link, with very little success. Mulvadi uses a 2014 version

of the program, which Ms. Barrick was able to purchase, but clicking on an account listed in the

"Chart of Accounts" section (such as purchases, vendors, financial statements, *etc*.) generated a

pop-up message saying "You need 'View' access under Company and Financial Detail or

Accountant & Taxes Detail to perform this action. Ask your QuickBooks Administrator to grant

you this permission." Dkt. # 545-10 at 3; Dkt. # 548 at ¶ 12; Dkt. # 562 at 3. On October 25,

2021, plaintiffs contacted Mulvadi, letting them know that Ms. Barrick's access had been

limited as described above and that the only data she was able to access involved sales to

individual customers for limited time frames. Dkt. # 545-10 at 3.[4] Mulvadi responded as if the

conversation had occurred weeks earlier:

> As you know, Mulvadi has already fully complied with the Court's order by
> granting full access to its QuickBooks, and your expert did not appear for the
> meeting. As Plaintiffs now request a copy of the data instead of access to the data,
> we have provided the data in the link below.

*Id.* at 2. Mulvadi was fully aware that Ms. Barrick did not access its QuickBooks data on

September 7, 2021: its continuing insistence that its discovery obligations were somehow

satisfied by that wholly unsuccessful session is troubling. In addition, Mulvadi failed to

---

[4] Mulvadi had previously represented that it ran summary reports "at the specific request of certain customers." Dkt. # 437 at 2. It is also possible that the reports Ms. Barrick could access were "reports Mulvadi had generated for its own use." Dkt. # 556 at ¶ 11.

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 7

acknowledge, much less explain, the permissions issues that had plagued Ms. Barrick's attempts to access the data through the link provided on October 18, 2021. Nor does Mulvadi's response disclose that the copy of the data that was provided on October 28, 2021, was apparently modified to require "a different set of permissions . . . for each area of QuickBooks." Dkt. # 556 at ¶ 10. Mr. Miyasato-Crawford states that he made these modifications to comply with Ms. Barrick's request, but there is no such request in the record. Regardless, the data that could be accessed through the new link suffered from the same problems as before. Dkt. # 548-3 at 2-9; Dkt. # 562 at ¶ 8. Despite both experts recognizing that Mulvadi could give Ms. Barrick unrestricted "view only" access by copying its QuickBooks data onto a thumb drive or into a shared file, the version of the data made available to Ms. Barrick on both occasions severely restricts her ability to access the data, preventing her from determining how much coffee Mulvadi purchased or sold, where it purchased its coffee, or how much it profited from the sale of Kona coffee. Dkt. # 548 at ¶ 14.

**B. Source of Kona Coffee**

Plaintiffs' efforts to confirm that the sources of Mulvadi's coffee are farms in the Kona district have met with mixed results. Along with its August 2019 letter, Mulvadi provided declarations from three farms, asserting that they were in the Kona district and that they grow and sell only Kona coffee to Hawaii Coffee Connection, LLC ("HCC"). Dkt. # 555 at 12-18. HCC, in turn, declared that it sells only Kona coffee to Mulvadi. *Id*. at 19-20.

In November 2019, Mulvadi's counsel went to Kona, Hawaii, to meet the owners of HCC and have them show him the farms from which HCC sourced its Kona coffee. Dkt. # 555 at ¶ 7. When plaintiffs were unable to confirm the existence or location of one of the alleged sources, Pacifica Services, Mulvadi's counsel signed a declaration attesting that he had visited the farm and offering photographs of the entrance. Dkt. # 555 at ¶ 8. Plaintiffs hired a retired Hawaii County police officer to investigate the claim that Pacifica Services operates a Kona coffee farm. He recognized the entryway in counsel's photographs and drove out to the property which was, in fact, in the Kona district. Dkt. # 545-3 at ¶ 5. The investigator took his own pictures of the entrance, which bear a striking similarity to counsel's photographs. Compare Dkt. # 448 at 5-6 to Dkt. # 545 at 6-7. The property identified by the investigator consists of two parcels, with the name "H Matsumoto coffee farm" at the entrance. *Id.* Neither of the parcels is owned by or leased to a "Pacifica" entity or associated with Susan Decker, the owner of Pacifica Services. *Id.* at 9-24.

When plaintiffs propounded discovery requests seeking the address for the farm "as pictured" in counsel's photographs (Dkt. # 545-6 at 4-5), Mulvadi objected that there was "no 'address' 'pictured' in the photographs" and provided the address of a business park. Dkt. # 545-4 at 2-3; Dkt. # 545-6 at 4-5). Mulvadi got the address from HCC,[5] but the tenants at the business park had never heard of Pacifica Services or Susan Decker. Dkt. # 545-4 at 3; Dkt.

---

[5] In its email transmitting the contact information for the three farms, HCC noted that Pacifica Services "prefers to be contacted via email if possible. I had a hard time convincing them to get involved so hoping this is sufficient." Dkt. # 545-4 at 2-3.

# 545 at ¶ 6. In its Rule 30(b)(6) deposition, HCC identified the Tax Map Key number for

Pacifica Services' farm (Dkt. # 557 at 17 (TMK 75001094)), a number which corresponds to a

parcel next to the ones identified by plaintiffs' investigator. Again, the parcel is not owned by or

leased to a "Pacifica" entity or Susan Decker. *See*

https://qpublic.schneidercorp.com/Application.aspx?AppID=1048&LayerID=23618&PageType

ID=4&PageID=9878&Q=919988554&KeyValue=750010940000.

**C. Freeze-Dried Kona Coffee**

Mulvadi's August 2019 letter presented summaries of its purchases and sales of whole

and ground Kona coffee. There was no mention of freeze-dried products, however. Mulvadi also

excluded freeze-dried coffee sales from its discovery responses, offering no reasonable

justification when plaintiffs filed their second motion to compel and raised the issue. Mulvadi

was ordered to supplement its production, including ESI concerning freeze-dried Kona coffee.

Dkt. # 487 at 2. At its Rule 30(b)(6) deposition, Mulvadi stated that HCC has been its sole

supplier of freeze-dried Kona coffee since 2015. Dkt. # 545-1 at 7. HCC, however, stated that its

supplier of freeze-dried coffee went out of business in 2017 and that it has not sold freeze-dried

coffee to Mulvadi since then. Dkt. # 547 at 5.

**D. Other Electronically-Stored Information ("ESI")**

When responding to plaintiffs' discovery requests, Mulvadi searched only select sources

of ESI despite possessing a number of other sources (Dkt. # 434-3 at 24-32), failed to disclose

the search terms, queries, and methodologies used to locate responsive materials, and failed to

comply with the Court's ESI Order (Dkt. # 152). When granting plaintiffs' second motion to compel, the Court specifically required Mulvadi to search all sources of ESI and to disclose its search terms and methodology. Dkt. # 487. Mulvadi thereafter rejected the search terms plaintiffs had negotiated with other defendants and, without consulting plaintiffs, searched for the term "Kona" without restrictions. The search resulted in the an avalanche of approximately 15,000 emails from 2015 and 2016, but there was no supplemental production for the period of 2017 to the present. Dkt. # 506 at ¶ 4.

**DISCUSSION**

Termination is a harsh sanction that is justified only by "willfulness, bad faith, and fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994). If the failure was with the requisite intent, the Ninth Circuit then applies a five-factor test to determine whether case dispositive sanctions under Rule 37(b)(2) are warranted. The district court is to consider:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012).

Mulvadi has not shown that the failure to disclose the existence of its ESI, the failure to perform a comprehensive ESI search even after ordered to do so, the failure to make productions

in accordance with the requirements of the federal rules of discovery and the Court's ESI

protocol (Dkt. # 152), the failure to provide the address of the farm counsel visited and

photographed, and/or the failure to disclose information regarding its freeze-dried Kona

products were outside its control. The only reasonable inference is that these discovery failures

were willful. While it is possible that the failure to provide effective access to its QuickBooks

data in the fall of 2021 was inadvertent, Mulvadi's prior conduct, including its dogged insistence

that it should never have been named as a defendant, its failure to disclose the existence of the

QuickBooks data, its refusal to either query the data or provide access to its QuickBooks data

unless ordered to do so, its resistance to production even after being ordered to do so, and its

limiting instructions to Mr. Miyasato-Crawford as he attempted to provide Ms. Barrick the

access she needed, all suggest that "[t]he QuickBooks fiasco," as Mulvadi calls it (Dkt. # 554 at

10), demonstrates willfulness, bad faith, and/or fault.

Turning, then, to the five-factor test for dispositive sanctions, Mulvadi essentially ignores

many of its failures of disclosure and production to argue that, because it has made attempts to

provide access to the QuickBooks data as ordered by the Court, none of the factors favor the

entry of a default judgment against it.

**A. Public Interest in Expeditious Resolution**

Mulvadi's conviction that plaintiffs should have dismissed the claims against it based

solely on its own unsupported and untested representations has led it astray. Its apparent

annoyance at having to defend this litigation resulted in false representations regarding the

nature of Mulvadi's records, unreasonable and unjustified discovery stances, lengthy delays in

production, and recalcitrance in the face of clear and unambiguous discovery orders. At virtually

every step, Mulvadi chose the path that would make discovery as difficult and expensive as

possible for plaintiffs. For almost a year, plaintiffs and the Court labored under the false

impression that Mulvadi kept all of its records in paper, stacked in boxes, in its warehouse. The

parties fought about who should perform a relevance review, whether responsive documents had

to be scanned, and who should pay for the production. It turned out that those issues were mere

sideshows: once the production began, it became clear that Mulvadi had ESI that it had not

previously disclosed.

More than three years after discovery began in this case, plaintiffs are still without access

to an organized and useful collection of data – Mulvadi's QuickBooks – and instead have been

wading through 120,000 pages of largely irrelevant documents to try to piece together the basic

purchase, sales, and profit data that is at the heart of the case. Plaintiffs have nevertheless been

able to ascertain that Mulvadi's August 2019 representations regarding its purchases and sales of

Kona coffee were grossly underinclusive: they were limited to purchases and sales of Kona

coffee for a two-year period, excluded information regarding the purchase and sale of freeze-

dried Kona products, and rested on the Kona coffee production of a company that, according to

Hawaii's property records, does not own or lease agricultural property in the Kona district.

Thus, at a point in time when every other defendant has been able to negotiate a settlement

based on its sales data (or is currently in settlement discussions), the holes in the information

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 13

Mulvadi has deigned to provide have made it virtually impossible for plaintiffs to assess this

defendant's potential liability. After years of motions practice, plaintiffs are still unable to

overcome the deficits in Mulvadi's productions. The public's interest in the expeditious

resolution of the claims asserted against Mulvadi has been significantly and adversely impacted

by Mulvadi's conduct and supports the imposition of dispositive sanctions.

**B. Court's Docket Management**

While the Court's interest in managing its docket effectively and efficiently often mirrors

the public's interest in the expeditious resolution of litigation, that is not necessarily the case

here. Despite the length of time in which this case has been pending, the case management

deadlines have been continued repeatedly to allow plaintiffs and various groups of defendants to

pursue settlement negotiations and to obtain necessary approvals from the Court. The discovery

deadlines were recently continued for the remaining defendants, L&K Coffee Co., LLC, Kevin

Kihnke, MNS, Ltd., and Mulvadi for reasons entirely unrelated to Mulvadi's discovery failures.

On the other hand, the number of motions filed by and against Mulvadi in this litigation have

certainly impacted the Court's docket. This factor is neutral regarding the imposition of

dispositive sanctions.

**C. Risk of Prejudice to Plaintiffs**

"In deciding whether to impose case-dispositive sanctions, the most critical factor is not

merely delay or docket management concerns, but truth." *Conn. Gen. Life Ins. Co. v. New*

*Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007). The third factor of the test is

therefore critical, and the analysis focuses on whether the discovery violations "threaten to interfere with the rightful decision of the case." *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990)). As the situation currently stands, plaintiffs cannot access Mulvadi's QuickBooks data with the exception of reports that Mulvadi apparently ran before copying the data.[6] Plaintiffs have therefore been deprived of the most useful data that might confirm or disprove Mulvadi's 2019 representations regarding the whole and ground Kona coffee it purchased and sold in 2017 and 2018. They have also been required to piece together information regarding Mulvadi's purchase and sale of whole and ground Kona coffee in 2015, 2016, and 2019 to the present from the boxes of papers Mulvadi scanned and produced in response to the Court's first order compelling production. Plaintiffs' ability to determine the extent of Mulvadi's trade in Kona freeze-dried coffee (especially after HCC stopped selling it) and the locality from which "Pacifica Services" coffee comes has been even further hampered by Mulvadi's discovery choices. The risk of prejudice to plaintiffs' ability to prove their claims is very real, not, as Mulvadi would have it, because plaintiffs have no claim, but rather because Mulvadi has taken it upon itself to decide if, when, and how the discovery plaintiffs sought would be produced.

---

[6] Mulvadi asserts that it "has complied with the Court's order by providing access to the data." Dkt. # 554 at 16. As discussed above, however, plaintiffs' expert never accessed the data in September 2021, and the copies of QuickBooks shared after that date severely restrict her access to the data contained therein.

**D. Public Policy Favoring Disposition on the Merits**

As in virtually all cases, this factor weighs against the imposition of dispositive sanctions. In light of the relief plaintiffs seek, namely a finding that Mulvadi's "Kona" coffee products are counterfeit and an injunction precluding Mulvadi from selling any coffee products labeled as "Kona" in the future, the preference for reaching the merits and achieving an accurate and fair result based on the facts is heightened.

**E. Availability of Less Drastic Sanctions**

The fifth factor focuses on "whether the district court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *New Images of Beverly Hills*, 482 F.3d at 1096. The Court has issued two orders compelling production aimed specifically at Mulvadi. Defendant failed to timely comply with either of the orders, resulting in a motion for contempt sanctions (later withdrawn) and an award of fees. The second order compelling production was terse, but it made clear that Mulvadi's conviction that it would win on the merits is irrelevant to its discovery obligations, highlighted the importance of the QuickBooks data over and above the paper documents Mulvadi had scanned and produced, and found that Mulvadi's "unilateral decisions to produce only three years' worth of documents, to exclude coffee sales simply because the product is 'instant,' [and] to search only a few of its acknowledged ESI repositories" were unjustified. Dkt. # 487 at 1. Lesser sanctions have been tried.

The question, then, is whether additional sanctions, short of default judgment, can mitigate the risk of prejudice to plaintiffs and enable the fact finder to reach a rightful decision regarding plaintiffs' claims against this defendant. The Court could undoubtedly issue a third order directing Mulvadi to provide Ms. Barrick complete (*i.e.*, unfettered and unrestricted) access to its QuickBooks data. But two prior orders have not done the trick, and, without more, the Court has serious doubts regarding Mulvadi's commitment to full disclosure. As a general matter, this case addresses the reality that more coffee is sold under a "Kona" label than there is "Kona" coffee. If plaintiffs' theory of the case is correct, Mulvadi and/or its suppliers would have ample motivation to delay, if not prevent, discovery. More particularly, Mulvadi has gone to remarkable lengths to avoid disclosing the address at which counsel took pictures of Pacifica Services' farm and the provenance of its freeze-dried Kona coffee products. Its efforts to shield its QuickBooks data from prying eyes are even more notable. Mulvadi first failed to disclose that it had such records, then argued they were duplicative of scanned paper documents, and finally sought clarification of an unambiguous order before it would even feign production. Once production became inevitable, Mulvadi instructed Mr. Miyasato-Crawford to provide access through a live TeamViewer portal (a program Ms. Barrick did not use or own), rather than simply instructing him to do whatever was necessary to make sure plaintiffs have the access they need. Even after this motion for dispositive sanctions was filed and it became clear that Ms. Barrick's access to the data was still subject to restrictions, Mulvadi's only response has been to suggest that Ms. Barrick forfeited her opportunity to access the QuickBooks data on

September 7, 2022, and must therefore be satisfied with whatever defects plague the Sharefile links provided. There is no indication that Mulvadi has taken any post-filing steps to address the current situation.

Nevertheless, there are a combination of lesser sanctions that may be effective, namely explicit orders to compel with strict deadlines, an award of fees associated with the unnecessary motions plaintiffs have been forced to file and the ill-founded motions plaintiffs have been forced to defend, and an express warning that a failure to comply with the Court's orders in any substantive respect will result in the imposition of dispositive sanctions and the entry of injunctive relief against Mulvadi. If "the QuickBooks fiasco" can be resolved, it would likely answer plaintiffs' remaining questions regarding Mulvadi's purchases, sales, suppliers, customers, and profits for whole bean, ground, and freeze-dried coffee products throughout the class period. The risk of prejudice caused by Mulvadi's refusal to search other sources of ESI and to provide the address at which its counsel saw Pacifica Services' agricultural and production operations can likewise be alleviated by appropriate disclosures.

Having carefully reviewed the record in this matter, the Court will exercise its discretion to give Mulvadi one last chance in which to take its discovery obligations seriously and make full and complete disclosures of all responsive materials.

▪ Mulvadi shall immediately place its IT specialist at the disposal of plaintiffs' expert so that they can work through the remaining access issues together, independent of the parties and counsel. Plaintiffs' expert is entitled to complete, unfettered, and unrestricted access to Mulvadi's QuickBooks for as long as she deems necessary.

The expert shall have this access starting no later than twenty-one days after the date of this Order, and Mulvadi shall do whatever is necessary to ensure that complete, effective access is provided, even if it means removing date or other restrictions that were previously agreed to by the parties.

▪ Mulvadi shall, within seven days of the date of this Order, disclose the exact street address of the property Mr. Thoreson photographed in November 2019. If a precise street address is not available, Mulvadi shall clearly identify the property on the Tax Map for Zone 7, Section 5, Plat 001 (accessible at https://www.planning.hawaiicounty.gov/resources/tax-maps-tmk-maps/-folder-3052) or on whatever Tax Map Mulvadi contends the property can be found.

▪ Mulvadi shall perform a comprehensive search of all of its sources of ESI (including personal accounts and sources that have been used to conduct Mulvadi's business) from February 27, 2015 to the present using the search terms set forth at Dkt. # 506-3 at 1. Production of all responsive documents shall be made within thirty-five days of the date of this Order.

▪ Any and all productions made in response to this Order shall comply with the Court's ESI Order, including Bates numbering the ESI on single-page TIFF images and providing a delimited data or load file.

▪ Plaintiffs are hereby awarded the reasonable fees and costs associated with their first motion to compel, including the related meet and confer process (Dkt. # 188), the motion for reconsideration (Dkt. # 252), the motion for contempt (Dkt. # 319), and this motion for dispositive sanctions (Dkt. # 546). Plaintiffs may, within twenty-one days of the date of this Order, file a memorandum and documents supporting a request for specific amounts, noting the matter for consideration on the third Friday after filing.

Mulvadi is hereby warned that a failure to comply with the substantive terms of this Order will result in an entry of default judgment against it and an injunction prohibiting it from selling

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 19

1   "Kona"-labeled coffee. This denial of plaintiffs' motion for dispositive sanctions (Dkt. # 546) is

2   without prejudice.

3

4

5        Dated this 6th day of July, 2022.

6

7

8                                    Robert S. Lasnik

9                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER REGARDING PLAINTIFFS'
MOTION FOR SANCTIONS - 20