UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE CORKER d/b/a RANCHO ALOHA, *et al.*,<br><br>            Plaintiffs,<br><br>     v.<br><br>COSTCO WHOLESALE CORPORATION, *et al.*,<br><br>            Defendants. | Case No.  C19-0290RSL<br><br>ORDER CERTIFYING CLASS |

This matter comes before the Court on "Plaintiffs' Motion for Class Certification." Dkt. # 568. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

---

[1] Only L&K Coffee Co., LLC, and Kevin Kihnke requested oral argument. Dkt. # 589. Those defendants have reached a settlement agreement with plaintiffs, however, and their request for oral argument is now moot. The Court has, however, considered the memoranda and supplemental papers filed by L&K and Kihnke, with the exception of the improper separate statement of evidentiary objections (Dkt. # 590, which was stricken at Dkt. # 592) and the unauthorized separate statement of contents and authorities (Dkt. # 591). Their properly-filed objections to evidence submitted with plaintiffs' reply (Dkt. # 619) have been considered and are overruled. L&K confuses the presentation of new arguments in reply - which is forbidden - with the presentation of additional evidence to support arguments that are already in dispute - which is permitted.

Plaintiffs' claims against the Mulvadi Corporation have been stayed pursuant to 11 U.S.C. § 362(a)(1). The Court has not, therefore, considered its opposition arguments, leaving for another day an evaluation of Mulvadi's arguments and a decision regarding whether it is appropriate to certify a class to pursue a Lanham Act claim against that entity.

The Court has considered the *Sugai Products* decisions issued by the District of Hawaii in 1997 and 1998 as it would any other case law cited by the parties. Dkt. # 586, Exhibits 11 and 12.

ORDER CERTIFYING CLASS - 1

# I. BACKGROUND

The named plaintiffs grow Kona coffee in the Kona District of the Big Island of Hawaii. They filed this lawsuit alleging that various distributors, wholesalers, and retailers sell ordinary commodity coffee labeled as "Kona" coffee, to the detriment of those who grow actual Kona coffee. Defendant MNS Ltd., the only defendant who has not settled or declared bankruptcy, is a retailer who, plaintiffs allege, has violated the Lanham Act by jointly marketing coffee products that are falsely labeled as originating from Kona without making any effort to verify the grade, purity, or origin of the coffee.

Plaintiffs seek to certify a class of all persons and entities who farmed Kona coffee in the Kona District and sold their coffee from February 27, 2015, to the present. Defendants L&K Coffee Co., LLC, Kevin Kihnke, Mulvadi Corporation, and MNS Ltd. oppose certification on various grounds. L&K and Kihnke have reached a settlement agreement with plaintiffs, and Mulvadi has filed a bankruptcy petition. Thus, the issue is whether certification of a class to pursue the Lanham Act claims against MNS is appropriate.

# II. DISCUSSION

## A. Legality of Conduct and Sufficiency of Allegations

As a preliminary matter, MNS argues that plaintiffs' allegations, taken as true, cannot establish a Lanham Act violation because Hawai'i law permits the sale of coffee labeled "Kona blend coffee" or "blended Kona coffee" as long as the coffee contains not less than ten percent Kona coffee by weight. MNS further asserts that plaintiffs have not adequately alleged that the Hawaiian Isles' Kona Coffee products sold in its ABC Stores contained less than the requisite 10% Kona coffee. Neither the adequacy of the pleadings nor whether the retailer sold or sells deceptively labeled "Kona" coffee produced and packaged by one or more of the supplier defendants in violation of the Lanham Act are before the Court in the context of this motion for class certification. Rather, the issue is whether the evidence in the record shows that the Lanham Act claim should be resolved on behalf of a class of Kona coffee farmers.

ORDER CERTIFYING CLASS - 2

**B. Jurisdiction and Venue**

L&K and Kihnke argue that the Court lacks personal jurisdiction over them. Kihnke previously raised this argument in a motion to dismiss filed shortly after he was added as a defendant in this litigation. Dkt. # 488. The Court rejected the argument, finding that Kihnke was a central figure in the challenged corporate activity and that the corporate activity was expressly aimed at the State of Washington. Dkt. # 606 at 5-9. The Court's exercise of personal jurisdiction over L&K is based on the same findings and, in any event, the corporation's objection has been waived. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) ("[T]he failure to enter a timely objection to personal jurisdiction constitutes, under Rule 12(h)(1), a waiver of the objection.").

To the extent L&K and Kihnke are arguing that the Court lacks jurisdiction to hear the claims of putative class members who reside outside the forum, they rely on *Bristol-Myers Squibb Co. v. Superior Court*, __ U.S. __, 137 S. Ct. 1773 (2017). *Bristol-Myers Squibb* was a mass tort action filed in state court under state law. In that context, the Supreme Court instructed courts to evaluate each plaintiff's claims to determine whether they arose out of defendant's contacts with the forum before exercising specific personal jurisdiction over that plaintiff's claims. There is significant doubt whether *Bristol-Myers Squibb* applies to class actions at all, particularly class actions seeking relief in federal court under federal law. *See Lyngaas v. Ag, 992 F.3d 412, 434–35 (6th Cir. 2021)* (following "[t]he vast majority" of lower courts and the only other circuit court in concluding "that *Bristol-Myers Squibb* does not extend to federal class actions"); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) (characterizing absent class members as non-parties for jurisdictional purposes, refusing to extend *Bristol-Myers Squibb* to class actions, and affirming personal jurisdiction over a nationwide class); *Burchfield v. Prestige Consumer Healthcare, Inc*., 534 F. Supp. 3d 1192, 1208 (C.D. Cal. 2021) (following the "majority position" and concluding that "*Bristol-Myers Squibb* has no impact on class action practice"); *Massaro v. Beyond Meat, Inc*., 2021 WL 948805, at *11 (S.D. Cal. Mar. 12, 2021) (recognizing an intra-district split, but finding no reason to assume that the Supreme Court

ORDER CERTIFYING CLASS - 3

would apply *Bristol-Myers Squibb* to the exercise of jurisdiction by a federal court over a federal claim or would conclude that absent class members are parties for jurisdictional purposes); *Lacy v. Comcast Cable Commc'ns, LLC*, 2020 WL 1469621, at *2 (W.D. Wash. Mar. 26, 2020) (declining to apply *Bristol-Myers Squibb* to class actions because "[t]his Court will not upend the traditional approach to personal jurisdiction in class actions absent an express ruling from the Supreme Court"); *King v. Bumble Trading, Inc*., 2020 WL 663741, at *4 (N.D. Cal. Feb. 11, 2020) (holding *Bristol-Myers Squibb* did not apply to the class action at hand and stating "[a]lthough the Court agrees that the due process and federalism concerns in *Bristol-Myer*s are relevant to class actions ..., there are significant procedural differences between class and mass actions that address those concerns").[2] *But see Carpenter v. PetSmart, Inc., 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020)* ("That the Supreme Court did not consider whether its holding in *Bristol-Myers Squibb* would apply to class actions is hardly supportive of a holding that it does not apply to class actions. On the other hand, the rationale for the holding in *Bristol-Myers Squibb* indicates that if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims."); *Chizniak v. CertainTeed Corp.*, 2020 WL 495129, at *5 (N.D.N.Y. Jan. 30, 2020) ("Like the other courts in this District, the Court interprets *Bristol-Myers Squibb* to extend to nationwide class actions and declines to exercise specific personal jurisdiction over Defendant CertainTeed with regard to the Out-of-State Plaintiffs' claims."); *Chavez v. Church & Dwight*

---

[2] *See also Waters v. Day & Zimmermann NPS, Inc*., 23 F.4th 84, 92 (1st Cir.), *cert. denied*, 213 L. Ed. 2d 1016, 142 S. Ct. 2777 (2022) (noting in the context of a Fair Labor Standards Act collective action that the Fifth Amendment, rather than the Fourteenth Amendment, governs the constitutional limits of a federal court's jurisdiction over federal-law claims and that the Due Process Clause of the Fifth Amendment "does not bar an out-of-state plaintiff from suing to enforce their rights under a federal statute in federal court if the defendant maintained the 'requisite 'minimum contacts' with the United States'" as a whole) (citing *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp*., 960 F.2d 1080, 1085 (1st Cir. 1992)).

ORDER CERTIFYING CLASS - 4

*Co.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) ("The Court therefore concludes that *Bristol-Myers* extends to class actions, and that Chavez is therefore foreclosed from representing either a nationwide and [sic] multistate class comprising non-Illinois residents in this suit."). The Court need not resolve this interesting but thorny issue in the context of this case. All of the class members, whether they are named plaintiffs or absent class members, reside outside Washington. Thus, the distinction defendants attempt to draw between named and unnamed plaintiffs is false. Because all class members' injuries arose out of L&K's sales of allegedly deceptive Kona blend coffee to customers in Washington state (Dkt. # 606 at 9), the Court has jurisdiction to hear their claims even if *Bristol-Myers Squibb* applies.

Finally, defendants' improper venue objection was overruled in February 2022 (Dkt. # 606 at 14-16), as was their argument that the Court's jurisdiction extends only to sales that occurred in Washington (Dkt. # 606 at 17-18).

**C. Prerequisites of a Class**

Pursuant to Fed. R. Civ. P. 23(a), a court may certify a class only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A court must conduct a rigorous analysis to determine whether a purported class satisfies the prerequisites of Rule 23. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). The Rule "does not set forth a mere pleading standard:" the party seeking class certification must "affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, *etc*." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

**(1) Numerosity**

The proposed class includes over 700 farmers, over 600 of whom have come forward to make claims as settlements were reached in this litigation. Defendants' objections regarding the

lack of evidence regarding the size of the class or the sufficiency of the size are overruled. The Court finds that joinder of hundreds of individuals and entities - even where their contact information is known - would be both impractical and inefficient. *See Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *5 (C.D. Cal. Feb. 26, 2018) ("In general, however, 'courts find the numerosity requirement satisfied when a class includes at least 40 members.'" (quoting *Rannis v. Recchia*, 380 Fed. App'x. 646, 651 (9th Cir. 2010); *Ali v. Menzies Aviation, Inc.*, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ("As a general rule a potential class of 40 members is considered impractical to join.") (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

**(2) Commonality**

In order to satisfy the commonality criterion, the class members' claims "must depend upon a common contention of such a nature that it is capable of classwide resolution." *Wal-Mart*, 564 U.S. at 338. A class meets the commonality requirement when "the common questions it has raised are 'apt to drive the resolution of the litigation' no matter their number." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). L&K and Kihnke argue that there is no commonality of claims or injury because some individuals and entities who fall within the class definition also buy and process cherry from other coffee farmers and because some class members oppose any blending of Kona coffee with non-Kona coffee. Because purchasers of cherry and retailers of Kona blend coffees have economic interests that are not identical to those of class members who simply grow and sell cherry, defendants argue that their measure of injury and/or damages is not common.

L&K is essentially insisting that every element of plaintiffs' Lanham Act claim be capable of classwide resolution. That is not the law. The question of whether the packaging and labeling of the various Kona products sold in MNS' stores is misleading is capable of classwide resolution and will drive the resolution of the litigation. If it is determined that a particular product or group of products was deceptively labeled, other common questions may arise, such as:

ORDER CERTIFYING CLASS - 6

a) How much of the counterfeit product was sold by MNS?

b) What impact did those sales have on the price of Kona coffee?

c) Is plaintiffs' claim for injunctive relief against MNS viable?

Each of these questions relates to MNS' alleged sale of deceptively labeled goods in violation of the Lanham Act, and the answers to these questions will be the same for every class member. Commonality is satisfied.

**(3) Typicality**

The typicality requirement "ensures that the interests of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks omitted). The named plaintiffs' claims need not be identical to those of the absent class members, but they must be reasonably similar in light of the injuries suffered and the conduct that allegedly caused the injuries. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). Class certification is not appropriate if there is a danger that the absent class members will suffer because their representative is preoccupied with claims or defenses unique to him or herself. *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

L&K and Kihnke assert that the named plaintiffs' claims are not typical of absent class members (a) their business model is focused on small-batch sales of 100% Kona coffee that is generally associated with a particular farm or estate, (b) they do not approve of the sale of Kona-blend products, and (c) they do not purchase Kona cherry and therefore do not benefit from a drop in price. The argument seems to be that the named plaintiffs will focus their attentions on proving that the sale of deceptively-labeled Kona coffee diminished the price they could obtain for "100% Kona sold by small farmers on the internet, farmers markets, and at roadside tables" to the exclusion of proving that farmers following dissimilar sales strategies and business models suffered damage. But "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis v.*

ORDER CERTIFYING CLASS - 7

1    *Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508

2    (internal citation and quotation marks omitted)). Plaintiffs' Lanham Act claims against MNS

3    arose from the same set of events, course of conduct, and practices that gave rise to the claims of

4    the absent class members, and the nature of the alleged injury – a drop in demand for and the

5    price at which they could sell authentic Kona coffee – is the same for the entire class even if the

6    calculation of individual damages may require extra steps to capture the varying sales outlets

7    used and market roles played by individual class members. The named plaintiffs are reasonably

8    similar to absent class members in light of the injuries suffered and the conduct that allegedly

9    caused those injuries.

10       L&K and Kihnke also assert that the named plaintiffs are subject to the unique defense of

11   laches. Defendants argue that the named plaintiffs should have figured out that MNS' Kona

12   products were deceptively labeled when consumers sued Safeway in August 2011. Dkt. # 609-2

13   (*Thurston v. Safeway, Inc.*, C11-04286-SC (N.D. Cal.)). "The fact that plaintiff may be subject to

14   a defense of [laches] is not a reason to deny class certification unless the facts giving rise to the

15   defense make plaintiff atypical." *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284

16   (N.D. Cal. 2020). To fill the gap, defendants identify the named plaintiffs as "known activists in

17   the Kona coffee world," suggesting that they held unique information that makes them, but not

18   other class members, susceptible to a laches defense. Dkt. # 589 at 20. The information uniquely

19   held by the named plaintiffs is not identified: the consumer lawsuit filed in the Northern District

20   of California was public, as was the belief that someone, somewhere along the chain of

21   commerce was claiming that their coffee was from Kona when it was not. Defendants do not

22   identify evidence showing that the named defendants had or should have figured out the

23   percentages in MNS' products for purposes of a laches defense, and the Court will not presume

24   that this possible defense is unique to the named plaintiffs or that it will become a focus of the

25   litigation to the detriment of the absent class members.

26       The Court finds that the named plaintiffs' claims are "reasonably co-extensive with those

27   of absent class members" and that typicality therefore exists. *Hanlon v. Chrysler Corp.*, 150 F.3d

28   ORDER CERTIFYING CLASS - 8

1011, 1019 (9th Cir. 1998).

**(4) Adequacy of Representation**

Two questions determine adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020). As discussed above, the named plaintiffs' claims and interests are aligned with those of the class, and, given the resources and effort they have so far put into this litigation to obtain significant financial and injunctive relief on behalf of hundreds of Kona farmers, they have shown that they will pursue the Lanham Act claims to the fullest extent possible.[3] Defendants argue, however, that the named plaintiffs have a conflict with absent class members who sell blended products, who sell to others who produce blended products, or who purchase Kona cherries because, for those class members, the challenged conduct brings benefits in the form of a market for their coffee and/or lower prices for their purchases.

Plaintiffs' claims are based on the alleged deceptive labeling of counterfeit coffee, not the sale of accurately-labeled blended products. Plaintiffs' theory is that Kona beans - whether sold as 100% Kona or used to make a Kona blend - would garner higher prices if Kona-labeled coffee actually contained the percentage of Kona beans consumers expect based on the labeling. With regards to farmers who also purchase cherry from other farmers, defendants fail to acknowledge that at least one of the named plaintiffs falls within that group. Dkt. # 570 at ¶ 3. That different farmers focus on different sales channels and utilize different production methods does not suggest that plaintiffs will not adequately represent a class of coffee farmers in pursuing the Lanham Act claims asserted here.

Defendants also argue that the named plaintiffs are not adequate representatives because

---

[3] Defendants make much of supposed opposition to this lawsuit within the class, but so far the response to the various settlement agreements has been overwhelmingly positive, with no objections and significant participation on the part of absent class members.

they oppose Hawaiʻi's 10% labeling law when other Kona farmers do not. Adequacy does not require uniformity of thought: even direct competitors can be adequate representatives as long as their interests with respect to the subject matter of the litigation are not antagonistic. *See* Newberg & Conte, 4 *Newberg on Class Actions*, § 18.17, at 18–59 (3d ed.1992)("a conflict that will preclude adequate representation must be one that goes to the merits of the litigation"). Where competition for scarce resources or services will result in a conflict that goes to the merits of the litigation, there may be no adequate representative, and class treatment would be precluded. *In re Beer Distribution Antitrust Litig*., 188 F.R.D. 549, 554–55 (N.D. Cal. 1998). But this case is about protecting the market and reputational value of the crop all class members grow and expanding the demand for the class' genuine Kona coffee. Whether an individual farmer would prefer that Kona blends contain 10% or 75% Kona coffee is not material to the Lanham Act claims asserted. Differences of opinion on that subject do not make the named plaintiffs inadequate as class representatives.

**B.  Maintenance of a Class under Rule 23(b)(3)**

Plaintiff argues that the provisions of Rule 23(b)(3) apply, pursuant to which the Court is required to find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

**(1) Common Issues Predominate**

The first Rule 23(b)(3) finding requires an evaluation of "the relationship between the common and individual issues," *Hanlon*, 150 F.3d at 1022, and is "far more demanding" than the commonality analysis of Rule 23(a)(2), *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624

(1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* Viewed through a comparative lens, the common questions identified above are significant and, if decided in plaintiffs' favor, will go far in establishing both their individual claims and MNS' liability to the absent class members. There do not appear to be any individual defenses that will complicate classwide adjudication.

With regards to damages, MNS intends to dispute plaintiffs' choices of benchmarks for both the actual and "but for" prices, arguing that a single farmer's prices cannot establish the actual price per pound for various Kona coffee products at over 700 farms and that Jamaica Blue Mountain coffee prices are not an accurate stand-in for what Kona beans would sell for in the absence of counterfeit Kona product. These are disputed issues of fact. Plaintiffs' expert economist argues that The Greenwell Farms is a large farm and processor that grows, purchases, and sells Kona cherry, green, and roasted coffee, such that its sales and purchase data captures the variation in prices throughout the supply chain and for a variety of grades of Kona over time. Plaintiffs' coffee industry expert asserts that Jamaica Blue Mountain coffee shares a number of key attributes and characteristics with Kona coffee, it is the best analogue for Kona coffee, and its market position has been aggressively protected from counterfeit activity, making it an appropriate benchmark for determining what the Kona market would have looked like "but for" defendants' Defendants disagree with these assertions. Such disputes may be resolved on a classwide basis and do not prevent a finding of predominance.

Defendants further argue that plaintiffs have not offered a non-speculative model through which damages can be ascertained on a classwide basis. In order to recover damages under the Lanham Act, plaintiffs must prove both the fact and amount of damage suffered as a result of defendant's conduct. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984). While the need to perform individualized calculations to ascertain the amount of each class member's

damages "cannot, by itself, defeat class certification," *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 514 (9th Cir. 2013), plaintiffs must offer some method or means by which they can show the existence of damage - and therefore liability - on a classwide basis, *Bowerman v. Field Asset Servs., Inc*., 39 F.4th 652, 662 (9th Cir. 2022). "Individual differences in calculating the amount of damages will not defeat class certification where common issues otherwise predominate ... , [but] if the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance." *Castillo v. Bank of America, NA*, 980 F.3d 723, 730 (9th Cir. 2020) (quotation marks, citation, and brackets omitted).

Defendants challenge plaintiffs' damage model on the ground that the prices class members charge for 100% Kona coffee vary widely (from $29.50-$100.00 per pound of roasted coffee in 2020), meaning that some farmers have found ways to sell their product well above the calculated "but for" price and are therefore not harmed by the alleged counterfeiting activity. But plaintiffs' economic expert uses actual and "but for" pricing benchmarks to obtain deltas, not to establish the sales price of a pound of roasted Kona in any given locale, marketing avenue, or year. It is the differences between the average, real-world prices of various Kona products and the average, real-world prices at which analogous Jamaican Blue Mountain products are sold that allows the expert to conclude that all farmers of Kona coffee, whether they pursue premium retail outlets or engage in discount sales, would have been able to sell their authentic product for a higher price in the absence of counterfeiting. That the market for Kona coffee products is highly diversified and dynamic does not invalidate the economist's methodology, which could support a reasonable finding of classwide injury in fact.[4]

---

[4] Defendants also argue that their percentage of the market for counterfeit Kona products is wildly overstated because there are many producers of Kona blend products who are not named as defendants, including all those who sell blends that are labeled in accordance with Hawai'i law. As plaintiffs' economist makes clear in his Rebuttal Declaration (Dkt. # 614), his analysis and calculations are based on alleged illegal counterfeiting, not sales of legal Kona blends.

ORDER CERTIFYING CLASS - 12

1

**(2) Superiority of Class Action**

2   The second Rule 23(b)(3) finding requires the court to evaluate alternative mechanisms of

3   dispute resolution based on the factors listed above in Rule 23(b)(3)(A)-(D). *See Zinser v.*

4   *Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). L&K and Kihnke assert

5   that there is significant opposition to this litigation from within the class, suggesting that some

6   members would prefer to control the prosecution of their own claims. The near universal

7   approval of and participation in the settlements plaintiffs have so far achieves shows otherwise.

8   There is no other pending litigation concerning the controversy at issue, and this Court can hear

9   all of the claims in this forum. With regards to the fourth factor, there will likely be some

10  difficulties in managing this case as a class action. Defendants will likely put on individualized

11  evidence in an attempt to invalidate plaintiffs' damages model, but the quantum and scope of

12  that evidence will be significantly less than if each class member brought his or her own lawsuit.

13  Defendants identify no alternative mechanism for resolving this dispute other than individual

14  actions. "Even if efficacious, [individual] claims would not only unnecessarily burden the

15  judiciary, but would prove uneconomic for potential plaintiffs" given the expert testimony

16  involved and the other costs of litigation. *Hanlon*, 150 F.3d at 1023.

17

18  //

19

20  //

21

22  //

23

24  //

25

26

27

28  ORDER CERTIFYING CLASS - 13

### III. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for class certification is GRANTED. It is hereby ORDERED that the following class is certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All persons and entities who farmed Kona coffee in the Kona District and then sold their coffee from February 27, 2015 to the present.

Plaintiffs' counsel shall present a form and plan of notice to the class, pursuant to Rule 23(c), no later than 21 days from the issuance of this Order.

Dated this 13th day of February, 2023.

*Mvt S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER CERTIFYING CLASS - 14