UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BRUCE CORKER d/b/a RANCHO ALOHA, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, *et al.*<br><br>Defendants. | CASE NO. 2:19-cv-00290-RSL<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SANCTIONS AGAINST BUCHALTER P.C.** |

This matter comes before the Court on "Plaintiffs' Motion for Sanctions Against Buchalter P.C." Dkt. # 759. Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

In an Order dated July 6, 2022, the Court determined that:

> Mulvadi's conviction that plaintiffs should have dismissed the claims against it based solely on its own unsupported and untested representations has led it astray. Its apparent annoyance at having to defend this litigation resulted in false representations regarding the nature of Mulvadi's records, unreasonable and unjustified discovery stances, lengthy delays in production, and recalcitrance in the face of clear and unambiguous discovery orders. At virtually every step, Mulvadi chose the path that would make discovery as difficult and expensive as possible for plaintiffs.

Dkt. # 677 at 12-13. The question is whether Mulvadi's counsel, Bradley P. Thoreson, John B. Crosetto, Jennifer Oswald, and the law firm Buchalter P.C. (collectively, "Buchalter") are responsible for the expenses plaintiffs have incurred in trying to distinguish fact from fiction and

in piecing together the basic purchase, sale, and profit data that is at the heart of the case.[1] Plaintiffs seek an award of all monetary damages, including fees and costs, attributable to Buchalter's unreasonable and vexatious multiplication and obstruction of the proceedings in this matter, the amount to be determined through a subsequently-filed petition.

**A. 28 U.S.C. § 1927**[2]

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Fees are appropriate under § 1927 if "an attorney knowingly or recklessly raises a frivolous argument, or argues a [ ] claim for the purpose of harassing an opponent, which qualifies as bad faith." *Caruso v. Wash. State Bar Ass'n*, 2017 WL 2256782, at *3 (W.D. Wash. May 23, 2017) (quoting *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990)). Actions taken "with the intent to increase expenses ... or delay" may also constitute bad faith worthy of sanctions. *Nielsen v. Unum Life Ins. Co. of Am.*, 166 F. Supp. 3d 1193, 1195 (W.D. Wash. 2016) (citing *NewAlaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)).

Buchalter raised wholly unsupported arguments, made false or misleading assertions under oath, and unreasonably delayed – if not obstructed – discovery in this matter, making litigation more difficult and expensive for plaintiffs. It was Buchalter that invented the "pleading promise" defense and then used it to justify Mulvadi's failure to participate in discovery. That defense was stricken in March 2020 (Dkt. # 230) and yet it continued to appear in Buchalter's correspondence and filings as part of their effort to paint plaintiffs' basic discovery requests as unreasonable and to justify Mulvadi's discovery failures. *See, e.g.*, Dkt. # 806 at ¶¶ 6-7. Mr. Thoreson took it upon himself to attest, under penalty of perjury, that certain facts were true

---

[1] The issue is not, as Buchalter would have it, whether its client could, in the end, show that all of the coffee it purchased and sold came from the Kona region. The point is that Mulvadi made it incredibly difficult for plaintiffs to test its bald assertions, throwing up road blocks and forcing plaintiffs to pursue third-party discovery and to file multiple discovery motions in its efforts to get the information Mulvadi now relies upon to prove its defense.

[2] Where there is a statute or rule that addresses the conduct at issue, the Court should ordinarily rely on that authority before turning to its inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). The Court will, therefore, first determine whether § 1927 is "up to the task" in the circumstances presented here. *Id.*

when he had no personal knowledge and the facts were either not true or were misleading. *See, e.g.*, Dkt. # 201 at ¶ 4 ("Mulvadi retains paper copies of its business records rather than electronic copies"); Dkt. # 263 at ¶ 8 ("Mulvadi neither has the staff or resources to undertake the production.");[3] Dkt. # 448 at ¶ 2-3 (suggesting that Pacifica Services' Kona coffee came from a single farm); Dkt. # 555 at ¶¶ 7-8 (suggesting that Mr. Thoreson visited all of the farms from which Hawaii Coffee Connection sourced its Kona coffee). These representations were presented as evidence, not just attorney argument. They not only forced plaintiffs to search for source material to rebut or confirm the assertions,[4] but they bound Buchalter to the declared facts, making it extremely unlikely that Buchalter could acknowledge any problems with the evidence because the evidence was now tied to their credibility.[5]

Buchalter's discovery stances fare no better. It was Buchalter that decided (a) to withhold production of the back-up documentation for the August 2019 letter until plaintiff produced its scientific testing evidence, (b) that Mulvadi need produce only hard copy records, (c) that Mulvadi need not comply with the stipulated protocol for the production of such records, (d) to file unsupported or unjustified motions for reconsideration, (e) to refuse reasonable requests for reports from or access to Mulvadi's QuickBooks, (f) to reproduce documents that had already been provided in previous productions, burying the new in the old, and (g) to indiscriminately label entire productions as "Attorneys' Eyes Only." Each of these decisions caused delay and

---

[3] Buchalter argues that they were unaware that Mulvadi had recently received thousands of dollars in COVID relief funds at the same time Mr. Thoreson was attesting that the client had no funds with which to meet its discovery obligations. That Buchalter made this assertion (twice) without full knowledge of the facts is troubling, as is the fact that it made two submissions arguing undue burden without providing any admissible evidence in support of the claim..

[4] For example, plaintiffs had good reason to suspect that the production from the three farms Mr. Thoreson visited/identified was insufficient to supply the amount of Kona coffee Mulvadi sold in a given year. After conducting third-party discovery, including motions to compel filed in the District of Hawaii, it became clear that each farm operated on or purchased from multiple sites and that Hawaii Coffee Connection purchased from five previously-undisclosed producers operating on six different farm properties. Dkt. # 805 at 10 (summarizing the deposition testimony). Regardless whether it turns out that every one of these producers and farms is located in the Kona district, Buchalter's attempt to forestall discovery by declaring what the facts were stymied plaintiffs efforts to ascertain the actual facts and resulted in excess expenditures.

[5] The Court recognizes that Mr. Crosetto and Ms. Oswald refrained from swearing to facts regarding Mulvadi's operations and were also put in the unenviable position of having to pursue the unsupported "pleading promise" theory and to justify unjustified conduct. The Court recognizes that it is not easy for junior attorneys to challenge or contradict the actions of a senior partner such as Mr. Thoreson.

added expense, and most of them resulted in motions practice. In response to plaintiffs' discovery requests and concerns, Buchalter repeatedly raised theories, arguments, and grievances that had been rejected or worked through, requiring plaintiffs (and, in some instances, the Court) to respond again and again to the same assertions. If Buchalter's representations regarding who was driving some of these decisions are to be believed, then it failed in its obligations to oversee discovery, leaving the client to determine what sources of information would be searched, the breadth of years for which documents would be produced, the products that were relevant to the case, and the means by which plaintiffs' expert would be given access to the QuickBooks data. As counsel, Buchalter had an affirmative obligation to ensure that Mulvadi conducted diligent and thorough searches for discoverable material and that discovery responses were complete and correct when made. *See* Fed. R. Civ. P. 26(g); *Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir. 1997) ("The Advisory Committee's Notes to the 1983 amendments to Rule 26 spell out the obvious: a certifying lawyer must make 'a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.'"); *Bruner v. City of Phoenix*, No. CV-18-00664-PHX-DJH, 2020 WL 554387, at *8 (D. Ariz. Feb. 4, 2020) ("[I]t is not reasonable for counsel to simply give instructions to his clients and count on them to fulfill their discovery obligations."). Forwarding discovery requests and/or the Court's discovery orders to the client is plainly insufficient.

The Court finds that Buchalter unreasonably and vexatiously multiplied the proceedings in this matter. Their dogged insistence that they were entitled to rely upon a "pleading promise" and Mr. Thoreson's insertion of himself as a fact witness resulted in Buchalter's adoption of unjustified stances and the reckless and knowing disregard of their discovery obligations.[6]

**B. Inherent Powers**

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"

---

[6] The Court is not persuaded that Buchalter suborned perjury or that it deliberately transmitted malware in a document production..

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS AGAINST
BUCHALTER P.C. - 4

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). The Court's inherent powers include "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. Because there is a statute and a rule that addresses most of the conduct at issue, the Court declines to rely on its more amorphous inherent powers. *Id*. at 50.

**C. Federal Rule of Civil Procedure 37**

Pursuant to Rule 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery, the Court has a range of procedural and evidentiary options at its disposal to ensure that the failure does not adversely impact the administration of justice. In addition, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). That Mulvadi may have preferred not to produce documents, not to comply with the Court's ESI order, and/or not to provide access to its QuickBooks is not substantial justification for failing to comply with the Court's orders. Some portion of the fees requested could properly be awarded against Buchalter under Rule 37.

**D. Duplicative Recovery**

Buchalter argues that awarding monetary sanctions against it will result in double recovery given that plaintiffs have reached settlements with other defendants and have already been awarded millions of dollars in fees. The sanctions requested against Buchalter are compensatory, not punitive. To the extent plaintiffs have already been compensated for the hours they spent in this litigation, they may not seek a double recovery.

Settlements with a number of defendants have involved attorney's fee awards and/or requests totaling almost $14,000,000. The settlement agreement plaintiffs have reached with Mulvadi reserves the right to seek another $1.94 million in fees (if calculated based solely on the cash value of the settlement). In addition, Mulvadi paid plaintiffs $7,389.25 in sanctions for its ill-advised filings. Dkt. # 671.

For all of the foregoing reasons, plaintiffs' motion for sanctions against Buchalter (Dkt. # 759) is GRANTED in part. Plaintiffs have made their point that they were the victims of counsel's unprofessional conduct in this case. The Court makes the findings in this Order as both a warning and a sanction, but chooses to impose monetary sanctions for only the fees and costs incurred in bringing this motion. Plaintiffs may, within fourteen days of the date of this Order, file a petition for the expenses associated with the sanctions motion, noting the petition for consideration on the third Friday from the date of filing.

Dated this 19th day of July, 2023.

ROBERT S. LASNIK
UNITED STATES DISTRICT JUDGE