UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUCE CORKER, *et al*.,

              Plaintiffs,

     v.

COSTCO WHOLESALE CORPORATION,
*et al*.,

              Defendants.

CASE NO. 2:19-cv-00290-RSL

ORDER REGARDING KROGER'S
BREACH OF SETTLEMENT
AGREEMENT

      This matter comes before the Court on "Defendant The Kroger Co.'s Motion for Plaintiffs' Breach of Settlement Agreement" (Dkt. # 909)[1] and plaintiff's "Motion for Order Finding Kroger in Breach of Settlement Agreement and Compelling Production of Company Records" (Dkt. # 915).

<h2 align="center">BACKGROUND</h2>

      The Settlement Agreement at issue required Kroger to label all coffee products it manufactured or packaged for sale with the percentage of Kona coffee beans contained therein. Dkt. # 910 at 8 (¶ 13). Kroger had ten months to roll out the revised labels and sell existing stock before the new requirement became effective on or around November 26, 2022. Dkt. # 910 at 9 (¶ 14). If, after the effective date, plaintiffs believed that Kroger had

---

[1] Despite its title, Kroger's motion sought relief from plaintiffs' claims of breach and a declaration that Kroger had not breached the Settlement Agreement. Dkt. # 909 at 1 a 9. Its request for a declaration that plaintiffs breached the Settlement Agreement was first raised in reply, Dkt. # 926, and has not been considered.

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 1

failed to appropriately label a coffee product under ¶ 13, plaintiffs were required to give notice of the alleged failure, referencing this case, attaching the Settlement Agreement, and describing the failure. Dkt. # 910 at 9 (¶ 15). The notice "must be in writing and delivered either by certified mail (postage prepaid), or by nationally recognized overnight courier . . . ." Dkt. # 910 at 9 (¶ 16). Kroger would have 90 days from receipt of the notice in which to cure the breach. Dkt. # 910 at 9 (¶ 15). If it did so, no cause of action or damages existed. If it did not cure the breach within 90 days of receiving the notice, plaintiffs could initiate a legal proceeding to seek injunctive relief and/or to recover Kroger's profits from offending products sold after the cure period expired. *Id.*

It is unclear what efforts Kroger made to satisfy its primary obligation to change the labeling on its branded coffee products to reflect the actual percentage of Kona coffee contained therein. The evidence shows only that Kroger's in-house counsel sent the new labeling requirements to the business units that handle Kroger's branded coffee products, reviewed draft revised labels for the Kivu Coffee Roasters and Private Selection brands, and was assured that the labels on those brands would be revised by the November 2022 compliance date. Dkt. # 911 at ¶¶ 5-6. If Kroger did anything to make sure that use of the new labels was universal across all products and channels and that old, mis-labeled product was no longer being offered for sale after November 26, 2022, it is not apparent from the record.

On December 7, 2022, plaintiffs sent Kroger a notice that it was in breach of the Settlement Agreement. Dkt. # 910 at 4. The notice referenced this litigation and attached a copy of the Settlement Agreement. In addition, plaintiffs provided a photo of a non-compliant coffee product: the product depicted is a bulk bin of Kivu Coffee Roasters Kona Blend reportedly offered for sale at a QFC store on Mercer Island, Washington. Dkt. # 910 at 4 and 20. The notice states that it was sent by certified mail, but the documentary evidence does not support that assertion, Dkt. # 910 at 34-38, and the only declaration

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 2

regarding service is inadmissible hearsay, Dkt. # 922 at ¶ 6; Dkt. # 922-1 at 2. There is no dispute that Kroger received actual notice via first-class mail on December 13, 2022. Dkt. # 911 at ¶ 8.

Kroger did not respond to the December 7, 2022, letter, but the in-house counsel who had reviewed the draft revised labels reached out to her operational contact for Kivu coffee products for assistance in addressing the alleged breach. Dkt. # 911 at ¶¶ 10-12. Only QFC and Fred Meyer stores sold Kivu Kona blend product in bulk bins, and she mistakenly requested help from the Fred Meyer division. While in-house counsel does not identify what steps were taken, Kroger updated the Kivu bulk bin labels in its 132 Fred Meyer stores in response to plaintiffs' December 7th letter. Dkt. # 911 at ¶ 18.

On April 13, 2023, plaintiffs again wrote to Kroger, noting that it had had 90 days in which to cure the breach identified in December, namely that "the labels on Kroger's bulk Kona coffee blend dispensers do not comply with the labeling requirements detailed in the Settlement Agreement." Dkt. # 910 at 23. Plaintiffs asserted that they had found a mislabeled bulk bin at a Fred Meyer store in Washington on March 20, 2023. Dkt. # 910 at 23-24. Plaintiffs threatened to petition the Court for injunctive relief and damages, but offered to settle in exchange for a promise of a full cure, an accounting and payment of gross profits from all sales of mislabeled Kona coffee since March 6, 2023, through the date of cure, and $5,000 in attorney's fees and costs. Dkt. # 910 at 24-25.

In response, Kroger took the position that the cure period had not yet been triggered because the December 7th letter was sent by first class, rather than certified, mail. Dkt. # 910 at 27. It nevertheless disclosed the steps it had taken in January to ensure that the labels on the Kivu bulk bins at its Fred Meyer stores were revised and replaced.[2] The fact

---

[2] In particular, Kroger's counsel stated that after receipt of plaintiffs' December 7th letter:

Kroger revised its KIVU bulk coffee labels, and they were printed by the Fred Meyer division office in December and early January. Then, on January 11, 2023, the Fred Meyer division office sent the

1

2

that plaintiffs reported a mislabeled bin in a Fred Meyer store on March 20th caused

concern: Kroger initiated a second "Go, Spot, Check" process and requested the address of

3

the Fred Meyer store where plaintiffs had photographed the old label. Dkt. # 910 at 28.

4

On May 12, 2023, plaintiffs sent another letter questioning why the reported efforts

5

had not been undertaken during the sell-through period, pointing out that Kroger was under

6

the same obligations with regards to all of its other, non-Fred Meyer stores, and confirming

7

that Kivu Kona blend was still being sold under the old label at QFC. Dkt. # 910 at 30-31.

8

The April 13th reference to a breach at a Fred Meyer store appears to have been an error.

9

Plaintiffs once again demanded that Kroger promise to fully cure the breach, provide an

10

accounting and payment of gross profits from all sales of mislabeled Kona coffee since

11

March 6, 2023, through the date of cure, and pay $5,000 in attorney's fees and costs. Dkt.

12

# 910 at 32.

13

Kroger's response was to return to the certified mail issue. Dkt. # 910 at 34-38.

14

Plaintiffs insisted that they sent the December 7, 2022, notice by certified mail, but also

15

pointed out that, even if there were a problem with the certified mail attempt, Kroger

16

received actual notice. Dkt. # 910 at 40. Plaintiffs requested that Kroger let them know by

17

June 30, 2023, whether they intended to comply with plaintiffs' previous remedial

18

requests.

19

20

21

updated labels via interoffice mail to each of the 132 Fred Meyer stores. The labels were replaced on a store-by-store basis by the in-store personnel by the end of January.

22

To verify that each of the 132 Fred Meyer stores implemented the revised KIVU bulk coffee labels as directed, Kroger employed a digital method of verification through a program called "Go, Spot, Check." The digital program "Go, Spot, Check" issues an electronic request to each store instructing the store to complete the given request – in this case, the replacement of the bulk labels on the Kivu Kona Blend – and, then requires the store confirm with the division office that the request has been completed. By the end of January, Kroger did not identify any stores that were out of compliance. In addition, division personnel went to a random selection of stores to complete spot checks to ensure that the labeling change was complete. After these multiple processes were completed, Kroger believed that the problem had been remedied.

23

24

25

26

Dkt. # 910 at 27.

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

On June 27th, Kroger responded more fully, arguing that the December 7th letter did not constitute notice under the Settlement Agreement because it was not sent by certified mail, that the April 13th letter did not constitute notice because it described the alleged breach as occurring at a Fred Meyer store when, in fact, it was at a QFC store, and that the May 12th letter did not constitute notice because it was addressed to Kroger's counsel instead of the address specified in the Settlement Agreement. Dkt. # 910 at 43-44. Kroger took the position that, even if the May 12th letter were deemed sufficient notice because counsel had taken up the communications regarding the breach that was first alleged in December 2022, the cure period would run until August 13, 2023, and QFC had stopped selling Kona coffee in bulk bins in April 2023. Kroger took the position that unless plaintiffs could identify a Fred Meyer store in which the labels on the bulk bins were non-compliant, the matter was resolved. Dkt. # 910 at 44.

Plaintiffs were not of the same mind. In a letter dated July 14, 2023, they argued that the December 7th letter gave Kroger actual notice that it "was in breach" and triggered an obligation "to ensure its private label products sold in any of its other thousands of Kroger stores also complied with the labeling requirements in the Settlement Agreement." Dkt. # 910 at 46. Plaintiffs accused Kroger of refusing to make any effort to comply with its labeling obligations outside of its brick and mortar Fred Meyer stores, noting that "Kroger has been advertising and offering non-compliant products through its online storefronts for *all* of its stores, including its Fred Meyer stores." Dkt. # 910 at 46-47 (emphasis in original). Plaintiffs attached to their letter screenshots of Kroger's Private Selection Kona coffee products offered through its Jay C, Kroger, Baker's, Dillons, Fred Meyer, Fry's, Pick 'n Save, QFC, Ralphs, Smith's, City Market, Food 4 Less, Gerbes, Martanos, Metro Market, Pay Less, King Soopers, and Foods Co. stores. Dkt. # 910 at 48-145. For the third time, plaintiffs demanded that Kroger promise to fully cure the breach, provide an accounting, and disgorge its gross profits from all sales of mislabeled Kona

coffee since March 6, 2023, through the date of cure. Dkt. # 910 at 47. The attorney's fee and cost demand increased from $5,000 to $10,000. *Id.*

In addition to its various challenges to the effectiveness of plaintiff's notices over the preceding seven months, Kroger objected to the expansion of a complaint regarding the label on one coffee product – the Kivu Kona bulk bin –into a duty to check the labeling on each and every Kroger-branded coffee product in every Kroger-owned grocery chain. Dkt. # 910 at 147. Kroger reiterated that it had corrected the Kivu bulk bin problem at its Fred Meyer stores upon receipt of the December 7th letter and that QFC had stopped selling Kivu Kona from bulk bins as of April 23, 2023. Although Kroger doubted that the labeling provisions of the Settlement Agreement applied to website images of its branded coffee products, it nevertheless was in the process of updating the on-line images of its Private Selection Kona blend and would check the images of its Kivu Kona blend as well. Dkt. # 910 at 148. Kroger offered to settle the dispute by paying $1,726.80 in profits made from the sale of Kivu Kona blend from QFC's bulk bins between March 14, 2023 (90 days after receipt of the December 7th letter) and April 23, 2023, when such sales ceased plus $5,000 in attorney's fees. Dkt. # 910 at 149.

Ten weeks later, plaintiffs made clear that they would not entertain any settlement offers until they received a full accounting of all branded coffee product sales across all stores (on-line as well as brick and mortar) that were mislabeled from March 6, 2023, to the date of the accounting. Dkt. # 910 at 151-52. They also requested "a sworn statement from a Kroger representative explaining all steps taken to ensure that Kroger is now in full compliance with the Settlement Agreement and specifically identifying the date when full compliance was achieved. The statement should detail the steps Kroger has taken to ensure the Kona coffee products sold in all of its stores and online comply with the Settlement Agreement and specifically identify the ones that don't." Dkt. # 910 at 152. Kroger was

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 6

given eight days in which to provide the accounting and statement, otherwise plaintiff would file a motion for injunctive relief, damages, and attorney's fees.

Kroger filed its motion for a declaration that it has not breached the Settlement Agreement (Dkt. # 909) on October 27, 2023. Plaintiffs filed their cross-motion (Dkt. # 915) on November 2, 2023.

DISCUSSION

Under Washington law,

We interpret settlement agreements in the same way we interpret other contracts. *McGuire v. Bates*, 169 Wn.2d 185, 188-89 (2010). In doing so, the goal is to determine the parties' intent by focusing on their objective manifestations as expressed in the agreement. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005).

We will impute an intention corresponding to the reasonable meaning of the words used. *Id.* Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if an intention can be imputed that corresponds to the reasonable meaning of the actual words used. *Id.* at 503-04. Words in a contract are generally given their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Universal/Land Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 637 (1987). We do not interpret what was intended to be written but what was written. *J.W. Seavey Hop Corp. of Portland v. Pollock*, 20 Wn.2d 337, 348-49 (1944).

Contracts are also considered as a whole, giving them a fair, reasonable, and sensible construction. *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710 (2016). "Where possible, we harmonize clauses that seem to conflict in order to give effect to all of the contract's provisions." *Id.*

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 7

*Matter of Marriage of Kuehner v. Kuehner*, No. 57203-6-II, 2024 WL 455289, at \*5–6 (Wn. Ct. App. Feb. 6, 2024).

In certain respects, both parties push for an unreasonable interpretation of paragraph 15 of the Settlement Agreement. Plaintiffs insist that sending Kroger notice of a non-compliant label on a product in a single store triggers an obligation to verify that all Kroger brand coffee products offered for sale in every channel of every Kroger chain are appropriately labeled. Kroger, for its part, argues that its obligation to investigate and cure an alleged labeling violation extends only to the coffee product identified and only in the chain where it was found.

The assumption underlying the notice and cure provision is that Kroger made a good faith effort to relabel "[a]ll coffee products manufactured or packaged for sale by Kroger that are under Kroger's name, or any brand name wholly owned by Kroger, and labeled as 'Kona coffee' or 'Kona Blend'" during the ten-month sell through period. Dkt. # 910 at 8 (¶ 13). Plaintiffs have not alleged a breach of that underlying obligation, but are instead attempting to use the notice and cure provision to trigger a company-wide evaluation of the effectiveness of the original relabeling efforts. The notice and cure provision was intended to address specific oversights, mistakes, and errors in performance and cannot be interpreted so broadly. In this case, plaintiffs provided notice through "a photo of a Kroger Branded Kona Coffee Product that was taken at a Mercer Island, Washington QFC on November 29, 2022." Dkt. # 910 at 4. The photo showed a bulk bin of Kivu Coffee Roasters Kona Blend. Dkt. # 910 at 21. Plaintiffs subsequently reiterated that its complaint related to "the labels on Kroger's bulk Kona coffee blend dispensers." Dkt. # 910 at 23. No other violation was alleged until July 14, 2023, when plaintiffs first alleged that Kroger had failed to revise the on-line images of its Private Selection Kona blend products.

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 8

Kroger's argument that a notice of breach requires it to do no more than ensure that the labels at the identified store or chain are compliant understates its obligations in the circumstances presented here. Kivu Kona blend was sold in bulk containers in only two of Kroger's grocery chains, Fred Meyer and QFC. Given the similarities in the products, the distribution channels, and the product management, notice that Kroger's relabeling efforts had missed the bulk bins at QFC should have triggered an investigation and remedy at both the QFC and Fred Meyer chains within the 90 day period that expired on March 13, 2023.[3] It is undisputed that non-compliant Kivu Kona blend coffee was sold at QFC stores in bulk bins until at least April 23, 2023.

For all of the foregoing reasons, the Court finds as follows:

1. Plaintiffs provided sufficient notice that the labels on the bulk bins carrying Kroger's Kivu Kona blend coffee products did not comply with the dictates of the Settlement Agreement. The notice was received by Kroger on December 13, 2022, triggering a 90-day cure period.

2. Kroger appropriately investigated and cured the violation at its Fred Meyer stores, but the breach continued at the QFC stores after the cure period expired on

---

[3] The Court rejects Kroger's argument that the cure period did not begin to run until May12, 2023, at the earliest. Neither party directly discusses whether substantial compliance with a notice provision, *i.e.*, one that provided actual notice of the alleged breach, is sufficient under Washington law to trigger a cure period. Washington courts generally avoid "hypertechnical applications of notice requirements." *U.S. Bank Nat'l Ass'n as Tr. for Truman 2016 SC6 Title Tr. v. Roosild*, 17 Wash. App. 2d 589, 600 (2021). The purpose of the notice provision is to give Kroger an opportunity to investigate and cure the alleged breach before a legal action or recoverable damages accrue. Actual notice of the alleged breach and all of the essential information related to the breach constitutes substantial compliance with the notice requirement. Even if the strict compliance rule that applies to notice, protest, and claim provisions of a municipal services contract governs this case, such procedural requirements may be waived. *See Mike M. Johnson, Inc. v. Cnty. of Spokane*, 150 Wn.2d 375, 386–87 (2003); *Reynolds Metals Co. v. Elec. Smith Constr. & Equip. Co.*, 4 Wn. App. 695, 700 (1971). By initiating an investigation and cure following receipt of the December 7, 2022, letter, Kroger waived strict compliance with the certified mail requirement.

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 9

March 13, 2023. Plaintiffs are entitled to the gross profits received from the bulk sales of Kivu Kona blend from March 14, 2023, until those sales stopped. Kroger asserts that the gross profits at issue total $1,726.80, but it must provide an accounting of the relevant sales and supporting sales records as kept in the ordinary course of business.

3. The parties shall attempt to reach agreement regarding the reasonable costs, including attorney's fees, plaintiffs incurred in connection with enforcing the Settlement Agreement. If the dispute cannot be resolved, plaintiffs may file a petition for fees and costs within thirty days of the date of this Order.

4. With regards to plaintiffs' July 14, 2023, complaint regarding the on-line representations of Kroger's Private Selection Kona blend coffee products, Kroger cured the alleged breach within 90 days of the notice. No claim may be brought or damages awarded regarding that alleged breach.

Dated this 25th day of March, 2024.

Robert S. Lasnik
United States District Judge

ORDER REGARDING KROGER'S BREACH OF
SETTLEMENT AGREEMENT - 10